UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

GREAT WESTERN INSURANCE
COMPANY,

                              Plaintiff,

              - against-

MARK GRAHAM, DONALD SOLOW,
BLUE CAPITAL MANAGEMENT, INC.,
BLUE ALTERNATIVE ASSET
MANAGEMENT LLC, WILMINGTON
SAVINGS FUND SOCIETY, FSB,
CHRISTIANA TRUST, REGATTA
HOLDINGS LLC, CYGNET 001
MASTER TRUST, CYGNET 001
MASTER TRUST SERIES 2011-A,
CYGNET 001 MASTER TRUST SERIES
2011-C, CYGNET 001 MASTER TRUST
SERIES 2013-A, ALPHA RE LIMITED,
ALPHA RE HOLDINGS (CAYMAN)
LIMITED, ATLANTIC SPECIALTY
FINANCE, BLUE ELITE FUND LTD.,
BLUE ELITE FUND LP, BLUE II LTD.,
SANCUS CAPITAL BLUE CREDIT
OPPORTUNITIES FUND LTD.,
ABILITY INSURANCE COMPANY,
JOHN DRAKE, EDWARD BRENDAN
LYNCH, AND GREGORY TOLARAM.

                          Defendants.

No. 1:18-cv-06249-VSB

## DEFENDANT ABILITY INSURANCE COMPANY'S MEMORANDUM OF LAW IN SUPPORT OF ITS MOTION TO DISMISS THE SPECIFIC CLAIMS PLEADED AGAINST MOVANT

## <u>TABLE OF CONTENTS</u>

PRELIMINARY STATEMENT ................................................................................................... 1

RELEVANT BACKGROUND AS RELATED TO ABILITY ...................................................... 3

ARGUMENT ................................................................................................................................ 7

      I.      PLAINTIFF FAILED TO PLAUSIBLY PLEAD  CLAIM FOR UNJUST
            ENRICHMENT ............................................................................................ 8

            a.     Great Western and Ability Had No Relationship of Any Kind ................. 9
            b.     Ability's Exercise of Contractual Rights Precludes a Finding of
                  Conduct Offending Equity and Good Conscience .................................... 12

      II.     PLAINTIFF HAS NOT PLED SUFFICIENT FACTS TO ESTABLISH A
            CLAIM FOR CONVERSION AGAINST ABILITY ......................................... 13

CONCLUSION ............................................................................................................................ 16

i

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Federal Cases**

*Advanced Marine Techs., Inc. v. Burnham Sec., Inc.*,
  16 F.Supp.2d 375 (S.D.N.Y.1998).................................................................................5

*Ashcroft v. Iqbal*,
  556 U.S. 662 (2009).........................................................................................................8

*Biro v. Conde Nast*,
  807 F.3d 541 (2d Cir. 2015)...........................................................................................8

*Cmty. Fin. Grp., Inc. v. Stanbic Bank Ltd.*,
  No. 14CV5216 DLC, 2015 WL 4164763 (S.D.N.Y. July 10, 2015)...........................8

*Cohen v. BMW Investments L.P.*,
  144 F. Supp. 3d 492 (S.D.N.Y. 2015), *aff'd*, 668 F. App'x 373 (2d Cir. 2016)......9, 10, 11, 12

*Cortec Indus., Inc. v. Sum Holding L.P.*,
  949 F.2d 42 (2d Cir. 1991).............................................................................................5

*Creative Socio-Medics, Corp. v. City of Richmond*,
  219 F. Supp. 2d 300 (E.D.N.Y. 2002) ..........................................................................8

*Cucina Classica Italiana, Inc. v. Banca Nazionale Del Lavoro*,
  No. 96 CIV. 1144 (JFK), 1997 WL 2516 (S.D.N.Y. Jan. 3, 1997), *aff'd sub
  nom. Cucina Classica Italiana, Inc. v. Banco Nazionale Del Lavoro*, 133 F.3d
  906 (2d Cir. 1997)..........................................................................................................16

*DiFolco v. MSNBC Cable L.L.C.*,
  622 F.3d 104 (2d Cir. 2010)...........................................................................................5

*J.L.B. Equities, Inc. v. Ocwen Fin. Corp.*,
  131 F. Supp. 2d 544 (S.D.N.Y. 2001).............................................................................8

*Kajoshaj v. New York City Dep't of Educ.*,
  543 F. App'x 11 (2d Cir. 2013) .....................................................................................8

*Krasner v. Rahfco Funds LP*,
  No. 11 CV 4092 VB, 2012 WL 4069294 (S.D.N.Y. Aug. 9, 2012)..................13, 15

*Lopez v. Ctpartners Exec. Search Inc.*,
  173 F. Supp. 3d 12 (S.D.N.Y. 2016).............................................................................16

*Moscato v. Tie Techs., Inc.*,
  No. 04 CIV. 2487 (GBD), 2005 WL 146806 (S.D.N.Y. Jan. 21, 2005).....................13

*In re Ne. Indus. Dev. Corp.*,
  513 B.R. 825 (Bankr. S.D.N.Y. 2014), *adopted*, No. 14-CV-7056 NSR, 2015
  WL 3776390 (S.D.N.Y. June 16, 2015) .......................................................................12

*Oxon Italia, S.p.A. v. Farmland Indus., Inc.*,
    546 F. Supp. 681 (S.D.N.Y. 1982)................................................................14, 15

*Sharpe v. City of New York*,
    560 F. App'x 78 (2d Cir. 2014) ..............................................................................7

*Solomon v. Siemens Indus., Inc.*,
    8 F. Supp. 3d 261 (E.D.N.Y. 2014) .....................................................................15

*Spool v. World Child Int'l Adoption Agency*,
    520 F.3d 178 (2d Cir. 2008)....................................................................................8

*Techno-Comp, Inc. v. Arcabascio*,
    130 F. Supp. 3d 734 (E.D.N.Y. 2015) .................................................................11

*TechnoMarine SA v. Jacob Time, Inc.*,
    905 F. Supp. 2d 482 (S.D.N.Y. 2012)..................................................................15

*Valentini v. Citigroup, Inc.*,
    837 F. Supp. 2d 304 (S.D.N.Y. 2011) .................................................................13

**State Cases**

*Crescimanni v. Trovato*,
    80 N.Y.S.3d 89 (2d Dep't 2018)...........................................................................11

*Georgia Malone & Co. v. Rieder*,
    973 N.E.2d 743 (N.Y. 2012).................................................................................11

*Kolodin v. Valenti*,
    47 N.Y.S.3d 14 (1st Dep't 2017) .........................................................................13

*Mandarin Trading Ltd. v. Wildenstein*,
    944 N.E.2d 1104 (N.Y. 2011)..........................................................................9, 12

*Smallwood v. Lupoli*,
    968 N.Y.S.2d 515 (2d Dep't 2013) ......................................................................15

**Other Authorities**

210 Neb. Admin. Code, ch. 65, § 011.02(D)(1) (2011)...............................................6

210 Neb. Admin. Code Ch. 65, § 011.02(D)(3) (2011)...............................................6

Fed. R. Civ. P. 12(b)(6).................................................................................................1

Restatement of the Law—Torts § 272 (1965) ............................................................14

iii

Pursuant to Fed. R. Civ. P. 12(b)(6), Defendant Ability Insurance Company ("Ability") submits this memorandum of law in support of its motion to dismiss with prejudice the two counts against it in the Complaint ("Complaint" or "Complt.") filed by Plaintiff Great Western Insurance Company ("Great Western").

## PRELIMINARY STATEMENT

Plaintiff Great Western seeks recovery from a collection of no less than twenty-two defendants for amounts it allegedly became obligated to pay under certain insurance policies (the "GW Policies") that it underwrote.  Ability is another insurance company, which has no relationship of any kind with Great Western.  Indisputably, Ability had no role in, or responsibility for, underwriting, administering, reinsuring or guaranteeing any GW Policies. Ability instead has been injected into this lawsuit on the untenable grounds that it had a contract – in which Great Western was neither a party nor even referenced – with a reinsurer, defendant Alpha Re Limited ("Alpha Re"), which had an entirely separate reinsurance contract with Great Western.  Of the twelve separate causes of action asserted against a diverse group of defendants, only the last two name Ability: Count Eleven asserts an "unjust enrichment" claim against twenty defendants, including Ability; and the final Count Twelve asserts a "conversion" claim against Ability.

Whatever Great Western's tactical purpose for heaping on Ability these tack-on claims, Ability is a stranger to Great Western's alleged grievances.  Great Western itself identifies in its Complaint the independent contractual relationship between Ability and Alpha Re.  By express contractual terms, Ability had clear rights to withdraw funds at any time from an account for which Alpha Re, as its reinsurer, had responsibility to maintain for Ability's benefit.  Indeed, the laws of Nebraska, where Ability is domiciled, required Ability to have the unconditional right to withdraw these funds at any time.  Although Great Western now asserts that certain of those

funds constituted funds to which Great Western, under its own, separate contract with Alpha Re, had rights, those circumstances do not create liability on Ability.

Based on the absence of any relationship and duties between Great Western and Ability, as well as the express rights of Ability under an independent contract and state insurance statute, neither of Great Western's claims against Ability is legally sustainable.

- With respect to unjust enrichment, no viable claim exists in the absence of a cognizable relationship between the parties and duty owed by defendant.  Here, neither a sufficient relationship nor corresponding duty is – or can be – pleaded.  Furthermore, Ability's own express rights by both contract and statute to access the very funds it obtained renders, as a matter of law, nothing unjust about its conduct, as is a requisite element.

- With respect to conversion, Ability's express rights to access the underlying funds again precludes, as a legal matter, a viable conversion claim.  Evidently recognizing the lack of merit to its position, Great Western never even made a pre-litigation demand for funds on Ability – which only provides a further reason why its conversion claim fails.

It would create a novel doctrine disrupting normal business expectations to penalize a party for exercising its undisputed rights to withdraw funds to which it legally was entitled as both a matter of statute and contract.  No amended pleading can convert Count Eleven and Count Twelve into tenable causes of action as related to Ability.  Accordingly, these claims warrant dismissal with prejudice in respect of Ability.

## RELEVANT BACKGROUND AS RELATED TO ABILITY[1]

Ability is a Nebraska-domiciled insurance company, which writes long-term care ("LTC") policies (the "Ability Policies") entirely different from the types of funeral expense policies that Great Western issues.  Complt. at ¶¶ 2, 26.  Great Western does not allege it had any agreement or engaged in any dealings with Ability:

- Ability does not have any role or interest in any GW Policies.

- Ability is not a party to, or referenced in, any of the Great Western agreements cited by Great Western in the Complaint.

- Ability also is not a party to the underlying transactions involving Great Western described in Great Western's Complaint.

- Ability had no role or responsibility for the making of investment decisions for Great Western or financial reporting to Great Western.

- Ability has no financial interests in any other defendants.

- No other defendants have any financial interests in Ability. [2]

A.    Great Western's Independent Business Activities Unrelated to Ability:

Plaintiff Great Western, a Utah-domiciled insurance company, issued its GW Policies consisting of life insurance and annuities that funded pre-arranged funeral plans.  Complt. at ¶ 2.  On June 28, 2012, Great Western entered into a certain agreement (the "GW Reinsurance Agreement") with Alpha Re pursuant to which Alpha Re became Great Western's reinsurer.  Complt. at ¶ 57.   Relatedly, Great Western entered into a certain trust agreement (the "GW Trust

---

[1] The below background is based on Great Western's allegations, which are accepted solely for purposes of this motion to dismiss.  Although the Complaint rests on disputed factual allegations, it is unnecessary to address those issues in order to grant this motion.

[2] For the avoidance of doubt, Great Western should not be permitted to confuse relationships by referencing a contract with **non**-defendant Ability Reinsurance (Bermuda) Limited ("Ability Bermuda"), **pre-dating** any alleged wrongful activities.  According to its own allegations, Great Western's contract with Ability Bermuda terminated before any of the wrongful activities occurred.  Complt. at ¶ 57.  In any event, Ability and Ability Bermuda are indisputably distinct entities.

3

Agreement"), effective July 11, 2012, with defendants Alpha Re and Wilmington Savings Funds Society ("WSFS").   Pursuant to these agreements, Great Western deposited approximately $153 million into a trust account (the "GW Trust Account") with WSFB serving as trustee.  Complt. at ¶¶ 57, 60.  Under the GW Reinsurance Agreement, Alpha Re was responsible to maintain funds at a defined level in the GW Trust Account, together with certain supplemental sums, and administer the account as a source for the payment of claims under the GW Policies.  Complt. at ¶ 59.

Defendant Blue Asset Management ("BAAM"), controlled by Defendant Mark Graham ("Graham"), acted as collateral manager for the GW Trust Account.  In turn, BAAM arranged for transactions between the trust account and defendant Cygnet 001 Master Trust Series 2011-C (the "Series 2011-C").  Complt. at ¶ 62.  Great Western alleges that, unbeknownst to it, various defendants (including Graham and Donald Solow ("Solow")), created and controlled Alpha Re. Specifically, Graham and BAAM invested $148 million from the GW Trust Account in complex transactions with Series 2011-C, owned by defendant Regatta Holdings, LLC ("Regatta"), which in turn was 100% owned by Solow.  Complt. at ¶ 62.  In December 2013, Regatta and Graham-controlled defendant Blue Capital Management ("BCM") entered into an agreement pursuant to which BCM became the collateral manager of Series 2011-C.  Complt. at ¶ 69.

According to Great Western, the Series 2011-C transactions in which it participated involved self-dealing by certain defendants (but **<u>not</u>** Ability) because BCM, an entity owned by Graham, was the investment manager for Series 2011-C.  Complt. at ¶ 70.  Great Western asserts that various defendants **wholly unrelated** to Ability "obfuscated and hid that they were depleting the funds in the trust account" and misrepresented the value of the GW Trust Account through "monthly statements for the Trust Account." Complt. at ¶ 5.  As a result, Great Western

claims Series 2011-C "became a slush fund for Graham" and related entities beginning in 2012. Complt. at ¶ 6.

On June 6, 2017, as part of continuing attempts to recover the funds to which it claims entitlement, Great Western sent a letter to Alpha Re, demanding compliance with the GW Coinsurance Agreement and the identification of assets under the GW Trust Account.   Complt. at ¶ 130.  Alpha Re, however, failed to satisfy Great Western's demands.  Complt. at ¶ 131.

On June 21, 2017, Great Western instituted arbitration proceedings against Alpha Re. Complt. at ¶ 132.  Ability was **not** a party to, and played no role in, the arbitration.  On April 17, 2018, Great Western received a final award ruling against Alpha Re awarding over $130 million in its favor from the Arbitration Panel.  Complt. at ¶¶ 134-136.

B.     Ability's Independent Business Activities Unrelated to Great Western:

As Great Western references in its Complaint, Ability entered into an independent reinsurance relationship with Alpha Re in connection with its LTC policies and having nothing to do with Great Western. *See* Complt. ¶ 50.  Specifically, Ability and Alpha Re entered into the Coinsurance Agreement (the "Ability Coinsurance Agreement"), effective as of December 31, 2012, and the related Trust Agreement ("Ability Trust Agreement"), effective as of February 15, 2013.  A copy of the Ability Coinsurance Agreement is attached as Exhibit A, and the Ability Trust Agreement as Exhibit B, to the accompanying Affirmation of Hal S. Shaftel, dated October 31, 2018.[3]   Great Western is **not** a party to, nor referenced in, the Ability Coinsurance Agreement or Ability Trust Agreement.

---

[3] On a motion to dismiss, a court is permitted to consider documents, like the Ability Trust and Coinsurance Agreements, that are referenced in or otherwise integral to the complaint.  *See DiFolco v. MSNBC Cable L.L.C.*, 622 F.3d 104, 112 (2d Cir. 2010) (consideration of e-mails on a motion to dismiss permissible where referred to in complaint); *Cortec Indus., Inc. v. Sum Holding L.P.*, 949 F.2d 42, 48 (2d Cir. 1991) (court considered documents defendant attached to a motion to dismiss where "plaintiffs had…knowledge of" the documents); *see also, Advanced Marine Techs., Inc. v. Burnham Sec., Inc.,* 16 F.Supp.2d 375, 378 (S.D.N.Y.1998) (finding letter referred to in complaint was incorporated by reference).

As a Nebraska domiciled insurer, Ability is subject to Nebraska law requiring an insurer to maintain a sufficient level of assets in relation to its policyholder obligations.   In turn, reinsurance as provided by Alpha Re must be supported by assets held in a trust account by the reinsurer but unconditionally accessible to Ability.   Specifically, the Nebraska Code states that for the reinsurance trust to qualify for regulatory purposes:

> The beneficiary [Ability] should have the right to withdraw assets from the trust account at any time.

210 Neb. Admin. Code Ch. 65, at § 011.02(D)(1) (2011).  The Nebraska Code further states that the funds held in trust must "not [be] subject to any conditions or qualifications outside of the trust agreement."  *Id*. at § 011.02(D)(3).  To that end, Alpha Re under the Ability Coinsurance Agreement administered a trust account (the "Ability Trust Account") for the sole benefit of Ability, holding an amount equal to 102% of the value of a set portion ("Quota Share") of the LTC policies.  Shaftel Aff., Ex. A at Article XX(A).  Independent of any matter involving Great Western, Alpha Re was responsible for paying Ability out of the Ability Trust Account the Quota Share of LTC payments to policyholders.  *Id*. at Article VIII(A), XX(A).

Consistent with Nebraska insurance law requirements, the Ability Trust Agreement specifically stated: "Without notice…[Ability] shall have the right, at any time, and from time to time, to withdraw from the Trust Account."  Shaftel Aff., Ex. B at Section 2(a).  Likewise, the Ability Coinsurance Agreement provided Ability with the following express contractual rights:

- The Ability Coinsurance Agreement provided that Alpha Re, as reinsurer, "shall enter into a trust agreement…and establish and maintain as security for its obligations hereunder a trust account…for the sole benefit of [Ability]."  Shaftel Aff., Ex. A at Article XX(A).

- In the Ability Coinsurance Agreement, Ability had the right to an "accounting and settlement as to any balance due under this Agreement" in the event Ability terminated the Ability Coinsurance Agreement.  *Id*. at Article XVIII(F).

6

- The Ability Coinsurance Agreement further provided: "[t]he assets in the Trust Account may be withdrawn by [Ability] at any time…" *Id*. at Article XX(D) (emphasis added).

Great Western states that, as of September 16, 2016, the U.S. Securities and Exchange Commission "informed it that the SEC was investigating BAAM and related entities." Complt. at ¶ 108. "From that point forward", according to Great Western, it made "multiple requests and demands" of BAAM-affiliated persons and entities. *Id*. at ¶ 109. But it took no steps to recover or protect assets. Although Great Wester made no such efforts, Great Western alleges that, in October 2016, Ability "cause[ed] the transfer of approximately $109 million" from the Ability Trust Account at WSFS to another Ability bank account. Complt. at ¶ 107. There is no contention that the transfer was not made pursuant to Ability's contractual and statutory rights.

C.    Great Western's Lawsuit:

On or about July 10, 2018, Great Western commenced this litigation against twenty-two defendants. Recognizing it had no relationship or dealings with Ability, Great Western's only claims against Ability are non-contract claims for unjust enrichment (Count Eleven) and conversion (Count Twelve). As a predicate for these claims, Great Western relies on conclusory assertion about Ability accessing funds "improperly," "unlawfully," or in an "unauthorized" manner. *E.g.*, Complt. at ¶¶ 6, 229. However, Great Western ignores Ability's own, independent contractual rights under the Ability Coinsurance Agreement to withdraw the funds in its Ability Trust Account.

**ARGUMENT**

Pursuant to Rule 12(b)(6), a complaint warrants dismissal for failure to state a claim where the allegations even if assumed to be true, fail to establish the elements of a claim. *Sharpe v. City of New York*, 560 F. App'x 78, 80 (2d Cir. 2014) (affirming dismissal of complaint where complaint did not contain plausible allegations of liability). "[B]ald assertions and conclusions

7

of law" will not insulate a complaint from dismissal." *Spool v. World Child Int'l Adoption Agency*, 520 F.3d 178, 183 (2d Cir. 2008).  A claim is only facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Biro v. Conde Nast*, 807 F.3d 541, 544 (2d Cir. 2015) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)).  However, "[w]here a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief." *Kajoshaj v. New York City Dep't of Educ.*, 543 F. App'x 11, 13 (2d Cir. 2013) (quoting *Iqbal*, 556 U.S. at 678).

Despite Great Western devoting over fifty pages to allegations encompassing more than twenty defendants unrelated to Ability, its Complaint fails to allege that Ability committed any wrongful act.  To the contrary, Ability merely exercised its statutory rights under Nebraska Law, and its contractual rights under the Ability Trust Agreement and Ability Coinsurance Agreement. No claims are alleged that any of these agreements or attendant rights are invalid or unenforceable.   Nor does any basis exist in Great Western's kitchen sink allegations to force Ability to further participate in and expend resources to adjudicate this case. [4]

## I. PLAINTIFF FAILED TO PLAUSIBLY PLEAD CLAIM FOR UNJUST ENRICHMENT

In Count Eleven, Great Western asserts an unjust enrichment claim against twenty defendants, including Ability.   Complt. at ¶¶ 223-227.  Under New York law, an unjust

---

[4] The remoteness of Ability to Great Western is further reflected by the attenuated jurisdictional allegations concerning Ability, which include (1) an incorrect citation to the choice of law provision in the Ability Coinsurance Agreement and (2) the use of two New York bank accounts.  Complt. at ¶ 50.  Although these jurisdictional allegations are facially deficient, Ability is not pressing a jurisdictional defense in connection with this lawsuit, but rather, to avoid distractions, focusing on the dispositive substantive defects in the pleading.  *See Cmty. Fin. Grp., Inc. v. Stanbic Bank Ltd.*, No. 14CV5216 DLC, 2015 WL 4164763, at *4 (S.D.N.Y. July 10, 2015) (finding no personal jurisdiction over foreign defendant where only contact with New York was wire transfer through New York correspondent bank account); *Creative Socio-Medics, Corp. v. City of Richmond*, 219 F. Supp. 2d 300, 307 (E.D.N.Y. 2002) (internal citations omitted) ("[c]hoice of law provisions, as opposed to forum selection clauses, 'have minimal jurisdictional implications.'"); *J.L.B. Equities, Inc. v. Ocwen Fin. Corp.*, 131 F. Supp. 2d 544, 548 (S.D.N.Y. 2001) ("[i]t is recognized that the existence of a bank account in New York is generally not sufficient to confer personal jurisdiction over a foreign defendant." ).

8

enrichment claim requires the plaintiff to plead against a party with which it has a relationship that (1) the other party was enriched; (2) at that party's expense; and (3) that it is "against equity and good conscience" to permit the other party to retain what is sought to be recovered. *Mandarin Trading Ltd. v. Wildenstein*, 944 N.E.2d 1104, 1110 (N.Y. 2011) (internal citations omitted).  However, no viable claim exists in circumstances where, as here:

- Rather than a legally cognizable relationship existing, "the connection between the parties is too attenuated." *Id*. at 1111 (granting defendant's motion to dismiss unjust enrichment claim because of "the lack of allegations that would indicate a relationship between the parties"); and/or

- Defendant has express, independent rights to withdraw the assets in dispute, thereby negating any claim of wrongful conduct offending equity and good conscience. *See id.* at 1110; *Cohen v. BMW Investments L.P.*, 144 F. Supp. 3d 492, 501 (S.D.N.Y. 2015), *aff'd*, 668 F. App'x 373 (2d Cir. 2016).

As addressed below, Great Western's unjust enrichment claim against Ability fails on either (or both) of these grounds.

### a.    Great Western and Ability Had No Relationship of Any Kind

The Complaint is devoid of allegations of any type of legally cognizable relationship between Great Western and Ability.  Identifying no duties owed to it by Ability, Great Western pleads: "[i]n November 2016, Ability caused the transfer of approximately $109 million of assets from Series 2011-C account at WSFS to an Ability account at BNY Mellon," (Complt. at ¶ 101); and "[i]n March 2017, the $109 million at from Ability's BNY Mellon account was transferred to an Ability account at Wells Fargo opened during that month." Complt. at ¶ 107.  Neither of these allegations reflect any type of relationship between Great Western and Ability.  While Great Western adds entirely conclusory accusations that Ability's acts were somehow "unauthorized" and were taken "unlawfully," such rhetoric does not by itself make it so.

9

Except for the jurisdictional allegations, the only other paragraphs where plaintiff even purports to describe Ability's alleged conduct merely mirror paragraphs 101 and 107:

- "In October 2016, Ability improperly and unlawfully withdrew approximately $109 million from Series 2011-C, including funds that belonged to Great Western, which withdrawal was not stopped by WSFS, Graham, Solow, BCM, BAAM, or any other Defendant, and, indeed, the withdrawal appears to have been aided by Graham." Complt. at ¶ 6.

- "Ability was unjustly enriched, at Great Western's expense, Ability withdrew approximately $109 million from Series 2011-C. Defendants Graham, Solow, BAAM, BCM, and Series 2011-C (along with various entities they controlled) comingled assets supporting the Repurchase Agreement with assets claimed by Ability in Series 2011-C. But for Ability's improper conduct in withdrawing assets owed to Great Western as part of the Repurchase Agreement in Series 2011-C, those amounts would never have been paid to Ability, and equity and good conscience militate against permitting Ability from retaining those amounts, and other amounts it has received belonging to Great Western or to which Great Western has a superior claim." Complt. at ¶ 226.

- "Ability asserted unauthorized control over Great Western's property when Ability withdrew approximately $109 million from Series 2011-C." Complt. at ¶ 229.

- "In October 2016, Ability withdrew approximately $109 million from Series 2011-C without accounting for the fact that much of that money and/or the assets belong to Great Western." Complt. at ¶ 231.

Again, fatal to Great Western's unjust enrichment claim against Ability is the fact that none of these allegations identify any relationship between Great Western and Ability.

In *BMW Investments*, the court dismissed plaintiff's unjust enrichment claim against the defendant where, as part of fraudulent dealings, a third-party financing source obtained funds from both plaintiff Cohen and defendant BMW. 144 F. Supp. 3d at 501. Plaintiff Cohen alleged the third-party used "funds that were taken from Cohen" to repay BMW, which had separately invested in a Cohen-related venture but "exercised its contractual rights" to have its deposit returned. *Id*. at 496. Although Cohen claimed an interest in the funds returned to BMW, the court dismissed the unjust enrichment claim because "Cohen has failed to plead that he and BMW have a sufficiently close relationship." *Id*. at 501. Rather, "there was no relationship

10

between Cohen and BMW of any kind" and as a matter of law, it is insufficient that "funds from a fraud against Cohen were used to repay money that rightfully belonged to BMW."    *Id*.

Just as *BMW Investments* dismissed an unjust enrichment claim, Great Western's claim for unjust enrichment against Ability fails because no relationship existed between the parties. The fact that Ability was able to recover funds before Great Western commenced an arbitration provides no grounds for a claim.  *See*, *e.g.*, *id*.; *Georgia Malone & Co. v. Rieder*, 973 N.E.2d 743, 747 (N.Y. 2012) (dismissing an unjust enrichment claim against a defendant where the plaintiff failed to assert that defendant had any contact with the plaintiff regarding the transaction at issue and the complaint failed to allege that dismissed defendant engaged in anything other than arm's length business interactions with other involved parties).

In the absence of a contract, a plaintiff conceivably could try to establish a relationship by showing justifiable reliance on the other party.  However, Great Western does not and cannot claim reliance on Ability in any respect.  No communications between the two entities are even alleged.  *See BMW Investments*, 144 F. Supp. 3d at 501 ("nor does [plaintiff] allege actions [by defendant] that might lead to reliance or inducement");  *Techno-Comp, Inc. v. Arcabascio*, 130 F. Supp. 3d 734, 745 (E.D.N.Y. 2015) (granting defendant's motion to dismiss unjust enrichment claim where the complaint is "devoid of any interactions between [defendant] and [plaintiff], let alone any interactions which could have caused reliance or inducement."); *Crescimanni v. Trovato*, 80 N.Y.S.3d 89, 92 (2d Dep't 2018) (dismissing unjust enrichment claim where plaintiff failed to show a relationship with defendant "that could have caused reliance or inducement on the plaintiff's part.").   Great Western's pleading failures thus necessitate dismissal of its unjust enrichment claim.  *See*, *e.g.*, *BMW Investments*, 144 F. Supp. 3d at 501.

11

   b.   **Ability's Exercise of Contractual Rights Precludes a Finding of Conduct Offending Equity and Good Conscience**

Even aside from the lack of any legally cognizable relationship with Great Western, Ability by withdrawing funds exercised its Nebraska insurance law statutory rights and its explicit contractual rights under the Ability Trust Agreement and Ability Coinsurance Agreement.   Although plaintiff must show "that it is against equity and good conscience to permit [the other party] to retain what is sought to be recovered," the exercise of a statutory or contractual right does not violate, as matter of law, equity and good conscience. *Mandarin Trading Ltd.*, 944 N.E.2d at 1110 (internal citations omitted); s*ee BMW Investments*, 144 F. Supp. 3d at 502.   No identified case holds otherwise.

*BMW Investments* is again instructive, because the defendant, akin to Ability, had a contractual right to recover the underlying funds in dispute.   *See id*.   As a result of the defendant's contractual right to access the funds, the court in *BMW Investments* dismissed plaintiff's unjust enrichment claim.   According to the court, "[defendant] should not be punished because it succeeded in recovering its money from [the third-party] where [plaintiff] did not." *Id*. at 502.   In finding that defendant's receipt of funds was consistent with "equity and good conscience", the court continued: "BMW timely exercised its contractual rights...thereby rightfully returning the deposit it made to [third party's] escrow account."   *Id*.   The same rationale applies here, where Ability withdrew funds pursuant to its contractual right at least seven months prior to Plaintiff beginning arbitration proceedings against Alpha Re.   *See id*.; *see also In re Ne. Indus. Dev. Corp.*, 513 B.R. 825, 843 (Bankr. S.D.N.Y. 2014), *adopted*, No. 14-CV-7056 (NSR), 2015 WL 3776390 (S.D.N.Y. June 16, 2015) (finding a lender's exercise of its rights to obtain funds pursuant to a valid note and mortgage cannot unjustly enrich the lender because lender is contractually entitled to those funds).

The absence of any inequitable conduct by Ability is particularly clear, since Great Western knew, prior to Ability's lawful withdrawal of funds, that BAAM was being investigated by the SEC but it took no steps to recover or protect any assets in which it allegedly held an interest. Complt. at ¶¶ 108-109. Only after-the-fact does Great Western unjustifiably seek to hold Ability liable for its own timing.

## II.  PLAINTIFF HAS NOT PLED SUFFICIENT FACTS TO ESTABLISH A CLAIM FOR CONVERSION AGAINST ABILITY

In Count Twelve, Great Western purports to plead a conversion claim against Ability. To withstand a motion to dismiss, a conversion claim must allege, among other things, that "plaintiff had ownership of the [funds] at the time they were converted" but "defendants exercised unauthorized dominion over the [funds]." *Moscato v. Tie Techs., Inc.*, No. 04 CIV. 2487 (GBD), 2005 WL 146806, at *5 (S.D.N.Y. Jan. 21, 2005).

As a matter of law, Great Western cannot plead that Ability exercised "unauthorized" dominion over the funds in question and thus does not satisfy the pleading requirements of a conversion claim. *See*, *e.g.*, *Moscato*, 2005 WL 146806, at *5. Because Ability's withdrawal of the funds in the Ability Trust Agreement was authorized as a matter of both Nebraska statute and valid, enforceable contract terms, the conversion claim is negated as a matter of law. *See Krasner v. Rahfco Funds LP*, No. 11 CV 4092 (VB), 2012 WL 4069294, at *8 (S.D.N.Y. Aug. 9, 2012) (granting motion to dismiss conversion claim where possession of the funds in question was not unauthorized); *Valentini v. Citigroup, Inc.*, 837 F. Supp. 2d 304, 330–31 (S.D.N.Y. 2011) (granting motion to dismiss conversion claim where a contractual right gave a defendant the right to exercise dominion over the funds at issue, thereby showing no "unauthorized dominion"); *Kolodin v. Valenti*, 47 N.Y.S.3d 14, 15–16 (1st Dep't 2017) (dismissing conversion cause of action where facts alleged in complaint show exercise of lawful dominion over the

13

funds in question); Restatement of the Law—Torts § 272 (1965) ("[o]ne entitled to the immediate possession of a chattel is not liable to another for dispossessing him of it.")

As was its contractual right to do, Ability withdrew its assets from the Ability Trust Account.  Complt. at ¶ 101.  Great Western has not called the Ability Coinsurance Agreement's legality into question.  Nothing indicates that Ability's withdrawal of funds pursuant to its contractual right was somehow unlawful.  Ability's exercise of its contractual right under the Ability Coinsurance Agreement provided it authorized dominion over the funds in question, defeating Great Western's conversion claim.  *See Oxon Italia, S.p.A. v. Farmland Indus., Inc.*, 546 F. Supp. 681, 688–89 (S.D.N.Y. 1982).

In *Oxon,* a chemical products reseller engaged in a fraudulent scheme and entered into separate contracts with (i) plaintiff Oxon for the reseller to buy product; and (ii) defendant Farmland for the reseller to supply product.  *Id.* at 688–89.  Upon learning of fraud on the reseller's part, defendant invoked its contractual right to refuse to pay for goods it received. *Id.* Similar to here, plaintiff Oxon and defendant Farmland had "separate bilateral contracts" with the third party. *Id.*  After the reseller did not compensate plaintiff for goods it received, the plaintiff sued the defendant for, among other things, conversion on the grounds it possessed product for which plaintiff never received payment. *Id.* The court dismissed the conversion claim, holding that:

> Nor is Oxon entitled to recover the value of the five containers under a theory of conversion.  Farmland was entitled, under its contract with [the reseller], to be relieved of its obligation of payment for the five containers. It cannot therefore be said to be guilty of exercising unauthorized domain over the property because it was merely exercising its contractual remedies vis-à-vis [the reseller]. *Id.*

Just as in *Oxon*, Ability properly exercised a contractual right under the Ability Coinsurance Agreement (consistent with its statutory right) when it withdrew assets to which it

14

was entitled to access.  As a result, Great Western's claim of conversion against Ability is legally deficient.  *See Oxon Italia*, 546 F. Supp. at 688–89; *see also Solomon v. Siemens Indus., Inc.*, 8 F. Supp. 3d 261, 282 (E.D.N.Y. 2014) (dismissing conversion claim where defendant had a legitimate contractual claim to the right at issue and thus, plaintiff failed to establish defendant exercised unauthorized dominion over the property of another); *Smallwood v. Lupoli*, 968 N.Y.S.2d 515, 518 (2d Dep't 2013) (rejecting conversion claim against two defendants where those defendants were titled owners of the property, and thus were entitled to profits from the property).

Recognizing the substantial defects in its conversion claim, Great Western failed even to make a demand upon Ability for the return of any funds before commencing litigation.  The failure to do so provides yet another basis for dismissal of a conversion claim.  *See, e.g., Krasner*, 2012 WL 4069294, at *8  (granting a defendant's motion to dismiss and stating "[t]here are no factual allegations supporting a claim for conversion against [a defendant] or the [at issue] funds, as the amended complaint is devoid of allegations of a rejected demand."); *see also TechnoMarine SA v. Jacob Time, Inc.*, 905 F. Supp. 2d 482, 497 (S.D.N.Y. 2012) (granting motion to dismiss conversion claim where complaint fails to allege plausible facts that any demand to return goods was denied, and establishing that plaintiff "must make a demand that is sufficient to prove its own legal ownership of the [property] in question").

## CONCLUSION

For the foregoing reasons, Great Western's claims against Ability in Count Eleven and Count Twelve clearly fail to state a claim upon which relief may be granted and accordingly warrant dismissal with prejudice.[5]

Dated: New York, New York
      October 31, 2018

                              GREENBERG TRAURIG, LLP

                              By:/s/ Hal S. Shaftel
                                    Hal S. Shaftel
                              200 Park Avenue
                              New York, NY 10166
                              Tel: (212) 801-9200

                              *Attorneys for Defendant Ability Insurance Company*

---

[5] Because no tenable basis possibly exists to support a viable claim against Ability in the absence of any relationship with Great Western, it would be inappropriate to grant Great Western an opportunity to replead.  "[W]here the problems with a claim are substantive rather than the result of an inadequately or inartfully pleaded complaint, an opportunity to replead would be futile and should be denied."  *Lopez v. Ctpartners Exec. Search Inc.*, 173 F. Supp. 3d 12, 44 (S.D.N.Y. 2016) (internal citations omitted); *see also Cucina Classica Italiana, Inc. v. Banca Nazionale Del Lavoro*, No. 96 CIV. 1144 (JFK), 1997 WL 2516, at *5 (S.D.N.Y. Jan. 3, 1997), *aff'd sub nom. Cucina Classica Italiana, Inc. v. Banco Nazionale Del Lavoro*, 133 F.3d 906 (2d Cir. 1997) (refusing to allow repleading where plaintiff cannot legally satisfy an element of its claim and repleading could not remedy).