UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x
                                                  :

GREAT WESTERN INSURANCE COMPANY   :   Civil Action No. 18-cv-06249-VSB
                                                  :
                 Plaintiff,         :   Hon. Vernon S. Broderick

vs.

MARK GRAHAM, DONALD SOLOW, BLUE
CAPITAL MANAGEMENT, INC., BLUE
ALTERNATIVE ASSET MANAGEMENT LLC,
WILMINGTON SAVINGS FUND SOCIETY,
FSB, CHRISTIANA TRUST, REGATTA
HOLDINGS LLC, CYGNET 001 MASTER
TRUST, CYGNET 001 MASTER TRUST SERIES
2011-A, CYGNET 001 MASTER TRUST SERIES
2011-C, CYGNET 001 MASTER TRUST SERIES
2013-A, ALPHA RE LIMITED, ALPHA RE
HOLDINGS (CAYMAN) LIMITED, ATLANTIC
SPECIALTY FINANCE, BLUE ELITE FUND
LTD., BLUE ELITE FUND LP, BLUE II LTD.,
SANCUS CAPITAL BLUE CREDIT
OPPORTUNITIES FUND LTD., ABILITY
INSURANCE COMPANY, JOHN DRAKE,
EDWARD BRENDAN LYNCH, AND GREGORY
TOLARAM.

                 Defendants.
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - X

**PLAINTIFF'S MEMORANDUM OF LAW IN OPPOSITION TO SANCUS CAPITAL
BLUE CREDIT OPPORTUNITIES FUND LTD.'S MOTION TO DISMISS**

**TABLE OF CONTENTS**

Page

INTRODUCTION ...................................................................................................................1

STATEMENT OF FACTS .......................................................................................................2

ARGUMENT ...........................................................................................................................6

I.  **GREAT WESTERN HAS ADEQUATELY PLED ITS CLAIMS**...............................6

    A.    Standard of Review........................................................................................6

    B.    **Great Western Has Properly and Adequately Pled its Claim for Aiding and Abetting a Breach of Fiduciary Duty Against Sancus.**......................................7

    C.    **Great Western Has Properly and Adequately Pled its Claim for Aiding and Abetting a Fraud Against Sancus.**................................................................10

    D.    **Great Western Has Properly and Adequately Pled its Claim for RICO Conspiracy 18 U.S.C. § 1962(d) Against Sancus.**.........................................10

    E.    **Great Western Has Properly and Adequately Pled its Claim of Civil Conspiracy to Commit Fraud Against Sancus.**...............................................11

    F.    **Great Western Has Properly and Adequately Pled its Claim of Unjust Enrichment Against Sancus.**.......................................................................13

CONCLUSION........................................................................................................................14

# **TABLE OF AUTHORITIES**

Page(s)

**Cases**

*Armstrong v. McAlpin*,
   699 F.2d 79 (2d Cir. 1983)..................................................................................................9

*Best Cellars Inc. v. Grape Finds at Dupont, Inc.*,
   90 F.Supp.2d 431 (S.D.N.Y. 2000) ...................................................................................11

*Borden, Inc. v. Spoor Behrins Campbell & Young, Inc.*,
   828 F.Supp. 216 (S.D.N.Y. 1993) .....................................................................................12

*Caprer v. Nussbaum*,
   36 A.D.3d 176 (2d Dept. 2006) ..........................................................................................8

*Chen v. New Trend Apparel, Inc.*,
   8 F. Supp. 3d 406 (S.D.N.Y. 2014) ...................................................................................14

*Childers v. New York & Presbyterian Hosp.*,
   36 F. Supp. 3d 292 (S.D.N.Y. 2014) .................................................................................13

*Diduck v. Kaszycki & Sons Contractors, Inc.*,
   774 F.Supp. 802 (S.D.N.Y. 1991) .....................................................................................12

*Eternity Glob. Master Fund Ltd. v. Morgan Guar. Tr. Co.*,
   375 F.3d 168 (2d Cir. 2004)................................................................................................6

*Fezzani v. Bear, Stearns & Co. Inc.*,
   592 F. Supp. 2d 410 (S.D.N.Y. 2008)...............................................................................11

*First Fed. Sav. and Loan Ass'n of Pittsburgh v. Oppenheim, Appel, Dixon & Co.*,
   629 F.Supp. 427 (S.D.N.Y. 1986) .....................................................................................12

*Int'l Distribution Ctrs., Inc. v. Walsh Trucking Co., Inc.*,
   812 F.2d 786 (2d Cir. 1987)..............................................................................................12

*Kaufman v. Cohen*,
   307 A.D.2d 113 (1st Dept. 2003)....................................................................................7, 8

*Kottler v. Deutsche Bank AG*,
   607 F. Supp. 2d 447 (S.D.N.Y. 2009)...............................................................................10

*Kuo Feng Corp. v. Ma*,
   248 A.D.2d 168 (1st Dept. 1998)......................................................................................11

*Meyer v. Jinkosolar Holdings Co.*,
    761 F.3d 245 (2d Cir. 2014)................................................................................................6

*Myun-Uk Choi v. Tower Research Capital LLC*,
    890 F.3d 60 (2d Cir. 2018)................................................................................................14

*Nielsen v. Rabin*,
    746 F.3d 58 (2d Cir. 2014)..................................................................................................6

*Overton v. Art Fin. Partners LLC*,
    166 F. Supp. 3d 388 (S.D.N.Y. 2016)..........................................................................13, 14

*Primavera Familienstifung v. Askin*,
    130 F. Supp. 2d 450 (S.D.N.Y. 2001)..................................................................................9

*Rolf v. Blyth, Eastman Dillon & Co., Inc.*,
    570 F.2d 38 (2d Cir. 1978)..................................................................................................9

*Scheuer v. Rhodes*,
    416 U.S. 232 (1974)............................................................................................................6

*Sweet v. Sheahan*,
    235 F.3d 80 (2d Cir. 2000)..................................................................................................6

*U.S. ex rel. Taylor v. Gabelli*,
    345 F. Supp. 2d 313 (S.D.N.Y. 2004)..................................................................................7

*U.S. S.E.C. v. Mudd*,
    885 F.Supp.2d 654 (S.D.N.Y. 2012)....................................................................................9

*Villager Pond, Inc. v. Town of Darien*,
    56 F.3d 375 (2d Cir. 1995)..................................................................................................6

*Williams v. Bank Leumi Trust Co.*,
    No. 96-cv-6692, 1997 U.S. Dist. LEXIS 7538, (S.D.N.Y. May 29, 1997) ..............................8

**Statutes**

18 U.S.C. § 1962(d) ...............................................................................................2, 10, 11

**Other Authorities**

Rule 9(b) ................................................................................................................................7

Rule 12(b)(6).....................................................................................................................2, 6

Plaintiff Great Western Insurance Company ("Great Western") submits this Memorandum of Law in Opposition to the Motion to Dismiss ("Motion") filed by defendant Sancus Capital Blue Credit Opportunities Fund Ltd. ("Sancus").

## INTRODUCTION

Great Western has been the victim of a massive fraud.  Great Western filed this action because over $135 million that was entrusted to defendants to be available to meet coinsurance obligations on Great Western insurance policies is unaccounted for.  Every single one of the defendants to this action had some combination of legal, fiduciary and/or contractual obligations related to the missing funds.  Every single one of the defendants to this action played a role in the disappearance of those funds.  Not a single one of the defendants to this action has even tried to explain, either before or after Great Western filed this action, what happened to those funds.  And yet, every single one of the defendants to this action has denied, either in this action or the reinsurance arbitration that preceded it, any responsibility for the disappearance of those funds.  Although Great Western believes it has sufficiently pled facts to maintain all of its claims in its First Amended Complaint (Doc. 69, cited herein as "FAC"), Great Western has recently learned of additional facts that further demonstrate the legal, fiduciary and/or contractual obligations relating to the missing funds.  With an eye towards judicial economy, Great Western submits this Opposition to Sancus' Motion in conjunction with a letter to the Court seeking leave to file a Second Amended Complaint ("SAC"), which is cross-referenced herein.

Great Western's FAC details numerous ways in which Sancus contributed to the fraud.  For years, unbeknownst to Great Western, defendant Mark Graham ("Graham"), both individually, and as principal for various entities, leveraged a network of secretly-related entities to siphon away Great Western's assets.  Sancus was one such entity.  Graham,

1

Sancus, and these related entities outwardly represented they were engaged in arms-length transactions and providing steady asset values. But, these were gross misrepresentations. When the truth emerged in 2017, Great Western had already, and unbeknownst to it, sustained significant losses. As a result, Great Western filed this Action.

Sancus has submitted a Memorandum of Law in Support of its Motion to Dismiss (Doc. 81, cited herein as "Memorandum"). Sancus argues that Great Western's claims against it should be dismissed pursuant to Rule 12(b)(6). This argument is unavailing. Great Western has more than adequately pled each of its five current claims against Sancus, which are for: (1) aiding and abetting a breach of fiduciary duty; (2) aiding and abetting a fraud; (3) RICO conspiracy 18 U.S.C. § 1962(d); (4) civil conspiracy to commit fraud; and (5) unjust enrichment. Accordingly, Great Western respectfully requests that the Court deny Sancus' Motion.

## **STATEMENT OF FACTS**[1]

In 2009, Great Western entered into a Coinsurance Agreement[2] with Ability Reinsurance (Bermuda) Limited to reinsure certain policies issued by Great Western. FAC at ¶ 54. In connection with the Coinsurance Agreement and the related Novation Agreement, Great Western, defendant Alpha Re Limited ("Alpha"), and defendant Wilmington Savings Fund Society, FSB and Christiana Trust (together, "WSFS") also entered into an Amended & Restated

---

[1] For further discussion of this factual background, please see Plaintiff's Opposition to Graham, Blue Capital Management, Inc., Blue Alternative Asset Management, LLC, Blue Elite Fund Ltd., Blue Elite Fund L.P., and Blue II Ltd.'s Motion to Dismiss ("Graham Memorandum") and Plaintiff's Opposition to Donald Solow, Regatta Holdings LLC, Cygnet 001 Master Trust, Cygnet 001 Master Trust Series 2011-A, Cygnet 001 Master Trust Series 2011-C, and Cygnet Master Trust Series 2013-A's Motion to Dismiss ("Solow Memorandum"), which are incorporated herein by reference.

[2] All capitalized, undefined terms shall have the same definition and meaning as in the FAC and SAC.

Trust Agreement ("Trust Agreement") effective July 11, 2012, whereby Great Western deposited approximately $153 million into a trust account ("Trust Account") for the benefit of Great Western.  *Id.* at ¶¶ 57, 60; Ex. C.  The Novation Agreement required Alpha to fund the Trust Account in the amount of 102% of Alpha's reserve obligations under the Coinsurance Agreement.  *Id.* at ¶ 59.  Under the Trust Agreement, Blue Alternative Asset Management ("BAAM"), controlled by defendant Graham, served as the investment manager for the assets held in the Trust Account.  *Id.* at ¶ 60.

In September 2012—two months after receiving control of the $153 million in the Great Western Trust Account—Graham and BAAM invested $148 million of the $153 million in a Repurchase Agreement with Cygnet 001 Master Trust Series 2011-C ("Series 2011-C").  FAC at ¶ 62.  In December 2013, Regatta Holdings LLC ("Regatta") and Blue Capital Management ("BCM") entered into a Collateral Management Agreement, whereby BCM, controlled by Graham, became the Collateral Manager of Series 2011-C.  *Id.* at ¶ 69.  Consequently, for the Repurchase Agreements signed in September 2014 – 2016, **Graham was on both sides of the purported "negotiation"**: as President of BAAM (investment manager of the Trust Account for Great Western) and as President of BCM (collateral manager of Series 2011-C).  *Id.* at ¶ 70.  Similarly, the Trustee for the Trust Account—WSFS and specifically its trust officer, Donna Lockerman—also served as the Trustee for Series 2011-C, the counterparty to the Repurchase Agreement.  *Id.* at ¶ 74.  At no time from 2012 to 2016 did any defendant advise Great Western of the significant interests that Graham simultaneously held in Alpha and BCM, or his role at Series 2011-C (the counter-party to the Repurchase Agreement).  *Id.* at ¶ 71.

From 2012 to 2016, all representations by Graham and BAAM to Great Western were that the collateral backing the Repurchase Agreements were properly valued and appropriate;

3

specifically, cash and United States Treasury securities. FAC at ¶ 72. To confirm this, Great Western asked Graham about the assets backing the Repurchase Agreement on many occasions. *Id.* at ¶ 77. In response, Graham repeatedly said there was no issue and that the Great Western Trust Account statements showed the true value of the Repurchase Agreement and that the Trust Account was fully funded. *Id.* at ¶ 78. This was false. Along with the many other hats he has worn, Graham was the Collateral Manager for Series 2011-C, thus he **knew its actual value was far below what was being represented to Great Western**. *Id.*

Similarly, prior and subsequent to the execution of the Trust Agreement, Graham repeatedly affirmed that the collateral backing the Repurchase Agreement were only cash and United States Treasury securities in a series of conversations and electronic communications that included Nathan Felix, the then Chief Financial Officer of Great Western. FAC at ¶ 66. However, contrary to the misrepresentations made by Graham, BAAM, and other defendants to Great Western, sometime after the initial investment in cash and United States Treasury securities, Graham and defendant Don Solow ("Solow") began to direct the funds backing the Repurchase Agreement in Series 2011-C into **risky investments, including numerous hedge funds and swap agreements**. *Id.* at ¶ 79. Graham and Solow transferred money, both directly and indirectly, from Series 2011-C into seven such investment vehicles, **including Sancus** and defendants Cygnet 001 Master Trust ("Cygnet"), Cygnet 001 Master Trust Series 2011-A ("Series 2011-A"), Cygnet 001 Master Trust Series 2013-A ("Series 2013-A"), Blue Elite Fund Ltd., Blue Elite Fund LP, and Blue II Ltd. *Id.* at ¶ 80. Graham and/or Solow have an ownership interest in all seven of these investment vehicles or entities. *Id.*

Graham created and operated Sancus from New York-based offices, through which it has transacted business. FAC at ¶ 49. Additionally, Graham served in a primary role of

4

responsibility (such as the President, Founder, or similar position) for other defendants such as BAAM, BCM, Blue Elite Fund Ltd., Blue Elite Fund LP, and Blue II Ltd. *Id.* at ¶ 94. ***This enabled Graham to self-deal and to coordinate the actions of and to conspire with other defendants, including Sancus, to perpetrate their massive fraud upon Great Western***. From 2013 to 2017, Graham, through BAAM and BCM, directed the movement of moneys linked to Great Western's Trust Account between Sancus and other defendants Blue Elite Fund Ltd., Blue Elite Fund LP, and Blue II Ltd. *Id.* at ¶ 96. As a result of this involvement, defendants Graham, Solow, and Sancus, among others, received many payments—both directly and indirectly—from assets originally held in Great Western's Trust Account. *Id.* at ¶ 91. On February 20, 2018, Graham (on behalf of himself and for BCM and BAAM), signed a sworn response to an information subpoena wherein Graham identified all securities or assets related in any way to Alpha and/or Great Western. *Id.* at ¶ 100. The identified securities and assets included, among other things, "Sancus Capital Blue Shares." *Id.*

Importantly, at no time from 2012 to 2016 did any defendant advise Great Western of: (a) the significant interests that Graham simultaneously held in Alpha and BCM, or his role at Series 2011-C (the counter-party to the Repurchase Agreement); (b) the significant interests that Solow and Graham jointly had in Alpha; (c) the significant interests that Solow had in Series 2011-C; or (d) that WSFS (and specifically, Donna Lockerman) served as the Trustee for Series 2011-C. Instead, defendants, including Graham, Solow, and Sancus, among others, kept all of these connections and other conflicts of interest secret from Great Western. FAC at ¶ 71.

Due to Sancus and the other defendants' misconduct, breaches of fiduciary duty, and fraudulent activity, Great Western has sustained losses in excess of $135 million. *Id.* at ¶ 7.

**ARGUMENT**

Sancus seeks dismissal pursuant to Rule 12(b)(6).  Its position is meritless, because Great Western has met the pleading requirements for each of its claims against Sancus.  Accordingly, the Court should deny the Motion in its entirety.

I.     **GREAT WESTERN HAS ADEQUATELY PLED ITS CLAIMS**.

   A.     **Standard of Review**.

A motion to dismiss pursuant to Rule 12(b)(6) must be denied "unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief."  *Scheuer v. Rhodes,* 416 U.S. 232, 236 (1974) (quoting *Conley v. Gibson,* 355 U.S. 41, 45–46 (1957)).  When deciding a motion to dismiss under Rule 12(b)(6), this court must "accept[ ] all factual allegations [in the complaint] as true and draw[ ] all reasonable inferences in favor of the plaintiff."  *Meyer v. Jinkosolar Holdings Co.*, 761 F.3d 245, 249 (2d Cir. 2014) (alterations in original); *accord Nielsen v. Rabin*, 746 F.3d 58, 62 (2d Cir. 2014).  The FAC and reasonable inferences therefrom unquestionably point to the denial of the Motion.

"The issue is not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims."  *Villager Pond, Inc. v. Town of Darien,* 56 F.3d 375, 378 (2d Cir. 1995) (quoting *Scheuer,* 416 U.S. at 236).  In other words, "the office of a motion to dismiss is merely to assess the legal feasibility of the complaint, not to assay the weight of the evidence which might be offered in support thereof."  *Eternity Glob. Master Fund Ltd. v. Morgan Guar. Tr. Co.,* 375 F.3d 168, 176 (2d Cir. 2004) (quoting *Geisler v. Petrocelli,* 616 F.2d 636, 639 (2d Cir. 1980)).  Dismissal is only appropriate when "it appears beyond doubt that the [claimant] can prove no set of facts which would entitle him or her to relief."  *Sweet v. Sheahan,* 235 F.3d 80, 83 (2d Cir. 2000); *accord Eternity Glob. Master Fund Ltd.,* 375 F.3d at 176–77.  Sancus has not met the requirements of Rule 12(b)(6), and its Motion should be denied.

B.  **Great Western Has Properly and Adequately Pled its Claim for Aiding and Abetting a Breach of Fiduciary Duty Against Sancus.**

Great Western has pled a valid claim for aiding and abetting a breach of fiduciary duty against Sancus. To state a claim for aiding and abetting a breach of fiduciary duty under New York law, the plaintiff must allege: "(1) a breach by a fiduciary of obligations to another, (2) that the defendant knowingly induced or participated in the breach, and (3) that plaintiff suffered damage as a result of the breach." *Kaufman v. Cohen*, 307 A.D.2d 113, 125 (1st Dept. 2003). Although Rule 9(b) imposes a heightened pleading requirement of particularity, "courts have suggested that Rule 9 may be relaxed where the fraudulent scheme is so complex that offering detailed accounts of each individual's role in the fraud is virtually impossible." *U.S. ex rel. Taylor v. Gabelli*, 345 F. Supp. 2d 313, 339 (S.D.N.Y. 2004). Furthermore, Sancus had actual knowledge of and provided substantial assistance to facilitating the fraudulent scheme.

First, BAAM and Graham, among other defendants, knowingly breached fiduciary duties owed to Great Western. FAC ¶ 143–150. *See* Graham Memorandum, Section II.B.

Second, Sancus had knowledge of the breaches of fiduciary duty. FAC ¶ 152–155. Sancus states that "there is no plausible suggestion . . . that Sancus even knew of *Great Western* during the relevant time period, let alone the various agreements and relationships among the other defendants that purportedly gave rise to such violations." Memorandum at 4. However, Sancus was created and operated by Graham, the investment manager for the assets held in Great Western's Trust Account. FAC at ¶ 49. The implausible suggestion here is that Sancus' owner and creator could manage both Great Western's Trust Account and Sancus, while maintaining Sancus' complete ignorance of Great Western or the connections between the parties. That Sancus could be entirely ignorant of Great Western or the scheme being perpetuated is even more implausible considering that Sancus was one of several investment vehicles to which

7

Graham and Solow transferred money, both directly and indirectly, from Series 2011-C.  FAC at ¶ 80.  Because Graham owned and controlled Sancus, it is certain that "the alter ego, of necessity, [had] actual knowledge of the fiduciary's intentions and conduct."  *Caprer v. Nussbaum*, 36 A.D.3d 176, 193 (2d Dept. 2006).  In addition, defendant Ability owns 13.68% of Sancus Capital Blue Credit Opportunities Fund, while Graham and Gregory Tolaram ("Tolaram") are directors of Sancus Capital Master Fund.  SAC ¶ 128.  Further, Advantage Capital Holding, LLC ("ACH")[3] owns 80% of Sancus.  *Id*.  The many connections between the parties, particularly Graham's ownership and control over Sancus, creates a very strong implication that Sancus had actual knowledge of the breach of fiduciary duty.

Third, Sancus provided substantial assistance in furthering the breach of fiduciary duty.  FAC ¶ 152–155.  "Substantial assistance occurs when a defendant affirmatively assists, helps conceal or fails to act when required to do so, thereby enabling the breach to occur."  *Kaufman*, 307 A.D.2d at 126.  Sancus assisted in diverting moneys belonging to Great Western and its Trust Account into investments that benefited itself and not Great Western.  FAC at ¶¶ 80, 153.  Sancus, through Graham, also continually provided Great Western with assurances that Trust assets were properly invested when in fact they were not, despite knowing such that statements would induce Great Western to not terminate the Coinsurance Agreement earlier, and therefore, keep Great Western's moneys under Graham and Sancus' control.  *Id.* at ¶¶ 71, 154-155.  These actions provided substantial assistance to the fraud's commission.  *Id.* at ¶ 163.

Sancus cites *Williams v. Bank Leumi Trust Co.* to suggest that Sancus was similar to a bank whose only involvement in a scheme was the use of its accounts by criminals that had separately perpetuated fraud and breach of fiduciary duty.  *See* No. 96-cv-6692, 1997 U.S. Dist.

---

[3] ACH was not a defendant in the FAC but is included as a defendant in the SAC.

8

LEXIS 7538, *14 (S.D.N.Y. May 29, 1997).  The comparison is facially flawed.  It might be more apt if one of the criminals was the owner of the bank, as Graham was the owner of Sancus.  Moreover, "[s]ubstantial assistance can take many forms . . . [e]xecuting transactions, even ordinary course transactions, can constitute substantial assistance under some circumstances, such as where there is an extraordinary economic motivation to aid in the fraud." *Primavera Familienstifung v. Askin*, 130 F. Supp. 2d 450, 511 (S.D.N.Y. 2001), *amended on reconsideration in part*, 137 F.Supp.2d 438 (S.D.N.Y. 2001), *abrogated by Casey v. Merck & Co., Inc.*, 653 F.3d 95 (2d Cir. 2011); *Armstrong v. McAlpin*, 699 F.2d 79, 91 (2d Cir. 1983) (broker aided and abetting by processing knowingly fraudulent transactions to generate commissions); *see also Rolf v. Blyth, Eastman Dillon & Co., Inc.*, 570 F.2d 38, 48 (2d Cir. 1978), *amended sub nom. Rolf v. Blyth Eastman Dillon & Co., Inc*, 77-7104, 1978 WL 4098 (2d Cir. May 22, 1978) ("substantial assistance might include . . . executing transactions or investing proceeds, or perhaps . . . financing transactions").

Finally, "[i]naction on the part of the alleged aider and abettor" may be treated as substantial assistance "when it was designed intentionally to aid the primary fraud or it was in conscious and reckless violation of a duty to act." *Armstrong*, 699 F.2d at 91; s*ee also U.S. S.E.C. v. Mudd*, 885 F.Supp.2d 654, 671 (S.D.N.Y. 2012).  Through the involvement of numerous defendants, including Graham and Ability, Sancus provided substantial assistance to the fraud and breach of fiduciary duties by helping to conceal and failing to act to prevent the breaches.  As such, Great Western properly alleges damages in an amount in excess of $135 million.  FAC ¶ 156.

Thus, Great Western has properly pled its claim against Sancus of aiding and abetting a breach of fiduciary duty.

9

    **C.**    **<u>Great Western Has Properly and Adequately Pled its Claim for Aiding and Abetting a Fraud Against Sancus.</u>**

Great Western has pled a valid claim for aiding and abetting fraud against Sancus. To state a claim for aiding and abetting fraud under New York law, a plaintiff must allege: "(1) the existence of an underlying fraud; (2) knowledge of this fraud on the part of the aider and abettor; and (3) substantial assistance by the aider and abettor in achievement of the fraud." *Kottler v. Deutsche Bank AG*, 607 F. Supp. 2d 447, 464 (S.D.N.Y. 2009) (citation omitted).

First, as alleged in the FAC, Great Western was the victim of systemic fraud. FAC ¶ 157–160. *See* Graham Memorandum, Section II.D and Solow Memorandum, Section I.D.

Second, Sancus had knowledge of such fraud. FAC at ¶ 161–64. Sancus had actual knowledge of the fraud through its intimate relationship with Graham, who created, owned, and operated Sancus and other defendant entities. *Id.* at ¶ 49, 80; *see* discussion at Section I.B herein.

Third, Sancus provided substantial assistance in furthering the fraud. FAC at ¶ 161–64. Sancus assisted in diverting moneys belonging to Great Western and its Trust Account into investments that benefited [itself] and not Great Western. FAC at ¶¶ 80, 153, *see* discussion at Section I.B herein.

Thus, Great Western has properly and adequately pled its claim for aiding and abetting fraud against Sancus.

    **D.**    **<u>Great Western Has Properly and Adequately Pled its Claim for RICO Conspiracy 18 U.S.C. § 1962(d) Against Sancus.</u>**

Great Western has pled a valid claim for RICO Conspiracy 18 U.S.C. § 1962(d) against Sancus. FAC ¶¶ 194–200. *See* discussion at Solow Memorandum, Section I.B.a ("RICO Claim Is Not Barred By PSLRA Section 107") and Section I.B.d ("Great Western Sufficiently Alleges a RICO Conspiracy Under Section 1962(d)"), which are incorporated herein by reference.

E. **Great Western Has Properly and Adequately Pled its Claim of Civil Conspiracy to Commit Fraud Against Sancus.**

Great Western has pled a valid claim for civil conspiracy to commit fraud against Sancus. To state a claim for civil conspiracy under New York law, the plaintiff must allege "a primary tort and four additional elements: (1) a corrupt agreement between two or more parties; (2) an overt act in furtherance of the agreement; (3) the parties' intentional participation in the furtherance of a plan or purpose; and (4) resulting damage or injury." *Best Cellars Inc. v. Grape Finds at Dupont, Inc.*, 90 F.Supp.2d 431, 446 (S.D.N.Y. 2000) (citation omitted). "While New York law does not contain an actionable tort of conspiracy alone, a plaintiff may still plead the tort of civil conspiracy 'in order to connect someone to an otherwise actionable tort committed by another and establish that those actions were part of a common scheme.'" *Fezzani v. Bear, Stearns & Co. Inc.*, 592 F. Supp. 2d 410, 423 (S.D.N.Y. 2008). Liability for conspiracy to commit fraud "may be premised on knowing participation in a scheme to defraud, even if that participation does not by itself suffice to constitute the fraud." *Kuo Feng Corp. v. Ma*, 248 A.D.2d 168, 168–69 (1st Dept. 1998).

First, Great Western has properly and adequately pled its claim for fraud against Graham, Solow, and other defendants. *See* FAC at ¶ 157–160, Graham Memorandum at Section II.D and Solow Memorandum at Section I.D.

Second, Great Western sufficiently alleges (a) the corrupt agreement to defraud Great Western made between the defendants, *i.e.*, the co-conspirators, and (b) overt acts in furtherance of said agreement. FAC ¶ 201–204. Sancus states that "the [FAC] fails to adequately allege an agreement among the defendants, because it does not 'specify the what, when, where, and how of the conspiracy.'" Memorandum at 8. However, "direct proof of a conspiracy is seldom available, and therefore an illicit agreement may be shown via circumstantial evidence." *Borden,*

11

*Inc. v. Spoor Behrins Campbell & Young, Inc.*, 828 F.Supp. 216, 225 (S.D.N.Y. 1993); *see also Diduck v. Kaszycki & Sons Contractors, Inc.*, 774 F.Supp. 802, 813 (S.D.N.Y. 1991), *aff'd in part, rev'd in part*, 974 F.2d 270 (2d Cir. 1992) ("Proof of a tacit, as opposed to explicit, understanding is sufficient to show agreement."). Courts may infer an agreement by evaluating the "relevant evidence such as the relationships between the actors and between the actions (e.g., the proximity in time and place of the acts, and the duration of the actors' joint activity) as well as other significant factors in individual cases." *Id*. at 813. Such an inference is more than appropriate here.

The FAC sufficiently alleges circumstances indicating an agreement between the defendants to commit fraud. It is incorrect that Great Western did not allege that "Sancus had any knowledge of the alleged fraudulent scheme (or even of Plaintiff Great Western), let alone intentionally participated in such a scheme." Memorandum at 8. Graham created and operated Sancus. FAC at ¶ 49. Graham and Solow transferred money, both directly and indirectly, from Series 2011-C to Sancus. *Id.* at ¶ 80. A trier of fact could infer an agreement from Sancus and the other defendants' "intimate business relationship." *First Fed. Sav. and Loan Ass'n of Pittsburgh v. Oppenheim, Appel, Dixon & Co.*, 629 F.Supp. 427, 444 (S.D.N.Y. 1986); *see also Int'l Distribution Ctrs., Inc. v. Walsh Trucking Co., Inc.*, 812 F.2d 786, 793 (2d Cir. 1987) ("circumstances . . . such as to warrant a jury in finding that the conspirators had a unity of purpose or a common design and understanding"). Indeed, any other inference would be nonsensical.

Finally, Sancus and the other defendant co-conspirators' participation in the plan to defraud Great Western was intentional and the cause of great damage. FAC ¶ 204–205. By the nature of Graham and Solow's sweeping ownership and control of Sancus and many other

12

defendants, Great Western has sufficiently pled that the participation of each co-conspirator was intentional and the agreement among them was feasible. *Id.* at ¶¶ 69, 71, 91. Further, Great Western properly alleges damages in an amount of at least $135 million. *Id.* at ¶ 205. Thus, Great Western has properly and adequately pled its claim for civil conspiracy to commit fraud against Sancus.

### F. Great Western Has Properly and Adequately Pled its Claim of Unjust Enrichment Against Sancus.

Great Western has pled a valid claim for unjust enrichment against Sancus. To state a claim for unjust enrichment under New York law, a plaintiff must allege that "(1) defendant was enriched, (2) at plaintiff's expense, and (3) equity and good conscience militate against permitting defendant to retain what plaintiff is seeking to recover." *See Overton v. Art Fin. Partners LLC*, 166 F. Supp. 3d 388, 403 (S.D.N.Y. 2016). Great Western has done so.

First, Great Western properly alleges that Sancus was enriched at Great Western's expense. FAC ¶¶ 223–224. Sancus received portions of the assets removed from the Great Western Trust Account, that, but for their improper conduct, would never have been paid to Alpha, and then distributed to Sancus. *Id.* at ¶¶ 91, 223–224. Second, Great Western properly alleges that equity and good conscience militate against permitting Sancus to retain Great Western's assets that were dispersed to them. FAC ¶¶ 224; *see Childers v. New York & Presbyterian Hosp.*, 36 F. Supp. 3d 292, 305 (S.D.N.Y. 2014) (denying defendant's motion to dismiss because "equity and good conscience militate against permitting defendant to retain what plaintiff is seeking to recover") (citation omitted).

Sancus claims that Great Western cannot plead unjust enrichment because "Great Western did not have *any* relationship with Sancus." Memorandum at 16. However, this is an incorrect characterization of the facts and legal standard. Under New York law, unjust

13

enrichment "requires some relationship between plaintiff and defendant." *Overton*, 166 F. Supp. 3d at 403.  This is a "modest" requirement.  *Myun-Uk Choi v. Tower Research Capital LLC*, 890 F.3d 60, 69 (2d Cir. 2018).  "[T]he nexus between parties is too attenuated if the parties 'simply had no dealings with each other.'"  *Chen v. New Trend Apparel, Inc.*, 8 F. Supp. 3d 406, 464 (S.D.N.Y. 2014).  "[A] defendant's awareness of the plaintiff and of the potential negative impact of its own conduct on the plaintiff" can demonstrate the required closeness between parties to maintain a claim for unjust enrichment.  *Id.* at 65.  Sancus was aware of Great Western through their shared connection with Graham, Great Western's investment manager.  Graham created and operated Sancus and transferred money from Series 2011-C to Sancus.  FAC at ¶¶ 49, 80.  On February 20, 2018, Graham even signed a sworn response to an information subpoena wherein Graham identified all securities or assets related in any way to Great Western, which included Sancus Capital Blue Shares.  *Id.* at ¶ 100.  Sancus' awareness of Great Western through its owner and creator, Graham, constitutes a sufficient relationship between Great Western and Sancus to sustain the unjust enrichment claim.

      Thus, Great Western has properly and adequately pled its claim for unjust enrichment against Sancus.

## **CONCLUSION**

      For the foregoing reasons, Great Western respectfully requests that the Court deny Sancus' Motion; however, if the Court dismisses any claims in the FAC against Sancus, Great Western requests that such dismissal be without prejudice, so Great Western may replead to cure such deficiencies.

| | |
|---|---|
| Dated: Chicago, Illinois<br>December 12, 2018 | SIDLEY AUSTIN LLP<br><br>By: */s/ Gerard D. Kelly*<br>  Gerard D. Kelly<br>  (admitted *pro hac vice*)<br>  gkelly@sidley.com<br>  Stephen W. McInerney<br>  (admitted *pro hac vice*)<br>  smcinerney@sidley.com<br>  One South Dearborn Street<br>  Chicago, Illinois 60603<br>  (312) 853-7000<br><br>  Steven M. Bierman<br>  sbierman@sidley.com<br>  Michael P. Morrissey<br>  mmorrissey@sidley.com<br><br>  787 Seventh Avenue<br>  New York, New York 10019<br>  (212) 839-5300<br><br>  Nicholas K. Lagemann<br>  nlagemann@mdmc-law.com<br>  McElroy, Deutsch, Mulvaney & Carpenter, LLP<br>  225 Liberty Street<br>  36th Floor<br>  New York NY 10281<br>  (973) 425-0161<br><br>  *Attorneys for Plaintiff Great Western Insurance Company.* |

15