UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| GREAT WESTERN INSURANCE COMPANY<br><br>Plaintiff,<br><br>vs.<br><br>MARK GRAHAM, DONALD SOLOW, BLUE CAPITAL MANAGEMENT, INC., BLUE ALTERNATIVE ASSET MANAGEMENT LLC, WILMINGTON SAVINGS FUND SOCIETY, FSB, CHRISTIANA TRUST, REGATTA HOLDINGS LLC, CYGNET 001 MASTER TRUST, CYGNET 001 MASTER TRUST SERIES 2011-A, CYGNET 001 MASTER TRUST SERIES 2011-C, CYGNET 001 MASTER TRUST SERIES 2013-A, ALPH RE LIMITED, ALPHA RE HOLDINGS (CAYMAN) LIMITED, ATLANTIC SPECIALTY FINANCE, BLUE ELITE FUND LTD., BLUE ELITE FUND LP, BLUE II LTD., SANCUS CAPITAL BLUE CREDIT OPPORTUNITIES FUND LTD., ABILITY INSURANCE COMPANY, JOHN DRAKE, EDWARD BRENDAN LYNCH, GREGORY TOLARAM, ADVANTAGE CAPITAL HOLDING LLC, DAN CATHCART, AND KENNETH KING.<br><br>Defendants. | Case No. 18-cv-06249 (VSB)<br><br>**ORAL ARGUMENT REQUESTED** |

## MEMORANDUM OF LAW IN SUPPORT OF SANCUS CAPITAL BLUE CREDIT OPPORTUNITIES FUND, LTD.'S MOTION TO DISMISS THE SECOND AMENDED COMPLAINT

# TABLE OF CONTENTS

**Page**

Preliminary Statement.................................................................................................. 1

Statement of Facts....................................................................................................... 2

Argument ..................................................................................................................... 3

I.      Plaintiff's Claims Against Sancus Fail as a Matter of Law ............................... 3

     A.      Plaintiff's Aiding and Abetting Claims Are Meritless ......................... 3

          1.      Plaintiff Has Failed to Allege that Sancus Possessed "Actual Knowledge" of the Purported Violations.................................... 5

          2.      Plaintiff Has Failed to Allege that Sancus Substantially Assisted the Purported Violations ........................................... 6

     B.      Plaintiff's Claim for Conspiracy to Commit Fraud Should Be Dismissed as Conclusory and Duplicative................................... 8

     C.      Plaintiff's Claim for RICO Conspiracy is Meritless............................. 11

          1.      Plaintiff's RICO Conspiracy Claim is Barred by the PSLRA ................ 11

          2.      Plaintiff's RICO Conspiracy Claim Fails to Sufficiently Allege that Sancus Entered into an Agreement ........................... 14

     D.      Plaintiff's Claim for Unjust Enrichment is Meritless ......................... 16

Conclusion ................................................................................................................. 18

# TABLE OF AUTHORITIES

**Page**

## CASES

*4 K & D Corp. v. Concierge Auctions, LLC,*
  2 F. Supp. 3d 525 (S.D.N.Y. 2014) .................................................................................... 15

*380544 Canada, Inc. v. Aspen Tech., Inc.,*
  633 F. Supp. 2d 15 (S.D.N.Y. 2009) ................................................................................... 10

*Aetna Cas. & Sur. Co. v. Aniero Concrete Co., Inc.,*
  404 F.3d 566 (2d Cir. 2005) ............................................................................................... 11

*Am. Arbitration Ass'n v. Defonseca,*
  No. 93-cv-2424, 1996 U.S. Dist. LEXIS 9160 (S.D.N.Y. June 27, 1996) ........................ 15

*AmTrust N. Am., Inc. v. Safebuilt Ins. Servs.,*
  No. 14-cv-9494, 2015 U.S. Dist. LEXIS 162515 (S.D.N.Y. Dec. 1, 2015) ........................ 5

*Banco Indus. de Venez. v. CDW Direct, L.L.C.,*
  888 F. Supp. 2d 508 (S.D.N.Y. 2012) .................................................................................. 7

*Berman v. Morgan Keegan & Co.,*
  No. 10-cv-5866, 2011 U.S. Dist. LEXIS 27867 (S.D.N.Y. Mar. 14, 2011) ................ 4, 5, 6

*Beth Israel Med. Ctr. v. Horizon Blue Cross & Blue Shield of N.J., Inc.,*
  448 F.3d 573 (2d Cir. 2006) ............................................................................................... 16

*Briarpatch Ltd. L.P. v. Phoenix Pictures, Inc.,*
  312 F. App'x 433 (2d Cir. 2009) ........................................................................................ 10

*Briarpatch Ltd., L.P. v. Geisler Roberdeau, Inc.,*
  No. 99-cv-9623, 2007 U.S. Dist. LEXIS 27001 (S.D.N.Y. Apr. 2, 2007) ......................... 10

*Cohen v. BMW Invs. L.P.,*
  144 F. Supp. 3d 492 (S.D.N.Y. 2015), *aff'd*, 668 F. Appx 373 (2d Cir. 2016) ................. 16

*Cohen v. Stevanovich,*
  722 F. Supp. 2d 416 (S.D.N.Y. 2010) .............................................................................. 9, 10

*Connolly v. Havens,*
  763 F. Supp. 6 (S.D.N.Y. 1991) ........................................................................................ 15

*DDR Constr. Servs. v. Siemens Indus.,*
  770 F. Supp. 2d 627 (S.D.N.Y. 2011) ........................................................................ 8, 9, 10

*Durante Bros. & Sons, Inc. v. Flushing Nat'l Bank,*
  755 F.2d 239 (2d Cir. 1985) ............................................................................................... 11

# TABLE OF AUTHORITIES

**Page**

*Fezzani v. Bear, Stearns & Co., Inc.,*
    No. 99-cv-0793, 2005 U.S. Dist. LEXIS 3266 (S.D.N.Y. Mar. 1, 2005) ........................ 13

*Gelboim v. Bank of Amer. Corp.,*
    823 F.3d 759 (2d Cir. 2016) ........................................................................................ 11

*Georgia Malone & Co., Inc. v. Rieder,*
    973 N.E.2d 743 (N.Y. 2012) ....................................................................................... 16

*Hecht v. Commerce Clearing House, Inc.,*
    897 F.2d 21 (2d Cir. 1990) .......................................................................................... 15

*In re LIBOR-Based Fin. Instruments Antitrust Litig.,*
    27 F. Supp. 3d 447 (S.D.N.Y. 2014) ..................................................................... 16, 17

*In re LIBOR-Based Fin. Instruments Antitrust Litig.,*
    935 F. Supp. 2d 666 (S.D.N.Y. 2013) ................................................................... 11, 12

*In re Sharp Int'l Corp.,*
    403 F.3d 43 (2d Cir. 2005) .......................................................................................... 6, 8

*Joan Hansen & Co., Inc. v. Everlast World's Boxing Headquarters Corp.,*
    296 A.D.2d 103 (1st Dep't 2002) ................................................................................ 17

*Kirschner v. Bennett,*
    648 F. Supp. 2d 525 (S.D.N.Y. 2009) ........................................................................... 4

*Ling v. Deutsche Bank, AG,*
    No. 04-cv-4566, 2005 U.S. Dist. LEXIS 9998 (S.D.N.Y. May 26, 2005) ..................... 12

*MLSMK Inv. Co. v. JP Morgan Chase & Co.,*
    651 F.3d 268 (2d Cir. 2011) ........................................................................................ 12

*Mueller v. Michael Janssen Gallery PTE. Ltd.,*
    225 F. Supp. 3d 201 (S.D.N.Y. 2016) .......................................................................... 17

*Nasik Breeding & Research Farm Ltd. v. Merck & Co.,*
    165 F. Supp. 2d 514 (S.D.N.Y. 2001) ..................................................................... 14, 16

*NCA Holding Corp. v. Ernestus,*
    No. 97-cv-1372, 1998 U.S. Dist. LEXIS 6439 (S.D.N.Y. May 6, 1998) ........................ 10

*Nigerian Nat'l Petroleum Corp. v. Citibank, N.A.,*
    No. 98-cv-4960, 1999 U.S. Dist. LEXIS 11599 (S.D.N.Y. July 29, 1999) ...................... 8

## TABLE OF AUTHORITIES

**Page**

*Ritchie Capital Mgmt., L.L.C. v. Gen. Elec. Capital Corp.*,
121 F. Supp. 3d 321 (S.D.N.Y. 2015)........................................................................ 9

*Rosner v. Bank of China*,
528 F. Supp. 2d 419 (S.D.N.Y. 2007)...................................................................... 8

*Schmidt v. Fleet Bank*,
16 F. Supp. 2d 340 (S.D.N.Y. 1998)...................................................................... 14

*SEC v. Penn*,
225 F. Supp. 3d 225 (S.D.N.Y. 2016)................................................................... 13

*Transamerica Mortg. Advisors (tama) v. Lewis*,
444 U.S. 11 (1979)...................................................................................... 13

*United States ex rel. NPT Associates v. Laboratory Corp. of Am. Holdings*,
No. 1:07-cv-05696 (RLE), 2015 U.S. Dist. LEXIS 155601 (S.D.N.Y. Nov. 17, 2015) ...... 4

*United States ex rel. Siegel v. Roche Diagnostics, Corp.*,
988 F. Supp. 2d 341 (E.D.N.Y. 2013) ................................................................... 4

*Vista Food Exch., Inc. v. Champion Foodservice, LLC*,
124 F. Supp. 3d 301 (S.D.N.Y. 2015)................................................................. 17

*Williams v. Bank Leumi Trust Co., for example*,
No. 96-cv-6692, 1997 U.S. Dist. LEXIS 7538 (S.D.N.Y. May 29, 1997) ........................7

## STATUTES AND RULES

18 U.S.C. § 1962(d) ..................................................................... 11, 14, 15, 16

18 U.S.C. § 1964(c) ........................................................................... 11, 12

Fed. R. Civ. P.  9(b) ......................................................................... 1, 4, 6, 7

Fed. R. Civ. P.  12(b)(6)......................................................................... 1

Defendant Sancus Capital Blue Credit Opportunities Fund, Ltd. ("Sancus"), by and through its attorneys, respectfully submits this memorandum of law in support of its motion to dismiss the Second Amended Complaint (the "SAC") of Plaintiff Great Western Insurance Company ("Great Western" or "Plaintiff"), pursuant to Federal Rules of Civil Procedure 9(b) and 12(b)(6).[1]

## Preliminary Statement

In its SAC, Plaintiff Great Western alleges a wide-ranging scheme against twenty-five named defendants, arising from the alleged diversion of funds held in a trust account for Plaintiff. According to Plaintiff, certain of those funds were allegedly placed with Sancus, an investment fund.  But Sancus's passive receipt of such investments, which is presumed to be true solely for the purpose of this motion, does not subject Sancus to liability under any of the five theories alleged by Great Western: (1) aiding and abetting breach of fiduciary duty (Count Two); (2) aiding and abetting fraud (Count Four); (3) RICO conspiracy (Count Seven); (4) conspiracy to commit fraud (Count Eight); and (5) unjust enrichment (Count Eleven).  Indeed, Plaintiff fails to sufficiently allege that, during the relevant time period, Sancus was even *aware* of Great Western, the various agreements at issue, the relationships among the other defendants, or the purported source of the

---

[1]     Plaintiff filed its initial complaint on July 10, 2018.  ECF No. 5.  Plaintiff subsequently sought leave to amend and filed its First Amended Complaint ("FAC"), dated October 5, 2018.  ECF Nos. 66, 67, 69.  Sancus moved to dismiss Plaintiff's FAC on October 31, 2018.  ECF No. 80.  In response to Sancus's motion to dismiss, Plaintiff filed a memorandum of law in opposition to Sancus's motion to dismiss.  ECF No. 100. Contemporaneously, Plaintiff also sought leave from the Court to amend and file its SAC. ECF No. 104.  The Court granted Plaintiff's request for leave to amend on December 18, 2018.  ECF No. 105.  Plaintiff's SAC is now the subject of this current motion to dismiss. Importantly, the SAC fails to cure any of the pleading deficiencies with respect to Sancus. In fact, the Plaintiff only adds in one new reference to Sancus in the SAC, which simply concerns alleged share ownership and not control or knowledge.  *See* SAC ¶ 128 ("According to Ability's Form-Y Annual Statement for the Year Ended December 31, 2017, filed with the Nebraska Department of Insurance, Ability owns 13.68% of Sancus. In addition, Ability is a wholly-owned subsidiary of ACH, which owns 80% of Sancus. Sancus is one of the investment vehicles into which Graham and Solow (through the entities they controlled) invested Great Western's $135+ million.").

investments it received.  In fact, Sancus is referenced in only eight paragraphs in the fact section of the SAC.

Plaintiff cannot net Sancus into its alleged conspiracy by lodging conclusory and formulaic allegations concerning Sancus's "awareness" of and involvement in the purported scheme, where such allegations are otherwise wholly unsupported by the facts as pleaded.  Specifically, Plaintiff only offers vague allegations – without pleading any specific facts in support – that Graham operated and held a role of responsibility with regard to Sancus.  Plaintiff's claims against Sancus should therefore be dismissed with prejudice.

## Statement of Facts[2]

Sancus is an investment fund registered in the Cayman Islands.  *See* SAC ¶ 25.  As alleged in the SAC, at some point during the relevant time period, defendants Mark Graham and Donald Solow invested money in Sancus that those individuals allegedly drew (either "directly" or "indirectly") from funds backing the Repurchase Agreement which were held in Series 2011-C. *See id*. ¶¶ 89-90, 103, 108, 112.  Notably, the SAC does *not* allege – other than in purely conclusory fashion in the Counts – that, during the relevant time period, Sancus:

- Had any contact with Plaintiff Great Western;

- Was even aware of Great Western's existence (or vice versa);

- Had any contact with the other defendants, with the exception of its alleged investors, Graham and Solow; or

- Knew about the various agreements at issue or relationships among the other defendants.

---

[2]     The facts set forth herein are drawn from the SAC and the exhibits thereto.  The allegations set forth in the SAC are presumed to be true solely for the purposes of this motion.

Instead, Sancus's purported "role" in the scheme alleged by Plaintiff is limited to Sancus's passive, ordinary-course receipt of the aforementioned investments. What is more, Plaintiff provides no details concerning these investments, such as when they took place and in what amounts, and does not allege any facts suggesting that Sancus had knowledge of or control over where those funds purportedly originated.

Further, the SAC utterly fails to plead any specific facts (other than mere conclusory allegations and improper inferences) that Graham or Solow retained any position of authority at Sancus, including a management position. *See* SAC ¶¶ 52 ("Sancus was created and operated by Graham from New York-based offices . . . ."), 106 ("Graham served in a primary role of responsibility (such as the President, Founder, or similar position) for . . . Sancus Capital Blue Credit Opportunities Fund Ltd."). Plaintiff's reference to "or similar position" in paragraph 106 is especially vague and conclusory, and is simply a baseless attempt to connect Graham's alleged misdeeds to Sancus.

## Argument

### I.    Plaintiff's Claims Against Sancus Fail as a Matter of Law

In its SAC, Plaintiff assets five causes of action against Sancus: (1) aiding and abetting breach of fiduciary duty; (2) aiding and abetting fraud; (3) conspiracy to commit fraud; (4) RICO conspiracy; and (5) unjust enrichment. Each of these claims fails as a matter of law and should be dismissed with prejudice.

### A.    Plaintiff's Aiding and Abetting Claims Are Meritless

Under New York law, the elements of aiding and abetting breach of fiduciary duty and aiding and abetting fraud are "substantially similar," requiring: (1) "the existence of a primary violation;" (2) "actual knowledge of the violation on the part of the aider and abettor;" and (3)

"substantial assistance." *Kirschner v. Bennett*, 648 F. Supp. 2d 525, 533 (S.D.N.Y. 2009) (dismissing aiding and abetting claims).

Federal Rule of Civil Procedure 9(b) sets forth a heightened pleading standard for allegations of fraud, requiring that such circumstances be stated with "particularity." Notably, this heightened pleading requirement "applies equally to claims alleging aiding and abetting fraud[] [and] claims alleging aiding and abetting breach of fiduciary duty sounding in fraud." *Berman v. Morgan Keegan & Co.*, No. 10-cv-5866, 2011 U.S. Dist. LEXIS 27867, at *20 (S.D.N.Y. Mar. 14, 2011).[3]

Here, Plaintiff's claim for aiding and abetting breach of fiduciary duty sounds in fraud (and therefore must satisfy Rule 9(b)), as it arises from the same alleged scheme as Plaintiff's other claims – specifically, the alleged diversion of money from Great Western's trust account.

Plaintiff's aiding and abetting claims must be dismissed, because it has failed to allege with sufficient particularity that Sancus (1) had actual knowledge of the alleged violations; or (2) substantially assisted those violations, as required by New York law.[4]

---

[3]    Plaintiff is expected to argue for a relaxed pleading standard; however, courts in the Second Circuit have declined to relax Rule 9(b)'s heightened pleading standards in cases involving allegations of fraud, even where the fraudulent scheme alleged is fairly complex. *See United States ex rel. NPT Assocs. v. Lab. Corp. of Am. Holdings*, No. 1:07-cv-05696 (ALC) (RLE), 2015 U.S. Dist. LEXIS 155601, at *12 (S.D.N.Y. Nov. 17, 2015) (declining to relax Rule 9(b)'s heightened pleading standards, holding that complaint for alleged False Claims Act violations did not satisfy Rule 9(b)'s heightened pleading standards because plaintiff failed to state with sufficient particularity the "underlying schemes or agreements" that constituted the purportedly complex fraud); *United States ex rel. Siegel v. Roche Diagnostics, Corp.*, 988 F. Supp. 2d 341, 346 (E.D.N.Y. 2013) (refusing to relax Rule 9(b)'s heightened pleading requirements, despite the purported complexity of the alleged fraudulent scheme to bill the federal government for inaccurate and/or unperformed medical procedures).

[4]    Sancus does not admit that Plaintiff has sufficiently pleaded the primary violations (breach of fiduciary duty and fraud) against the defendants named in Counts One and Three. To the extent the Court dismisses those primary claims, then the aiding and abetting claims

1.  <u>Plaintiff Has Failed to Allege that Sancus Possessed "Actual Knowledge" of the Purported Violations</u>

First, Plaintiff fails to sufficiently allege that Sancus had actual knowledge of the purported breaches of fiduciary duties or fraudulent misrepresentations.  It is well settled that "[m]ere allegations of constructive knowledge or recklessness are insufficient to satisfy the knowledge requirement."  *Berman*, 2011 U.S. Dist. LEXIS 27867, at \*27 (internal quotation marks and citations omitted).  Moreover, "[w]hile actual knowledge of the underlying fraud may be averred generally under Rule 9(b), the plaintiff must accompany the general allegation with allegations of specific facts giving rise to a strong inference of actual knowledge regarding the underlying fraud." *Id*. (internal quotation marks and citations omitted).

Nowhere in the Factual Background of the SAC does Plaintiff allege that Sancus had actual knowledge of the alleged fraud and fiduciary violations.  Indeed, there is no plausible suggestion in those paragraphs that Sancus even knew of *Great Western* during the relevant time period, let alone the various agreements and relationships among the other defendants that purportedly gave rise to such violations.[5]  In fact, the first time Plaintiff references Sancus's purported knowledge of the alleged violations is in Counts Two and Four, which contain only formulaic recitations of the requirements for aiding and abetting liability.  *See* SAC ¶¶ 173 (alleging that Sancus was

---

against Sancus must fail as well.  *See, e.g.*, *AmTrust N. Am., Inc. v. Safebuilt Ins. Servs*., No. 14-cv-9494, 2015 U.S. Dist. LEXIS 162515, at \*26 (S.D.N.Y. Dec. 1, 2015) (dismissing aiding and abetting breach of fiduciary duty claim where claim for primary violation failed, because "there can be no aiding and abetting if there is no primary liability") (internal quotation marks and citation omitted).

[5]   Although in paragraph 79 of the SAC, Plaintiff alleges that twenty defendants (including Sancus) "kept . . . secret" from Plaintiff alleged connections and conflicts of interest among certain of the defendants, yet Plaintiff fails to allege that Sancus was aware of these purported connections in the first place.

"aware of Alpha, WSFS, BAAM, and/or Graham's breaches of fiduciary duties"), 184 (alleging

that Sancus was "aware of the fraud being perpetrated on Great Western[]").

Because Plaintiff has failed to plead "specific facts giving rise to a strong inference of

actual knowledge," its aiding and abetting claims are wholly deficient under Rule 9(b).  *See*

*Berman*, 2011 U.S. Dist. LEXIS 27867, at *27 (internal quotation marks and citations omitted).

Those claims should accordingly be dismissed.

2. <u>Plaintiff Has Failed to Allege that Sancus Substantially Assisted the Purported Violations</u>

Even assuming Sancus had actual knowledge of the alleged breaches of fiduciary duties or

fraudulent misrepresentations (which it did not), Plaintiff fails to sufficiently allege that Sancus

provided "substantial assistance" to these violations. "Substantial assistance may only be found

where the alleged aider and abettor affirmatively assists, helps conceal or fails to act when required

to do so, thereby enabling the breach to occur."  *In re Sharp Int'l Corp.*, 403 F.3d 43, 50 (2d Cir.

2005) (affirming dismissal of claim for aiding and abetting breach of fiduciary duty) (internal

quotation marks and citation omitted).  "The mere inaction of an alleged aider and abettor

constitutes substantial assistance *only* if the defendant owes a fiduciary duty directly to the

plaintiff."  *Id*. (emphasis added, internal quotation marks and citation omitted).

Again, Plaintiff's only allegations concerning Sancus's purported "assistance" appear in

Counts Two and Four of the SAC.  With respect to its claim for aiding and abetting breach of

fiduciary duty, Plaintiff alleges that nineteen defendants, including Sancus, (1) "assisted in

diverting moneys belonging to Great Western and its Trust Account into investments that

benefitted themselves and not Great Western," and (2) "continually provided Great Western with

assurances that Trust assets were properly invested when in fact they were not."  *See* SAC ¶¶ 174-

175.  The SAC fails to set forth any additional facts to support these bald allegations against

Sancus, such as how Sancus (which is only alleged to have passively received investments from defendants Graham and Solow) "assisted" in the diversion of Plaintiff's money, or what specific "assurances" Sancus purportedly made to Great Western – an entity which Sancus is not otherwise alleged to have had knowledge of or communication with during the time period at issue in the SAC.  Plaintiff's allegations with respect to aiding and abetting fraud are even sparser, amounting to a single allegation that sixteen defendants, including Sancus, "provided substantial assistance to the fraud's commission."  *See* SAC ¶ 184.  These allegations plainly lack the level of particularity required by Rule 9(b), warranting dismissal of Plaintiff's aiding and abetting claims.

Nor can Plaintiff credibly suggest that Sancus "substantially assisted" these alleged violations by reason of its role as a passive investment vehicle.  Such a theory has been repeatedly rejected in analogous circumstances.  In *Williams v. Bank Leumi Trust Co.*, for example, the court considered whether the use of bank accounts by participants in a fraudulent scheme constituted "substantial assistance" by the bank itself.  *See* No. 96-cv-6692, 1997 U.S. Dist. LEXIS 7538, at *14 (S.D.N.Y. May 29, 1997).  The court rejected plaintiff's claims for aiding and abetting fraud and breach of fiduciary duty, finding that "the mere fact that all the participants in the alleged scheme used accounts at [the defendant bank] to perpetrate it, without more, does not rise to the level of substantial assistance necessary to state a claim for aiding and abetting liability."  *Id.*; *see also Banco Indus. de Venez. v. CDW Direct, L.L.C.*, 888 F. Supp. 2d 508, 516 (S.D.N.Y. 2012) (fraudster's use of computer and information technology vendor to purchase equipment "[did] not rise to the level of substantial assistance" by the vendor in scheme to conceal purchases); *Rosner v. Bank of China*, 528 F. Supp. 2d 419, 427 (S.D.N.Y. 2007) (dismissing complaint against bank who had provided services to other defendants in connection with fraudulent enterprise, where plaintiff provided "no evidence that [the bank] was doing anything more than providing its usual

banking services to a customer"); *Nigerian Nat'l Petroleum Corp. v. Citibank, N.A.*, No. 98-cv-4960, 1999 U.S. Dist. LEXIS 11599, at *26 (S.D.N.Y. July 29, 1999) (bank's execution of millions of dollars in wire transfers did not constitute "substantial assistance").   Likewise here, even assuming for purposes of this motion that Graham and Solow drew from funds in Series 2011-C and invested those funds in Sancus, Sancus's passive receipt of such investments would not constitute "substantial assistance" under New York law.

Further, as discussed, it is well settled that "[t]he mere inaction of an alleged aider and abettor constitutes substantial assistance *only* if the defendant owes a fiduciary duty directly to the plaintiff." *Sharp*, 403 F.3d at 50 (emphasis added, internal quotation marks and citation omitted). The SAC does not allege (nor could it) that Sancus owed a fiduciary duty to Plaintiff.  As such, Plaintiff's aiding and abetting claims must fail.

## B.    Plaintiff's Claim for Conspiracy to Commit Fraud Should Be Dismissed as Conclusory and Duplicative

Plaintiff likewise fails to state a claim for conspiracy to commit fraud.  New York does not provide an independent cause of action for civil conspiracy to defraud – rather, such a claim "may be alleged for the purpose of showing that an otherwise actionable tort was committed jointly by the conspirators and that, because of the conspirators' common purpose and interest, the acts of one may be imputed to the others."  *See DDR Constr. Servs. v. Siemens Indus.*, 770 F. Supp. 2d 627, 659 (S.D.N.Y. 2011) (internal quotation marks and citations omitted) (dismissing conspiracy claim).  "To state a claim for civil conspiracy, a plaintiff must demonstrate the primary tort, plus the following four elements: (1) an agreement between two or more parties; (2) an overt act in furtherance of the agreement; (3) the parties' intentional participation in the furtherance of a plan or purpose; and (4) resulting damage or injury." *Ritchie Capital Mgmt., L.L.C. v. Gen. Elec.*

*Capital Corp.*, 121 F. Supp. 3d 321, 339 (S.D.N.Y. 2015) (internal quotation marks and citations omitted) (dismissing conspiracy claim).

Plaintiff's conspiracy claim is deficient as pleaded.[6]  Indeed, as set forth *supra* in Section I(A), Plaintiff has failed to adequately allege that Sancus had any knowledge of the alleged fraudulent scheme (or even of Plaintiff Great Western), let alone intentionally participated in such a scheme.  What is more, the SAC fails to adequately allege an agreement among the defendants, because it does not specify the "what, when, where, and how of the conspiracy."  *See DDR*, 770 F. Supp. 2d at 660.  As the court in *DDR* explained:

> Civil conspiracy claims fail . . . where the complaint contains only conclusory, vague, or general allegations that the defendants have engaged in a conspiracy. . . . Diffuse and expansive allegations are insufficient, unless amplified by specific instances of misconduct. . . . Thus allegations such as: 'Defendants conspired to commit the wrongful acts detailed above' are wholly conclusory, and cannot serve as a basis for invoking the doctrine of civil conspiracy under New York law. . . . Instead, to survive a motion to dismiss, a complaint must contain more than general allegations in support of the conspiracy. Rather, it must allege the specific times, facts, and circumstances of the alleged conspiracy.

*Id*. at 659 (internal quotation marks and citations omitted) (dismissing civil conspiracy claim as "conclusory" and "utterly lack[ing] factual detail").

As in *DDR*, the SAC merely states that defendants conspired "to commit the fraud described herein" and "committed numerous overt acts in furtherance of the conspiracy, as detailed herein."  *See* SAC ¶¶ 224-225.  These are precisely the type of allegations that were held to be insufficient in *DDR*.  *See DDR*, 770 F. Supp. 2d at 660 ("[T]he complaint's mere conclusory

---

[6]     As with Plaintiff's aiding and abetting claims, should this Court find that Plaintiff has failed to state a claim for fraud, then Plaintiff's conspiracy claim must also fail as a matter of law. *See Cohen v. Stevanovich*, 722 F. Supp. 2d 416, 437 (S.D.N.Y. 2010) (dismissing conspiracy claim where underlying fraud claim failed as a matter of law).

allegation that '[t]he conspiracy was carried out by means of fraudulent acts by [defendants] as described above,' is insufficient to survive a motion to dismiss.").

And indeed, with respect to Sancus, the SAC is utterly devoid of facts suggesting that Sancus communicated with any defendant other than Graham or Solow, let alone entered into an agreement with them.  Simply put, there are no facts linking Sancus to any "common plan or scheme" among the defendants.  *See NCA Holding Corp. v. Ernestus*, No. 97-cv-1372, 1998 U.S. Dist. LEXIS 6439, at *8 (S.D.N.Y. May 6, 1998) (finding that, aside from the "conclusory allegation" that "all of the defendants 'engaged in a scheme . . . to misappropriate plaintiffs' business plan and, in the process, to convert to their own use and benefit certain property and funds of the plaintiffs,'" complaint "failed to allege any facts from which the Court can determine that there was any common plan or scheme linking the different transactions and defendants together") (quoting complaint); *see also Cohen*, 722 F. Supp. 3d at 437 (dismissing conspiracy claim where, among other things, plaintiffs "failed to plead any facts establishing an agreement that includes the [moving defendants]").

Alternatively, Plaintiff's conspiracy claim must be dismissed because it is wholly duplicative of Plaintiff's other causes of action.  Courts in New York agree that "where the acts underlying a claim of conspiracy are the same as those underlying other claims alleged in the complaint, the conspiracy claim is dismissed as duplicative."  *See Briarpatch Ltd., L.P. v. Geisler Roberdeau, Inc.*, No. 99-cv-9623, 2007 U.S. Dist. LEXIS 27001, at *77 (S.D.N.Y. Apr. 2, 2007), *aff'd sub nom. Briarpatch Ltd. L.P. v. Phoenix Pictures, Inc.*, 312 F. App'x 433 (2d Cir. 2009) (dismissing claim for civil conspiracy to breach fiduciary duty); *see also 380544 Canada, Inc. v. Aspen Tech., Inc.*, 633 F. Supp. 2d 15, 36 (S.D.N.Y. 2009) ("A plaintiff may not 'reallege a tort asserted elsewhere in the complaint in the guise of a separate conspiracy claim.'") (quoting *Aetna*

*Cas. & Sur. Co. v. Aniero Concrete Co., Inc.,* 404 F.3d 566, 591 (2d Cir. 2005)); *Durante Bros. &*

*Sons, Inc. v. Flushing Nat'l Bank*, 755 F.2d 239, 251 (2d Cir. 1985) ("Count 7 added no new

allegations to those of counts 1-6 except to reiterate that [defendants] had conspired to commit the

acts heretofore described . . . [and therefore] Count 7 was properly dismissed . . . as duplicative . .

. ."). Here, aside from adding the conclusory allegation that the purported conspirators "reached

an agreement or understanding" (*see* SAC ¶ 224), the acts alleged in support of Plaintiff's

conspiracy claim are precisely those underlying its other claims, including its claim for aiding and

abetting fraud. *See* SAC ¶¶ 223, 225 (alleging that defendants "committed numerous overt acts in

furtherance of the conspiracy, as detailed herein"). As such, Plaintiff's civil conspiracy claim

cannot stand.

### C.    Plaintiff's Claim for RICO Conspiracy is Meritless

Plaintiff's RICO conspiracy claim under 18 U.S.C. § 1962(d) must also fail, because (1)

this claim is barred by the Private Securities Litigation Reform Act of 1995 (the "<u>PSLRA</u>"); and

(2) the SAC fails to sufficiently allege an agreement among the parties.

#### 1.    <u>Plaintiff's RICO Conspiracy Claim is Barred by the PSLRA</u>

Plaintiff's Section 1962(d) claim is barred by Section 107 of the PSLRA, commonly

referred to as the "RICO Amendment," which provides that "no person may rely upon any conduct

that would have been actionable as fraud in the purchase or sale of securities to establish a violation

of section 1962." *See* 18 U.S.C. § 1964(c). Courts interpret this provision "broadly," *see In re*

*LIBOR-Based Fin. Instruments Antitrust Litig.*, 935 F. Supp. 2d 666, 726 (S.D.N.Y. 2013), *vacated*

*on other grounds sub nom., Gelboim v. Bank of Amer. Corp.*, 823 F.3d 759 (2d Cir. 2016), and

will bar any civil RICO claim – including a claim for RICO conspiracy – alleging a predicate act

of fraud that *could* form the basis of a securities action, "even where a plaintiff cannot itself pursue

a securities fraud action against the defendant," *see MLSMK Inv. Co. v. JP Morgan Chase & Co.*,

651 F.3d 268, 277 (2d Cir. 2011) (affirming dismissal of RICO conspiracy claim pursuant to PSLRA).   "In other words, a plaintiff is prohibited from bringing a RICO claim not only when she, herself, could have brought a securities fraud claim based on the RICO predicate acts, but also when the SEC could have brought such a claim."  *LIBOR*, 935 F. Supp. 2d at 726.

Here, as "predicate acts" for its RICO claims, Plaintiff alleges that the RICO defendants named in Count Five invested funds from Plaintiff's trust account in a Repurchase Agreement with Series 2011-C, directed the funds backing the Repurchase Agreement in Series 2011-C into "risky investments," and misrepresented and concealed the true value of the assets backing the Repurchase Agreements.  *See* SAC ¶¶ 89-90, 202(d), (g), (i), (j).   These allegations describe precisely the type of "fraud in the purchase or sale of securities" that the RICO Amendment was intended to preclude and are therefore fatal to all of Plaintiff's RICO claims.  *See* 18 U.S.C. § 1964(c); *see also Ling v. Deutsche Bank, AG*, No. 04-cv-4566, 2005 U.S. Dist. LEXIS 9998, at *15-16 (S.D.N.Y. May 26, 2005) (observing that entire RICO claim based on single scheme will fail where "*any* predicate act is barred by the PSLRA") (emphasis added).

Indeed, such alleged conduct could plainly form the basis of a securities fraud suit by the SEC under Section 10(b) of the Securities Exchange Act of 1934 (the "Exchange Act") – the requirements of which are "less stringent than the requirements for a private plaintiff."  *See LIBOR*, 935 F. Supp. 2d at 726 (noting that "[t]he SEC may assert a cause of action for securities fraud if it alleges that the defendant: (1) made a material misrepresentation or a material omission as to which he had a duty to speak, or used a fraudulent device; (2) with scienter; (3) in connection with the purchase or sale of securities") (internal quotation marks and citation omitted).   There is no better evidence of this than the fact that the SEC recently entered into a settlement order with three of the defendants named in this action concerning the same purported scheme alleged in the SAC

12

– an order which Plaintiff itself requested the Court take judicial notice of in its September 12, 2018 letter.  *See* ECF No. 56, Ex. A ("<u>SEC Order</u>").  While Sancus was neither a party to the SEC action nor mentioned in the SEC Order, the RICO Amendment bars "reliance on any conduct, no matter whose conduct it is" that could have been actionable as securities fraud.  *See Fezzani v. Bear, Stearns & Co., Inc.*, No. 99-cv-0793, 2005 U.S. Dist. LEXIS 3266, at *13 (S.D.N.Y. Mar. 1, 2005) (denying leave to amend RICO claims).

The SEC Order alleges that the respondents engaged in "deceptive conduct" in connection with the purchase or sale of securities, in violation of Sections 206 and 207 of Investment Advisers Act of 1940.[7]  *See, e.g.*, SEC Order ¶¶ 17-18 (alleging that respondents "made numerous investments in securities on behalf of Series 2011-C," that Series 2011-C's assets "declined substantially in value," and that such decline led to a corresponding asset shortfall in the Reinsurance Trust); ¶¶ 20-30 (alleging that respondents engaged in a fraudulent scheme to conceal that asset shortfall, including by making false statements in the Repurchase Agreements and "improperly redeem[ing] investments from private funds the Respondents controlled to provide liquidity to Series 2011-C").  Notably, this alleged conduct overlaps significantly with the "predicate acts" set forth in the SAC, as Plaintiff itself apparently concedes.  *See* ECF No. 56 at 2 (claiming that respondents to SEC action "admitted to misconduct concerning, and their role in the misappropriation of, [Plaintiff's] funds *that is the basis for [Plaintiff's] Complaint in this action*") (emphasis added).  Plaintiff's own reliance on the SEC Order underscores that its RICO

---

[7]     Courts in the Second Circuit have observed that the elements of a claim under Section 206 of the Advisers Act are "substantially similar" to those of a Section 10(b) claim.  *See SEC v. Penn*, 225 F. Supp. 3d 225, 236-37 (S.D.N.Y. 2016) (quoting *Transamerica Mortg. Advisors (tama) v. Lewis*, 444 U.S. 11, 25 n.1 (1979) (White, J. dissenting)).

claims, including its Section 1962(d) claim, are precluded by the RICO Amendment and should be dismissed.

2.   Plaintiff's RICO Conspiracy Claim Fails to Sufficiently Allege that Sancus Entered into an Agreement

Plaintiff's Section 1962(d) claim must also be dismissed because it fails to sufficiently allege that Sancus had knowledge of the alleged RICO scheme and entered into an agreement to facilitate it.  To successfully plead a RICO conspiracy claim, a plaintiff must allege "that each defendant, by words or actions, manifested an agreement to commit two predicate acts in furtherance of the common purpose of a RICO enterprise." *Nasik Breeding & Research Farm Ltd. v. Merck & Co.*, 165 F. Supp. 2d 514, 540 (S.D.N.Y. 2001) (internal quotation marks and citation omitted) (granting motion to dismiss).  A defendant may be liable "only if he knew of the conspiracy's goals and agreed to facilitate them." *Id*.  With respect to Sancus, Plaintiff has failed to sufficiently allege either.

To begin, the SAC fails to allege that Sancus had knowledge of any alleged RICO scheme. Indeed, as discussed above, the SAC does not mention anywhere in the Factual Background that Sancus had any purported knowledge of either the scheme or Great Western.  *See Schmidt v. Fleet Bank*, 16 F. Supp. 2d 340, 354 (S.D.N.Y. 1998) (dismissing claim where plaintiff did not adequately allege that defendant "understood the scope of the enterprise or knew what . . . the other members of the enterprise were up to") (internal quotation marks and citations omitted).

Further, Plaintiff only vaguely alleges that Sancus and other defendants, "through their words and actions," agreed to commit the predicate acts of wire fraud.  *See* SAC ¶ 218.  As with its claim for civil conspiracy, Plaintiff conveniently fails to specify which specific words spoken or precise actions undertaken by Sancus signaled its agreement to commit wire fraud.  In fact, Sancus's purported participation in such an agreement is not mentioned anywhere prior to Count

14

Seven, which contains only conclusory assertions that Sancus and other defendants "agreed" to commit certain predicate acts, and that an agreement can "reasonably be inferred from their close professional ties." *See* SAC ¶¶ 218-219. These bald accusations cannot satisfy the requirement that Plaintiff plead "*some* factual basis for a finding of a conscious agreement among the defendants." *See Hecht v. Commerce Clearing House, Inc.*, 897 F.2d 21, 25-26 and n.4 (2d Cir. 1990) (emphasis added) (affirming dismissal of Section 1962(d) claim); *4 K & D Corp. v. Concierge Auctions, LLC*, 2 F. Supp. 3d 525, 545 (S.D.N.Y. 2014) ("Other than one conclusory allegation that the defendants 'agreed' to commit the violations, the plaintiffs have alleged no facts to show specifically that the defendants had any 'meeting of the minds' in the alleged violations."); *Am. Arbitration Ass'n v. Defonseca*, No. 93-cv-2424, 1996 U.S. Dist. LEXIS 9160, at *20-21 (S.D.N.Y. June 27, 1996) (collecting cases, and noting that "numerous district courts in this circuit have dismissed conclusory allegations of agreement as insufficient to state a RICO conspiracy claim"); *Connolly v. Havens*, 763 F. Supp. 6, 14 (S.D.N.Y. 1991) (finding "conclusory allegations parroting the language of [section 1962(d)]" were insufficient).

Moreover, the purported "close professional ties" between the defendants (which certainly have not been sufficiently pleaded with respect to Sancus) are insufficient to establish a conscious agreement to commit predicate acts. *See* SAC ¶ 219; *see also 4 K & D Corp.*, 2 F. Supp. 3d at 545 (holding that a "general allegation about the structure of the business" – that the individual defendants "work[ed] interchangeably" at a "small company[,] . . . with each of them taking part in the control and direction of" the company – was insufficient to establish conscious agreement

15

among the defendants to commit predicate acts).  Plaintiff's RICO conspiracy claim against Sancus

must fail.[8]

### D.      Plaintiff's Claim for Unjust Enrichment is Meritless

Plaintiff's unjust enrichment claim is likewise deficient.  To state a claim for unjust

enrichment under New York law, a plaintiff must allege "(1) that the defendant benefitted; (2) at

the plaintiff's expense; and (3) that equity and good conscience require restitution."  *Beth Israel*

*Med. Ctr. v. Horizon Blue Cross & Blue Shield of N.J., Inc.*, 448 F.3d 573, 586 (2d Cir. 2006)

(upholding dismissal of unjust enrichment claim).

The "essence" of an unjust enrichment claim "is that one party has received money or a

benefit at the expense of another."  *In re LIBOR-Based Fin. Instruments Antitrust Litig.*, 27 F.

Supp. 3d 447, 479 (S.D.N.Y. 2014) ("*LIBOR II*").  "While parties need not be in privity with one

another to sustain an unjust enrichment claim, a plaintiff must still plead that it had some

relationship with a defendant."  *Id*. (emphasis in original) (internal quotation marks and citations

omitted).  Thus, "[w]here plaintiff and defendant simply had no dealings with each other, their

relationship is too attenuated to support an unjust enrichment claim."  *Id*. (dismissing unjust

enrichment claims where the plaintiff and defendants had "never transacted or otherwise

maintained a business relationship at all") (internal quotation marks and citations omitted); *see*

*also Georgia Malone & Co., Inc. v. Rieder*, 973 N.E.2d 743, 747 (N.Y. 2012) (unjust enrichment

claim failed where parties "simply had no dealings with each other"); *Cohen v. BMW Invs. L.P.*,

144 F. Supp. 3d 492, 501 (S.D.N.Y. 2015), *aff'd*, 668 F. App'x 373 (2d Cir. 2016) (dismissing

unjust enrichment claim where "there was no relationship between [the parties] of any kind prior

---

[8]      Further, should the Court find that Plaintiff's substantive RICO claims fail, then Plaintiff's
Section 1962(d) claim must likewise be dismissed.  *See Nasik Breeding*, 165 F. Supp. 2d
at 540 ("[T]he Second Circuit has held that there can be no RICO conspiracy without a
substantive RICO violation.").

to this litigation" and plaintiff did not allege "any dealings with [defendant]" or "actions that might lead to reliance or inducement").

Here, the relationship between Great Western and Sancus is simply "too attenuated" to support its unjust enrichment claim.  Far from pleading "some relationship" with Sancus, *see LIBOR II*, 27 F. Supp. 3d at 479, the SAC demonstrates that Great Western did not have *any* relationship with Sancus.  Indeed, there are no allegations of any communications or business dealings between Sancus and Great Western – and in fact, there are no plausible allegations suggesting that those parties were even aware of each other during the relevant time period.  And, absent a relationship between the parties, it is irrelevant that funds allegedly diverted from Great Western may have ultimately been invested in Sancus at some point in time.  *See Joan Hansen & Co., Inc. v. Everlast World's Boxing Headquarters Corp.*, 296 A.D.2d 103, 108 (1st Dep't 2002) ("[I]t is not enough that the defendant received a benefit from the activities of the plaintiff; if services were performed at the behest of someone other than the defendant, the plaintiff must look to that person for recovery.").  The lack of any sort of relationship between Plaintiff and Sancus is fatal to Plaintiff's unjust enrichment claim.[9]

---

[9]     Further, while there are no allegations in the Complaint that Sancus was aware of the various agreements among the parties (such as the Coinsurance, Novation, and Trust Agreements), the fact that such agreements exist, and that such agreements plainly "govern[] the subject matter of the dispute" at issue in the Complaint, provides yet another ground on which Plaintiff's unjust enrichment claim must be dismissed.  *See Mueller v. Michael Janssen Gallery PTE. Ltd.*, 225 F. Supp. 3d 201, 207 (S.D.N.Y. 2016) ("Numerous decisions applying New York law have held that an unjust enrichment claim is barred if there is a valid contract governing the subject matter of the dispute, *even if one of the parties to the claim is not a party to that contract*.") (emphasis in original) (internal quotations omitted) (quoting *Vista Food Exch., Inc. v. Champion Foodservice, LLC*, 124 F. Supp. 3d 301, 312 (S.D.N.Y. 2015) (collecting cases)).

**Conclusion**

For the reasons set forth above, Sancus respectfully requests that the Court grant its motion in its entirety, issue an order dismissing the SAC with prejudice as to Sancus, and grant such other and further relief as is just and proper.

New York, New York
February 5, 2019

Respectfully submitted,

SEWARD & KISSEL LLP

By:   /s Jack Yoskowitz
Jack Yoskowitz
Laura E. Miller
Andrew S. Jacobson
Shrey Sharma
One Battery Park Plaza
New York, New York 10004
Tel. (212) 574-1200
Fax: (212) 480-8421
yoskowitz@sewkis.com
millerl@sewkis.com
jacobsona@sewkis.com
sharma@sewkis.com

*Attorneys for Defendant Sancus*
*Capital Blue Credit Opportunities*
*Fund, Ltd.*

18