**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

GREAT WESTERN INSURANCE COMPANY,

                                Plaintiff,

        v.

MARK GRAHAM, et. al.,

                                Defendants

Hon. Vernon S. Broderick

No. 18 CV 6249 (VSB)

**MEMORANDUM OF LAW IN SUPPORT OF**
**THE SRC DEFENDANTS' MOTION TO DISMISS**
**COUNTS TWO THROUGH EIGHT AND ELEVEN**
**OF PLAINTIFF'S SECOND AMENDED COMPLAINT**

**BAKER & HOSTETLER LLP**
Michael S. Gordon
Marco Molina
45 Rockefeller Plaza
New York, New York 10111
Telephone: (212) 589-4200
Facsimile: (212) 589-4201

*Attorneys for Defendants,*
*Donald Solow, Regatta Holdings, LLC,*
*Cygnet 001 Master Trust, Cygnet 001*
*Master Trust Series 2011-A, Cygnet 001*
*Master Trust Series 2011-C, and Cygnet*
*001 Master Trust Series 2013-A*

## **TABLE OF CONTENTS**

**Page**

PRELIMINARY STATEMENT ................................................................................ 1

STATEMENT OF FACTS .................................................................................... 4

ARGUMENT ............................................................................................ 7

I.   PLAINTIFF'S RICO CLAIMS MUST BE DISMISSED ................................................ 8

    A.   The RICO Claims are Barred by the PSLRA ............................................... 8

    B.   Plaintiff Fails to Meet the RICO Pleading Requirements ............................... 10

        1.   Count Five Must Be Dismissed Because Plaintiff Fails to
            Allege a Pattern of Racketeering Under Section 1962(c) ......................... 10

        2.   Count Seven Must Be Dismissed Because
            Plaintiff Does Not Allege a RICO Conspiracy
            Under Section 1962(d) as to Any SRC Defendant................................... 12

        3.   Count Six Must Be Dismissed Because Plaintiff
            Does Not Allege a Claim for Investment of
            Racketeering Income Under Section 1962(a) ........................................ 14

II.  THE COMMON LAW CLAIMS – COUNTS TWO, THREE,
    FOUR, EIGHT AND ELEVEN – MUST BE DISMISSED ........................................... 14

    A.   Count Two for Aiding and Abetting a Breach
        of Fiduciary Duty Must Be Dismissed .................................................. 14

        1.   Count Two Cannot Survive Because Plaintiff Has
            Failed to State a Claim for the Breach of a Fiduciary
            Duty by Any of Alpha, BAAM, or Mr. Graham ................................... 15

        2.   Even if a Claim for Fiduciary Breach Were Stated,
            Plaintiff Has Failed to Plead the Requisite Elements
            for Aiding and Abetting Such a Breach ............................................ 16

    B.   The Counts for Fraud (Count Three), Aiding and
        Abetting a Fraud (Count Four), and Civil Conspiracy
         to Commit Fraud (Count Eight) Must be Dismissed .................................. 18

        1.   Count Three for Fraud Must be Dismissed
            Because the SAC is Devoid of Particularized
            Allegations against Mr. Solow or Regatta ....................................... 18

i

2.      Count Four for Aiding and Abetting Fraud Fails
to Allege an Underlying Fraud and Knowing
Participation Therein, and Thus Must be Dismissed................................ 22

3.      Count Eight for Civil Conspiracy to Commit
Fraud Must Be Dismissed Because it is
Duplicative of the Deficient Counts Three and Four ............................... 23

C.      Count 11 for Unjust Enrichment Must Be Dismissed........................................... 24

CONCLUSION ..................................................................................................................... 26

4813-5754-0486

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*4 K&D Corp. v. Concierge Auctions, LLC*,
    2 F. Supp. 3d 525 (S.D.N.Y. 2014) .................................................................14

*Aetna Cas. & Sur. Co. v. Aniero Concrete Co., Inc.*,
    404 F.3d 566 (2d Cir. 2005) .........................................................................23

*Amer. Med. Dist. v. Macdonald Tuskey*,
    2018 WL 1478301 (S.D.N.Y. Mar. 23, 2018) (Broderick, J.) .................................20

*Baron v. Galasso*,
    83 A.D.3d 626 (2d Dep't 2011) .....................................................................18

*Bautista v. CytoSport, Inc.*,
    223 F. Supp. 3d 182 (S.D.N.Y. 2016) .............................................................24

*Bell Atlantic Corp. v. Twombly*,
    550 U.S. 544 (2007) ....................................................................................8

*Bennett v. U.S. Trust Co.*,
    770 F.2d 308 (2d Cir. 1985) .........................................................................11

*Christiania Gen. Ins. Corp. of N.Y. v. Great Amer. Ins. Co.*,
    979 F.2d 268 (2d Cir. 1992) .........................................................................15

*Cont'l Petroleum Corp., Inc. v. Corp. Funding Partners, LLC*,
    2012 WL 1231775 (S.D.N.Y. Apr. 12, 2012) ...................................................12

*DeFalco v. Bernas*,
    244 F.3d 286 (2d Cir. 2001) .........................................................................10

*Foster v. 2011 Real Estate*,
    2015 WL 7587360 (S.D.N.Y. Nov. 24, 2015) ...................................................11

*Ganino v. Citizens Util. Co.*,
    228 F.3d 154 (2d Cir. 2000) .........................................................................20

*In re Gen. Motors LLC Ignition Switch Litig.*,
    257 F. Supp. 3d 372 (S.D.N.Y. 2017) .............................................................25

*Gilmore v. Gilmore*,
    2011 WL 3874880 (S.D.N.Y. Sept. 1, 2011) ...................................................10

*Estate of Gottdiener v. Sater*,
    35 F. Supp. 3d 386 (S.D.N.Y. 2014) .............................................................19

i

*Hecht v. Commerce Clearing House, Inc.*,
  897 F.2d 21 (2d Cir. 1990) ....................................................................................... 13

*Jean-Laurent v. Bowman*,
  2014 WL 4662221 (E.D.N.Y. July 7, 2014) ............................................................. 23

*Jenny Yoo Collection, Inc. v. Watters Design Inc.*,
  2017 WL 4997838 (S.D.N.Y. Oct. 20, 2017) (Broderick, J.) ............................... 24, 25

*Kalnit v. Eichler*,
  264 F.3d 131 (2d Cir. 2001) ..................................................................................... 20

*Lesavoy v. Lane*,
  304 F. Supp. 2d 520 (S.D.N.Y. 2004) ...................................................................... 13

*In re LIBOR–Based Fin. Instruments Antitrust Litig.*,
  935 F.Supp.2d 666 (S.D.N.Y. 2013) ........................................................................... 9

*Luce v. Edelstein*,
  802 F.2d 49 (2d Cir. 1986) ....................................................................................... 11

*Mandarin Trading Ltd. v. Wildenstein*,
  16 N.Y.3d 173 (2011) .............................................................................................. 19

*Marino v. Grupo Mundial Tenedora, S.A.*,
  810 F. Supp. 2d 601 (S.D.N.Y. 2011) ...................................................................... 17

*Master Fund Ltd. v. Morgan Guar. Trust Co. of N.Y.*,
  375 F.3d (2d Cir. 2004) ....................................................................................... 18, 19

*Merrill Lynch, Pierce. Fenner & Smith, Inc. v. Young*,
  1994 WL 88129 (S.D.N.Y. Mar. 15, 1994) .............................................................. 13

*Morin v. Trupin*,
  711 F. Supp 97 (S.D.N.Y. 1989) ............................................................................. 13

*MSLMK Inv. Co. v. JP Morgan Chase & Co.*,
  651 F.3d 268 (2d Cir. 2011) ....................................................................................... 9

*Mueller v. Michael Janssen Gallery Pte. Ltd.*,
  225 F. Supp. 3d 201 (S.D.N.Y. 2016) .................................................................. 16, 24

*Musalli Factory for Gold & Jewelry v. JPMorgan Chase Bank, N.A.*,
  261 F.R.D. 13 (S.D.N.Y. Mar. 31, 2009) .................................................................. 17

*Neiman Marcus Grp., Inc. v. Dispatch Transp. Corp.*,
  2011 WL 1142922 (S.D.N.Y. Mar. 17, 2011) .......................................................... 13

*Novak v. Kasaks*,
  216 F.3d 300 (2d Cir. 2000) ..................................................................................... 20

ii

*Oak Beverages, Inc. v. Tomra of Mass., L.L.C.*,
  96 F. Supp. 2d 336 (S.D.N.Y. 2000) ...................................................................... 14

*Oddo Asset Mgmt. v. Barclays Bank PLC*,
  19 N.Y.3d 584 (2012) ............................................................................................ 16

*Owens v. Aspen Funding LLC*,
  2011 WL 4024820 (W.D.N.Y. Sept. 9, 2011) ........................................................ 24

*Passelaigue v. Getty Images (US), Inc.*,
  2018 WL 1156011 (S.D.N.Y. Mar. 1, 2018) (Broderick, J.) ...................................... 21

*Rosner v. Bank of China*,
  No. 06 CV 13562, 2008 WL 5416380 (S.D.N.Y. Dec. 18, 2008) ........................ 22, 23

*S.Q.K.F.C., Inc. v. Bell Atl. TriCon Leasing Corp.*,
  84 F.3d 629 (2d Cir. 1996) .................................................................................... 10

*Sanford/Kissena Owners Corp. v. Daral Props., LLC*,
  84 A.D.3d 1210 (2d Dep't 2011) ............................................................................ 18

*Sloane Overseas Fund, Ltd. v. Sapiens Intern. Corp., N.V.*,
  941 F. Supp. 1369 (S.D.N.Y. 1996) ........................................................................ 21

*Spinelli v. Nat'l Football League*,
  903 F.3d 185 (2d Cir. 2018) .................................................................................. 15

*Spool v. World Child Int'l Adoption Agency*,
  520 F.3d 178 (2d Cir. 2008) .................................................................................. 12

*SPV Osus Ltd. v. UBS AG*,
  882 F.3d 333 (2d Cir. 2018) ........................................................................ 16, 17, 18

*Standard Sec. Life Ins. Co. of N.Y. v. Berard*,
  684 F. App'x 56 (2d Cir. 2017) .............................................................................. 21

*Stechler v. Sidley, Austin Brown & Wood, L.L.P.*,
  382 F. Supp. 2d 580 (S.D.N.Y. 2005) ...................................................................... 10

*Targum v. Citrin Cooperman & Co., LLP*,
  2013 WL 6087400 (S.D.N.Y. Nov. 19, 2013) .......................................................... 19

*In re Thomson McKinnon Secs. Inc.*,
  147 B.R. 330 (S.D.N.Y. 1992) ................................................................................ 13

4813-5754-0486

**Statutes**

18 U.S.C. § 1962(a) .............................................................................................. 3, 8, 14

18 U.S.C. § 1962(c) ....................................................................................... 3, 8, 10, 11, 12

18 U.S.C. § 1962(d) ........................................................................................ 3, 8, 12, 13

18 U.S.C § 1964(c) ......................................................................................... 1, 2, 8, 9, 10

**Other Authorities**

Fed. R. Civ. P. 8(a) ............................................................................................ 1, 8, 19

Fed. R. Civ. P. 9(b) ................................................................................................ *passim*

Fed. R. Civ. P. 12(b)(6) ........................................................................................ 1, 7, 8

Fed. R. Evid. 201(b) .................................................................................................... 9

4813-5754-0486

Defendants, Donald Solow ("Mr. Solow"), Regatta Holdings LLC ("Regatta"), the Cygnet 001 Master Trust ("Cygnet Master Trust"), Cygnet 001 Master Trust Series 2011-A ("Series 2011-A"), Cygnet 001 Master Trust Series 2011-C ("Series 2011-C"), and Cygnet Master Trust Series 2013-A ("Series 2013-A") (the Cygnet Master Trust and Series 2011-A, 2011-C and 2013-A are referred to as the "Cygnet Entities," and Mr. Solow, Regatta and the Cygnet Entities collectively are referred to as the "SRC Defendants") [1] respectfully submit this memorandum of law pursuant to Federal Rules of Civil Procedure ("Rule") 12(b)(6), 8(a) and 9(b), as well as the Private Securities Litigation Reform Act of 1995 ("PSLRA"), 18 U.S.C § 1964(c), in support of their motion to dismiss all eight claims against them, *i.e.*, Counts Two through Eight and Eleven, of the Second Amended Complaint ("SAC") of plaintiff, Great Western Insurance Company ("Plaintiff"), dated December 19, 2018 (Dkt. No. 106.)

## PRELIMINARY STATEMENT

At its core, this action is a contract dispute between Plaintiff and its Cayman-based reinsurer – defendant Alpha Re Limited ("Alpha"), which currently is in court-supervised liquidation in the Cayman Islands (the "Alpha Liquidation"). Plaintiff, a Utah-based insurance company whose policies were reinsured by Alpha, is a creditor in the Alpha Liquidation, and is a judgment creditor stateside, having obtained a $131 million arbitration award in December 2017 against Alpha, arising out of the same events and transactions as those alleged here. Rather than seeking to enforce its domestic judgment against Alpha and/or relying on the court-appointed Cayman liquidators to satisfy its claim in the Alpha Liquidation, Plaintiff – in what is now its *third attempt* at crafting a cognizable pleading – continues to pursue the blunderbuss strategy of suing every entity and person with any nexus, no matter how attenuated, to its reinsurance relationship with Alpha. Plaintiff has plodded ahead on this path, even though most of the defendants named in this action, including the SRC Defendants, are *not in privity* with Plaintiff and owe *no duty whatsoever* to Plaintiff. Undeterred by this lack of privity, Plaintiff has

---

[1]   "SRC" is an acronym intended to refer to Mr. **S**olow, **R**egatta and **C**ygnet.

purported to leverage off claims under the Racketeer Influenced Corrupt Organizations Act ("RICO") – which comprise 199 paragraphs of Plaintiff's 60-page, 265-paragraph amended pleading.  But the group-pleaded and conclusory allegations underlying the RICO claims do not even come close to meeting the particularity requirements of Rule 9(b), by which these claims are governed because they sound in fraud.

As a threshold matter, the misguided hopes Plaintiff has pinned on its RICO claims, Counts Five through Seven of the SAC (the "RICO Claims"), must be dashed under the Private Securities Litigation Reform Act of 1995 ("PSLRA"), 18 U.S.C. § 1964(c), which bars a RICO claim premised, as here, on *any* conduct that could be actionable as securities fraud.  Here, defendants' alleged fraud in connection with the nature and diminishing value of the "Purchased Securities" in the reinsurance trust account maintained by Alpha for Plaintiff's benefit lies at the heart of the predicate acts underlying Plaintiff's RICO claims.  In fact, last year, shortly after it filed its initial pleading in this action, Plaintiff called this Court's attention to an Order in which the Securities and Exchange Commission (the "SEC") found that defendants, Mark Graham (Mr. Graham") and his entities, Blue Alternative Asset Management LLC ("BAAM"), and Blue Capital Management, Inc. ("BCM") (BAAM and BCM are referred to herein as the "Blue Entities"), had violated various sections of the Investment Advisers Act of 1940 by engaging in "a scheme to defraud" Plaintiff's trust account by, *inter alia*, making "false statements" as to the value of the "purchased securities" collateralizing that account.  (*See, e.g.*, SEC Order dated September 6, 2018 at ¶¶ 20, 21, 23, a copy of which is annexed as **Exhibit A** to the Gordon Declaration.)[2]  Plaintiff told the Court that the "misconduct" at issue in the SEC Order is "***the basis for . . . [the SAC] in this action***" (*see* Dkt. No. 56 at p. 2 (emphasis in original).)  As such, consistent with Plaintiff's own judicial admission, the RICO Claims are barred under the PSLRA because they are premised on alleged fraud involving the purchase or sale of securities.

---

[2]  "Gordon Declaration" or "Gordon Decl." refers to the Declaration of Michael S. Gordon in Support of the SRC Defendants' Motion to Dismiss Counts Two Through Eight and Eleven of the SAC, dated February 5, 2019.

Separate and apart from the PSLRA bar, the RICO Claims, as against the SRC Defendants, must be dismissed, because the SAC's vague, group-pleaded allegations fail to comply with the particularity requirements attendant to pleading wire fraud, and, under section 1962(c), fail to show that (i) Mr. Solow or Regatta engaged in a "pattern" of racketeering activity, and (ii) Regatta, along with defendants, Alpha and the Blue Entities – all of which are alleged to be RICO "enterprises" – functioned as a "continuing unit" for RICO purposes. Further, Plaintiff has not met its burden of alleging a RICO conspiracy under section 1962(d), because it has not shown that each of the SRC Defendants entered into an agreement to commit at least two predicate acts under section 1961, no less that these were "injury-causing overt acts," *see infra*. Nor has Plaintiff alleged a cognizable claim for investment of racketeering income under section 1962(a), because the SAC fails to show that whatever compensation that may have been paid to Mr. Solow and Regatta was derived from a pattern of racketeering activity or used in an alleged RICO enterprise.

Like the three deficient RICO claims, the five common law claims (Counts Two through Four, Eight and Eleven, referred to herein as the "Common Law Claims") against the SRC Defendants turn on the same non-particularized, group-pleaded allegations, and thus must fail. With respect to Count Two for aiding and abetting the breach of a fiduciary duty, this claim cannot survive this motion because none of Alpha, BAAM, or Mr. Graham owed a fiduciary duty to Plaintiff – and even if they did, the SAC fails to demonstrate, as it must, that each of the SRC Defendants had *actual* knowledge of, or substantially assisted in, any alleged fiduciary breach. Regarding the claims for fraud (Count Three); aiding and abetting fraud (Count Four); and civil conspiracy to commit fraud (Count Eight), the SAC similarly fails to allege with particularity that any of the SRC Defendants made a material misrepresentation or omission of fact to Plaintiff and/or had a *duty* to alert Plaintiff about material facts, such as the alleged losses in Plaintiff's reinsurance trust account. As such, the SAC's numerous allegations that the SRC Defendants withheld or concealed such information from Plaintiff are insufficient to demonstrate fraudulent intent. Last, the unjust enrichment claim (Count Eleven) must

be dismissed because there are no facts showing that the SRC Defendants were enriched at Plaintiff's expense, or that there was an actual, substantive relationship between Plaintiff and the SRC Defendants, which this Court has deemed to be a prerequisite to alleging a cognizable unjust enrichment claim.

Accordingly, for all these reasons and those set forth below, the SRC Defendants respectfully ask this Court to dismiss all eight claims against them, with prejudice.

## STATEMENT OF FACTS

**The SRC Defendants**.  Plaintiff is a Utah-domiciled insurance company that sells life insurance and annuities that fund pre-arranged funeral plans (SAC ¶ 2.)  Mr. Solow, a New Jersey resident, is the sole owner of Regatta, a company with its principal place of business in New Jersey (*id.* ¶¶ 10, 14, 41.) Cygnet is a Delaware statutory trust, with Series 2011-A, Series 2011-C, and Series 2013-A constituting its separate series (*id.* ¶¶ 15-18.)[3]  The SAC erroneously alleges that Mr. Solow and/or Regatta "own" the assets in the various Series of the Cygnet Master Trust (*id.* ¶¶ 41, 70), which allegation is belied by the plain language of the Repurchase Agreement annexed to the SAC as Exhibit D, *see infra*.

**The Contracts Governing this Dispute**:  Because its remedies are governed by the contracts it executed with defendants, Alpha and Wilmington Savings Fund Society, FSB (which, along with defendant Christiana Trust, is referred to herein as "WSFS"), Plaintiff purports to spin a tale of "systematic breaches of fiduciary duty, fraud and other misconduct" (*id.* ¶ 1) in the hopes of casting as wide a liability net as possible over parties, including the SRC Defendants, with whom Plaintiff is not in privity.

---

[3]   The SAC also alleges that Mr. Solow (along with Mr. Graham) had "significant interests" in Alpha (*id.* ¶ 79), which is inconsistent with the allegations that (i) defendants, John Drake, Edward Brendan Lynch and Gregory Tolaram, the former directors of Alpha, through their ownership interests in defendants, Alpha Re Holdings (Cayman) Limited and Atlantic Specialty Finance, "owned 100% of the *preferred* shares of Alpha with 80.2% of the vote" in Alpha (emphasis added), and (ii) each of Mr. Solow and Mr. Graham held a minority (9.9%) voting interest, with Mr. Solow holding 40%, and Mr. Graham holding the majority 60% share, of Alpha's *common* stock (*Id.* ¶ 65.)  The SAC never demonstrates any nexus between the alleged nondisclosure of Mr. Solow's minority (9.9%) voting and (40%) common share interests in Alpha and Plaintiff's alleged damages.

**The Coinsurance Agreement**.  Plaintiff entered into a coinsurance agreement with Ability Reinsurance (Bermuda) Limited ("Ability Re") in 2009 (*id.* ¶ 2 and Ex. A.)  In June 2012, Alpha replaced Ability Re as Plaintiff's reinsurer, pursuant to a novation agreement (*id.* ¶ 2 and Ex. B) that modified the original coinsurance agreement with Ability Re (the coinsurance agreement, as amended by the novation agreement, is referred to herein as the "Coinsurance Agreement.")  Under the Coinsurance Agreement, Alpha reinsured certain of Plaintiff's insurance policies, pursuant to which Alpha agreed to establish a trust account (the "Trust Account"), to enable Plaintiff "to obtain statutory statement credit, as a deduction from reserve liabilities, for the business ceded" to Alpha.  (*Id.* ¶ 61 *quoting* Ex. A, §12.02.)  Alpha agreed to fund this Trust Account in the amount of 102% of Alpha's reserve obligations under the Coinsurance Agreement (*id.* ¶ 61 *citing* Ex. A, § 12.03(b).)  The Trust Account was funded at the outset with $153 million that Alpha had received from Ability Re (*id.* ¶ 64.)  None of the SRC Defendants is a signatory to, or mentioned in, the Coinsurance Agreement.

**The Trust Agreement**.  In July 2012, Plaintiff, as beneficiary; Alpha, as grantor; and defendant, WSFS, as trustee, entered into an Amended & Restated Trust Agreement (the "Trust Agreement"), that identified BAAM as the "investment manager" (*id.* ¶ 67 and Ex. C, § 4(b)) for the Trust Account assets. The Trust Agreement, to which Plaintiff is a party (and BAAM is not), expressly provides that BAAM acted as "the agent of" and "on behalf of" ***Alpha only*** (*id.* Ex. C, § 4(b).)  The Trust Agreement required BAAM, which is owned and controlled by Mr. Graham (SAC ¶ 3), to invest in "admitted assets under the Utah Insurance Code, and Eligible Securities" (*id.* ¶ 66 and Ex. C, § 1(c)), pursuant to investment guidelines set forth in the Trust Agreement (the "Investment Guidelines") (*id.* Ex. C, pp. 86-87.)  And Alpha agreed (i) to use "commercially reasonable efforts" to ensure that the assets in the Trust Account conformed to the Investment Guidelines (*id.* Ex. C, § 1(c)) and (ii) to retain a qualified independent securities valuation firm to appraise the value of the securities in the Trust Account (*id.* Ex. C, § 4(j).) None of the SRC Defendants is a signatory to, or mentioned in, the Trust Agreement.

**The Repurchase Agreement**.  In September 2012, BAAM invested $148 million of Trust Account proceeds pursuant to a repurchase agreement (the "Repurchase Agreement") between the Cygnet Master Trust, acting solely with respect to Series 2011-C, and WSFS, as trustee of Plaintiff's Trust Account.  (*Id.* ¶ 70 and Ex. D.)  Under this Agreement, Series 2011-C agreed to sell certain assets to the Trust Account and "repurchase them in the future at a set price plus interest," and the Trust Account agreed "to buy those assets and then sell them back to" Series 2011-C 364 days later.  (*Id.* ¶¶ 71, 72, 75.) The Repurchase Agreement identifies WSFS "as Trustee of the Master Trust and as Custodian" of its assets and identifies Regatta – which is not a signatory to the Repurchase Agreement – "as Series Depositor and as Trust Depositor . . ." (*Id.* Ex. D, ¶ 2(f).)  The Agreement expressly provides that Series 2011-C's obligations to WSFS "shall be recourse solely to the 'Series Assets' . . . and specifically shall not be recourse to the assets of . . . [Regatta, WSFS] . . . or any other Series of the Master Trust" (*id.*, Ex. D, ¶ 2(h).)  ***This distinction between the Series Assets, on the one hand, and Regatta's assets, on the other, contradicts the SAC's allegation that Regatta or Mr. Solow "owns" Series 2011-C*** (*id.* ¶ 70.) Moreover, the SAC repeatedly alleges that other defendants, such as BAAM, exercised unilateral control over these assets (*see*, *e.g.*, *id.* ¶¶ 93, 98, 108-09), which belies Regatta's ownership thereof.

**The SAC's Deficient Allegations Against the SRC Defendants**.  The SAC's fraud-based claims are largely premised upon group-pleaded, non-particularized allegations that, a group of defendants, including the SRC Defendants, represented to Plaintiff "that the collateral backing the Repurchase Agreements were properly valued and appropriate; specifically, cash and U.S. Treasury securities," (*id.* ¶ 80.)  It is further alleged that these defendants "knew" that the value of these assets was significantly lower than that reflected on the Trust Account statements that Plaintiff received from WSFS, yet failed to "alert" Plaintiff of the same (*id.* ¶¶ 92, 102.)  However, the SAC fails to allege facts demonstrating how, when, or to what extent, any or all the SRC Defendants knew about this alleged asset shortfall.  And, more importantly, the SAC fails to allege that the SRC Defendants had any duty or obligation to alert Plaintiff

of this asset shortfall – which is not surprising considering that only Alpha assumed a contractual obligation to use "commercially reasonable efforts" to ensure that the assets in the Trust Account were invested in "Eligible Securities" under the Utah Insurance Code (*id.* ¶ 61 and Ex. C, § 1(c)) and to obtain an appraisal of their value from an independent securities valuation firm (*id.* ¶ 94 and Ex. C, § 4(j).)

The SAC contains newly minted allegations that, in December 2016, defendant Ability Insurance Company ("Ability") ceded 40% of its business to Vista Life & Casualty Reinsurance Company ("Vista Re"), a U.S. based reinsurer allegedly owned by Mr. Solow, and that this occurred one month after Ability "caus[ed] the transfer" of $109 million from Series 2011-C.  (*Id.* ¶¶ 53, 116, 124.)  The SAC alleges that Ability transferred this $109 million to a Wells Fargo account that it controls (*id.* ¶ 126) and that only defendants Ability, Advantage Capital Holding LLC ("ACH"), Dan Cathcart ("Mr. Cathcart") and Kenneth King ("Mr. King") have "retain[ed]" and "benefited financially" from these funds. (*Id.* ¶ 246.) As such, the SAC fails to establish any link or nexus between Plaintiff's alleged Trust Account losses, on the one hand, and the ceding of 40% of Ability's business to Vista Re, on the other.

**Plaintiff's Inability to Enforce its Judgment Against Alpha**.  On November 29, 2017, in an arbitration commenced by Plaintiff, the panel entered an award requiring Alpha to post to the Trust Account more than $131 million in cash and/or U.S. Treasury securities as "pre-hearing security" (*id.* ¶ 155-56), which amount Alpha was unable to post (*id.* ¶ 160.)  Thereafter, Alpha placed itself into voluntary liquidation, and then was placed into court-supervised liquidation in the Cayman Islands.  (*Id.* ¶¶ 163-64.) Plaintiff has not been able to collect its award against Alpha, which was converted to a final judgment in the Southern District (*id.* ¶¶ 157-60); yet, in this action, Plaintiff seeks to hold third-parties, like the SRC Defendants, with which it is not in privity, responsible for its contract-based judgment against Alpha.

## ARGUMENT

The SAC contains myriad pleading deficiencies that necessitate dismissal of all claims against the SRC Defendants under Rule 12(b)(6).  The allegations against them are group-pleaded, conclusory, and

offer only a "formulaic recitation of the elements." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). [4]  They fall woefully short of the notice and particularity requirements under Rules 8(a) and 9(b), respectively, as well as RICO's technical pleading standards, and therefore should all be dismissed with prejudice as to the SRC Defendants.

## I.       PLAINTIFF'S RICO CLAIMS MUST BE DISMISSED

The RICO Claims alleged at Counts Five through Seven of the SAC are hopelessly flawed.  As a threshold matter, these claims are barred because the predicate acts underlying the claims could be actionable as securities fraud, and thus are precluded by the PSLRA.  Further, the RICO Claims fail to allege a pattern of racketeering, or a RICO enterprise, under section 1962(c), a RICO conspiracy under section 1962(d), and/or use of the proceeds of racketeering income under section 1962(a).

### A.       The RICO Claims are Barred by the PSLRA

The Court need not consider whether Plaintiff has met the stringent RICO pleading requirements (which it has not), because the PSLRA bars the RICO Claims in their entirety.  Section 107 of the PSLRA amended RICO in 1995 to ensure that "no person may rely upon any conduct that would have been actionable as fraud in the purchase or sale of securities to establish a violation of [RICO] section 1962." 18 U.S.C. § 1964(c).  Yet this is what Plaintiff attempts here.  Indeed, the purchase or sale of securities is central to the fraud alleged in the SAC, including the predicate acts underlying the RICO Claims which include the allegations that  (i) defendants misrepresented to Plaintiff that the Trust Account assets were invested in "Eligible Securities" under Utah's Insurance Code, *e.g.*, U.S. Treasuries, when these assets were invested in "risky" securities (*see*, *e.g.*, SAC, ¶¶ 74, 89, 91, Ex. B ¶ 15 and Ex. C, § 1(c)); and (ii) defendants concealed or failed to "alert" Plaintiff as to the diminution in value of the "Purchased

---

[4]   The SAC should be dismissed pursuant to Rule 12(b)(6), because it does not contain sufficient allegations of fact to state a claim for relief that is "plausible on its face." *Twombly*, 550 U.S. at 570.  Plaintiff's "[f]actual allegations must be enough to raise a right to relief above the speculative level," *id.* at 555, which the SAC's allegations fail to do.  A plaintiff's obligation to provide the grounds of its entitlement to relief requires more than labels and conclusions, and, as is the case with the SAC's allegations, a formulaic recitation of the elements of a cause of action will not do.  *Id.*

Securities" in which the Trust Account assets were invested (*see* SAC ¶¶ 73, 83, 86, 92-93, 98, 202(f), (g) and (h)).

In fact, alleged fraud in the purchase or sale of securities is such an integral component of the RICO Claims that Plaintiff asked this Court to take judicial notice of an SEC Order, dated September 6, 2018 (Gordon Decl., Ex. A) in which the SEC found, *inter alia*, that Mr. Graham and the Blue Entities had: (i) "engaged in a scheme to defraud" Plaintiff's Trust Account by, *inter alia*, making "false statements" as to the value of the "purchased securities" collateralizing the account (*Id.* ¶¶ 20, 21, 23); and (ii) engaged in improper redemptions from the Blue Elite Fund, Ltd. ("BEF Ltd.") and the Blue II Fund, Ltd. ("B2 Ltd.") "to avoid detection of the Asset Shortfalls" in Plaintiff's Trust Account (*id.* ¶¶ 26-27.)[5]  Plaintiff told the Court that the "misconduct" at issue in the SEC Order is "***the basis for . . . [the SAC] in this action***" (*see* Dkt. No. 56 at p. 2 (emphasis in original)).  Plaintiff's admission confirms that the RICO Claims are barred in their entirety because they are premised, at least in part, on conduct that is, or could be, actionable as securities fraud.  *See In re LIBOR–Based Fin. Instruments Antitrust Litig.*, 935 F.Supp.2d 666, 731 (S.D.N.Y. 2013) (holding that "plaintiffs' RICO claim, in its entirety, is barred by the PSLRA" where, as here, "some of the alleged predicate acts could have been grounds at least for a securities fraud action brought by the SEC.")

To be sure, courts in this Circuit broadly interpret the PSLRA bar to RICO to "prevent litigants" – like Plaintiff – "from using artful pleading to boot-strap securities fraud cases into RICO cases, with their threat of treble damages."  *MSLMK Inv. Co. v. JP Morgan Chase & Co.*, 651 F.3d 268, 274 (2d Cir. 2011) (citation omitted).  Where, as here, an alleged RICO scheme is predicated on fraud, the dispositive

---

[5] The SEC found that Mr. Graham's and the Blue Entities' conduct constituted violations of Sections 206(1), (2), (4) and 207 of the Investment Advisers Act of 1940.  (Gordon Decl., Ex. A ¶¶ 32-35) and directed Mr. Graham and the Blue Entities to pay approximately \$2.5 million in disgorgement, prejudgment interest and a civil penalty (*id.* at p. 11, subparagraph E), the proceeds of which (minus a reserve for taxes and related administrative expenses), have been, or will be, distributed to ***Plaintiff's Trust Account*** in order "to compensate [Plaintiff's Trust Account] for losses it suffered to which [Mr. Graham's and the Blue Entities'] conduct contributed" (*see* Order Directing Payment of Certain Funds Received by Commission ("SEC Payment Order") at p. 1, which is attached as **Exhibit B** to the Gordon Declaration.)  As with the SEC Order, this Court can take judicial notice of the SEC Payment Order (*see* Fed. R. Evid. 201(b).)

inquiry is whether that fraud involves the purchase and sale of securities. *Stechler v. Sidley, Austin Brown & Wood, L.L.P.*, 382 F. Supp. 2d 580, 597-98 (S.D.N.Y. 2005). If just "one predicate act" in the alleged RICO scheme satisfies this inquiry, "the whole scheme is subject to the PSLRA bar." *Gilmore v. Gilmore,* 2011 WL 3874880, at * 6 (S.D.N.Y. Sept. 1, 2011) (citations omitted). Here, there are numerous alleged predicate acts underlying the RICO Claims which involve a securities trade, and that (apparently) would have constituted grounds for a securities fraud action as evidenced by the SEC Order, such as (i) alleged false statements concerning the composition and value of the "Purchased Securities" backing the Repurchase Agreement (SAC ¶¶ 80-83, 86, 93, 98-102, 202(f), (g)), (ii) alleged false statements concerning the purchase of U.S. Treasury securities (*id.* ¶¶ 74, 89), and (iii) alleged improper redemptions to provide liquidity for Series 2011-C (*id.* ¶¶ 108-09.) Accordingly, because these alleged predicate acts would have been actionable as securities fraud, the PSLRA bars the RICO Claims in their entirety.

### B.       Plaintiff Fails to Meet the RICO Pleading Requirements

Separate and apart from being barred by the PSLRA, the RICO Claims fail to meet any of the stringent RICO pleading requirements. As an initial matter, Rule 9(b) governs the heightened pleading requirements for RICO Claims where, as here, the allegations primarily rest upon predicate acts of wire fraud. *See S.Q.K.F.C., Inc. v. Bell Atl. TriCon Leasing Corp.*, 84 F.3d 629, 633-34 (2d Cir. 1996). Plaintiff never comes close to meeting this exacting pleading burden as to the SRC Defendants.

### 1.       Count Five Must Be Dismissed Because Plaintiff Fails to Allege a Pattern of Racketeering Under Section 1962(c)

To allege a claim under section 1962(c), Plaintiff must plead with particularity that Mr. Solow and Regatta participated in the conduct, of an enterprise, through a pattern, of racketeering activity. 18 U.S.C. § 1964(c); *see also DeFalco v. Bernas*, 244 F.3d 286, 306 (2d Cir. 2001). Plaintiff has not satisfied any of these elements in the allegations regarding Mr. Solow or Regatta.

First, Plaintiff alleges, in group-pleaded fashion, that Mr. Solow and Regatta, among others, engaged in racketeering activity through predicate acts of wire fraud. (SAC ¶¶ 201-02.) This Count is

properly dismissed because, as argued in Point II.B.1, *infra*, Plaintiff has failed to plead the requisite scienter to establish that Mr. Solow or Regatta had the intent to defraud Plaintiff.  Moreover, because wire fraud is alleged, the SAC must allege with particularity – which it does not – "the time, place, speaker, and sometimes even the content of the alleged misrepresentations" via the wires.  *Luce v. Edelstein*, 802 F.2d 49, 54 (2d Cir. 1986).  Instead, the SAC alleges in a conclusory manner, *inter alia*, that Mr. Solow misrepresented or failed to disclose to Plaintiff the nature and value of the assets backing the Repurchase Agreement "[o]n many occasions" (*id.* ¶ 85), "in a series of conversations" (*id.* ¶ 74) and/or "on multiple occasions via in-person meetings, telephone calls, and emails [along with Mr. Graham]" (*id.* ¶ 121.)  These allegations do not state, as they must, the date, place or specific content of Mr. Solow's or Regatta's representations.  On this basis alone, Count Five must be dismissed as to them.

Second, the SAC fails to allege a viable RICO "enterprise" in which Mr. Solow and/or Regatta participated.  In the SAC, defendants, like Regatta, are alleged to be both a RICO "enterprise" (along with Alpha and the Blue Entities) and a RICO "person" that conducted the affairs of the enterprise. (*See*, *e.g.*, SAC ¶ 189-90, alleging, that Regatta, among others, is a RICO "person" and a RICO "enterprise," and *id.* ¶¶ 5, 92 and 102, alleging that Regatta, among others, conducted the affairs of the enterprise by, *inter alia*, "depleting the funds in the Trust Account" and by failing to "alert" Plaintiff of the asset shortfall in Series 2011-C.)  These enterprise allegations must fail because a corporate entity like Regatta "may not be simultaneously the 'enterprise' and the 'person' who conducts the affairs of the enterprise through a pattern of racketeering activity."  *Bennett v. U.S. Trust Co.*, 770 F.2d 308, 315 (2d Cir. 1985).

Moreover, the SAC fails to show, as it must, that the persons in the enterprise "function[ed] as a continuing unit." *Foster v. 2011 Real Estate*, 2015 WL 7587360, at *4 (S.D.N.Y. Nov. 24, 2015)  (citing cases).  To the contrary, the SAC alleges instances of defendants other than Regatta or Mr. Solow acting *unilaterally* in conducting the alleged affairs of the enterprise(s), *see infra* Point II.B.1.  Mr. Solow and Regatta are only alleged to have exercised control over Trust Account assets in improperly vague, group-

pleaded allegations that fail under Rule 9(b) (SAC ¶¶ 80, 202(f)-(h)) (and such control also is belied by the allegations of the SAC and the terms of the Repurchase Agreement, *see supra* and *id.* Ex. D, ¶ 2(h).)

Third, the SAC also fails to plead that Mr. Solow or Regatta engaged in a "pattern" of racketeering activity, which is fatal to the section 1962(c) claim. A pattern can either be "open-ended," meaning the racketeering acts "pose[] a threat of continuing criminal conduct beyond the period during which the predicate acts were performed," or "close-ended," meaning there is no continuing threat, but still requiring that the pattern existed over a "substantial period of time." *Spool v. World Child Int'l Adoption Agency*, 520 F.3d 178, 183 (2d Cir. 2008). Here, there is no open-ended pattern because the alleged scheme has ended: Alpha is in liquidation, and Mr. Graham and the Blue Entities are barred, for at least three years, from acting as investment managers (Gordon Decl., Ex. A.) As such, there is no threat of continuing criminal conduct. Nor is there a close-ended pattern, since it is not alleged with particularity that Mr. Solow or Regatta committed at least two predicate acts in a span of two years. *See Cont'l Petroleum Corp., Inc. v. Corp. Funding Partners, LLC*, 2012 WL 1231775, at *7 (S.D.N.Y. Apr. 12, 2012) (courts in this Circuit have "never found a close-ended pattern where the predicate acts spanned fewer than two years") (citation omitted). The SAC instead alleges, in group-pleaded and conclusory fashion, that Mr. Solow and Regatta committed predicate acts of wire fraud from 2012 to 2018 (SAC ¶¶ 74, 85, 121, and 201), without providing any indication as to how many such acts occurred during this time frame and when, specifically, they occurred. These types of vague, non-particularized allegations make it impossible to discern if the racketeering continued for more than two years, and thus do not meet the closed-ended continuity requirement for pleading RICO. *Spool*, 520 F.3d at 184-85. As such, as to Mr. Solow and Regatta, the SAC fails to allege a pattern of racketeering activity for purposes of section 1962(c).

For all these reasons, Count Five must be dismissed as to Mr. Solow and Regatta.

### 2.    Count Seven Must Be Dismissed Because Plaintiff Does Not Allege a RICO Conspiracy Under Section 1962(d) as to Any SRC Defendant

Because the PSLRA bars the section 1962(c) claim and Plaintiff otherwise has failed to allege that

4813-5754-0486

Mr. Solow or Regatta participated in the conduct, of an enterprise, through a pattern, of racketeering activity, the section 1962(d) RICO conspiracy claim (Count Seven), which is asserted against all the SRC Defendants, must also be dismissed. *Neiman Marcus Grp., Inc. v. Dispatch Transp. Corp.*, 2011 WL 1142922, at *9 (S.D.N.Y. Mar. 17, 2011) ("A § 1962(d) conspiracy claim must be dismissed where the substantive RICO claim is deficient."). In any event, the SAC fails to sufficiently plead that any of the SRC Defendants entered into an agreement to commit at least two predicate acts, as is required, but instead offers only insufficient conclusory allegations that the SRC Defendants "agreed" to "misappropriat[e]. . . funds" (SAC ¶ 217) from Plaintiff or to "protect" the alleged fraud (*id.* ¶ 218.) *See Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Young*, 1994 WL 88129, at *30 (S.D.N.Y. Mar. 15, 1994) (citing cases); *Lesavoy v. Lane*, 304 F. Supp. 2d 520, 535 (S.D.N.Y. 2004). Further, the SAC's allegation "***[u]pon information and belief***" that the Cygnet Entities, among others, agreed to further the RICO conspiracy (SAC ¶ 218) is woefully insufficient to sustain a RICO conspiracy claim. *See, e.g., Morin v. Trupin,* 711 F. Supp. 97, 111 (S.D.N.Y. 1989) (dismissing section 1962(d) claim pleaded upon "information and belief"); *In re Thomson McKinnon Secs. Inc.*, 147 B.R. 330, 333-34 (S.D.N.Y. 1992) (same).

Moreover, Plaintiff has not adequately alleged any "overt acts" by the SRC Defendants that caused injury to Plaintiff, which is a requirement for a section 1962(d) claim. *See Hecht v. Commerce Clearing House, Inc.*, 897 F.2d 21, 25 (2d Cir. 1990) (holding that injury from an overt act is necessary to sustain a RICO conspiracy claim because "an agreement to commit predicate acts . . . cannot by itself cause any injury"). Here, the SAC is devoid of "injury-causing overt acts" committed by any of the Cygnet Entities, and the group-pleaded allegations that Mr. Solow and Regatta made representations or failed to make disclosures regarding the nature and value of Trust Account assets, *see* Point I.B.1, *supra*, fall far short of constituting "injury-causing overt acts" that also are predicate acts under section 1961 – no less pleaded with sufficient particularity under Rule 9(b). *Id.*

Accordingly, Count Seven must be dismissed as to the SRC Defendants.

4813-5754-0486

**3.      Count Six Must Be Dismissed Because Plaintiff Does Not Allege a
Claim for Investment of Racketeering Income under Section 1962(a)**

Section 1962(a) prohibits any person who has received income from racketeering "to use or invest, directly or indirectly, . . . the proceeds of such income, in acquisition of any interest in, or the establishment or operation of, any enterprise which is engaged in, . . . interstate or foreign commerce." 18 U.S.C. § 1962(a).  As a threshold matter, this section 1962(a) claim must fail because Plaintiff has not stated an underlying section 1962(c) violation, *see supra* Point I.B.1.  *See Oak Beverages, Inc. v. Tomra of Mass., L.L.C.*, 96 F. Supp. 2d 336, 349 (S.D.N.Y. 2000) (a pattern of racketeering is necessary to establish a violation of section 1962(a)).  Also, the SAC alleges in conclusory fashion that Mr. Solow and Regatta reinvested proceeds into the alleged RICO enterprises, which is legally insufficient.  *See 4 K&D Corp. v. Concierge Auctions, LLC*, 2 F. Supp. 3d 525, 545 (S.D.N.Y. 2014).  Moreover, the SAC does not allege that whatever compensation was paid to Mr. Solow and Regatta for "purported services" (SAC ¶¶ 103-05) was derived from the alleged pattern of racketeering activity.  These pleading omissions are fatal and, thus, Count Six must be dismissed as to Mr. Solow and Regatta.  *See 4 K&D Corp.*, 2 F. Supp.3d at 543.

## II.     THE COMMON LAW CLAIMS – COUNTS TWO, THREE, FOUR, EIGHT AND ELEVEN – MUST BE DISMISSED

This Court must dismiss the five Common Law Claims as against the SRC Defendants, four of which sound in fraud – Count Two for aiding and abetting the breach of a fiduciary duty, Count Three for fraud, Count Four for aiding and abetting a fraud, and Count Eight for "civil conspiracy to commit fraud" – and one of which sounds in equity, *i.e.*, Count Eleven for unjust enrichment.  Like the fatally deficient RICO Claims, these Common Law Claims turn on the same non-particularized, group-pleaded allegations, and therefore they must be dismissed.

### A.      Count Two for Aiding and Abetting a
### Breach of Fiduciary Duty Must Be Dismissed

The SAC alleges that the SRC Defendants aided and abetted breaches of fiduciary duties by Alpha, BAAM, and Mr. Graham.  (SAC ¶¶ 166-77).  Because these entities do not owe a fiduciary duty

to Plaintiff, Count Two cannot survive this motion, and even if these entities did owe Plaintiff a fiduciary duty, Plaintiff has not come close to pleading a cognizable aiding and abetting claim against the SRC Defendants.

> ### 1.   Count Two Cannot Survive Because Plaintiff Has Failed to State a Claim for the Breach of a Fiduciary Duty by Any of Alpha, BAAM, or Mr. Graham

As a threshold matter, Count Two for aiding and abetting the breach of a fiduciary duty must fail because none of Alpha, BAAM, and/or Mr. Graham ever owed a fiduciary duty to Plaintiff:

**Alpha**:  The SAC alleges that Alpha owed Plaintiff a fiduciary duty as its "reinsurer."  (*Id.* ¶ 166.) But, New York law provides that arms-length reinsurance agreements, like the Coinsurance Agreement at issue here, do ***not*** give rise to an express or implied fiduciary duty between the reinsurer (Alpha) and the ceding company (Plaintiff).  *See, e.g., Christiania Gen. Ins. Corp. of N.Y. v. Great Amer. Ins. Co.*, 979 F.2d 268, 280-81 (2d Cir. 1992) (applying New York law).  And the Trust Agreement's requirement that Alpha use "commercially reasonable efforts" to ensure that the assets in the Trust Account conformed to the Investment Guidelines therein (SAC Ex. C, § 1(c)) does not give rise to a fiduciary relationship between Alpha and Plaintiff.  *See, e.g., Spinelli v. Nat'l Football League*, 903 F.3d 185, 193, 207-08 (2d Cir. 2018) (contract requiring party to employ "commercially reasonably efforts" did not create "relation of confidence or trust sufficient to find the existence of a fiduciary relationship" under New York law).[6]

**BAAM and Mr. Graham**:  Conflating Mr. Graham with BAAM, the SAC alleges that both owed fiduciary duties to Plaintiff as "investment manager" for the Trust Account.  (SAC ¶ 167.)  However, only BAAM was appointed as investment manager of the Trust Account (*id.* ¶¶ 67, 78), and the Trust Agreement, to which Plaintiff is a party (and BAAM is not), expressly provides that BAAM acted as "the agent of" and "on behalf of" ***Alpha only*** (*id.* Ex. C, § 4(b).)  Given Plaintiff's agreement that BAAM was

---

[6]   Even though the Trust Agreement is governed by Delaware law (SAC, Ex. C, § 9), the SAC alleges that Alpha's fiduciary duties arose from its role as "reinsurer" under the Coinsurance Agreement, which is governed by New York law (*see id.* ¶ 166 and Ex. A, § 15.03.)

Alpha's agent, there can be no basis from which to infer that BAAM owed any fiduciary duty to Plaintiff. In any event, it is well-settled under New York law that investment managers owe no fiduciary duties to the beneficial owners of the underlying assets. *See Oddo Asset Mgmt. v. Barclays Bank PLC*, 19 N.Y.3d 584, 593-94 (2012).

Similarly, there is no implied fiduciary duty owed by Mr. Graham (or BAAM) to Plaintiff. (SAC ¶ 168). Under New York law, implied fiduciary duties may arise only where there is a duty to act for, or to give advice for, the benefit of another. *Mueller v. Michael Janssen Gallery Pte. Ltd.*, 225 F. Supp. 3d 201, 205 (S.D.N.Y. 2016). Even though the SAC alleges that Mr. Graham and BAAM owed Plaintiff "a duty of candor and a duty of loyalty" (SAC ¶ 169), no facts are alleged with any particularity from which it could be concluded that Mr. Graham or BAAM had a duty to act for, or give advice for, Plaintiff's benefit, or, indeed, that any type of a relationship of trust existed between them which would give rise to a fiduciary obligation on Mr. Graham's or BAAM's part. With respect to Mr. Graham, Plaintiff alleges that it relied on his representations about the nature of the Trust Account assets (*id.* ¶¶ 74 and 80), which is insufficient to give rise to an implied fiduciary duty.

Hence, because Plaintiff cannot show that any of Alpha, BAAM and/or Mr. Graham ever owed it a fiduciary duty, Count Two for aiding and abetting the breach of a fiduciary duty must fail.

### 2. Even if a Claim for Fiduciary Breach Were Stated, Plaintiff Has Failed to Plead the Requisite Elements for Aiding and Abetting Such a Breach

Even if Alpha, BAAM, and/or Mr. Graham were deemed to owe a fiduciary duty to Plaintiff (which they do not), the SAC fails to allege a cognizable claim against the SRC Defendants for aiding and abetting the breach of such duty. (*Id.* ¶¶ 172-77.)

To state a claim for aiding and abetting a breach of fiduciary duty under New York law, Plaintiff must demonstrate (i) an underlying breach of fiduciary duty, (ii) knowledge of that breach by the aider and abettor, (iii) *substantial assistance* by the aider and abettor in the success of the main breach, and (iv) that the aider and abettor's substantial assistance in the primary wrongdoer's misconduct *proximately*

4813-5754-0486

*caused* plaintiff's injury.  *See SPV Osus Ltd. v. UBS AG*, 882 F.3d 333, 345 (2d Cir. 2018).  Where, as here, the underlying breaches are based on fraudulent conduct, Plaintiff's aiding and abetting claims also must meet Rule 9(b)'s heightened pleading requirements.  *See Marino v. Grupo Mundial Tenedora, S.A.*, 810 F. Supp. 2d 601, 613 (S.D.N.Y. 2011).

Here, Plaintiff has failed to meet any of the pleading requirements necessary to sustain a claim for aider and abettor liability as to the SRC Defendants.  The SAC fails to allege any particularized facts that show that each of the SRC Defendants had **actual** knowledge of a purported fiduciary breach by Alpha, BAAM, and/or Mr. Graham.  For example, the sole non-group pleaded allegation against Mr. Solow that he "well knew" that the Trust Account was not fully funded when speaking to Plaintiff (SAC ¶ 85) falls far short of Rule 9(b)'s requirement that a plaintiff must allege particularized facts in non-conclusory terms that give rise to a "strong inference" that the defendant knew of the breach.  *See Musalli Factory for Gold & Jewelry v. JPMorgan Chase Bank, N.A.*, 261 F.R.D. 13, 20-21 (S.D.N.Y. Mar. 31, 2009).  Further, the SAC's allegations of Mr. Solow's knowledge regarding the composition and value of the Trust Account's assets rest on the erroneous foundation of his alleged "ownership" of Series 2011-C, which is contradicted by the plain language of the Repurchase Agreement (SAC Ex. D, ¶ 2(h)) and many of the SAC's allegations that others exercised unilateral control over these assets, *see infra* pp. 20-21.

Plaintiff also has failed to demonstrate that the SRC Defendants provided "substantial assistance" to Alpha, BAAM, and/or Mr. Graham in their alleged breaches of fiduciary duty, or that such "substantial assistance" proximately caused Plaintiff's injury.  A defendant provides substantial assistance only if they affirmatively assist, help conceal or, by failing to act **when required to do so**, enable the fraud or breach to proceed, <u>and</u> the actions of the aider/abettor proximately cause the harm on which the primary liability is predicated.  *See SPV Osus*, 882 F.3d at 345 (citation omitted).  Here, the SAC group-pleads that the SRC Defendants "assisted in diverting moneys belonging to [Plaintiff] and its Trust Account into investments that benefited themselves" (SAC ¶ 174), but elsewhere alleges that Mr. Graham, BAAM, and

BCM had **exclusive** authority to manage the Trust Account assets (*id.* ¶¶ 73, 78, 93) and engaged in self-dealing (*id.* ¶¶ 106, 108-09).  Further, the SRC Defendants are not alleged to have been involved in creating the Trust Account statements – which are alleged to have been issued only by WSFS (*id.* ¶¶ 5, 81, 88) – or Repurchase Agreement confirmations – which are alleged to have been signed only by WSFS or Mr. Graham (*id.* ¶¶73, 87, 93, 98) – that purportedly misled Plaintiff about the nature and value of the Trust Account assets.  Even if the SRC Defendants somehow knew that Series 2011-C's assets had dropped in value, the SAC fails to establish, as it must, the basis for any duty by them to "alert" Plaintiff as to such diminution in value.  *See Sanford/Kissena Owners Corp. v. Daral Props., LLC*, 84 A.D.3d 1210, 1212-13 (2d Dep't 2011) (unless a fiduciary duty is owed to the plaintiff, defendant's mere silence does not rise to the level of substantial assistance).[7]  Absent any demonstration of a fiduciary breach, substantial assistance in furtherance thereof, or an independent duty to alert, Plaintiff cannot demonstrate that the SRC Defendants' actions proximately caused harm to it and, hence, Count Two for aiding and abetting a fiduciary breach must fail as to the SRC Defendants.  *See SPV Osus*, 882 F.3d at 345.

**B.**      **The Counts for Fraud (Count Three), Aiding and Abetting a Fraud (Count Four), and Civil Conspiracy to Commit Fraud (Count Eight) Must be Dismissed**

**1.**      **Count Three for Fraud Must be Dismissed Because the SAC is Devoid of Particularized Allegations against Mr. Solow or Regatta**

As with the other fraud-based claims, due to irremediable Rule 9(b) pleading deficiencies, Plaintiff has not met its burden on Count Three for fraud as to Mr. Solow or Regatta.  To state a cognizable claim for fraud, Plaintiff must show with particularity under Rule 9(b) that each of Mr. Solow and Regatta: (i) made a material misrepresentation or omission of fact; (ii) with scienter; (iii) with intent to induce reliance; (iv) justifiable reliance; and (v) damages.  *Master Fund Ltd. v. Morgan Guar. Trust Co. of N.Y.*,

---

[7]    Although one who substantially assists a breach of a fiduciary duty may be liable even if they had no independent fiduciary obligation to the plaintiff, where, as here, "mere inaction" is the basis of such "substantial assistance," the alleged aider and abettor must owe a fiduciary duty to the plaintiff.  *See, e.g.*, *Baron v. Galasso*, 83 A.D.3d 626, 629 (2d Dep't 2011).  Here, none of the SRC Defendants is alleged to have owed a fiduciary duty to Plaintiff.

375 F.3d at 168, 187 (2d Cir. 2004).

First, Count Three does not satisfy the notice pleading requirements of Rule 8(a), which require that actions brought against multiple defendants must clearly specify the claims with which each particular defendant is charged. *Targum v. Citrin Cooperman & Co., LLP*, 2013 WL 6087400, at *6 n. 99 (S.D.N.Y. Nov. 19, 2013). The SAC lumps together all defendants and provides only blanket allegations that members of this group collectively misrepresented, *inter alia*, that the assets backing the Repurchase Agreement and in the Trust Account were invested only in cash and U.S. Treasury securities (SAC ¶¶ 74, 80, and 89). The SAC's repeated, vague allegations of Plaintiff's "conversations" with defendants, including Mr. Solow and Regatta, on undated "occasions," often without specifying the mode or place of communication, *e.g.*, telephone, email, in-person (*id.* ¶¶ 74, 85 and 121), does not satisfy Rule 9(b), which requires specification of the time, place, speaker and content of any allegedly fraudulent statements, as well as a sufficient showing of fraudulent intent. *See Estate of Gottdiener v. Sater*, 35 F. Supp. 3d 386, 398 (S.D.N.Y. 2014). Moreover, the SAC's newly-minted allegations about defendant Ability ceding 40% of its business to Mr. Solow's reinsurance company, Vista Re, in December 2016 (*id.* ¶¶ 123-26) is not linked in any cognizable way to the fraud in which Mr. Solow (or Regatta) allegedly participated.

Second, Plaintiff fails to show that either Mr. Solow or Regatta omitted or misrepresented a material fact to Plaintiff. Rather, there are group-pleaded allegations that Mr. Solow and Regatta failed to "alert" Plaintiff about the decline in value of the assets backing the Repurchase Agreement. (*Id.* ¶¶ 92, 95, and 102). As previously demonstrated, *see supra* Point II.A.2, nowhere does the SAC allege any facts to suggest that Mr. Solow or Regatta had a *duty* to alert Plaintiff about such shortfall. *See Mandarin Trading Ltd. v. Wildenstein*, 16 N.Y.3d 173, 179 (2011) (to allege fraud by omission, plaintiff must show defendant had a duty to disclose the relevant fact and failed to do so.) And the allegations that Mr. Solow misrepresented the nature and value of the assets backing the Repurchase Agreement (SAC ¶¶ 74, 85, and 121) are entirely devoid of particularity, such as the dates of, or quotes from, these communications that

4813-5754-0486

19

would make clear what material fact(s), if any, Mr. Solow misrepresented.  *See Amer. Med. Dist. v. Macdonald Tuskey*, 2018 WL 1478301, at *7 (S.D.N.Y. Mar. 23, 2018) (Broderick, J.) (dismissing fraud claims where plaintiff "does not point to any facts showing that [defendant] made knowing misrepresentations to [plaintiff] in an effort to induce any action on the part of [plaintiff].")

      <u>Third</u>, the SAC does not contain facts demonstrating that Mr. Solow or Regatta had the requisite scienter to commit fraud.  Scienter requires a showing of motive and opportunity to commit fraud, or strong circumstantial evidence of conscious misbehavior or recklessness.  *See Novak v. Kasaks*, 216 F.3d 300, 311 (2d Cir. 2000).  To raise a strong inference of scienter through motive and opportunity to defraud, the SAC must show that Mr. Solow and Regatta "benefitted in some concrete and personal way from the purported fraud." *Id.* at 307-08.  Here, the SAC offers only the threadbare, unsupported allegation that, from 2012-2017, the "Alpha Re Reinsurance Trusts" disbursed payments to Mr. Solow and Regatta, among others, in the amounts of $340,000 and $6.3 million, respectively.  (SAC ¶ 104).  The SAC fails to link these payments to the alleged fraud, as it must, to show motive and opportunity and, by extension, scienter.  *See Kalnit v. Eichler*, 264 F.3d 131, 139-40 (2d Cir. 2001).  Moreover, general allegations that a party received compensation, without more, do not demonstrate scienter.  *See Ganino v. Citizens Util. Co.*, 228 F.3d 154, 170 (2d Cir. 2000).

      Plaintiff also attempts to impute scienter to Mr. Solow and/or Regatta based on the erroneous allegation that they "own" Series 2011-C (SAC ¶¶ 70, 85 and 121), which is contradicted by: (i) the Repurchase Agreement's unambiguous differentiation between the "Series Assets," on the one hand, and Regatta's (and WSFS's) assets, on the other (*see id.* Ex. D, ¶ 2(h)); and (ii) the SAC's allegations of other defendants exercising unilateral control over the Trust Account assets, including (a) Mr. Graham, who is alleged to have "directed the movement of moneys linked to [Plaintiff's] Trust Account. . . between entities [he] controlled," such as defendants, BEF Ltd., B2 Ltd., the Blue Elite Fund L.P. ("BEF LP"), and Sancus Capital Blue Credit Opportunities Fund Ltd. ("Sancus") (*id.* ¶¶ 108-09), and is alleged to have

been on both sides of the negotiations of the Trust Account's Repurchase Agreements from 2014-16 (*id.* ¶ 78); (b) WSFS, which is alleged to have generated Trust Account statements containing misinformation about the nature and value of the Trust Account assets (*id.* ¶¶ 5, 81-84, 87-88, 95); and (c) Ability, which is alleged to have transferred to itself $109 million of assets from the Series 2011-C to its bank account at Wells Fargo (*id.* ¶ 125.)  In any event, even if Mr. Solow or Regatta did "own" Series 2011-C, ownership interests, without more, do not create a strong inference of scienter.  *Sloane Overseas Fund, Ltd. v. Sapiens Intern. Corp., N.V.*, 941 F. Supp. 1369, 1377 (S.D.N.Y. 1996).   Similarly, the SAC's conclusory allegations of Mr. Solow's disclaimers – that Mr. Solow told Plaintiff that he "did not know" how Mr. Graham was managing these assets (SAC ¶ 85) and that Mr. Solow and three other defendants told Plaintiff "that the investments were the work of Graham, and outside of their control" (*id.* ¶ 202(h)) – are insufficient to impute scienter to Mr. Solow (or Regatta) with respect to the alleged fraud.

    <u>Fourth</u>, even if Plaintiff adequately alleged that Mr. Solow or Regatta misrepresented or omitted a material fact to Plaintiff – which it has not – Plaintiff still must show its reliance on those representations was justifiable.  *See Standard Sec. Life Ins. Co. of N.Y. v. Berard*, 684 F. App'x 56, 59 (2d Cir. 2017).  Plaintiff's purported reliance on the group-pleaded representation that the assets backing the Repurchase Agreement were invested only in cash and U.S. Treasury securities (SAC ¶¶ 89 and 91) was ***unjustifiable*** considering the Trust Agreement's (i) Investment Guidelines, which allow for investments *other than* cash and U.S. Treasury Securities, including repurchase agreements (*id.* Ex. C, pp. 86-87); and (ii) merger clause, which precludes Plaintiff's reliance on alleged extra-contractual representations as to the composition of Trust Account assets (*id.* Ex. C, §§ 13-14.)  *See Passelaigue v. Getty Images (US), Inc.*, 2018 WL 1156011, at *3 (S.D.N.Y. Mar. 1, 2018) (Broderick, J.) ("[A] party may not justifiably rely on a representation that is specifically disclaimed in a written agreement.")  Moreover, reliance is "unjustifiable," under New York law, "where the fraudulent representation relates to matters that are not peculiarly within the other party's knowledge." *Id.* (internal quotation marks and citation omitted).  Given

the Trust Agreement's provision that *Alpha* would retain a qualified independent securities valuation firm to appraise the value of Trust Account assets (SAC ¶ 94 and Ex C, § 4(j)), it would not have been reasonable for Plaintiff to rely on Mr. Solow's representations regarding the nature and value of the assets.

For all these reasons, Count Three must be dismissed as to Mr. Solow and Regatta.

**2.      Count Four for Aiding and Abetting Fraud Fails to Allege an Underlying Fraud and Knowing Participation Therein, and Thus Must be Dismissed**

Even though, in its recent amendment, Plaintiff swaps out Mr. Solow and Regatta for the four Cygnet Entities in Count Four for aiding and abetting fraud, this swap is unavailing because Plaintiff still has failed to meet the pleading requirements for this claim.  As with a claim for aiding and abetting a fiduciary breach, *see supra* Point II.A.2, to state a claim for aiding and abetting fraud, Plaintiff must show with particularity: (i) the existence of an underlying fraud; (ii) knowledge of this fraud on the part of the aider and abettor; and (iii) substantial assistance by the aider and abettor. *Rosner v. Bank of China*, No. 06 CV 13562, 2008 WL 5416380, at *4 (S.D.N.Y. Dec. 18, 2008).  The SAC fails on all fronts.

Even if Plaintiff had pleaded an underlying fraud – which it has not, *see supra* Point III.B.1 – the SAC fails to allege *any* role played or action taken by the Cygnet Master Trust, Series 2011-A and/or Series 2013-A in aiding and abetting this fraud, instead lumping all the Cygnet Entities into group-pleaded allegations in contravention of Rules 8(a) and 9(b).  (SAC ¶¶ 183-86.)  And while there are allegations as to monies being moved to and from Series 2011-C, Plaintiff has not shown that this Series, or any of the other Cygnet Entities, *knew* about the alleged fraud, since none of these entities is alleged to have invested the Trust Account assets or communicated with Plaintiff about their nature and value (as demonstrated in Point II.A.2 above).  Further, the SAC does not plead substantial assistance, which requires a showing that each of the Cygnet Entities "affirmatively assist[ed], help[ed] conceal, or by virtue of failing to act *when required to do so* enable[d] the fraud to proceed," and that "the actions of the aider/abettor proximately caused the harm on which the primary liability is predicated. *Rosner*, 2008 WL 5416380, at *5 (emphasis added).  There are no particularized allegations that the Cygnet Entities actively concealed

4813-5754-0486

anything from, or had a duty to make disclosures to, Plaintiff.  All that is alleged is that WSFS, Mr. Graham and the Blue Entities used the Cygnet Entities – and mainly, Series 2011-C – as vessels to carry out their alleged scheme, which is insufficient to plead substantial assistance.  *Id.* at *12 (holding no substantial assistance where defendant's accounts merely were used for allegedly fraudulent fund transfers).  Nor is there any allegation that any of the Cygnet Entities proximately caused Plaintiff's loss.  Rather, it is alleged that the diminution in value of Trust Account assets that were **held by** Series 2011-C caused this loss.  (SAC ¶¶ 94, 102.)  For all of these reasons, Count Four must be dismissed.

### 3.   Count Eight for Civil Conspiracy to Commit Fraud Must Be Dismissed Because it is Duplicative of the Deficient Counts Three and Four

Count Eight for civil conspiracy to commit fraud is entirely duplicative of Counts Three and Four for fraud and aiding and abetting fraud, respectively, and thus must be dismissed because Plaintiff may not "reallege a tort asserted elsewhere in the SAC in the guise of a separate conspiracy claim." *Aetna Cas. & Sur. Co. v. Aniero Concrete Co., Inc*., 404 F.3d 566, 591 (2d Cir. 2005).

Separate and apart from its duplicative nature, the civil conspiracy claim as to Regatta and Mr. Solow fails on its merits.  To state a claim for civil conspiracy to commit fraud, Plaintiff must plead with particularity: (i) an underlying fraud (ii) an agreement between two parties to commit the fraud; (iii) an overt act in furtherance of the agreement; (iv) knowing participation in furtherance of agreement; and (v) resulting injury.  *See Jean-Laurent v. Bowman*, 2014 WL 4662221, at *15 (E.D.N.Y. July 7, 2014).  This claim fails because Plaintiff has not pleaded an underlying fraud with the requisite particularity, as shown in Point II.B.1, nor that Regatta or Mr. Solow conspired to commit fraud or otherwise knowingly participated, assisted, or furthered an alleged fraud, as shown in Points II.B.2 and II.A.2, respectively.  As to the Cygnet Entities, Plaintiff offers no facts to show knowing participation or an agreement to commit fraud, and, in fact, the SAC does not allege **any independent actions or statements** by any of the Cygnet Entities.  The SAC only includes the Cygnet Entities in insufficient, group-pleaded allegations asserting that these entities "knew" about the underlying fraud.  (SAC ¶ 90 and 105).  For all these reasons, Count

4813-5754-0486

Eight must be dismissed.  *See Owens v. Aspen Funding LLC*, 2011 WL 4024820, at *13 (W.D.N.Y. Sept. 9, 2011) (dismissing civil conspiracy claim to defraud where conspiracy allegations were conclusory).

### C.      Count 11 for Unjust Enrichment Must Be Dismissed

Lastly, Plaintiff's unjust enrichment claim against the SRC Defendants also must fail.  To state a claim of unjust enrichment under New York law, Plaintiff must allege "'(1) that the defendant was enriched; (2) that the enrichment was at the plaintiff's expense; and (3) that the circumstances are such that in equity and good conscience the defendant should return the money or benefit to the plaintiff.'" *Jenny Yoo Collection, Inc. v. Watters Design Inc.*, 2017 WL 4997838, at *11 (S.D.N.Y. Oct. 20, 2017) (Broderick, J.) (citation omitted).  The SAC does not meet any of these pleading requirements.

First, this claim is duplicative of the other fraud-based Common Law Claims – aiding and abetting a fiduciary breach (Count Two), fraud (Count Three), aiding and abetting fraud (Count Four) and civil conspiracy to commit fraud (Count Eight) – and on this basis alone must be dismissed.  *See Bautista v. CytoSport, Inc.*, 223 F. Supp. 3d 182, 193–94 (S.D.N.Y. 2016).

Second, New York law bars such claims when there are valid contracts that provide Plaintiff with a legal remedy, "***even if one of the parties to the claim is not a party to the contract***." *Mueller*, 225 F. Supp. 3d at 207 (emphasis added).  Here, the Coinsurance and Trust Agreements provide Plaintiff with legal remedies against Alpha and WSFS with respect to Plaintiff's alleged losses.  While the SRC Defendants are not signatories to those agreements, Plaintiff cannot extend the duties therein to them.  *Id*.

Third, the SAC fails to show that the SRC Defendants enriched themselves ***at the expense*** of Plaintiff, as is required.  *Id.*  There is no allegation that the Cygnet Entities enriched themselves at all.  As to Mr. Solow and Regatta, it is only alleged they received payments "for [p]urported [s]ervices. . . from assets originally held in [Plaintiff's] Trust Account" (SAC ¶¶ 103-04), but Plaintiff fails to allege ***any*** facts directly linking these payments to Trust Account assets.  Instead, these payments allegedly were made from Alpha's "Reinsurance Trusts" (*id.* ¶ 104) whose assets ***do not belong to Plaintiff***.  This fact is fatal

to these claims, as "[a] defendant cannot be unjustly enriched if it does not have in possession any money belonging to the plaintiff." *In re Gen. Motors LLC Ignition Switch Litig.*, 257 F. Supp. 3d 372, 409 (S.D.N.Y. 2017).

Similarly, none of the newly-added allegations involving defendant, Ability and its dealings with, *inter alia*, Mr. Solow, come close to demonstrating Mr. Solow's enrichment at Plaintiff's expense.  (SAC ¶ 123-26.)  Rather, these allegations reflect benefits flowing to defendants *other than* Mr. Solow (or the SRC Defendants) including (i) Messrs. Cathcart, King and non-party, Ian Kilpatrick, becoming directors of defendant BEF LP (*id.* ¶ 125); (ii) Alpha receiving $2.25 million for a surplus note it sold to an entity owned and operated by defendants ACH, Mr. King and Mr. Cathcart (*id.* ¶ 127); and (iii) Ability and ACH acquiring ownership interests in defendant, Sancus (*id.* ¶ 128).  And to the extent Plaintiff asks the Court to draw the inference that Ability's ceding of 40% of its business to non-party Vista Re (allegedly owned by Mr. Solow) (*id.* ¶ 124) constitutes a benefit to Mr. Solow, Plaintiff fails to demonstrate how any such benefit was *at Plaintiff's expense*, given that the $109 million allegedly transferred out of Series 2011-C to accounts controlled solely by Ability (*id.* ¶ 126) resulted in a *loss* to Series 2011-C.  Nor is it alleged that this $109 million serves as security for, or is linked in any way to, the Ability policies reinsured by Vista Re.  In sum, the SAC's allegations regarding Ability's business dealings with Vista Re are far too attenuated to fulfill the pleading requirement that the benefit in question arises from any "*direct* dealing or [an] *actual, substantive* relationship" between Plaintiff and any of the SRC Defendants. *Jenny Yoo Collection, Inc.*, 2017 WL 4997838, at *11 (emphasis added).

For all these reasons, Count Eleven must be dismissed as to the SRC Defendants.

## <u>CONCLUSION</u>

For the above reasons, this Court should dismiss, with prejudice, Counts Two, Three, Four, Five,

Six, Seven, Eight and Eleven of the SAC.

Dated:  February 5, 2019               Respectfully Submitted,
       New York, New York

                                   BAKER & HOSTETLER LLP


                                   By:   */s/ Michael S. Gordon*
                                         Michael S. Gordon
                                         Marco Molina
                                   45 Rockefeller Plaza
                                   New York, New York 10111
                                   Telephone: (212) 589-4265
                                   Facsimile: (212) 589-4280
                                   mgordon@bakerlaw.com

                                   *Attorneys for Defendants,*
                                   *Donald Solow, Regatta Holdings, LLC,*
                                   *Cygnet 001 Master Trust, Cygnet 001 Master Trust*
                                   *Series 2011-A, Cygnet 001 Master Trust Series 2011-C,*
                                   *and Cygnet 001 Master Trust Series 2013-A*

4813-5754-0486