UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

GREAT WESTERN INSURANCE
COMPANY,

Plaintiff,

- against-

MARK GRAHAM, DONALD SOLOW,
BLUE CAPITAL MANAGEMENT, INC.,
BLUE ALTERNATIVE ASSET
MANAGEMENT LLC, WILMINGTON
SAVINGS FUND SOCIETY, FSB,
CHRISTIANA TRUST, REGATTA
HOLDINGS LLC, CYGNET 001
MASTER TRUST, CYGNET 001
MASTER TRUST SERIES 2011-A,
CYGNET 001 MASTER TRUST SERIES
2011-C, CYGNET 001 MASTER TRUST
SERIES 2013-A, ALPHA RE LIMITED,
ALPHA RE HOLDINGS (CAYMAN)
LIMITED, ATLANTIC SPECIALTY
FINANCE, BLUE ELITE FUND LTD.,
BLUE ELITE FUND LP, BLUE II LTD.,
SANCUS CAPITAL BLUE CREDIT
OPPORTUNITIES FUND LTD.,
ABILITY INSURANCE COMPANY,
JOHN DRAKE, EDWARD BRENDAN
LYNCH, AND GREGORY TOLARAM,
ADVANTAGE CAPITAL HOLDING
LLC, DAN CATHCART, AND
KENNETH KING.

Defendants.

No. 1:18-cv-06249-VSB

**DEFENDANTS ABILITY INSURANCE COMPANY, ADVANTAGE CAPITAL HOLDING LLC, DAN CATHCART, AND KENNETH KING'S MEMORANDUM OF LAW IN SUPPORT OF THEIR MOTION TO DISMISS THE SPECIFIC CLAIMS PLEADED AGAINST MOVANTS**

# TABLE OF CONTENTS

PRELIMINARY STATEMENT ................................................................................................ 1

BACKGROUND RELATING TO ABILITY DEFENDANTS ..................................................... 3

      A.     Ability Defendants' Business Activities Unrelated to GWIC ................... 4
      B.     GWIC's Alleged Business Activities........................................................... 6
      C.     GWIC's SAC ................................................................................................ 9

ARGUMENT .......................................................................................................................... 10

  I.     COUNT TWO DOES NOT STATE A CLAIM FOR AIDING AND
       ABETTING BREACH OF FIDUCIARY DUTY AGAINST ACH,
       CATHCART OR KING ....................................................................................... 11

      A.     No Allegations Showing Knowledge......................................................... 11
      B.     No Allegations Identifying Substantial Assistance................................... 12

            1.     No Actionable Content ................................................................. 12
            2.     No Justifiable Reliance ................................................................ 13

      C.     No Allegations Showing Proximate Cause................................................ 14

  II.    COUNT FOUR DOES NOT STATE A CLAIM FOR AIDING AND
       ABETTING FRAUD AGAINST ACH, CATHCART OR KING ...................... 15
  III.   COUNT ELEVEN DOES NOT STATE A CLAIM FOR UNJUST
       ENRICHMENT AGAINST ABILITY ............................................................... 17

      A.     No Requisite Relationship Between Parties ............................................. 17
      B.     The Ability Defendants' Lawfully Exercised Contractual and
            Statutory Rights ........................................................................................ 21

  IV.   COUNT TWELVE DOES NOT STATE A CLAIM FOR CONVERSION ....... 22

CONCLUSION....................................................................................................................... 25

# TABLE OF AUTHORITIES

**Page(s)**

**Federal Cases**

*Advanced Marine Techs., Inc. v. Burnham Sec., Inc.*,
16 F. Supp. 2d 375 (S.D.N.Y.1998)...................................................................4

*Am. Federated Title Corp. v. GFI Mgmt. Servs., Inc.*,
39 F. Supp. 3d 516 (S.D.N.Y. 2014)..........................................................15, 16

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009)............................................................................................10

*Banco Indus. de Venezuela, C.A. v. CDW Direct, L.L.C.*,
888 F. Supp. 2d 508 (S.D.N.Y. 2012)........................................................23, 25

*Bank of Am. Corp. v. Lemgruber*,
385 F. Supp. 2d 200 (S.D.N.Y. 2005)..............................................................21

*Belin v. Weissler*,
No. 97 Civ. 8787 (RWS), 1998 WL 391114 (S.D.N.Y. July 14, 1998) ................20

*Biro v. Conde Nast*,
807 F.3d 541 (2d Cir. 2015)...............................................................................10

*Brown v. E.F. Hutton Group, Inc.*,
991 F.2d 1020 (2d Cir.1993)..............................................................................21

*Cohen v. BMW Investments L.P.*,
144 F. Supp. 3d 492 (S.D.N.Y. 2015), *aff'd*, 668 F. App'x 373 (2d Cir. 2016)......... 18, 19-22

*Cortec Indus., Inc. v. Sum Holding L.P.*,
949 F.2d 42 (2d Cir. 1991)...................................................................................4

*Cosmas v. Hassett*,
886 F.2d 8 (2d Cir.1989)...............................................................................15, 16

*Cucina Classica Italiana, Inc. v. Banca Nazionale Del Lavoro*,
No. 96 CIV. 1144 (JFK), 1997 WL 2516 (S.D.N.Y. Jan. 3, 1997), *aff'd sub
nom. Cucina Classica Italiana, Inc. v. Banco Nazionale Del Lavoro*, 133 F.3d
906 (2d Cir. 1997)...............................................................................................25

*DiFolco v. MSNBC Cable L.L.C.*,
622 F.3d 104 (2d Cir. 2010)..................................................................................4

*DiLeo v. Ernst & Young*,
901 F.2d 624 (7th Cir. 1990) ..........................................................................15, 16

*Granite Partners, L.P. v. Bear, Stearns & Co.*,
    58 F. Supp. 2d 228 (S.D.N.Y. 1999)........................................................................13, 14

*Grumman Allied Industries, Inc. v. Rohr Industries, Inc.*,
    748 F.2d 729 (2d Cir.1984)........................................................................................21

*Kajoshaj v. New York City Dep't of Educ.*,
    543 F. App'x 11 (2d Cir. 2013) ..................................................................................10

*Krasner v. Rahfco Funds LP*,
    No. 11 CV 4092 (VB), 2012 WL 4069294 (S.D.N.Y. Aug. 9, 2012) ..............................23, 25

*Lazard Freres & Co. v. Protective Life Ins. Co.*,
    108 F.3d 1531 (2d Cir. 1997)......................................................................................21

*Lerner v. Fleet Bank, N.A.*,
    459 F.3d 273 (2d Cir. 2006)........................................................................................12

*Lopez v. Ctpartners Exec. Search Inc.*,
    173 F. Supp. 3d 12 (S.D.N.Y. 2016)............................................................................25

*Lundy v. Catholic Health Sys. of Long Island Inc.*,
    711 F.3d 106 (2d Cir. 2013)........................................................................................16

*Marino v. Grupo Mundial Tenedora, S.A.*,
    810 F. Supp. 2d 601 (S.D.N.Y. 2011)..........................................................................15

*Moscato v. Tie Techs., Inc.*,
    No. 04 CIV. 2487 (GBD), 2005 WL 146806 (S.D.N.Y. Jan. 21, 2005)................................23

*Musalli Factory for Gold & Jewelry v. JPMorgan Chase Bank, N.A.*,
    261 F.R.D. 13 (S.D.N.Y. 2009) ..................................................................................16

*Ne. Indus. Dev. Corp. v. ParkStone Capital Partners, LLC (In re Ne. Indus. Dev. Corp.)*,
    513 B.R. 825 (Bankr. S.D.N.Y. 2014), *adopted,* No. 14-CV-7056 (NSR),
    2015 WL 3776390 (S.D.N.Y. June 16, 2015) ..............................................................22

*Oxon Italia, S.p.A. v. Farmland Indus., Inc.*,
    546 F. Supp. 681 (S.D.N.Y. 1982) ..............................................................................24

*Pension Comm. of Univ. of Montreal Pension Plan v. Banc of Am. Sec., LLC*,
    446 F. Supp. 2d 163 (S.D.N.Y. 2006)..........................................................................15

*Rosner v. Bank of China*,
    No. 06 CV 13562, 2008 WL 5416380 (S.D.N.Y. Dec. 18, 2008)..........................................15

*Ryan v. Hunton & Williams*, No. 99-CV-5938 (JG), 2000 WL

iii

1375265 (E.D.N.Y. Sept. 20, 2000)...................................................................11

*In re Salomon Analyst AT&T Litig.*,
   350 F. Supp. 2d 455 (S.D.N.Y. 2004)...................................................13

*Schwartzco Enterprises LLC v. TMH Mgmt., LLC*,
   60 F. Supp. 3d 331 (E.D.N.Y. 2014) .....................................................16

*Sharp Intern. Corp. v. State Street Bank and Trust Co.*,
   (*In re Sharp Intern. Corp.*),
   302 B.R. 760 (E.D.N.Y. 2003).............................................................14

*Sharpe v. City of New York*,
   560 F. App'x 78 (2d Cir. 2014) ............................................................10

*Solomon v. Siemens Indus., Inc.*,
   8 F. Supp. 3d 261 (E.D.N.Y. 2014) ......................................................24

*Spool v. World Child Int'l Adoption Agency*,
   520 F.3d 178 (2d Cir. 2008)................................................................10

*SPV Osus Ltd. v. UBS AG*,
   882 F.3d 333 (2d Cir. 2018)............................................................11, 12

*Stillwater Liquidating LLC, v. Net Five at Palm Pointe, LLC* (*In re Stillwater
   Asset Backed Offshore Fund Ltd.*),
   559 B.R. 563 (Bankr. S.D.N.Y. 2016) .................................................25

*TechnoMarine SA v. Jacob Time, Inc.*,
   905 F. Supp. 2d 482 (S.D.N.Y. 2012)..................................................25

*Valentini v. Citigroup, Inc.*,
   837 F. Supp. 2d 304 (S.D.N.Y. 2011)..................................................23

**State Cases**

*Am. Food & Vending Corp. v. Int'l Bus. Machines Corp.*,
   245 A.D.2d 1089 (1st Dep't 1997) ......................................................13

*Crescimanni v. Trovato*,
   162 A.D.3d 849 (2d Dep't 2018) .........................................................18

*Encore Preakness, Inc. v. Chestnut Health & Rehab. Grp., Inc.*,
   No. N17C-03-1677 AML, 2017 WL 5068753 (Del. Super. Ct. Nov. 1, 2017)...............19, 20

*Georgia Malone & Co. v. Rieder*,
   973 N.E.2d 743 (N.Y. 2012)................................................................20

iv

*Kolodin v. Valenti*,
    147 A.D.3d 459 (1st Dep't 2017) ........................................................23

*Mandarin Trading Ltd. v. Wildenstein*,
    944 N.E.2d 1104 (N.Y. 2011) ...............................................17, 18, 21

*Shilkoff, Inc. v. 885 Third Ave. Corp.*,
    299 A.D.2d 253 (1st Dep't 2002) ...............................................18, 21

*Smallwood v. Lupoli*,
    107 A.D.3d 782 (2d Dep't 2013) ........................................................24

*Stanfield Offshore Leveraged Assets, Ltd. v. Metro. Life Ins. Co.*,
    64 A.D.3d 472 (1st Dep't 2009) ...............................................13, 17

*United Health Alliance, LLC v. United Med., LLC*,
    No. CV 7710-VCP, 2014 WL 6488659 (Del. Ch. Nov. 20, 2014)........................19

**Rules**

Fed. R. Civ. P. 9(b) .............................................................15, 16

Fed. R. Civ. P. 12(b)(6).............................................................1, 10

**Regulations**

210 Neb. Admin. Code §65-011.02(D)(1) (2018) .........................................5

210 Neb. Admin. Code §65-011.02(D)(3) (2018) .........................................5

**Other Authorities**

Restatement (Second) of Torts § 272 (1965) ...........................................23

Pursuant to Fed. R. Civ. P. 12(b)(6), Defendants Ability Ins. Co. ("Ability"), Advantage Capital Holding LLC ("ACH"), Dan Cathcart ("Cathcart"), and Kenneth King ("King") (collectively, the "Ability Defendants") submit this memorandum in support of their motion to dismiss with prejudice the limited claims against Ability, ACH, Cathcart and King in Plaintiff Great Western Insurance Company ("GWIC")'s Second Amended Complaint ("SAC"). Dkt. 106.

## PRELIMINARY STATEMENT

In now its <u>third</u> pleading, Plaintiff GWIC seeks recovery from a collection of twenty-five defendants for amounts it allegedly became obligated to pay under certain insurance policies (the "GW Policies") that it underwrote. Try as GWIC does to obscure the fact, none of the four Ability Defendants (a) had any legally cognizable relationship with GWIC or (b) engaged in any dealings with any <u>non</u>-Ability Defendants in relation to GWIC's alleged grievances. Ability is another insurance company, which had no role in, or responsibility for, underwriting, administering, reinsuring or guaranteeing any GW Policies. ACH is Ability's parent company, which likewise had no role in, or connections to, GWIC, and is merely referenced as participating in ordinary transactions with certain <u>non</u>-Ability Defendants unrelated in substance and even time to any alleged wrongdoing. Cathcart and King are executives with Ability and ACH, who simply operated in their respective corporate capacities.

Ability was at first injected into this lawsuit on the untenable grounds that it did something wrong by withdrawing funds that Ability itself deposited with reinsurer Alpha Re Limited ("Alpha Re") pursuant to contracts in which GWIC was not a party nor otherwise involved. By express contractual terms, Ability had clear rights to withdraw the funds at any time. Indeed, the laws of Nebraska, where Ability is domiciled, required Ability to have the unconditional right to withdraw those funds. Although GWIC claims it is owed money from Alpha Re and other <u>non</u>-Ability Defendants under its own, entirely separate contracts with Alpha Re, those circumstances do not

create liability on the Ability Defendants. Only after Ability's now-superseded motion to dismiss the prior pleading (Dkt. 74), did GWIC – trying to support some case against some Ability Defendants – add ACH, Cathcart and King, on vague aiding and abetting theories, even though GWIC knew the "new" allegations before filing the first of its three complaints and disingenuously claims it "recently learned of additional facts" justifying the SAC. Dkt. 104.

Of the fourteen separate causes of action asserted against a diverse group of defendants, only four apply to any of the Ability Defendants in some combination. None of GWIC's claims against the Ability Defendants, however, are legally sustainable because of the absence of any duties between the Ability Defendants and GWIC, the express rights of Ability under its independent contracts and under state insurance statutes, and the lack of any actionable or even relevant communications by any of the Ability Defendants.

First, Count Two in the SAC asserts "aiding and abetting breach of fiduciary duty" against nineteen defendants, including ACH, Cathcart and King. Even assuming GWIC properly pleads a breach of fiduciary duty against non-Ability defendants, GWIC fails to plead the requisite elements of the Ability Defendants' (a) "knowledge" of any breach; (b) "substantial assistance" in the breach; or (c) act "proximately causing" plaintiff's injury. Rather, GWIC's own allegations merely show that the Ability Defendants, with no duties to GWIC, were operating lawfully in the conduct of Ability's business without any role in or knowledge of other defendants' activities relating to GWIC.

Second, Count Four asserts "aiding and abetting fraud" against sixteen defendants, including ACH, Cathcart and King. Like the aiding and abetting fiduciary breach, the aiding and abetting fraud claim falls because nothing is pled showing that any of the Ability Defendants had

knowledge of, provided substantial assistance to, and engaged in conduct proximately causing any alleged fraud.

Third, Count Eleven asserts an "unjust enrichment" claim against twenty-three defendants, including the Ability Defendants. However, no viable claim exists against the Ability Defendants in the absence of duties owed to GWIC. Neither a sufficient relationship nor corresponding duty is – or can be – pled as related to the Ability Defendants. No contract, statute or event created any legally cognizable relationship.

Fourth, Count Twelve asserts a "conversion" claim against Ability. However, Ability's express contractual and statutory rights to access the underlying funds precludes, as a legal matter, a viable conversion claim. Indeed, Ability lawfully withdrew its own funds.

It would create a novel, unjustified doctrine to penalize a party for exercising its clear rights to withdraw funds as both a matter of statute and contract, or to hold defendants liable absent viable allegations of a duty or even substantial assistance in any wrongdoing. GWIC's inability to adequately plead the legal requirements for the causes of action against the Ability Defendants cannot be remedied, and the SAC – particularly since GWIC already has pled three times now – should be dismissed with prejudice.

## BACKGROUND RELATING TO ABILITY DEFENDANTS[1]

Ability is a Nebraska-domiciled insurance company, which writes long-term care policies (the "Ability Policies") entirely different from the types of funeral expense policies that GWIC issues. SAC at ¶¶ 2, 26. GWIC does not allege that Ability (a) was a party to, or even referenced in, any GWIC agreements; (b) had any role or interest in any GW Policies; or (c) had any role or

---

[1] The below background is based on Great Western's allegations, which are accepted solely for purposes of this motion to dismiss.

responsibility for the making of investment decisions for GWIC or financial reporting to GWIC. Likewise, none of the other Ability Defendants had any type of relationship with GWIC, contractual or otherwise, creating any kind of duty to GWIC. Instead, Ability is an insurance company conducting its own business and no basis existed for GWIC to rely on it for decision making.

A.   Ability Defendants' Business Activities Unrelated to GWIC: As the SAC acknowledges, Ability entered into an independent reinsurance relationship with Alpha Re in connection with its Ability Policies and having nothing to do with GWIC. *See* SAC ¶ 53. Specifically, Ability and Alpha Re entered into the Coinsurance Agreement (the "Ability Coinsurance Agreement"), effective as of December 31, 2012, and the related Trust Agreement ("Ability Trust Agreement"), effective as of February 15, 2013. A copy of the Ability Coinsurance Agreement is attached as Exhibit A, and the Ability Trust Agreement as Exhibit B, to the accompanying Declaration of Hal S. Shaftel, dated February 5, 2019.[2]  GWIC is **not** a party to, nor referenced in, the Ability Coinsurance Agreement or Ability Trust Agreement. Ability initially "delivered funds to" Alpha for the payment of claims under the Ability Policies "as part of its reinsurance agreement with Alpha." SAC at ¶ 53.

As a Nebraska domiciled insurer, Ability is subject to Nebraska law requiring an insurer to maintain a level of assets sufficient for policyholder obligations. In turn, reinsurance as provided by Alpha Re must be supported by assets held in a trust account by the reinsurer but

---

[2] On a motion to dismiss, a court is permitted to consider documents, *e.g.*, the Ability Trust and Coinsurance Agreements, which are referenced in or otherwise integral to the complaint. *See DiFolco v. MSNBC Cable L.L.C.*, 622 F.3d 104, 112 (2d Cir. 2010) (consideration of e-mails on a motion to dismiss where referred to in complaint); *Cortec Indus., Inc. v. Sum Holding L.P.*, 949 F.2d 42, 48 (2d Cir. 1991) (consideration of documents attached to a motion to dismiss where "plaintiffs had…knowledge of" them); *see also, Advanced Marine Techs., Inc. v. Burnham Sec., Inc.*, 16 F.Supp.2d 375, 378 (S.D.N.Y. 1998) (consideration of letter referred to in complaint).

unconditionally accessible to Ability. Specifically, the Nebraska Code states that for the reinsurance trust to qualify for regulatory purposes:

> The beneficiary [Ability] should have the right to withdraw assets from the trust account at any time.

210 Neb. Admin. Code §65-011.02(D)(1) (2018). The Nebraska Code further states that the funds held in trust must "not [be] subject to any conditions or qualifications outside of the trust agreement." *Id*. at § 65-011.02(D)(3). To that end, Alpha Re under the Ability Coinsurance Agreement administered a trust account (the "Ability Trust Account") for the sole benefit of Ability, holding an amount equal to 102% of the value of a set portion ("Quota Share") of the Ability Policies. Shaftel Decl., Ex. A at Article XX(A). Independent of any matter involving GWIC, Alpha Re was responsible for paying Ability out of the Ability Trust Account the Quota Share of payments to policyholders. *Id*. at Article VIII(A), XX(A).

Consistent with Nebraska insurance law requirements, the Ability Trust Agreement specifically stated: "Without notice…[Ability] shall have the right, at any time, and from time to time, to withdraw from the Trust Account." Shaftel Decl., Ex. B at Section 2(a). Likewise, the Ability Coinsurance Agreement provided Ability with the following express contractual rights:

- The Ability Coinsurance Agreement provided that Alpha Re, as reinsurer, "shall enter into a trust agreement…and establish and maintain as security for its obligations hereunder a trust account…for the sole benefit of [Ability]." Shaftel Decl., Ex. A at Article XX(A).

- In the Ability Coinsurance Agreement, Ability had the right to an "accounting and settlement as to any balance due under this Agreement" in the event Ability terminated the Ability Coinsurance Agreement. *Id*. at Article XVIII(F).

- The Ability Coinsurance Agreement further provided: "[t]he assets in the Trust Account may be withdrawn by [Ability] at any time…" *Id*. at Article XX(D) (emphasis added).

5

In strict conformity with its Nebraska statutory rights and its contractual rights under both the Ability Coinsurance and Ability Trust Agreements, in November 2016, the Ability Defendants withdrew $109 million that GWIC admits Ability itself "delivered…as part of its reinsurance agreement with Alpha." *See* SAC at ¶¶ 53, 116.

B.    GWIC's Alleged Business Activities: Plaintiff GWIC, a Utah-domiciled insurance company, issued its GW Policies consisting of life insurance and annuities that funded pre-arranged funeral plans. SAC at ¶ 2. Plaintiff's relationship with the non-Ability Defendants began in June 2012. SAC at ¶¶ 63-64. On June 28, 2012, GWIC entered into a certain agreement (the "GW Reinsurance Agreement") with Alpha Re pursuant to which Alpha Re became GWIC's reinsurer. SAC at ¶ 64. In 2012, Cathcart worked for Ability Re, which previously acted as GWIC's reinsurer from 2009-2012, before selling its business to Alpha Re.[3] SAC at ¶¶ 60-63. GWIC alleges that Cathcart "recommended" and "vouched for" Alpha Re in some unspecified way, and that Ability Re was selling its business to Alpha Re because "Alpha had offered Ability Re more money…than GWIC could afford to pay." SAC at ¶¶ 63-64. GWIC further alleges that, at roughly the time Alpha Re became its new reinsurer in 2012, Graham, Solow, and Alpha Re assisted ACH to acquire Ability in a transaction having nothing to do with GWIC. SAC at ¶ 68.

Unrelated to any of the Ability Defendants, GWIC entered into a certain trust agreement (the "GW Trust Agreement"), effective July 11, 2012, with defendants Alpha Re and Wilmington Savings Funds Society ("WSFS"). SAC at ¶ 67. Pursuant to these agreements, GWIC deposited approximately $153 million into a trust account (the "GW Trust Account") with WSFS serving as

---

[3] Trying to confuse relationships, Great Western references its 2009 contract with non-defendant Ability Reinsurance (Bermuda) Limited ("Ability Bermuda"), even though it ended in early 2012 (SAC at ¶¶ 60, 63), pre-dating any alleged wrongdoing. Further, Ability and Ability Bermuda indisputably have been distinct entities since 2013.

trustee. SAC at ¶¶ 64, 67. Under the GW Reinsurance Agreement, Alpha Re was responsible to administer in the GW Trust Account for the payment of claims under the GW Policies. SAC at ¶ 66.

Defendant Blue Asset Management ("BAAM"), controlled by Defendant Mark Graham ("Graham"), acted as collateral manager for the GW Trust Account. In turn, BAAM arranged for transactions between the GW Trust Account and defendant Cygnet 001 Master Trust Series 2011-C (the "Series 2011-C"). SAC at ¶ 70. GWIC alleges that, unbeknownst to it, non-Ability Defendants (including Graham and Donald Solow ("Solow")), created and controlled Alpha Re. SAC at ¶ 65. Specifically, Graham and BAAM invested $148 million from the GW Trust Account in complex transactions with Series 2011-C, owned by defendant Regatta Holdings, LLC ("Regatta"), which in turn was 100% owned by Solow. SAC at ¶ 70. In December 2013, the Regatta and Graham-controlled defendant Blue Capital Management ("BCM") entered into an agreement pursuant to which BCM became the collateral manager of Series 2011-C. SAC at ¶ 77.

According to GWIC, the Series 2011-C transactions involved self-dealing by certain defendants (but not the Ability Defendants) because BCM, an entity owned by Graham, was the investment manager for Series 2011-C. SAC at ¶ 78. GWIC asserts that various defendants unrelated to the Ability Defendants "obfuscated and hid that they were depleting the funds in the trust account" and misrepresented through "monthly statements" the value of the GW Trust Account. SAC at ¶ 5. As a result, GWIC claims Series 2011-C "became a slush fund for Graham" and non-Ability Defendants beginning in 2012. SAC at ¶ 6.

The first time the Ability Defendants are mentioned in the SAC post-June 2012 is four and a half years later – in September 2016. SAC at ¶ 113. In early September 2016, GWIC contacted Cathcart, a person whom, according to the SAC, GWIC had no dealings with for more than four

years, regarding a U.S. Securities and Exchange Commission ("SEC") investigation into the non-Ability Defendants. SAC at ¶ 113. 'In or about September 2016" (no specific date identified), Cathcart, having no duty to GWIC, supposedly told an unnamed person at GWIC that Graham had showed King (not Cathcart) "enough investment detail to make King comfortable as to their trust investments." SAC at ¶ 115. On other unspecified dates, King, also with no duty to GWIC, supposedly commented to an unnamed GWIC representative that "he would 'get to the bottom' of the SEC investigation," and presumably thereafter that "he now felt" "comfort…about Graham's investments." SAC at ¶¶ 114-15. The SAC does not identify any factual inaccuracy in what GWIC claimed Cathcart and/or King said.

"From that point forward", according to GWIC, it made "multiple requests and demands" of BAAM-affiliated persons and entities regarding its funds. SAC at ¶ 131. But it took no steps to recover or protect assets at the time. Although GWIC made no such efforts, GWIC next alleges with no specificity that, two months later in November 2016, "using inside information" (but nowhere identifying the content of that information), "Dan Cathcart and Ken King withdrew $109 million from defendant Series 2011-C…" SAC at ¶ 116. Indisputably, the transfer was made in accordance with Ability's valid contractual and statutory rights.

GWIC further alleges that from December 31, 2016, through December 31, 2017 (after Ability withdrew funds pursuant to the Ability Coinsurance Agreement), Alpha Re, Ability, Cathcart and King engaged in business dealings with Donald Solow-owned and Mark Graham-owned entities. *See* SAC at ¶¶ 124-128. Nowhere in the SAC does GWIC identify how these after-the-fact dealings have any connection to the Ability Defendants' alleged wrongdoing from September and November 2016. *See* SAC at ¶¶ 113-116. Nor does GWIC allege that these purported dealings were unlawful in any way.

On June 6, 2017, as part of continuing attempts to recover the funds to which it claims entitlement, GWIC sent a letter to Alpha Re, demanding identification of assets under the GW Trust Account.  SAC at ¶ 152.  Alpha Re, however, failed to comply.  SAC at ¶ 153.  On June 21, 2017, GWIC instituted arbitration proceedings against Alpha Re.  SAC at ¶ 154.  The Ability Defendants were <u>not</u> parties to, and played <u>no</u> role in, the arbitration.  On April 17, 2018, GWIC received a final arbitration award against Alpha Re for over $130 million.  SAC at ¶¶ 156-158.

C.     <u>GWIC's SAC</u>:  On or about December 12, 2018, GWIC filed its SAC against twenty-five defendants.  Recognizing from Ability's then-pending motion to dismiss that it lacked legally cognizable dealings with Ability, GWIC added Cathcart, King and ACH, with three new categories of extraneous allegations: (1)  in early 2012, over four years before Ability withdrew its own funds, Cathcart allegedly "recommended" (although no statements are identified) Alpha Re to GWIC as a new reinsurer while Alpha Re allegedly assisted ACH in acquiring Ability;[4] (2) in September 2016,  Cathcart and King allegedly made certain statements about Ability's own reinsurance relationship "going smoothly,"  about "comfort" with Graham, and about "getting to the bottom" of Alpha Re's SEC investigation[5] – none of which implicate any duty by the speaker or involve any actionable content; and (3) subsequent to Ability's withdrawal of funds in November 2016, the Ability Defendants allegedly engaged in entirely lawful corporate activities involving certain <u>non</u>-Ability defendants.[6]

---

[4] SAC at ¶ 63 ("In early 2012", Cathcart allegedly "recommended" Alpha Re as a replacement reinsurer for Ability Re); ¶ 68 (alleging lawful business transactions between Alpha Re and ACH "at the same time" as those from ¶ 63).

[5] SAC at ¶ 113 ("Ability's reinsurance relationship with Alpha was 'going smoothly.'"); ¶ 114 ("King reached out to Great Western and said he would 'get to the bottom' of the SEC investigation."); ¶ 115 ("King told Great Western about this meeting – and specifically the comfort he now felt about Graham's investments").

[6] SAC at ¶ 124 (alleging Ability renewed a reinsurance relationship with Alpha Re on December 31, 2016); ¶ 125 (alleging Cathcart and King joined the Blue Elite Fund LP board of directors on

GWIC's only claims against Ability are non-contract claims for unjust enrichment (Count Eleven) and conversion (Count Twelve).  Its only claims against ACH, Cathcart and King are for aiding and abetting breach of fiduciary duty (Count Two), aiding and abetting fraud (Count Four), and unjust enrichment (Count Eleven).  As a predicate for these claims, GWIC relies on entirely conclusory assertions about (a) its supposed reliance on vague, oral and/or temporarily irrelevant comments from Cathcart and King and (b) the Ability Defendants accessing funds "improperly," "unlawfully," or in an "unauthorized" manner despite have contractual and statutory rights to do so.  *E.g.*, SAC at ¶¶ 6, 68, 114-118, 124-127, 249.

## ARGUMENT

Pursuant to Rule 12(b)(6), a complaint warrants dismissal for failure to state a claim where the allegations, even if assumed to be true, fail to establish the elements of a claim.  *Sharpe v. City of New York*, 560 F. App'x 78, 80 (2d Cir. 2014) (dismissal of complaint absent plausible allegations of liability).  "[B]ald assertions and conclusions of law" will not insulate a complaint from dismissal."  *Spool v. World Child Int'l Adoption Agency*, 520 F.3d 178, 183 (2d Cir. 2008).  Thus, "[w]here a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief."  *Kajoshaj v. New York City Dep't of Educ.*, 543 F. App'x 11, 13 (2d Cir. 2013) (quoting *Iqbal*, 556 U.S. at 678).

Despite GWIC devoting over fifty pages in its SAC to allegations encompassing twenty-five defendants, it fails to allege that any of the four Ability Defendants committed any wrongful act.  To the contrary, the Ability Defendants merely engaged in the lawful conduct of Ability's

---

March 24, 2017); ¶127 (alleging a company not included as a defendant in the SAC, Atlantic Coast Life Insurance Company, owned by King and run by Cathcart, purchased a note from Alpha Re); ¶128 (alleging that as of December 31, 2017, Ability and ACH owned percentages of Sancus Capital Blue Credit Opportunities Fund Ltd.).

own insurance business and exercised statutory rights under Nebraska Law and contractual rights under the Ability Trust and Coinsurance Agreements. No claims are made that any of these agreements or rights are invalid or unenforceable.

## I.  COUNT TWO DOES NOT STATE A CLAIM FOR AIDING AND ABETTING BREACH OF FIDUCIARY DUTY AGAINST ACH, CATHCART OR KING

To state a claim for aiding and abetting a breach of fiduciary duty under New York law, Plaintiff must plead: (a) an underlying breach of fiduciary duty; (b) knowledge of that breach by the aider and abettor; (c) substantial assistance by the aider and abettor in the success of the main breach and (d) that the aider and abettor's substantial assistance in the primary wrongdoer's misconduct proximately caused plaintiff's injury. *See SPV Osus Ltd. v. UBS AG*, 882 F.3d 333, 345 (2d Cir. 2018). Even assuming GWIC adequately pled its breach of fiduciary duty claim against non-Ability Defendants, GWIC does not – and cannot – plead that ACH, Cathcart or King: (1) knew of any breach of fiduciary duty; (2) substantially assisted any such breach; let alone (3) that any such substantial assistance proximately caused injury.

A.  No Allegations Showing Knowledge: GWIC relies exclusively on the conclusory statements that ACH, Cathcart, and King: "were aware of … breaches of fiduciary duty," and "knew [the non-Ability Defendants] continually provided Great Western with assurances that Trust assets were properly invested." SAC at ¶¶ 173, 175. However, those assertions are legally insufficient because they are not otherwise grounded in the remainder of the SAC. "Allegations that [a defendant] suspected fraudulent activity, however, do not raise an inference of actual knowledge of [the] fraud." *Ryan v. Hunton & Williams*, No. 99-CV-5938 (JG), 2000 WL 1375265, at *9 (E.D.N.Y. Sept. 20, 2000). There is no identification whatsoever of any information known to the Ability Defendants about the conduct of the other defendants toward GWIC or even any communication between the Ability Defendants and any other defendants about GWIC.

11

B.      No Allegations Identifying Substantial Assistance: GWIC fails to identify how ACH, Cathcart, or King provided substantial assistance by somehow affirmatively assisting, helping to conceal or, by failing to act when required to do so, enabling a fraud to proceed. *See SPV Osus*, 882 F.3d at 345-46 (citing *Lerner v. Fleet Bank, N.A.*, 459 F.3d 273, 295 (2d Cir. 2006)) (dismissing aiding and abetting breach of fiduciary duty claim against certain defendants where those defendants did not owe plaintiffs fiduciary duties). At most, GWIC alleges in three short, vague paragraphs that Cathcart and King communicated regarding the <u>non</u>-Ability Defendants "in or about September of 2016" (without date or GWIC personnel specified). *See* SAC at ¶¶ 113-115. However, GWIC does not allege that any of the statements from Cathcart or King – for which no reliance even could be justified – were actionable in any way. *See* SAC at ¶¶ 113-116. All GWIC claims is that Cathcart and King orally, informally conveyed that "Ability's reinsurance relationship with Alpha was 'going smoothly,'" that King "would 'get to the bottom' of the SEC investigation," and King's "comfort…about Graham's investments." SAC at ¶¶ 113-115. Indeed, GWIC makes no non-conclusory allegations that any of these communications were even inaccurate, let alone intentionally so, or reasonably relied on for any decision. Nor does the SAC allege how those supposed statements refer to any type of coordination between Cathcart, King and the <u>non</u>-Ability Defendants regarding any wrongdoing.

1.      No Actionable Content: On their face, the alleged subjective oral communications between GWIC and Cathcart and King, where Cathcart and King offered their opinions to GWIC, are not actionable. *See In re Salomon Analyst AT&T Litig.*, 350 F. Supp. 2d 455, 465-66 (S.D.N.Y. 2004) (finding that to plead a false statement, "[i]t is not sufficient…to allege that an opinion was unreasonable, irrational, excessively optimistic, not borne out by subsequent events, or any other characterization that relies on hindsight or falls short of an identifiable gap between the opinion

publicly expressed and the opinion truly held;" instead, the plaintiff must plead with particularity "provable facts to demonstrate that the opinion is both objectively and subjectively false"); *Am. Food & Vending Corp. v. Int'l Bus. Machines Corp.*, 245 A.D.2d 1089, 1090, (1st Dep't 1997) (dismissing claim based on alleged false representation as expression of opinion at the time stated where defendant reassured plaintiff that possible contract with plaintiff's competitors was "most unlikely" and "there was nothing to worry about" shortly before terminating contract between plaintiff and defendant in favor of contract with plaintiff's competitor).

The SAC also fails to allege, as it must, any requirement to act to "alert" GWIC as a claimed ongoing breach of fiduciary duty. *See Stanfield Offshore Leveraged Assets, Ltd. v. Metro. Life Ins. Co.*, 64 A.D.3d 472, 476 (1st Dep't 2009) (affirming dismissal of aiding and abetting claim for lack of "substantial assistance" where defendant allegedly participated in fraud by organizing insolvent party's refinancing and contacting prospective investors about insolvent company and never warned of insolvency).

GWIC makes no attempt to allege any duty, fiduciary or otherwise, ACH, Cathcart or King owed to it at any time, and certainly not in September 2016. *See Granite Partners, L.P. v. Bear, Stearns & Co.*, 58 F. Supp. 2d 228, 259 (S.D.N.Y. 1999) ("[i]n evaluating whether a plaintiff has adequately alleged justifiable reliance, a court may consider, *inter alia*, the plaintiff's sophistication and expertise…, the existence of a fiduciary relationship, and whether the plaintiff initiated the transaction. A party entering into a transaction has a duty to conduct an independent appraisal of the risk it is assuming and a duty to investigate the nature of its business transactions").

2.    No Justifiable Reliance: Although GWIC simply posits that Cathcart and King "reassured" it about Alpha Re (SAC at ¶ 115), no relationship is alleged which would reasonably induce GWIC's reliance on anything ACH, Cathcart or King represented.    GWIC's own

allegations refute any reliance on the alleged statements: (a) no contract or course of dealing existed between them; (b) the supposed oral comments (which are only vaguely pled) were never significant enough for GWIC to memorialize anywhere (SAC at ¶¶ 113-115); (c) immediately after these claimed communications, GWIC, rather than accept them, "made multiple requests and demands to [the non-Ability Defendants] for information about the assets" at issue (SAC at ¶ 131); (d) since at least 2012, GWIC was aware that Ability Defendants and non-Ability Defendants were involved in independent financial transactions unrelated to GWIC. SAC at ¶¶ 63, 68. It defies plausibility for GWIC to rely on an unrelated insurance company, with independent financial interests, and with no obligations to GWIC. *See Granite Partners*, 58 F. Supp. 2d at 259.

C.      No Allegations Showing Proximate Cause: GWIC nowhere pleads how the Ability Defendants' actions proximately caused any harm to it. To the contrary, GWIC alleges the breaches of fiduciary duty took place over almost five years, from June 2012 until early 2017, more than four of which, the Ability Defendants are never mentioned. *See* SAC at ¶ 63, 68, 113-116, 170; *Sharp Intern. Corp. v. State Street Bank and Trust Co.*, (*In re Sharp Intern. Corp.*), 302 B.R. 760, 777 (E.D.N.Y. 2003) (defendant cannot be held accountable for assisting scheme "that was well underway before [defendant] is alleged to have even had any knowledge of it"). It is, again, facially implausible that that ACH, Cathcart or King provided substantial assistance to non-Ability defendants' alleged fraud, let alone proximately caused harm, when (a) none of the Ability Defendants had any applicable duties; (b) the alleged communications from Cathcart and King were sporadic, informal and expressed subjective views; (c) those communications occurred four plus years after GWIC alleges the non-Ability Defendants began a an alleged scheme to defraud; and (d) no coordination whatsoever is identified between Cathcart, King and ACH and the non-

Ability Defendants.  *See* SAC at ¶¶ 113-115.  Accordingly, Count Two for aiding and abetting a fiduciary breach must fail as to ACH, Cathcart and King.

## II.  COUNT FOUR DOES NOT STATE A CLAIM FOR AIDING AND ABETTING FRAUD AGAINST ACH, CATHCART OR KING

Similar to aiding and abetting a breach of fiduciary duty, GWIC, to state a claim for aiding and abetting fraud, must plead with particularity: (a) the existence of an underlying fraud; (b) knowledge of this fraud on the part of the aider and abettor; and (c) substantial assistance by the aider and abettor.  *Rosner v. Bank of China*, No. 06 CV 13562, 2008 WL 5416380, at *4 (S.D.N.Y. Dec. 18, 2008).  A viable fraud complaint must specify "the statements it claims were false or misleading, give particulars as to the respect in which plaintiff contends the statements were fraudulent, state when and where the statements were made, and identify those responsible for the statements." *Cosmas v. Hassett*, 886 F.2d 8, 11 (2d Cir. 1989).  In other words, in alleging fraud, the complaint must identify "the who, what, when, where, and how: the first paragraph of any newspaper story." *Am. Federated Title Corp. v. GFI Mgmt. Servs., Inc.*, 39 F. Supp. 3d 516, 520 (S.D.N.Y. 2014) (quoting *DiLeo v. Ernst & Young*, 901 F.2d 624, 627 (7th Cir. 1990)).  Where, as here, the underlying breaches are based on alleged fraud, aiding and abetting claims also must meet Rule 9(b)'s heightened pleading requirements.  *See Marino v. Grupo Mundial Tenedora, S.A.*, 810 F. Supp. 2d 601, 613 (S.D.N.Y. 2011); *Pension Comm. of Univ. of Montreal Pension Plan v. Banc of Am. Sec., LLC*, 446 F. Supp. 2d 163, 201 (S.D.N.Y. 2006).[7]  GWIC entirely fails

---

[7] Under Federal Rule of Civil Procedure 9(b), fraud claims have a heightened standard of particularity at the pleading stage. *Lundy v. Catholic Health Sys. of Long Island Inc.*, 711 F.3d 106, 119 (2d Cir. 2013) ("As to particularity, the 'complaint must adequately specify the statements it claims were false or misleading [and] give particulars'" (quoting *Cosmas v. Hassett*, 886 F.2d 8, 11 (2d Cir. 1989)).  "Bare-bones allegations do not satisfy Rule 9(b)." *Id.*  Rule 9(b) requires that a plaintiff must allege particularized facts in nonconclusory terms that give rise to a "strong inference" that the defendant knew of the breach. *See Musalli Factory for Gold & Jewelry v. JPMorgan Chase Bank, N.A.*, 261 F.R.D. 13, 20-22 (S.D.N.Y. 2009).

to allege with particularity how ACH, Cathcart, and King "were aware of the fraud being perpetrated on GWIC – and provided substantial assistance to the fraud's commission…" SAC at ¶ 184.

On the same grounds that the Ability Defendants, as a matter of law, are not liable for aiding and abetting any breach of fiduciary duty, they are not liable for aiding and abetting fraud. Simply stating in conclusory fashion that "ACH, King, and Cathcart…provided substantial assistance to the fraud's commission," is not adequate. SAC at ¶ 184. GWIC does not allege with particularity the "who, when, where, or how" ACH, Cathcart or King participated in any alleged fraud perpetrated by the non-Ability Defendants. *Am. Federated Title Corp.*, 39 F.Supp.3d at 520. To the contrary, the SAC fails to identify any (a) specific dates or quotes of any alleged communications between the Ability and non-Ability Defendants; (b) collaboration between the Ability and non-Ability Defendants to deceive; or (c) objective falsity which Cathcart or King allegedly communicated. *See Lundy v. Catholic Health Sys. of Long Island Inc.*, 711 F.3d 106, 119 (2d Cir. 2013) ("As to particularity, the 'complaint must adequately specify the statements it claims were false or misleading [and] give particulars as to the respect in which plaintiff contends the statements were fraudulent'" (internal citations omitted); *Schwartzco Enterprises LLC v. TMH Mgmt., LLC*, 60 F. Supp. 3d 331, 345-46 (E.D.N.Y. 2014) (dismissing fraud claim where plaintiffs failed to allege statement was false).

Because ACH, Cathcart and King owned or worked for a separate insurance company, with no business relationship with GWIC, they had no duty to make disclosures to Plaintiff. *See Stanfield Offshore Leveraged Assets, Ltd.,* 64 A.D.3d at 476, (affirming dismissal of aiding and abetting claim for lack of "substantial assistance" where defendant allegedly participated in fraud by organizing insolvent party's refinancing and contacting prospective investors about insolvent

company and never warned of insolvency). Nor could GWIC justifiably rely on sporadic, verbal (never memorialized) comments from persons with no relationship to it. If there was a fraud perpetrated against GWIC, the SAC contains no <u>non</u>-conclusory, particularized, allegations that ACH, Cathcart, or King aided and abetted that alleged fraud, and, thus, Count Four must also be dismissed as to ACH, Cathcart and King.

## III. <u>COUNT ELEVEN DOES NOT STATE A CLAIM FOR UNJUST ENRICHMENT AGAINST ABILITY</u>

GWIC asserts an unjust enrichment claim against twenty-three defendants, including the Ability Defendants. SAC at ¶¶ 244-247. Under New York law, an unjust enrichment claim requires the plaintiff to plead against a party with which it has a relationship that "(1) the other party was enriched; (2) at that party's expense; and (3) that it is against equity and good conscience to permit the other party to retain what is sought to be recovered." *Mandarin Trading Ltd. v. Wildenstein*, 944 N.E.2d 1104, 1110 (N.Y. 2011) (internal citations omitted). However, no viable claim exists in circumstances where, as here:

- Rather than a legally cognizable relationship existing, "the connection between the parties is too attenuated." *Id*. at 1111 (granting defendant's motion to dismiss unjust enrichment claim because of "the lack of allegations that would indicate a relationship between the parties"); and/or

- Ability Defendants have express, independent rights to withdraw the assets in dispute, thereby negating any claim of wrongful conduct offending equity and good conscience. *See id.* at 1111; *Cohen v. BMW Investments L.P.*, 144 F. Supp. 3d 492, 500-02 (S.D.N.Y. 2015), *aff'd*, 668 F. App'x 373 (2d Cir. 2016); *Shilkoff, Inc. v. 885 Third Ave. Corp.*, 299 A.D.2d 253, 253–54 (1st Dep't 2002).

As addressed below, GWIC's unjust enrichment claim against the Ability Defendants fail on each of these separate grounds.

A. <u>No Requisite Relationship Between Parties</u>: The SAC is devoid of allegations of an any type of legally cognizable relationship between GWIC and the Ability Defendants. Rather,

the SAC itself acknowledges that GWIC and Ability are two independent insurance companies, with no contractual or other duties between them, which entered into entirely separate reinsurance relationships with the non-Ability Defendants. Likewise, ACH (parent of Ability), Cathcart, and King also have no identified duties of any kind to GWIC. The SAC, in fact, alleges no communications whatsoever between GWIC and any of the Ability Defendants from 2012 until "in or about September 2016." SAC at ¶ 115. At that point, all that is alleged is that Cathcart and King (in their respective capacities as executives at companies with no business dealings with GWIC since "early 2012") made certain oral comments without specification as to when, where, or even to whom those communications were made. *See* SAC at ¶¶ 63-64, 113-115; *see*, *e.g.*, *Crescimanni v. Trovato*, 162 A.D.3d 849, 851 (2d Dep't 2018) (citing *Mandarin Trading*, 16 N.Y.3d at 182, 919 N.Y.S.2d at 944) ("[t]he relationship must be one that could have caused reliance or inducement"). GWIC also fails to allege that the Ability Defendants had knowledge of the status of GWIC's funds held by the non-Ability Defendants and the potential impact of the Ability Defendants exercising their express contractual and statutory rights.

In *BMW Investments*, the court dismissed plaintiff's unjust enrichment claim against the defendant where, as part of fraudulent dealings, a third-party financing source obtained funds from both plaintiff Cohen and defendant BMW. 144 F. Supp. 3d at 501. Plaintiff Cohen alleged the third-party used "funds that were taken from Cohen" to repay BMW, which had separately invested in a Cohen-related venture but "exercised its contractual rights" to have its deposit returned. *Id*. at 496. Although Cohen claimed an interest in the funds returned to BMW, the court dismissed the unjust enrichment claim because "Cohen has failed to plead that he and BMW have a sufficiently close relationship." *Id*. at 501. As a matter of law, it is insufficient that "funds from a fraud against Cohen were used to repay money that rightfully belonged to BMW." *Id*.

*Encore Preakness, Inc. v. Chestnut Health & Rehab. Grp., Inc.,* is also instructive, where the court dismissed plaintiff's unjust enrichment claim where the plaintiff doctors and the defendant retirement home managers each had separate contracts and relationships with the third-party retirement homes. *See* No. N17C-03-1677 AML, 2017 WL 5068753, at *1 (Del. Super. Ct. Nov. 1, 2017). Plaintiff alleged that defendant retirement home managers were unjustly enriched when the third-party retirement home failed to pay the plaintiff for a month of invoices even though the defendant retirement home managers collected money for those invoices on the third-party's behalf. *Id*. at *2. Although plaintiff claimed an interest in the funds collected by the defendant retirement home managers, the court dismissed the unjust enrichment claim, stating "if the services were performed at the behest of someone other than the defendants, the plaintiff must look to that person for recovery." *Id*. at *3 (internal citations omitted). Further, "if [defendant retirement home managers] were enriched, it was at the expense of [the third-party retirement homes], not Plaintiff. Plaintiff therefore must look to [the third-party retirement homes] for recovery." *Id*. at *4; *see also United Health All., LLC v. United Med., LLC*, No. CV 7710-VCP, 2014 WL 6488659 at *8 (Del. Ch. Nov. 20, 2014) (dismissing unjust enrichment claim against defendant where parties seeking unjust enrichment award had relationship with third-party but not defendant).

Just as *BMW Investments* and *Encore Preakness* dismissed unjust enrichment claims, GWIC's claim for unjust enrichment against the Ability Defendants fails because no relationship existed between the parties beyond that of two separate companies which each had reinsurance relationships with the non-Ability Defendants. The fact that the Ability Defendants were able to recover funds before GWIC commenced its own arbitration provides no grounds for a claim. *See*, *e.g.*, *id.*; *Georgia Malone & Co. v. Rieder*, 973 N.E.2d 743, 747-48 (N.Y. 2012) (dismissing an unjust enrichment claim based on defendant's remoteness to any wrongdoing).

Although GWIC states in *ipsi dixit* fashion that King "reassured" it about the <u>non</u>-Ability Defendants' investments in September 2016, it cannot show justifiable reliance on the Ability Defendants to indicate any relationship. From its own allegations, GWIC admits: it knew the <u>non</u>-Ability Defendants were being investigated by the SEC; no interactions occurred between early 2012 and September 2016 between it and Cathcart; and its first interaction with Cathcart/King in four plus years occurred in September 2016, when they allegedly expressed their own subjective view of "comfort" with Graham and dealings were "going smoothly." *See* SAC at ¶¶ 5, 63, 68, 113-116.

However, there is nothing contained in those allegations which explains why it is reasonable for a sophisticated insurance company to rely on oral comments to executives from an entirely distinct insurance company who owed no duty to GWIC. *See Belin v. Weissler*, No. 97 Civ. 8787 (RWS), 1998 WL 391114, at *5 (S.D.N.Y. July 14, 1998) (dismissing complaint where "[Plaintiff's] reliance was neither justified nor reasonable…[because there is] a duty on sophisticated investors to obtain documentation of information material to their investment decisions: Where, as here, a party has been put on notice of the existence of material facts which have not been documented and he nevertheless proceeds with a transaction without securing the available documentation . . . , he may truly be said to have willingly assumed the business risk that the facts may not be as represented. Succinctly put, a party will not be heard to complain that he has been defrauded when it is his own evident lack of due care which is responsible for his predicament") (quoting *Lazard Freres & Co. v. Protective Life Ins. Co.*, 108 F.3d 1531, 1543 (2d Cir. 1997)).[8] This is particularly so, since GWIC admits that even after it was "reassured" about

---

[8] In evaluating whether a plaintiff adequately pleaded justifiable reliance, courts should consider the sophistication of the parties. *Bank of Am. Corp. v. Lemgruber*, 385 F. Supp. 2d 200, 230 (S.D.N.Y. 2005) (citing *Brown v. E.F. Hutton Group, Inc.*, 991 F.2d 1020, 1032–33 (2d Cir.

Graham's investments by the Ability Defendants, it "made multiple requests and demands" on its own to the non-Ability Defendants regarding the funds at issue. SAC at ¶ 131.

B.    <u>The Ability Defendants' Lawfully Exercised Contractual and Statutory Rights</u>: Even aside from the lack of any legally cognizable relationship with GWIC, the Ability Defendants, by withdrawing funds, exercised its Nebraska insurance law statutory rights and its explicit contractual rights under the Ability Trust Agreement and Ability Coinsurance Agreement. Although plaintiff must allege "that it is against equity and good conscience to permit [the other party] to retain what is sought to be recovered," the exercise of a statutory or contractual right does not violate, as matter of law, equity and good conscience. *Mandarin Trading Ltd.*, 944 N.E.2d at 1110 (internal citations omitted); s*ee BMW Investments*, 144 F. Supp. 3d at 501-02**;** *Shilkoff, Inc. v. 885 Third Ave. Corp.*, 299 A.D.2d 253, 253–54 (1st Dep't 2002) ("plaintiff's [unjust enrichment] cause of action was properly dismissed because it was not unjust for [defendant] to retain funds obtained pursuant to its clear contractual right.").

   *BMW Investments* is again instructive, because the defendant, akin to Ability, had a contractual right to recover the underlying funds in dispute. *See* 144 F. Supp. 3d at 501-02. As a result of the defendant's contractual right to access the funds, the court in *BMW Investments* dismissed plaintiff's unjust enrichment claim. According to the court, "[defendant] should not be punished because it succeeded in recovering its money from [the third-party] where [plaintiff] did not." *Id*. at 502. In finding that defendant's receipt of funds was consistent with "equity and good conscience", the court continued: "BMW timely exercised its contractual rights…thereby

---

1993)). New York imposes an affirmative duty on sophisticated investors to protect themselves from misrepresentations by actively investigating details of the transaction. *Bank of Am. Corp. v. Lemgruber*, 385 F. Supp. 2d 200, 230 (S.D.N.Y. 2005) (citing *Grumman Allied Industries, Inc. v. Rohr Industries, Inc.*, 748 F.2d 729, 737 (2d Cir. 1984)).

rightfully returning the deposit it made to [third party's] escrow account." *Id.* The same rationale applies here, where the Ability Defendants withdrew funds pursuant to its contractual right at least seven months prior to Plaintiff beginning arbitration proceedings against Alpha Re. *See id.*; *see also Ne. Indus. Dev. Corp. v. ParkStone Capital Partners, LLC (In re Ne. Indus. Dev. Corp.)*, 513 B.R. 825, 842-43 (Bankr. S.D.N.Y. 2014) (finding a lender's exercise of its rights to obtain funds pursuant to a valid note and mortgage cannot unjustly enrich the lender because lender is contractually entitled to those funds), *adopted,* No. 14-CV-7056 (NSR), 2015 WL 3776390 (S.D.N.Y. June 16, 2015).

The absence of any inequitable conduct by the Ability Defendants is particularly clear, since GWIC knew, prior to the Ability Defendants' lawful withdrawal of funds, that BAAM was being investigated by the SEC but it took no steps to recover or protect any assets in which it allegedly held an interest. SAC at ¶¶ 130-31. Only after-the-fact does GWIC unjustifiably seek to hold Ability liable for its own timing.

## IV.    COUNT TWELVE DOES NOT STATE A CLAIM FOR CONVERSION

GWIC purports to plead a conversion claim against Ability. To withstand a motion to dismiss, a conversion claim must allege, among other things, that "plaintiff had ownership of the [funds] at the time they were converted" but "defendants exercised unauthorized dominion over the [funds]." *Moscato v. Tie Techs., Inc.*, No. 04 CIV. 2487 (GBD), 2005 WL 146806, at *5 (S.D.N.Y. Jan. 21, 2005).

In blanket fashion, GWIC simply posits that Ability acted "improperly," "unlawfully," or in an "unauthorized" manner in withdrawing its funds. *E.g.*, SAC at ¶¶ 6, 249. However, these conclusory allegations are facially inadequate. *See Banco Indus. de Venezuela, C.A. v. CDW Direct, L.L.C.*, 888 F. Supp. 2d 508, 515 (S.D.N.Y. 2012) ("conclusory allegations are insufficient to survive a motion to dismiss"). Because Ability's withdrawal of the funds was authorized as a

matter of both Nebraska statute and valid, enforceable contract terms, the conversion claim is negated as a matter of law. *See Valentini v. Citigroup, Inc.*, 837 F. Supp. 2d 304, 330–31 (S.D.N.Y. 2011) (granting motion to dismiss conversion claim where a contractual right gave a defendant the right to exercise dominion over and take control of the funds at issue, thereby showing no "unauthorized dominion" or "unlawful or wrongful" act); *see also Krasner v. Rahfco Funds LP*, No. 11 CV 4092 (VB), 2012 WL 4069294, at *7-8 (S.D.N.Y. Aug. 9, 2012) (granting motion to dismiss conversion claim where possession of the funds in question was not unauthorized); *Kolodin v. Valenti*, 147 A.D.3d 459, 459–60 (1st Dep't 2017) (dismissing conversion cause of action where facts alleged in complaint adequately allege exercise of lawful dominion over the funds in question); Restatement (Second) of Torts § 272 (1965) ("One who is entitled to the immediate possession of a chattel is not liable to another for dispossessing him of it").

As was its contractual right to do, Ability withdrew its assets from the Ability Trust Account. SAC at ¶ 116. GWIC has not called the Ability Coinsurance Agreement's legality into question. Nothing indicates that Ability's withdrawal of funds pursuant to its contractual right was somehow unlawful. Ability's exercise of its contractual right under the Ability Coinsurance Agreement provided it authorized dominion over the funds in question, defeating GWIC's conversion claim. *See Oxon Italia, S.p.A. v. Farmland Indus., Inc.*, 546 F. Supp. 681, 688–89 (S.D.N.Y. 1982).

In *Oxon,* a chemical products reseller engaged in a fraudulent scheme and entered into separate contracts with (i) plaintiff Oxon for the reseller to buy product; and (ii) defendant Farmland for the reseller to supply product. *Id.* at 688–89. Upon learning of fraud on the reseller's part, defendant invoked its contractual right to refuse to pay for goods it received. *Id.* Like here, plaintiff Oxon and defendant Farmland had "separate bilateral contracts" with the third party. *Id.*

After the reseller did not compensate plaintiff for goods it received, the plaintiff sued the defendant for, among other things, conversion on the grounds it possessed product for which plaintiff never received payment. *Id*. The court dismissed the conversion claim, holding that:

> Nor is Oxon entitled to recover the value of the five containers under a theory of conversion. Farmland was entitled, under its contract with [the reseller], to be relieved of its obligation of payment for the five containers. It cannot therefore be said to be guilty of exercising unauthorized domain over the property because it was merely exercising its contractual remedies vis-à-vis [the reseller]. *Id*. at 688.

Just as in *Oxon*, Ability properly exercised a contractual right under the Ability Coinsurance Agreement (consistent with its statutory right) when it withdrew assets to which it was entitled to access. As a result, GWIC's claim of conversion against Ability is legally deficient. *See id.* at 688–89; *see also Solomon v. Siemens Indus., Inc.*, 8 F. Supp. 3d 261, 282 (E.D.N.Y. 2014) (dismissing conversion claim where defendant had a legitimate contractual claim to the property); *Smallwood v. Lupoli*, 107 A.D.3d 782, 784–85 (2d Dep't 2013) (rejecting conversion claim where defendants were owners of the property, and thus entitled to profits from the property).

Further, GWIC relies on purely conclusory allegations that <u>non</u>-Ability Defendants "comingled" the Ability Defendants' assets with those of GWIC for its only support for its premise that GWIC's funds were used to pay Ability. SAC at ¶¶ 6, 246, 250. However, by themselves, bare, conclusory allegations of funds comingled have no weight and cannot survive a motion to dismiss. *See Stillwater Liquidating LLC, v. Net Five at Palm Pointe, LLC* (*In re Stillwater Asset Backed Offshore Fund Ltd*.), 559 B.R. 563, 588 (Bankr. S.D.N.Y. 2016) (dismissing claim where pleading "contain[s] a conclusory allegation that the Funds generally commingled assets and their products, offspring, and rents in ways that make it impossible to untangle them... However, mere

conclusory allegations of this kind are entitled to no weight"); *Banco Indus. de Venezuela,* 888 F.

Supp. 2d at 515 ("conclusory allegations are insufficient to survive a motion to dismiss").[9]

## **CONCLUSION**

Accordingly, GWIC's claims against the Ability Defendants in Counts Two, Four, Eleven

and Twelve fail to state a viable claim and warrant dismissal with prejudice.[10]


Dated: New York, New York
         February 5, 2019


                                        GREENBERG TRAURIG, LLP

                                        By: */s/ Hal S. Shaftel*
                                            Hal S. Shaftel
                                        200 Park Avenue
                                        New York, NY 10166
                                        Tel: (212) 801-9200

                                        *Attorneys for Defendant Ability Insurance
                                        Company*

---

[9] Recognizing the substantial defects in its conversion claim, Great Western failed even to make a demand upon Ability for the return of any funds before commencing litigation. The failure to do so provides another basis for dismissal of the conversion claim. *See, e.g.*, *Krasner*, 2012 WL 4069294, at *8 (granting a defendant's motion to dismiss and stating "[t]here are no factual allegations supporting a claim for conversion against [a defendant] or the [at issue] funds, as the amended complaint is devoid of allegations of a rejected demand."); *see also TechnoMarine SA v. Jacob Time, Inc.*, 905 F. Supp. 2d 482, 497 (S.D.N.Y. 2012) (granting motion to dismiss conversion claim where complaint fails to allege plausible facts that any demand to return goods was denied, and establishing that plaintiff "must make a demand that is sufficient to prove its own legal ownership of the [property] in question").

[10] Because no tenable basis possibly exists to support a viable claim against the Ability Defendants, it would be inappropriate to grant Great Western an opportunity to file a <u>fourth</u> version of its complaint. "[W]here the problems with a claim are substantive rather than the result of an inadequately or inartfully pleaded complaint, an opportunity to replead would be futile and should be denied." *Lopez v. Ctpartners Exec. Search Inc.*, 173 F. Supp. 3d 12, 44 (S.D.N.Y. 2016) (internal citations omitted); *see also Cucina Classica Italiana, Inc. v. Banca Nazionale Del Lavoro*, No. 96 CIV. 1144 (JFK), 1997 WL 2516, at *5 (S.D.N.Y. Jan. 3, 1997), *aff'd sub nom. Cucina Classica Italiana, Inc. v. Banco Nazionale Del Lavoro*, 133 F.3d 906 (2d Cir. 1997) (no repleading where could not remedy deficiencies).