## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF NEW YORK

| | | |
|---|---|---|
| GREAT WESTERN INSURANCE COMPANY, | : | |
| | : | |
| Plaintiff, | : | |
| | : | |
| v. | : | Civil Action No.: 1:18-cv-06249-VSB-SN |
| | : | |
| MARK GRAHAM, *et al.*, | : | |
| | : | |
| Defendants. | : | |

---

**DEFENDANTS WILMINGTON SAVINGS FUND SOCIETY, FSB AND CHRISTIANA TRUST'S MEMORANDUM OF LAW IN SUPPORT OF THEIR MOTION TO DISMISS PLAINTIFF'S SECOND AMENDED COMPLAINT PURSUANT TO FEDERAL RULES OF CIVIL PROCEDURE 12(b)(2) AND 12(b)(6)**

---

Dated: February 5, 2019

BLANK ROME LLP

Alan Lieberman, Esq. (AL6517)
Huaou Yan, Esq. (HY8128)
Daniel E. Rhynhart, Esq. (*pro hac vice*)
Stephanie C. Chomentowski, Esq. (*pro hac vice*)
The Chrysler Building
405 Lexington Avenue
New York, NY 10174
Telephone: (212) 885-5000
ALieberman@BlankRome.com
HYan@BlankRome.com
Rhynhart@BlankRome.com
Chomentowski@BlankRome.com

# TABLE OF CONTENTS

**Page**

I.     INTRODUCTION ................................................................................................1

II.    STATEMENT OF RELEVANT FACTS ...........................................................3

     A.    The Agreement Among Great Western, Alpha Re, and Graham, and the
           Later Selection of WSFS as Replacement Trustee ...................................3

     B.    BAAM and Graham Directed All the Investments for Great Western,
           Including the Entry into Repurchase Agreements with Series 2011-C .................5

     C.    Graham, Solow, Alpha Re, and Others Controlled the Assets and
           Investment Decisions for Series 2011-C—Not WSFS ...........................7

III.   ARGUMENT ....................................................................................................7

     A.    Standards of Review ...............................................................................7

     B.    Great Western's Complaint Must Be Dismissed Because Great Western
           Has Failed to State a Claim Against WSFS .............................................8

           1.    Great Western Fails to State a Breach of Contract Claim
                  (Count XIII) Because the Only Alleged Breach Is Not of a
                  Contractual Obligation.................................................................9

           2.    Great Western Also Fails to State a Claim for Breach of the
                  Implied Covenant of Good Faith and Fair Dealing (Count XIV).............11

           3.    Great Western Again Fails to Plead the Essential Elements of a
                  Negligent Misrepresentation Claim Against WSFS (Count IX)...............13

           4.    Great Western Fails to State a Negligence Claim (Count X) ...................17

           5.    Great Western Fails to State a Claim for Aiding and Abetting
                  Fraud Count Against WSFS (Count IV).......................................17

     C.    Great Western's Complaint Against WSFS Must Also Be Dismissed,
           Because There Is No Basis for the Exercise of Personal Jurisdiction over
           WSFS ....................................................................................................20

           1.    There Is No General Personal Jurisdiction ...............................20

           2.    There Is No Specific Personal Jurisdiction................................21

IV.   CONCLUSION AND RELIEF REQUESTED ................................................26

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009)..................................................................................................8, 17, 18

*Bank Brussels Lambert v. Fiddler Gonzalez & Rodriguez*,
171 F.3d 779 (2d Cir. 1999)..................................................................................................21

*Berman v. Morgan Keegan & Co., Inc.*,
455 F. App'x 92 (2d Cir. 2012) ..................................................................................................19

*Best Van Lines, Inc. v. Walker*,
490 F.3d 239 (2d Cir. 2007)..................................................................8, 21, 22, 24, 25

*BNP Paribas Mortg. Corp. v. Bank of Am., N.A.*,
949 F. Supp. 2d 486 (S.D.N.Y. 2013)..................................................................14, 17

*Brown v. Lockheed Martin Corp.*,
814 F.3d 619 (2d Cir. 2016)..................................................................................................20

*Burger King Corp. v. Rudzewicz*,
471 U.S. 462 (1985)..................................................................................................24

*Capitaliza-T Sociedad de Responsabilidad Limitada de Capital Variable v.*
*Wachovia Bank of Del. Nat. Ass'n*,
No. 10-520, 2011 WL 864421 (D. Del. Mar. 9, 2011) ..........................................18

*Chamison v. HealthTrust–Hosp. Co.*,
735 A.2d 912 (Del. Ch. 1999)..................................................................................................11

*Charles Schwab Corp. v. Bank of Am. Corp.*,
883 F.3d 68 (2d Cir. 2018)..................................................................................................24

*Daimler AG v. Bauman*,
571 U.S. 117 (2014)..................................................................................................20, 21

*DirecTV Latin Am., LLC v. Park 610, LLC*,
691 F. Supp. 2d 405 (S.D.N.Y. 2010)..................................................................23

*Dunlap v. State Farm and Cas. Co.*,
878 A.2d 434 (Del. 2005) ..................................................................................................11

ii

*Feldmuehle North-Am. v. West End Converters, Inc.*,
  No. 91 Civ. 4512, 1992 WL 77578 (S.D.N.Y. Mar. 23, 1992) .............................................24

*First Hill Partners, LLC v. Bluecrest Cap. Mgmt. Ltd.*,
  52 F. Supp. 3d 625 (S.D.N.Y. 2014).........................................................................................14

*Grant & Eisenhofer, P.A. v. Bernstein Liebhard LLP*,
  No. 14-CV-9839 (JMF), 2015 WL 5751252 (S.D.N.Y. Sept. 30, 2015)..............................22

*H-M Wexford LLC v. Encorp, Inc.*,
  832 A.2d 129 (Del. Ch. 2003)...................................................................................................14

*Hau Yin To v. HSBC Holdings, PLC*,
  700 F. App'x 66 (2d Cir. 2017) ..........................................................................................22, 24

*Hau Yin To v. HSBC Holdings PLC*,
  No. 15CV3590-LTS-SN, 2017 WL 816136 (S.D.N.Y. Mar. 1, 2017), *aff'd*,
  700 F. App'x 66 (2d Cir. 2017) ....................................................................................21, 22, 25

*Hauptman v. Interactive Brokers, LLC*,
  No. 17 Civ. 9382 (GBD), 2018 WL 4278345 (S.D.N.Y. Jun. 12, 2018) ..............................17

*Hill v. HSBC Bank plc*,
  207 F. Supp. 3d 333 (S.D.N.Y. 2016).......................................................................................22

*HongKong and Shanghai Banking Corp. Ltd. v. Suveyke*,
  392 F. Supp. 2d 489 (E.D.N.Y. 2005) ......................................................................................13

*In re Agape Litig.*,
  681 F. Supp. 2d 352 (E.D.N.Y. 2010) ......................................................................................19

*In re Agape Litig.*,
  773 F. Supp. 2d 298 (E.D.N.Y. 2011) ......................................................................................19

*In re Citigroup, Inc.*,
  No. 08 CIV. 3095 LTS, 2011 WL 744745 (S.D.N.Y. Mar. 1, 2011) ......................................6

*In re Platinum and Palladium Antitrust Litig.*,
  No. 1:14-cv-9391-GHW, 2017 WL 1169626 (S.D.N.Y. Mar. 28, 2017)...........................8, 20

*In re SunEdison, Inc. Secs. Litig.*,
  300 F. Supp. 3d 444 (S.D.N.Y. 2018).........................................................................................7

*ING Global v. United Parcel Serv. Oasis Comp Supply Corp.*,
  No. 11 Civ. 5697(JSR), 2012 WL 28259 (S.D.N.Y. Jan. 4, 2012).........................................23

*JM Vidal, Inc. v. Texdis USA, Inc.*,
  764 F. Supp. 2d 599 (S.D.N.Y. 2011).......................................................................................16

*Jonas v. Estate of Leven*,
    116 F. Supp. 3d 314 (S.D.N.Y. 2015)........................................................................21

*Licci ex rel. Licci v. Lebanese Canadian Bank, SAL*,
    732 F.3d 161 (2d Cir. 2013)...................................................................................8

*Livery Coach Solutions, L.L.C. v. Music Express/East, Inc.*,
    245 F. Supp. 3d 639 (D. Del. 2017).......................................................................14

*Mayes v. Leipziger*,
    674 F.2d 178 (2d Cir. 1982)...........................................................................22, 23

*Midland Red Oak Realty, Inc. v. Friedman, Billings & Ramsey & Co.*,
    No. CIV.A.04C05091CLS, 2005 WL 445710 (Del. Super. Feb. 23, 2005)............................17

*OP Solutions, Inc. v. Crowell & Moring, LLP*,
    900 N.Y.S.2d 48 (N.Y. App. Div. 2010) ...............................................................14

*Pension Comm. of Univ. of Montreal Pension Plan v. Banc of Am. Secs., LLC*,
    446 F. Supp. 2d 163 (S.D.N.Y. 2006).....................................................................19

*Phunware, Inc. v. Excelmind Grp. Ltd.*,
    117 F. Supp. 3d 613 (D. Del. 2015).........................................................................9

*PR Acquisitions, LLC v. Midland Funding LLC*,
    C.A. No. 2017-0465-TMR, 2018 WL 2041521 (Del. Ch. Apr. 30, 2018) ............................14

*Progressive Intern. Corp. v. E.I. Du Pont de Nemours & Co.*,
    No. C.A. 19209, 2002 WL 1558382 (Del. Ch. Jul. 9, 2002) .........................................16

*Rahaman v. J.C. Penney Corp.*,
    C.A. No. N15C-07-174 MMJ, 2016 WL 2616375 (Del. Super. Ct. May 4,
    2016) ..............................................................................................................17

*Rosner v. Bank of China*,
    No. 06 CV 13562, 2008 WL 5416380 (S.D.N.Y. Dec. 18, 2008), *aff'd* 349 F.
    App'x 637 (2d Cir. 2009) ....................................................................................18

*Royalty Network, Inc. v. Dishant.com, LLC*,
    638 F. Supp. 2d 410 (S.D.N.Y. 2010).....................................................................25

*Thackurdeen v. Duke Univ.*,
    130 F. Supp. 3d 792 (S.D.N.Y. 2015)................................................................20, 24

*Traffix, Inc. v. Herold*,
    269 F. Supp. 2d 223 (S.D.N.Y. 2003).......................................................................7

*V Cars, LLC v. Israel Corp.*,
    902 F. Supp. 2d 349 (S.D.N.Y. 2012).................................................................21

*Webster v. Wells Fargo Bank, N.A.*,
    No. 08 CIV. 10145, 2009 WL 5178654 (S.D.N.Y. Dec. 23, 2009)...........................6

*Zeuner v. Suntrust Bank Inc.*,
    181 F. Supp. 3d 214 (S.D.N.Y. 2016)...................................................................7

**Statutes**

DEL. CODE. ANN. § 3313(b) .......................................................................................13

**Other Authorities**

Fed. R. Civ. P. 9(b) ...............................................................................................14, 18

Fed. R. Civ. P. 12(b)(2)...............................................................................................26

Fed. R. Civ. P. 12(b)(6)...........................................................................................7, 26

N.Y. C.P.L.R. § 302(a) ............................................................................21, 22, 23, 24

# I. INTRODUCTION

According to the Second Amended Complaint ("SAC") filed by Plaintiff Great Western Insurance Company ("Great Western"), this case involves a multi-year international fraud scheme perpetrated by all of the defendants except Wilmington Savings Fund Society, FSB and its division Christiana Trust (collectively "WSFS"). Great Western alleges that Defendants Alpha Re Limited ("Alpha Re"), Blue Capital Management, Inc. ("BCM"), Blue Asset Management, LLC ("BAAM"), Donald Solow, Mark Graham, John Drake, Edward Brendan Lynch, and Gregory Tolaram (among others) crafted fraudulent transactions that siphoned away over one hundred million dollars in assets held in a trust for the benefit of Great Western. Indeed, on September 6, 2018, the Securities and Exchange Commission found that Graham—through Alpha Re, BCM, and BAAM—had "from at least September 2015 through at least December 2017… engaged in a complex scheme to conceal declining asset values in various client accounts [including by] making false statements and improperly redeeming investments from private funds [that Graham, BCM, and BAAM] controlled [and by] fail[ing] to disclose numerous conflicts of interest associated with their management of client assets."

WSFS was not involved in any of this alleged fraudulent conduct or any greater conspiracy among those defendants. Rather, WSFS was an innocent bank serving an extremely limited role as trustee for the Great Western trust. Indeed, Great Western does not allege—nor could it allege—that WSFS was a member of the other defendants' corrupt enterprise or fraudulent conspiracy. On the contrary, WSFS performed as expressly required by the Amended & Restated Trust Agreement ("Trust Agreement") between Great Western and WSFS, which (as Great Western concedes) is what governed the relationship between Great Western and WSFS. That Trust Agreement—entered into after Great Western had already selected Alpha Re as its

1

reinsurer and BAAM as its investment manager (the entities Great Western now accuses of fraud)—clearly and definitively delineated WSFS's duties, obligations, and responsibilities. Just as significantly, the Trust Agreement assigned important powers away from WSFS and instead delegated them to the defendants who perpetrated the alleged fraud—with Great Western's knowledge and agreement.

What WSFS was supposed to do—and did do—was hold Great Western's assets subject to the Trust Agreement and follow the instructions issued by Alpha Re and Graham. WSFS was not to make investment decisions. WSFS was not to value the assets. WSFS was not knowledgeable about the relationships among the defendants as Great Western has alleged and was not obligated to investigate them for Great Western. Great Western gave all that power to Alpha Re and Graham—and disclaimed all liability on WSFS's part for the same. Graham and BAAM made the investment decisions. Alpha Re was responsible for securing appraisals of Trust assets. And all these defendants concealed their interconnected relationships from everyone, including WSFS (as the SEC also found). Great Western's claims against WSFS all fail, because they are dependent on duties, obligations, and responsibilities that WSFS never owed to Great Western and that WSFS had no authority to perform. This Court should enforce the plain language of the Trust Agreement and dismiss Great Western's claims against WSFS.

Not only does WSFS not belong in this case, WSFS does not belong in this Court: WSFS is a federally chartered savings association with its home office in Wilmington, Delaware; WSFS has no branches, offices, or regular operations in New York; and WSFS performed all its duties under the Trust Agreement in Delaware. Great Western's only allegations regarding jurisdiction over WSFS here are incidental communications with purported New York entities and an

investment document that references New York law. These are insufficient as a matter of law, and this Court must also dismiss WSFS from this case for lack of personal jurisdiction.

## II.     STATEMENT OF RELEVANT FACTS

### A.     The Agreement Among Great Western, Alpha Re, and Graham, and the Later Selection of WSFS as Replacement Trustee.

In 2009, Great Western entered into a Coinsurance Agreement[1] with Ability Re to "reinsure" certain of Great Western's insurance policies. SAC ¶ 60; *see also* Ex. A to SAC, ECF No. 106-1. The Coinsurance Agreement, *inter alia*, required Ability Re to establish and maintain a trust for the benefit of Great Western, containing only certain types of "qualifying assets" with total value equal to a set proportion of Great Western's "reserve liabilities." *See* SAC ¶ 61; Ex. A §§ 12.01, 12.02. BNY Mellon served as trustee of this trust, which held $153 million (comprised of $135 million from Great Western and $18 million from Ability Re). SAC ¶ 62.

In early 2012, Defendant Dan Cathcart, then-CFO of Ability Re, recommended to Great Western that it transfer its reinsurance agreement from Ability Re to Alpha Re and retain Graham as its investment manager. *Id.* ¶63. Taking Cathcart's advice, Great Western changed reinsurers on June 28, 2012 to Alpha Re and retained Graham (through BAAM) as its investment manager. *Id.* ¶¶ 64, 67; Ex. B to SAC, ECF No. 106-2. As part of this novation, Great Western also agreed to change trustees from BNY Mellon to WSFS. *See* Ex. B ¶¶ 8, 12.

To establish the new trust with WSFS (the "Trust"), Great Western, Alpha Re, and WSFS entered into the Trust Agreement dated July 11, 2012, "setting forth the respective rights and obligations of the grantor (Alpha), the beneficiary (Great Western), and the trustee (WSFS) as to the Trust Account." SAC ¶ 67; *see also* Ex. C to SAC, ECF No. 106-3.

---

[1] Unless otherwise noted, capitalized terms have the meanings afforded such terms in Plaintiff's Complaint.

Under the Trust Agreement, WSFS had narrowly-delineated administrative duties. *See generally* Ex. C § 5 (requiring WSFS to, *inter alia*, forward stockholder reports, notify the parties of deposits and withdrawals, and "furnish … [monthly] statement[s] of all Assets in the Trust Account"). Great Western agreed in the Trust Agreement that WSFS's duties and obligations were only those that were expressly stated in the Trust Agreement, and that WSFS owed Great Western no implied duties or other obligations. Ex. C § 5(h).

Consistent with these limited, administrative duties, Great Western repeatedly and unequivocally disclaimed any duty or liability on WSFS's part as to all other aspects of the Trust's administration—including the investment and valuation of the assets of the Trust:

- "Except as expressly provided for in this Agreement, [WSFS] shall have no obligation or liability with respect to the nature of the Assets held in the Trust Account or the ability or failure of such Assets to meet the definitions as set forth" in the Trust Agreement. Ex. C § 1(c); *see also* SAC ¶ 69.

- WSFS "shall have no liability or obligation to verify compliance with the Investment Guidelines, Section 4(g) or the other provisions of this Section 4, and shall be entitled to conclusively rely upon any Investment Order or Substitution Order received pursuant hereto." Ex. C § 4(g).

- With respect to the valuation of assets in the Trust Account, there shall be no "liability … incurred on the part of [WSFS] for any incorrect fair valuation of Assets, howsoever caused." *Id.* § 4(j). WSFS "shall not be a party to any dispute between the Grantor and the Beneficiary relating to the valuation of Assets." *Id.*

- WSFS "shall have no responsibility whatsoever to determine that any Assets in the Trust Account are or continue to be Assets." *Id.* § 5(d).

- WSFS "is authorized to follow and rely upon all instructions given by officers named in incumbency certificates furnished to [WSFS] from time to time by the Grantor, Investment Manager and the Beneficiary …. [WSFS] shall not incur any liability to anyone resulting from actions taken by the Trustee in reliance in good faith on such instructions, or [WSFS's] inaction due to the failure of such proper Party or Parties to instruct the Trustee." *Id.* § 5(g).

- WSFS "shall not be personally liable for … the value of the Assets." *Id.* § 5(i)(iii).

- WSFS "shall not be bound to make any investigation into the facts or matters stated in any resolution, certificate, statement, instrument, opinion, report, notice,

4

request, consent, instruction, Investment order, Withdrawal Notice, entitlement order, approval or other paper or document." *Id.* § 5(i)(iv).

- WSFS "shall not have any duty or obligation to manage, make any payment in respect of, register, record, sell, dispose of or otherwise deal with the Assets, or to otherwise refrain from taking any action under, or in connection with, any document contemplated hereby to which [WSFS] is a party, except as expressly provided by the terms of this Agreement." Ex. C § 5(l).

Additionally, the Trust Agreement broadly exculpates WSFS from all liability "to any Person under any circumstances," with the narrow exception of liability resulting from WSFS's "own bad faith, willful misconduct or negligence in the performance of *its express duties* under this Agreement." Ex. C § 5(i) (emphasis added).

    **B.**    **BAAM and Graham Directed All the Investments for Great Western, Including the Entry into Repurchase Agreements with Series 2011-C.**

BAAM was responsible for investing Great Western's Trust assets and directing WSFS accordingly. Specifically, Great Western agreed that BAAM would "be the investment manager ('Investment Manager') for all Assets which may be held in the Trust Account." Ex. C § 4(b). BAAM directed WSFS in the investment of Trust assets, and WSFS was *required* to follow BAAM's directions. *Id.* § 4(c) ("upon the written order and direction of the Grantor or the Investment Manager, [WSFS] *shall* invest Assets as specified by the Grantor or the Investment Manager …. [WSFS] *shall not be responsible for any act or omission … [of] the Grantor or the Investment Manager*") (emphasis added).

In September 2012, "Graham and BAAM invested $148 million of the $153 million [in the Trust Account] in a Repurchase Agreement with Series 2011-C." SAC ¶ 70; *see also* Ex. D to SAC, ECF No. 106-4. According to the Complaint, Series 2011-C agreed to "sell" certain collateral pursuant to this Repurchase Agreement—"$148,000,000 (USD) cash, all or part of which may be used to purchase United States Treasury securities"—to the Great Western Trust

and then to "re-purchase them in the future at a set price plus interest." SAC ¶¶ 71, 73. The term of the original Repurchase Agreement was 364 days, meaning that "one day before its one-year anniversary… Series 2011-C was to provide cash and interest back to the Great Western Trust Account." *Id.* ¶ 75. However, each year, BAAM issued written orders directing WSFS to re-enter the Repurchase Agreement for another year. *See id.* ¶ 76; *see also* Ex. C § 4(c).

As trustee, WSFS sent Great Western monthly account statements of the assets of the Trust, which included the Repurchase Agreements in which BAAM and Graham had invested on behalf of Great Western. SAC ¶ 81. WSFS reported the value of the Repurchase Agreement as it was instructed to by Graham and Alpha Re. *See* Ex. C § 4(j) (setting forth how the value of Trust assets was to be determined and explicitly exculpating WSFS from any responsibility or liability "for any incorrect fair valuation of Assets, howsoever caused"); *id.* §§ 5(g); 5(i)(iii)-(iv). However, as Great Western concedes and the SEC confirmed, Graham and others repeatedly "made false statements to [WSFS] as to the value of the securities that support[ed]" the repurchase agreements. Order ¶ 20, *In the Matter of Mark R. Graham, Blue Capital Management, Inc., and Blue Alternative Asset Management, L.L.C.* ("SEC Order"), SEC, No. 3-18724, ECF No. 56-1;[2] *see also* SAC ¶ 180 ("Alpha, BCM, BAAM, Graham, Regatta, Solow, and Tolaram … repeatedly misrepresent[ed] the valuation of the Great Western Trust assets").[3]

---

[2] On a motion to dismiss, the Court may consider "matters of which judicial notice may be taken." *Webster v. Wells Fargo Bank, N.A.*, No. 08 CIV. 10145, 2009 WL 5178654, at *1 n.2 (S.D.N.Y. Dec. 23, 2009) (citation omitted). The Court can take judicial notice of a public SEC order. *See, e.g.*, *In re Citigroup, Inc.*, No. 08 CIV. 3095 LTS, 2011 WL 744745, at *3 n. 4 (S.D.N.Y. Mar. 1, 2011).

[3] *See also* Great Western's Mem. of Law in Opp. to Mark Graham, *et al.*'s Mot. to Dismiss ("Opp. to Graham MTD"), ECF No. 99, at 23 ("Graham, BAAM, and others provided inaccurate valuations of the assets for the account statements that WSFS provided Great Western that misstated Series 2011-C's under-collateralization.").

**C.      Graham, Solow, Alpha Re, and Others Controlled the Assets and Investment Decisions for Series 2011-C—Not WSFS.**

WSFS was also the trustee for Series 2011-C (a series of Cygnet 001 Master Trust, a Delaware Statutory Trust); however, just as with the Great Western Trust, WSFS's powers, duties, and obligations as the 2011-C trustee were defined, limited, and ministerial. Defendants Regatta (Solow) and BCM (Graham) controlled and directed Series 2011-C. *See, e.g.*, SAC ¶¶ 4, 70, 89, 206. As Great Western alleged, "sometime after the initial investment in cash and United States Treasury securities, Graham and Solow began to direct the funds backing the Repurchase Agreement in Series 2011-C into risky investments, including numerous hedge funds and swap agreements." *Id.* ¶ 89. According to the SAC, over the next five or six years, the "risky investments" eroded the net "Fair Value"—assets minus liabilities (including, Series 2011-C's obligation to repay the Great Western Trust Account under the Repurchase Agreements)—of Series 2011-C. *See id.* ¶¶ 92, 94, 99, 102. Graham, Solow, and Alpha Re received reports indicating that Series 2011-C's liabilities exceeded its assets at certain points after 2015. *See id.* Great Western has never alleged that WSFS had knowledge of these reports.

**III.    ARGUMENT**

**A.      Standards of Review.**

"To survive a motion to dismiss under Rule 12(b)(6), a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *In re SunEdison, Inc. Secs. Litig.*, 300 F. Supp. 3d 444, 461 (S.D.N.Y. 2018) (quotations omitted). "[T]he Court must accept as true all of the well pleaded facts and consider those facts in the light most favorable to the plaintiff." *Traffix, Inc. v. Herold*, 269 F. Supp. 2d 223, 227 (S.D.N.Y. 2003) (citations omitted). "However, this principle is inapplicable to legal conclusions, which, like a complaint's labels and conclusions are disregarded." *Zeuner v. Suntrust Bank Inc.*, 181 F.

Supp. 3d 214, 218 (S.D.N.Y. 2016) (quotations and corrections omitted). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

"[O]n a motion to dismiss pursuant to Rule 12(b)(2), the plaintiff bears the burden of demonstrating personal jurisdiction over a person or entity against whom it seeks to bring suit." *In re Platinum and Palladium Antitrust Litig.*, No. 1:14-cv-9391-GHW, 2017 WL 1169626, at *39 (S.D.N.Y. Mar. 28, 2017) (quotation omitted). "At the pleading stage—and prior to discovery—a plaintiff need only …. include an averment of facts that, if credited by the ultimate trier of fact, would suffice to establish jurisdiction over the defendant." *Id.* (quotation omitted). In analyzing a Rule 12(b)(2) motion, courts in New York follow "a two-step inquiry." *Licci ex rel. Licci v. Lebanese Canadian Bank, SAL*, 732 F.3d 161, 168 (2d Cir. 2013). First, courts "look to the law of the forum state to determine whether personal jurisdiction will lie." *Id.* (citing *Best Van Lines, Inc. v. Walker*, 490 F.3d 239, 242 (2d Cir. 2007)). Only if the court finds that jurisdiction exists under New York law must it then consider whether the exercise of personal jurisdiction comports with the Fourteenth Amendment's Due Process Clause. *See id.*

### B. Great Western's Complaint Must Be Dismissed Because Great Western Has Failed to State a Claim Against WSFS.

By dropping its breach of fiduciary duty claim from this latest amended complaint, Great Western concedes that WSFS did not breach any fiduciary duty it owed to Great Western. However, inexplicably ignoring *why* it was forced to jettison its breach of fiduciary duty claim— the centerpiece of its first two complaints—Great Western now tries to recast its allegations as a breach of contract (Count XIII) or a breach of the implied covenant of good faith and fair dealing (Count XIV). But the problem with Great Western's case against WSFS was never that Great

Western had not yet found the right legal theory. The problem is that Great Western does not have a case against WSFS.

Great Western's new contract claims and its old negligent misrepresentation (Count IX) and negligence (Count X) claims suffer from the same fundamental and fatal deficiency as its original breach of fiduciary duty claim: Great Western does not and cannot identify any duty that WSFS breached. To the contrary, in the Trust Agreement that Great Western concedes definitively sets forth the parties' rights, duties, and obligations, Great Western expressly disclaimed the alleged "duties" that it now claims WSFS "breached." Its remaining repeated claim of aiding and abetting fraud (Count IV) also fails because Great Western's unchanged bare-bone pleadings fail to meet the standard for such a claim. For these reasons, detailed below, this Court should dismiss all of Great Western's claims against WSFS.

1.    **Great Western Fails to State a Breach of Contract Claim (Count XIII) Because the Only Alleged Breach Is Not of a Contractual Obligation.**

Great Western has pleaded that WSFS breached the Trust Agreement in only one way: WSFS allegedly reported inaccurate values for the repurchase agreements in its monthly account statements to Great Western.[4] *See* SAC ¶¶ 81, 83, 95, 100-01, 120, 257.

However, this allegation is flatly contradicted by the plain terms of the Trust Agreement, in which Great Western unequivocally agreed that WSFS would have no responsibility for the valuation of the Trust assets. In Section 4(j) of the Trust Agreement, Great Western agreed to the specific mechanism by which it and Alpha Re—and not WSFS—would determine "the fair market value of any Assets in the Trust Account pursuant to this Agreement." Ex. C § 4(j) (setting forth how Trust assets would be valued, including, if no public prices were available,

---

[4] A claim for breach of contract requires "(1) a contractual obligation; (2) a breach of that obligation by the defendant; and (3) a resulting damage to the plaintiffs." *Phunware, Inc. v. Excelmind Grp. Ltd.*, 117 F. Supp. 3d 613, 625 (D. Del. 2015) (citations omitted). The Trust Agreement is governed by Delaware law. *See* Ex. C § 9.

obtaining the appraisal of "a qualified independent securities valuation firm" at the expense and recommendation of Alpha Re). In that same section, Great Western agreed that WSFS would have no liability whatsoever for any incorrect valuation of the Trust assets and, further, that WSFS would not be involved in any dispute relating to the value of Trust assets. *Id.* (stating that WSFS would not incur "any liability … for any incorrect fair valuation of Assets, howsoever caused" and "shall not be a party to any dispute between [Alpha Re] and [Great Western] relating to the valuation of assets"). If these disclaimers were not enough, Great Western reiterated in Section 5(i) that "[t]he Trustee [WSFS] shall not be personally liable for … the value of the Assets" and further promised that WSFS would be entitled to rely upon the valuation information it received without being "bound to make any investigation into the facts or matter stated in any … opinion, report … or other paper or document." *Id.* § 5(i)(iii)-(iv).

Great Western's deliberate disregard for the actual terms of the Trust Agreement, which definitively foreclose Great Western's contract claim, is astounding—as is its entirely conclusory allegations that WSFS "knew" that the valuations of the repurchase agreements it received from Alpha Re and Graham were incorrect. *See, e.g.*, SAC ¶¶ 95, 100, 120, 257. As the SEC Order (that Great Western brought to the attention of this Court) found and as Great Western has already conceded, "Graham, BAAM, and others provided inaccurate valuations of the assets for the account statements that WSFS provided Great Western …." Opp. to Graham MTD at 23; *see also* SEC Order ¶ 20 (finding that Graham repeatedly "made false statements to [WSFS] as to the value of the securities that support[ed]" the repurchase agreements and "failed to disclose a reduction in the value of the reinsurance trust assets"); SAC ¶ 180 ("Alpha, BCM, BAAM, Graham, Regatta, Solow, and Tolaram … repeatedly misrepresent[ed] … the valuation of the Great Western Trust assets"). WSFS could not have known—and did not know—that the

valuations were inaccurate given that, as Great Western concedes, the conspirators continuously lied to WSFS about the valuations of the assets.

Because Great Western's contract claim is contradicted by the plain terms of the Trust Agreement, this Court must dismiss this claim.

2.  **Great Western Also Fails to State a Claim for Breach of the Implied Covenant of Good Faith and Fair Dealing (Count XIV).**

Great Western's baseless claims fare no better as purported breaches of the implied covenant of good faith and fair dealing. The implied covenant of good faith and fair dealing is a narrowly-confined gap-filling doctrine that cannot contradict the actual terms of a contract or generate wholly new obligations. As the Delaware Supreme Court has explained,

> The covenant is best understood as a way of implying terms in the agreement, whether employed to analyze unanticipated developments or to fill gaps in the contract's provisions. Existing contract terms control, however, such that implied good faith cannot be used to circumvent the parties' bargain or to create a free-floating duty unattached to the underlying legal document.

*Dunlap v. State Farm and Cas. Co.*, 878 A.2d 434, 441 (Del. 2005) (quotations and citations omitted); *see also Chamison v. HealthTrust–Hosp. Co.*, 735 A.2d 912, 921 (Del. Ch. 1999). However, "circumventing the parties' bargain" and "creat[ing ]free-floating dut[ies] unattached to the underlying legal document" is exactly what Great Western apparently seeks to do here.

As a preliminary matter, in the Trust Agreement, Great Western explicitly disclaimed the existence of any implied duties on WSFS's part. Ex. C § 5(h) ("The duties and obligations of [WSFS] shall only be such as are specifically set forth in this Agreement … and no implied duties … or obligations shall be read into this Agreement against the Trustee."). This provision alone suffices to dispose of this "implied covenant" claim.

Even if there were a way to completely ignore this clear contractual provision, Great Western's claims here—that WSFS breached the implied covenant of good faith and fair dealing

by allegedly (1) reporting inaccurate values for the repurchase agreements in its monthly account statements and (2) permitting the investment of Trust assets in the repurchase agreements with Series 2011-C, which shared "common control or ownership" with Alpha Re—would require running roughshod over numerous other clear contract provisions. SAC ¶¶ 263-64.

First, as already explained, Great Western's attempt to fault WSFS for misreporting the value of the repurchase agreements is foreclosed by the many provisions expressly disclaiming any obligation on WSFS's part to determine the value of Trust assets. *See supra* Section III.B.1.

Second, Great Western's suggestion that WSFS was somehow responsible for the Trust's investment in the repurchase agreements—which left the majority of Trust assets invested in an entity "controlled by, or under [the] common control" of the grantor, Alpha Re—is similarly baseless. Ex. C § 4(f); *see also* SAC ¶ 264.[5] As a threshold matter, this allegation rests on the erroneous factual premise that WSFS knew that Alpha Re was secretly owned by Solow and Graham and thus, that the counterparty Series 2011-C was under the common control of Solow (through Regatta). As discussed below, Great Western provides no explanation how WSFS was to know that Alpha Re was secretly owned by Solow and Graham. *See infra* Section III.B.3.

Moreover, WSFS had absolutely no duty, responsibility, or authority to direct the investment of Trust assets. In the Trust Agreement, Great Western agreed that Alpha, Graham, and BAAM would direct the investments of the Trust and that WSFS was required to follow those directions. *See, e.g.*, Ex. C § 4(d). WSFS's obligation to follow Alpha's, Graham's, and

---

[5] It is unclear how Great Western's next sentence—that "WSFS did not alert Great Western" to the fact that "in 2015 and 2016, only Mark Graham signed the Repurchase Confirmations" on behalf of Series 2011-C—is relevant. SAC ¶ 264; *see also id.* ¶¶ 93, 98. In any case, Great Western again cannot point to anything in the Trust Agreement that might give rise to such a free-floating implied duty to affirmatively "alert" Great Western as to who was signing the Repurchase Confirmations on behalf of the counterparty, Series 2011-C. *See* Ex. C § 5(h) ("The duties and obligations of [WSFS] shall only be such as are specifically set forth in this Agreement … and no implied duties … or obligations shall be read into this Agreement against the Trustee.)

BAAM's directions was mandatory: "[U]pon the written order and direction of the Grantor or the Investment Manager, the Trustee ***shall*** invest Assets as specified." *Id.* § 4(c) (emphasis added). *See, e.g.*, *HongKong and Shanghai Banking Corp. Ltd. v. Suveyke*, 392 F. Supp. 2d 489, 492 (E.D.N.Y. 2005) ("[T]he use of the word 'shall' is a clear indication of mandatory, rather than permissive language.") (citations omitted). Great Western's allegations do not—because they cannot—suggest otherwise. *See, e.g.*, SAC ¶¶ 3, 70 ("***Graham and BAAM*** invested ….") (emphasis added). And concomitant with WSFS's lack of power to direct the investment of Trust assets, WSFS also had no liability for the investment of Trust assets. The Trust Agreement plainly provides that WSFS "shall have no obligation or liability with respect to the nature of the Assets held in the Trust Account or the ability or failure of such Assets to meet the definitions as set above," Ex. C. § 1(c), "shall not be responsible for any act or omission … [of] the Grantor [Alpha Re] or the Investment Manager [BAAM]," *id.* § 4(c), "shall have no liability or obligation to verify compliance with the Investment Guidelines, Section 4(g), or ***the other provisions of this Section 4*** **[including Section 4(f)]** and shall be entitled to conclusively rely upon any Investment Order," *id*. § 4(g) (emphasis added).[6]

Because Great Western cannot plead the existence of any implied duties or any breach of those duties, this Court must dismiss this count against WSFS.

### 3. Great Western Again Fails to Plead the Essential Elements of a Negligent Misrepresentation Claim Against WSFS (Count IX).

Great Western's negligent misrepresentation claim must be dismissed because Great Western failed to plead a duty WSFS owed to Great Western and Great Western's justifiable

---

[6] Consistent with the terms of the Trust Agreement, Delaware law independently precludes imposing liability on a trustee for any actions it takes (or does not take) at the direction of an adviser appointed by the governing instrument. *See* 12 DEL. CODE. ANN. § 3313(b).

reliance under these circumstances.[7] Instead, Great Western again ignores the explicit terms of the Trust Agreement, claiming that "***[d]ue to the Trust Agreement*** … WSFS was under a duty to impart correct and truthful information concerning … [1] the actual value of the assets in the Trust Accounts and the [2] the relationship of the parties named in the Repurchase Agreement." SAC ¶ 210 (emphasis added). There is absolutely no basis for this tort claim.

Regarding Great Western's first basis for this claim, the Trust Agreement (and Great Western) directed WSFS to rely upon others for the "actual value" of the Trust assets and expressly disclaimed any duty or liability whatsoever on WSFS's part for the valuation of Trust assets.[8] *See supra* Section III.B.1. Great Western cannot base this tort claim on a "duty" that did not exist and that it expressly disclaimed.

As for Great Western's second basis, even if WSFS had any inkling of the secret "relationship[s] of the parties named in the Repurchase Agreement" (which it did not), WSFS had no duty to investigate those secret relationships and no duty to affirmatively disclose such information to Great Western.[9] SAC ¶ 210; *see generally* Ex. C § 5. Indeed, nothing in the Trust Agreement requires WSFS to take affirmative action to investigate, discover, alert, or advise

---

[7] Under either New York or Delaware law, a plaintiff must plead that "(1) the defendant had a duty as a result of a special relationship to give correct information; (2) the defendant made a false representation that [it] should have known was incorrect; (3) the defendant knew that the plaintiff desired the information for a serious purpose; (4) the plaintiff intended to rely and act upon it; and (5) the plaintiff reasonably relied on it to his or her detriment." *BNP Paribas Mortg. Corp. v. Bank of Am., N.A.*, 949 F. Supp. 2d 486, 508 (S.D.N.Y. 2013) (citation omitted); *see also PR Acquisitions, LLC v. Midland Funding LLC*, C.A. No. 2017-0465-TMR, 2018 WL 2041521, at *13 (Del. Ch. Apr. 30, 2018) (citation omitted). The heightened pleading standards of Federal Rule of Civil Procedure 9(b) apply to claims for negligent misrepresentation. *See, e.g.*, *BNP Paribas*, 949 F. Supp. 2d at 508 (citations omitted).

[8] This Court must also dismiss this claim, because it is merely duplicative of Great Western's contract claim. *See, e.g.*, *OP Solutions, Inc. v. Crowell & Moring, LLP*, 900 N.Y.S.2d 48, 49 (N.Y. App. Div. 2010) (dismissing claims for fraud and negligent misrepresentation that were "not separate and apart from its claim for breach of contract"); *Livery Coach Solutions, L.L.C. v. Music Express/East, Inc.*, 245 F. Supp. 3d 639, 644 (D. Del. 2017).

[9] Great Western does not allege that WSFS made ***any*** false representation concerning the relationship of the parties to the Repurchase Agreement, but a negligent misrepresentation claim based on an alleged omission requires an affirmative duty to disclose. *Cf. First Hill Partners, LLC v. Bluecrest Cap. Mgmt. Ltd.*, 52 F. Supp. 3d 625, 637 (S.D.N.Y. 2014) (holding that fraud by omission requires a duty to disclose) (citations omitted); *H-M Wexford LLC v. Encorp, Inc.*, 832 A.2d 129, 144 (Del. Ch. 2003) (same). WSFS was under no such affirmative duty.

Great Western about the interrelationships between Alpha, Solow, Graham, the Cygnet entities, and the Blue entities. *See, e.g.*, *id.* § 5(i)(iv) ("[T]he Trustee shall not be bound to make any investigation in the facts or matters in any … paper or document"). This Court should not entertain Great Western's *post hoc* attempt to rewrite the Trust Agreement to insert such a duty.[10]

Further, even if, *arguendo*, WSFS had such a duty, the SAC does not allege any facts showing ***how*** WSFS could have known of the secret "relationship[s] of the parties named in the Repurchase Agreement." SAC ¶ 210. On the contrary, Great Western virtually concedes that WSFS was not involved in the alleged fraud designed by the other defendants: Great Western does not allege that WSFS was an associate of the other defendants' RICO enterprise, that WSFS was a member of the other defendants' conspiracy to defraud insurance companies, or that WSFS was otherwise a part of the conspirators' complex and intermingled ownership structure. *See, e.g.*, SAC ¶¶ 190, 193-196, 199-202, 216, 223. The only arguably relevant fact known to WSFS—that Graham (through BCM and BAAM) was the investment manager for both Great Western and Series 2011-C—was also known to Great Western. Indeed, Great Western admits that it received documents that identified Graham as being the investment manager for both the Great Western Trust and Series 2011-C. *See, e.g.*, Supp. Terms § 1(m), Ex. D at 38 (identifying Graham and BAAM as "collateral manager" of both the Great Western Trust Account and Series 2011-C); *see also* SAC ¶ 73 (admitting that Great Western received the September 2012 Repurchase Agreement); Ex. C § 5(f). Great Western has not alleged that WSFS had any more knowledge of these interrelationships than Great Western itself.

---

[10] Importantly, Great Western contracted with Alpha Re ***before*** WSFS became trustee of the Trust. *Compare* Ex. B at pg. 1 (dated June 19, 2012) *with* Ex. C at pg. 1 (dated July 11, 2012). Had it been important for Great Western to understand the players behind these entities, it could have and should have done its own due diligence well before selecting WSFS to be the replacement trustee.

Rather, WSFS experienced the same concealment of "Graham and Solow's involvement" with Alpha Re, their "aura of legitimacy", and the "fronts" established by Tolaram, Drake, and Lynch as Great Western did. *See* SAC ¶ 206; *see also* Ex. C at 14, 26. Indeed, the SEC Order details, at length, Graham's deceptive conduct designed to conceal the conspirators' fraud, which included failing "to disclose numerous conflicts of interest associated with their management of client assets," "his majority equity ownership of Alpha Re," and "his management of Blue II and the Stuyvesant Fund." SEC Order ¶¶ 1, 30. It is incredible that Great Western would simultaneously allege a highly sophisticated fraudulent scheme designed to evade detection and suggest that WSFS—which had no part in the scheme and had no duty whatsoever to "make any investigation into … facts or matters"—must have known its details. Ex. C § 5(i)(iv).

Great Western has utterly failed to allege any duty that WSFS owed and breached; moreover, its allegations fail to plausibly establish that WSFS had the knowledge to even breach such a hypothetical duty. Finally, in light of those categorical and repeated disclaimers, Great Western could not possibly have ***justifiably*** relied on any failure on WSFS's part to do what it never promised to do or what it did not have authority to do. *Cf. JM Vidal, Inc. v. Texdis USA, Inc.*, 764 F. Supp. 2d 599, 623 (S.D.N.Y. 2011) ("[A] party cannot justifiably rely on a representation that is specifically disclaimed in an agreement.") (quotation omitted); *Progressive Intern. Corp. v. E.I. Du Pont de Nemours & Co.*, No. C.A. 19209, 2002 WL 1558382, at *7 (Del. Ch. Jul. 9, 2002) ("[S]ophisticated parties may not reasonably rely on representations that are inconsistent with a negotiated contract") (citations omitted). For all these reasons, this Court should dismiss Great Western's negligent misrepresentation claim (Count IX) against WSFS.[11]

---

[11] Moreover, Great Western exculpated WSFS from all liability except due to WSFS's "own bad faith, willful misconduct, or negligence ***in the performance of its express duties under this Agreement***." Ex. C § 5(i) (emphasis added). Great Western has made no factual allegation that WSFS's actions breached any of its ***express duties***.

### 4. Great Western Fails to State a Negligence Claim (Count X).

Great Western's negligence claim is merely a repackaging of the previous allegations and fails for the same reasons.[12] Here, Great Western alleged that "WSFS owed Great Western a duty to act with reasonable care in connection with directing the Trusts' assets" and "breached that duty of care by … making imprudent investments to benefit themselves, failing to advise Great Western of the reason for such investments, and improperly valuing or identifying such assets."[13] SAC ¶¶ 240-41. This is totally wrong: First, WSFS is not responsible for "making imprudent investments," because WSFS had no power over the investment of Trust assets. As explained, the Trust Agreement conclusively establishes that Alpha and Graham—not WSFS—had the power and duty to direct the investment of Trust assets. *See supra* Section III.B.2. For the same reasons, WSFS is also not responsible for a "failure to advise Great Western of the reason for such investments," because, again, WSFS did not make "such investments," and because it had no authority to do so. *See* Ex. C § 5(h). Finally, WSFS had no duty, responsibility, or liability for the valuation of Trust assets. *See supra* Section III.B.1. With no allegations of any breach of an express duty, the negligence claim (Count X) must be dismissed.[14]

### 5. Great Western Fails to State a Claim for Aiding and Abetting Fraud Count Against WSFS (Count IV).

Even with this latest amendment, Great Western still has not added anything of substance to its pleading of the "bare elements of [its aiding and abetting fraud] cause of action." *Iqbal*, 556

---

[12] Under either state's law, to plead a negligence claim, Plaintiff must allege "(1) a duty of care owed by defendants to plaintiffs; (2) a breach of that duty by defendants; and (3) injury to plaintiffs proximately caused by the breach." *Rahaman v. J.C. Penney Corp.*, C.A. No. N15C-07-174 MMJ, 2016 WL 2616375, at *8 (Del. Super. Ct. May 4, 2016); *see also BNP Paribas*, 949 F. Supp. 2d at 504 (same; citation omitted).

[13] These claims must also be dismissed, because they are merely duplicative of Great Western's contract claims. *See* fn. 8; *see also Hauptman v. Interactive Brokers, LLC*, No. 17 Civ. 9382 (GBD), 2018 WL 4278345, at *8 (S.D.N.Y. Jun. 12, 2018); *Midland Red Oak Realty, Inc. v. Friedman, Billings & Ramsey & Co.*, No. CIV.A.04C05091CLS, 2005 WL 445710, at *3 (Del. Super. Feb. 23, 2005).

[14] *See supra* fn. 11.

U.S. at 687. Great Western has only alleged in a conclusory fashion that WSFS was "aware of the fraud" and "provided substantial assistance."[15] SAC ¶ 184. There are simply no allegations in the SAC about **how** WSFS was "aware" and **how** WSFS "provided substantial assistance." *Id.* Under *Iqbal* or Rule 9(b), this bare-bones pleading is fatally deficient.

Importantly, aiding and abetting liability requires "actual, not constructive, knowledge of the fraud." *Rosner*, 2008 WL 5416380, at *5; *see also Capitaliza-T*, 2011 WL 864421, at *5 ("The universal rule requires actual knowledge of the tortious conduct by the wrongdoer, not merely that the defendant knew something was wrong in general.") (quotation omitted; collecting cases). Courts "overwhelmingly recognize that" actual knowledge requires more than "suspicions or ignorance of obvious 'red flags' or warning signs indicating the fraud's existence." *Rosner*, 2008 WL 5416380, at *6 (collecting cases).

Great Western's allegations do not meet this standard. Great Western has failed to allege that WSFS was any more aware of the fraudulent conspiracy than Great Western itself was. *See supra* Section III.B.3. Moreover, Great Western has conceded that the actual perpetrators repeatedly "made false statements" **to WSFS**, including about the value of the repurchase agreements and the securities supporting the repurchase agreements, and "engaged in other deceptive conduct." SEC Order ¶ 20; *see also, e.g., id.* ¶¶ 1, 30 (detailing Graham, BAAM, and BCM's fraud and active concealment of same); SAC ¶¶ 180, 206, 219 (alleging how the perpetrators "continually conceal[ed] their fraud"). In light of Great Western's allegations about this highly sophisticated fraudulent scheme designed to evade detection, its claim—that WSFS,

---

[15] To plead an aiding and abetting fraud claim, a plaintiff must allege specific facts showing "(1) the existence of a fraud; (2) the defendant's knowledge of the fraud; and (3) that the defendant provided substantial assistance to advance the fraud's commission." *Rosner v. Bank of China*, No. 06 CV 13562, 2008 WL 5416380, at *4 (S.D.N.Y. Dec. 18, 2008), *aff'd* 349 F. App'x 637 (2d Cir. 2009) (quotations and alterations omitted); *see also Capitaliza-T Sociedad de Responsabilidad Limitada de Capital Variable v. Wachovia Bank of Del. Nat. Ass'n*, No. 10-520 (JBS/KMW), 2011 WL 864421, at *4 (D. Del. Mar. 9, 2011) (same).

which unquestionably had no part in the scheme, no incentive to participate in the scheme, and no duty whatsoever to "make any investigation into … facts or matters," must inexplicably have had ***actual knowledge of the fraud***—is completely implausible. *Id.* § 5(i)(iv); *see, e.g.*, *Pension Comm. of Univ. of Montreal Pension Plan v. Banc of Am. Secs., LLC*, 446 F. Supp. 2d 163, 203-04 (S.D.N.Y. 2006) ("When a defendant is under no duty [to monitor, verify, or investigate], even alleged ignorance of obvious warning signs of fraud" is insufficient"); *In re Agape Litig.* ("*Agape I*"), 773 F. Supp. 2d 298, 310 (E.D.N.Y. 2011) (same; collecting cases).

Great Western also pleaded no facts to suggest that WSFS "substantially assisted" the fraud. "It is well-established that the mere fact that participants in a fraudulent scheme use accounts at a financial institution to perpetrate it, without more, does not in and of itself rise to the level of substantial assistance." *Berman v. Morgan Keegan & Co., Inc.*, 455 F. App'x 92, 96 (2d Cir. 2012) (quotations and alterations omitted; collecting cases); *cf. In re Agape Litig.*, ("*Agape II*"), 681 F. Supp. 2d 352, 365 (E.D.N.Y. 2010) (holding that providing "conventional banking services" is not "substantial assistance"). That WSFS "executed securities transactions on [the conspirators'] behalf and at [the conspirators'] direction … is insufficient to constitute 'substantial assistance'" as a matter of law. *Berman*, 455 F. App'x at 96. The same applies to WSFS's purely clerical issuance of monthly account statements, which reflected asset valuations furnished by Alpha Re, Graham, and others and over which WSFS had no duty or responsibility. *See supra* Section III.B.1. Great Western cannot even allege a breach of WSFS's contractual obligations, let alone "substantial assistance" to the alleged fraud. Consequently, this aiding and abetting fraud claim (Count IV) against WSFS must be dismissed as well.

**C.      Great Western's Complaint Against WSFS Must Also Be Dismissed, Because There Is No Basis for the Exercise of Personal Jurisdiction over WSFS.**

Even after twice amending its complaint, Great Western can muster only two purported bases for the exercise of personal jurisdiction over WSFS, namely: that (1) in the course of administering the Trust in Delaware, WSFS received "withdrawal and deposit instructions" from and otherwise communicated by phone and email with Defendants Graham, BCM, and BAAM, who were allegedly based in New York, and (2) WSFS—solely as trustee for the Trust and at the direction of BAAM—signed the Master Repurchase Agreement ("MRA"), which contained a New York choice-of-law provision. SAC ¶¶ 40, 73. Neither of these purported bases comes close to permitting the exercise of personal jurisdiction over WSFS.

**1.      There Is No General Personal Jurisdiction.**

The exercise of general personal jurisdiction is appropriate only where a "corporation's in-forum contacts 'are so continuous and systematic as to render [the corporation] essentially at home in the forum State.'" *Thackurdeen v. Duke Univ.*, 130 F. Supp. 3d 792, 799 (S.D.N.Y. 2015) (quoting *Daimler AG v. Bauman*, 571 U.S. 117, 138 (2014); alteration in original). Save for "a truly 'exceptional' case," a corporate defendant is "'essentially at home' only where it is incorporated or maintains its principal place of business." *Brown v. Lockheed Martin Corp.*, 814 F.3d 619, 627 (2d Cir. 2016) (quoting *Daimler*, 571 U.S. at 138 n. 19).

Here, WSFS is a federally chartered savings association with its home office located in Wilmington, Delaware. *See* Declaration of John L. Olsen ¶ 4, attached as **Exhibit 1**.[16] WSFS does not have any branches, offices, or regular operations in New York. *See* Ex. 1 ¶ 6. Because

---

[16] "Courts may rely on materials outside the pleading in considering a motion to dismiss for lack of personal jurisdiction." *In re Platinum and Palladium Antitrust Litig.*, 2017 WL 1169626, at *39 (citation omitted).

there are no facts to support the conclusion that WSFS is "essentially at home" in New York, this Court may not exercise general personal jurisdiction over WSFS. *See Daimler*, 571 U.S. at 139.

### 2.    There Is No Specific Personal Jurisdiction

A court may only exercise specific personal jurisdiction over a nondomiciliary who: (1) "transacts any business within the state or contracts anywhere to supply goods or services in the state;" (2) "commits a tortious act within the state;" (3) "commits a tortious act without the state causing injury to person or property within the state;" or (4) "owns, uses or possesses any real property situated within the state" and only as to a cause of action arising from the above acts. N.Y. C.P.L.R. § 302(a).

As a preliminary matter, the latter three subsections plainly do not apply here.[17]

The only other subsection—Section 302(a)(1)—also does not apply. "To determine the existence of jurisdiction under [S]ection 302(a)(1), a court must decide (1) whether the defendant 'transacts any business' in New York and, if so, (2) whether [the alleged] cause of action 'arises from' such a business transaction." *Best Van Lines,* 490 F.3d at 246 (citation omitted). A foreign defendant only "transacts business in New York when, looking at the totality of the circumstances, [it] purposefully avails [itself] of the privilege of conducting activities within New York, thus invoking the benefits and protections of its laws." *Hau Yin To v. HSBC Holdings PLC*, No. 15CV3590-LTS-SN, 2017 WL 816136, at *5 (S.D.N.Y. Mar. 1, 2017), *aff'd*, 700 F. App'x 66 (2d Cir. 2017) (citations and alterations omitted) ("*Hau Yin To I*"). "At a minimum, the

---

[17] Section 302(a)(2) is applicable only if the defendant's wrongful conduct physically took place in New York. *See Bank Brussels Lambert v. Fiddler Gonzalez & Rodriguez*, 171 F.3d 779, 790 (2d Cir. 1999). Here, WSFS is located in Delaware and is not alleged to have committed any tortious conduct in New York. Section 302(a)(3) requires that the alleged injury be committed "to person or property within" New York. *See V Cars, LLC v. Israel Corp.*, 902 F. Supp. 2d 349, 366 (S.D.N.Y. 2012). Here, Great Western is located in Utah and has not alleged injuries against persons or property in New York. Lastly, Section 302(a)(4) applies only if the defendant "owns, uses or possesses any real property situated within the state." *See Jonas v. Estate of Leven*, 116 F. Supp. 3d 314, 333 (S.D.N.Y. 2015). Here, WSFS does not own, use, or possess any real property in New York. *See* Ex. 1 ¶ 5.

defendant must, on his or her own initiative[, ]project himself or herself into the state to engage in a sustained and substantial transaction of business." *Hau Yin To v. HSBC Holdings, PLC*, 700 F. App'x 66, 67 (2d Cir. 2017) ("*Hau Yin To II*") (quotations and original alterations omitted). With respect to the second prong, "a suit will be deemed to have arisen out of a party's activities in New York if there is an articulable nexus, or a substantial relationship, between the claim asserted and the actions that occurred in New York." *Best Van Lines*, 490 F.3d at 246 (alterations, quotations, and citations omitted).

> **a.**  **WSFS's Incidental Communications with Allegedly New York-Based Entities Are Insufficient for Personal Jurisdiction.**

Great Western's primary basis for personal jurisdiction over WSFS is that WSFS communicated—over email and phone—with others who are alleged to be located in New York. However, it is well-settled that communications with New York entities that are mere "incidental consequences of fulfilling a foreign contract … are insufficient to 'project' [nondomiciliary defendants] into New York" so as to justify the exercise of personal jurisdiction. *Hau Yin To I*, 2017 WL 816136, at *6 (citations omitted); *see, e.g.*, *Hill v. HSBC Bank plc*, 207 F. Supp. 3d 333, 339-40 (S.D.N.Y. 2016) (holding that foreign banks' communications with New York entity "in connection with [the banks'] fund administration and/or custodial duties" were "incidental consequences of fulfilling a foreign contract and are insufficient to 'project' the [banks] into New York") (citations omitted).[18] For example, in *Mayes v. Leipziger*, the plaintiff attempted to sue her California attorney in New York for alleged legal malpractice committed in California. 674 F.2d 178, 178-79 (2d Cir. 1982). The plaintiff argued, *inter alia*, that the exercise of personal jurisdiction was appropriate because, in the course of representing her in California,

---

[18] *See also Grant & Eisenhofer, P.A. v. Bernstein Liebhard LLP*, No. 14-CV-9839 (JMF), 2015 WL 5751252, at *4 (S.D.N.Y. Sept. 30, 2015) (collecting cases; "courts have routinely held that e-mails, letters, and telephone calls with an out-of-state defendant are not enough to establish personal jurisdiction under Section 302(a)(1)").

the California attorney communicated with plaintiff's New York attorney by letter and by phone.

*See id.* at 183. The district court rejected this argument, and the Second Circuit affirmed, writing:

> So far as we are aware, no court has extended § 302(a)(1) to reach a nondomiciliary who never entered New York, who was solicited outside of New York to perform services outside of New York, who performed outside of New York such services as were performed, and who is alleged to have neglected to perform other services outside of New York…. solely on the basis that the defendants, from California, reported to their New York client and sought the wherewithal (*i.e.*, funds, authority, and information) by means of letters and calls to New York to perform their non-New York services.

*Id.* at 185.

Here, just like in *Mayes*, WSFS never entered New York and was not solicited in New York to serve as trustee. Most importantly, WSFS performed all its duties under the Trust Agreement, including holding the Trust assets, preparing and providing monthly account statements to Great Western, and executing Investment Orders on behalf of the Trust, in Delaware—not New York. *See* Ex. 1 ¶ 7; *see, e.g.*, *ING Global v. United Parcel Serv. Oasis Comp Supply Corp.*, No. 11 Civ. 5697(JSR), 2012 WL 28259, at *3 (S.D.N.Y. Jan. 4, 2012) ("In determining the center of gravity of the contract, the most significant factor is where the performance of the contract is to take place.") (citing *DirecTV Latin Am., LLC v. Park 610, LLC*, 691 F. Supp. 2d 405, 420-23 (S.D.N.Y. 2010)). WSFS's alleged communications with entities based in New York—such as WSFS's receipt of "withdrawal and deposit instructions" from Graham, BCM, and BAAM—were merely incidental to WSFS's performance of its duties under the Trust Agreement—all of which occurred in Delaware. SAC ¶ 40.

Moreover, WSFS had no role in selecting any of the allegedly New York-based defendants. Great Western and Alpha Re—not WSFS—chose Graham and BAAM to serve as Investment Manager for the Trust and retained the power to select a replacement at any time. *See*

SAC ¶¶ 63, 67; Ex. C § 4(b). WSFS's communications with an Investment Manager that it had no part in choosing (and which could have changed at any time) cannot constitute a purposeful and volitional act on WSFS's part to "engage in a sustained and substantial transaction of business." *Hau Yin To II*, 700 F. App'x at 67.[19]

Finally, Great Western's claims do not "arise from" WSFS's incidental communications with Graham, BCM, or BAAM in New York, as required by the second prong of Section 302(a)(1). *See Best Van Lines*, 490 F.3d at 246. As this Court observed in *Thackurdeen*, "courts have refused to find that a cause of action arises out of defendant's activities within the state merely because the defendant had a contact with New York that was a link in the chain of events leading to the claim for which relief is sought." 130 F. Supp. 3d at 802 (citation omitted). This thin allegation supports no footing for the exercise of personal jurisdiction over WSFS.

> **b.** **WSFS's Signing of the MRA for the Trust and at BAAM's Direction Is Also Insufficient for Personal Jurisdiction.**

Great Western's only other basis for jurisdiction over WSFS is that WSFS signed an investment document, the MRA, that has a New York choice-of-law provision. But the mere fact that an agreement contains a New York choice-of-law provision is completely insufficient to transmute a contract to be performed in Delaware and between two Delaware entities into a New York business transaction for purposes of personal jurisdiction. *See, e.g.*, *Feldmuehle North-Am. v. West End Converters, Inc.*, No. 91 Civ. 4512, 1992 WL 77578, at *3 (S.D.N.Y. Mar. 23, 1992) ("The [choice-of-law] clause does not constitute a voluntary submission to personal jurisdiction … [and] alone cannot establish personal jurisdiction over defendant.") (citation omitted).

---

[19] Exercising personal jurisdiction over WSFS here would violate fundamental principles of due process and New York law, which "ensure that a defendant will not be haled into a jurisdiction solely as a result of the unilateral activity of another party or a third person." *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 475 (1985) (quotations and alterations omitted); *see also Charles Schwab Corp. v. Bank of Am. Corp.*, 883 F.3d 68, 85 (2d Cir. 2018).

Even if this New York choice-of-law provision were dispositive, WSFS did not sign the MRA in its personal capacity but only in its capacity as trustee. *See* MRA at 42, Ex. D ("[T]his Agreement and each Confirmation entered into hereunder is executed and delivered by [WSFS] ***not in its individual capacity but solely as Trustee***" and "each of the representations, undertakings and agreements made … by [WSFS] … ***are binding only on the trust estate created pursuant to the Trust Agreement***.") (emphasis added).

Nor did WSFS sign the MRA purposefully and volitionally; WSFS did so only because Graham (as Great Western's Investment Manager) directed it to do so. *See* SAC ¶ 70; Ex. C § 4(c); Opp. to Graham MTD at 20, 22-23 ("Graham, BAAM, and BCM managed the financial accounts involved…. Graham orchestrated the Repurchase Agreement …."). Consequently, personal jurisdiction over WSFS is inappropriate. *See, e.g.*, *Hau Yin To I*, 2017 WL 816136, at *5; *Royalty Network, Inc. v. Dishant.com, LLC*, 638 F. Supp. 2d 410, 418 (S.D.N.Y. 2010).

Finally, even if signing the MRA constituted a New York business transaction, it would not justify personal jurisdiction over Great Western's claims against WSFS, because specific personal jurisdiction requires that plaintiff's legal claims arise from the defendant's New York business transactions. *See, e.g.*, *Best Van Lines*, 490 F.3d at 249. None of Great Western's claims against WSFS arise from the MRA, the document that has a New York choice-of-law provision. Rather, Great Western's claims are all premised on purported "duties" that WSFS allegedly owed under the Trust Agreement, which has a Delaware choice-of-law provision.[20]

Because this Court lacks general and specific personal jurisdiction over WSFS, this Court must dismiss WSFS from this case.

_____

[20] Because this Court does not have specific personal jurisdiction over WSFS pursuant to New York's long-arm statute, it need not analyze whether WSFS's alleged conduct satisfies the "minimum contacts" requirements under the Due Process Clause. *See Best Van Lines*, 490 F.3d at 254 n.14 (citations omitted). However, even if this Court were to conduct a constitutional analysis, the same conclusion would result.

# IV.    CONCLUSION AND RELIEF REQUESTED

For the foregoing reasons, this Court should grant Defendants Wilmington Savings Fund Society, FSB and Christiana Trust's Motion to Dismiss Pursuant to Federal Rules of Civil Procedure 12(b)(2) and 12(b)(6) and dismiss all claims in the Second Amended Complaint against Wilmington Savings Fund Society, FSB and Christiana Trust with prejudice.

Dated: February 5, 2019                                  BLANK ROME LLP


                                                        /s/ Huaou Yan
                                                        Alan Lieberman, Esq. (AL6517)
                                                        Huaou Yan, Esq. (HY8128)
                                                        Daniel E. Rhynhart, Esq. (*pro hac vice*)
                                                        Stephanie C. Chomentowski, Esq. (*pro hac vice*)
                                                        The Chrysler Building
                                                        405 Lexington Avenue
                                                        New York, NY 10174
                                                        Telephone: (212) 885-5000
                                                        ALieberman@BlankRome.com
                                                        HYan@BlankRome.com
                                                        Rhynhart@BlankRome.com
                                                        Chomentowski@BlankRome.com

                                                        *Counsel for Wilmington Savings Fund Society, FSB and Christiana Trust*