# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| GREAT WESTERN INSURANCE COMPANY, <br><br> Plaintiffs, <br><br> v. <br><br> MARK GRAHAM, DONALD SOLOW, BLUE CAPITAL MANAGEMENT, INC., BLUE ALTERNATIVE ASSET MANAGEMENT LLC, WILMINGTON SAVINGS FUND SOCIETY, FSB, CHRISTIANA TRUST, REGATTA HOLDINGS LLC, CYGNET 001 MASTER TRUST, CYGNET 001 MASTER TRUST SERIES 2011-A, CYGNET 001 MASTER TRUST SERIES 2011-C, CYGNET 001 MASTER TRUST SERIES 2013-A, ALPHA RE LIMITED, ALPHA RE HOLDINGS (CAYMAN) LIMITED, ATLANTIC SPECIALTY FINANCE, BLUE ELITE FUND LTD., BLUE ELITE FUND LP, BLUE II LTD., SANCUS CAPITAL BLUE CREDIT OPPORTUNITIES FUND LTD., ABILITY INSURANCE COMPANY, JOHN DRAKE, EDWARD BRENDAN LYNCH, AND GREGORY TOLARAM. <br><br> Defendants. | CIVIL ACTION NO. 1:18-CV-06249 (VSB) |

**REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF DEFENDANT MARK GRAHAM, BLUE CAPITAL MANAGEMENT, INC., BLUE ALTERNATIVE ASSET MANAGEMENT, LLC, BLUE ELITE FUND LTD., BLUE ELITE FUND L.P., AND BLUE II, LTD.'S MOTION TO DISMISS**

**DUANE MORRIS LLP**
**A Delaware Limited Liability Partnership**

Eric R. Breslin
P. Ryan McElduff
Melissa S. Geller
Leah A. Mintz (admitted *pro hac vice*)
One Riverfront Plaza
1037 Raymond Blvd., Suite 1800
Newark, New Jersey 07102-5429
Tel.: (973) 424 2000
Fax: (973) 424 2001
ERBreslin@duanemorris.com
PRMcElduff@duanemorris.com
MSGeller@duanemorris.com
LMintz@duanemorris.com
*Attorneys for Mark Graham, Blue Capital Management, Inc.,*
*Blue Alternative Asset Management, LLC,*
*Blue Elite Fund, Ltd., Blue Elite Fund, L.P., Blue II, Ltd.*

# TABLE OF CONTENTS

**Page**

I.   **The Court Lacks Personal Jurisdiction Over BCM, Blue II, and Blue Elite, Ltd. under Federal Rule of Civil Procedure 12(b)(2).** ...................................................1

II.  **Great Western Fails to Assert Meritorious Arguments Opposing the Blue Defendant's Motion to Dismiss Under Rule 12(b)(6).** ....................................3

    A.   **Great Western Cannot State a Claim Against BAAM and Graham for Breach of Fiduciary Duty.** .......................................................... 4

    B.   **Great Western Cannot State a Claim Against BCM, Blue Elite, Ltd., Blue Elite, L.P., or Blue II for Aiding and Abetting Breach of a Fiduciary Duty.** ....................................................... 6

    C.   **Great Western Fails to State a Claim for Fraud against Graham, BCM, and BAAM.** ......................................................... 6

    D.   **Great Western Fails to State a Claim under RICO.** ......................................... 7

        1.   *The PSLRA Bars the RICO Action.* ......................................... 7

        2.   *Great Western Fails to Plead a RICO Claim under Subsection (c) or (d).* 9

        3.   *Great Western Fails to Plead Liability Under § 1962(a).* ...................... 9

        4.   *Great Western Fails to Plead Liability Under § 1962(d).* ..................... 10

    E.   **Great Western Fails to Adequately Plead Unjust Enrichment.** ..................... 10

# TABLE OF AUTHORITIES

**Page(s)**

CASES

*Apex Maritime Co., Inc. v. OHM Enters., Inc.*
No. 10 Civ. 8119(SAS), 2011 WL 1226377 (S.D.N.Y. Mar. 31, 2011)
(Scheindlin, J.) ...................................................................................................3

*Chadbourne & Parke, LLP v. Troice*
571 U.S. 377 (2014)............................................................................................8

*Chirag v. MT Marida Marguerite Schiffahrts*
604 F. App'x 16 (2d Cir. 2015) ........................................................................1

*Dabit v. Merrill Lynch, Pierce, Fenner, & Smith, Inc.*
395 F.3d 25 (2d Cir. 2005)..............................................................................7-8

*EED Hldgs. v. Palmer Johnson Acquisition Corp.*
228 F.R.D. 508 (S.D.N.Y. 2005) .....................................................................3

*FIA Leveraged Fund Ltd. v. Grant Thornton LLP*
150 A.D.3d 492 (1st Dep't 2017) .....................................................................2

*First Capital Asset Mgmt., Inc. v. Satinwood, Inc.*
385 F.3d 159 (2d Cir. 2004)..............................................................................9

*Georgia Maline & Co., Inc. v. Rieder*
19 N.Y.3d 511 (N.Y. 2012) ............................................................................10

*Janzini v. Nissan Motor Co., Ltd.*
148 F.3d 181 (2d Cir. 1998).............................................................................2-3

*Licci ex rel. Licci v. Lebanese Canadian Bank SAL*
732 F.3d 161 (2d Cir. 2013).............................................................................2

*Melito v. Am. Eagle Outfitters, Inc.*
14-CV-02440(VEC), 2015 WL 7736547 (S.D.N.Y. Nov. 30, 2015) .......................4

*Merrill Lynch, Pierce, Fenner & Smith Inc. v. Dabit*
547 U.S. 71 (2006)............................................................................................8

*Metro. Life Ins. Co. v. Robertson-Ceco Corp.*
84 F.3d 560 (2d Cir. 1996)................................................................................2

*Mueller v. Michael Janssen Gallery Pte. Ltd.*
225 F. Supp. 3d 201 (S.D.N.Y. 2016) (Buchwald, J.) ...........................................10

ii

*Musalli Factory For Gold & Jewellry v. JPMorgan Chase Bank, N.A.*
　　261 F.R.D. 13 (S.D.N.Y. 2009) ................................................................4, 6

*Negrete v. Citibank, N.A.*
　　187 F. Supp. 3d 454 (S.D.N.Y. 2016) (Sweet, J.) ....................................7

*SEC v. Zandford*
　　535 U.S. 813 (2002) .................................................................................8-9

*Sysco Food Serv. of Metro N.Y., LLC. v. Jekyll & Hyde, Inc.*
　　No. 08 Civ. 2958 (BSJ)(JCF), 22009 ........................................................3

*Torchlight Loan Servs., LLC v. Column Fin., Inc.*
　　No. 11 Civ. 7426 (RWS), 2012 WL 3065929 (S.D.N.Y. July 25, 2012)
　　(Sweet, J.) ...............................................................................................6-7

*United States v. O'Hagan*
　　521 U.S. 642 (1997) ...................................................................................8

*U.S. Underwriters Ins. Co. v. Landau*
　　No. 05-CV-2049(ENV)(SMG), 2010 WL 2517196 (E.D.N.Y. June 9, 2010) .........................5

*Vista Food Exch., Inc. v. Champion Foodservice, LLC*
　　124 F. Supp. 3d 301 (S.D.N.Y. 2015) .......................................................3

*Walden v. Fiore*
　　571 U.S. 277 (2014) .................................................................................2-3

*Wood v. Inc. Vill. Of Patchougue*
　　311 F. Supp. 2d 344 (E.D.N.Y. 2004) .......................................................9

## OTHER AUTHORITIES

Federal Rule of Civil Procedure 9(b) ..............................................................3, 7

Federal Rule of Civil Procedure 12(b) ............................................................1, 3

The Blue Defendants submit this reply memorandum of law in further support of their motion to dismiss the SAC.[1]

Despite its protestations, Great Western was no innocent, duped investor.  Great Western is a sophisticated insurer that entered into a complex and detailed reinsurance agreement with off-shore reinsurer, Alpha Re, so that Great Western could free up capital.  In return, Alpha Re had the right to invest the money in the Great Western Trust Account at its discretion, provided the account remained collateralized in accordance with the terms of the governing trio of agreements.  (*See, e.g.,* SAC, Ex. C, § 4.)  Contrary to its repeated misstatements, Great Western ceded the funds in the Trust Account to Alpha Re's control, and they were no longer "Great Western's money" for the term of the Coinsurance agreement.

Great Western's SAC states, in essence, that Alpha Re breached the governing agreements by failing to collateralize the Great Western Trust Account in accordance with the agreements.  Indeed, Great Western has obtained a judgment against Alpha Re in an earlier arbitration for that precise breach.  The Court should reject Great Western's attempt to convert a contract dispute against its insolvent counterpart into an amorphous hydra, which somehow attempts to assert a grab-bag of RICO and tort actions against entities and individuals with whom it had no direct contractual relationship.  The SAC should be dismissed.

## I.    The Court Lacks Personal Jurisdiction Over BCM, Blue II, and Blue Elite, Ltd. under Federal Rule of Civil Procedure 12(b)(2).

Great Western fails to meet its burden to come forward with "non-conclusory fact-specific allegations or evidence showing that activity that constitutes the basis of jurisdiction has taken place." *Chirag v. MT Marida Marguerite Schiffahrts*, 604 F. App'x 16, 19 (2d Cir. 2015);

---

[1] All defined terms are given the meaning and definition assigned in the Blue Defendants' Motion to Dismiss, filed February 5, 2019, ECF No. 127.

*Metro. Life Ins. Co. v. Robertson-Ceco Corp.*, 84 F.3d 560, 566 (2d Cir. 1996) (holding that the burden of establishing the existence of personal jurisdiction rests with the plaintiff).  Great Western's generic and conclusory allegations against Blue Elite Ltd. and Blue II do not suffice. *See Janzini v. Nissan Motor Co., Ltd.*, 148 F.3d 181, 185 (2d Cir. 1998) (holding that conclusory statements without supporting facts do not suffice to establish personal jurisdiction over a foreign defendant).  The only concrete allegation against BCM is that Mr. Graham signed two repurchase confirmations in New York.  (*See* Opp., p. 10.)  But, Great Western cites no case law upholding personal jurisdiction based upon such an attenuated connection.

Great Western's reliance on *FIA Leveraged Fund Ltd. v. Grant Thornton LLP*, 150 A.D.3d 492 (1st Dep't 2017), is misplaced.  (*See* Opp., p. 10.)  In *FIA*, the First Department found personal jurisdiction appropriate because the plaintiff offered concrete evidence that a high-ranking employee engaged in substantial suit-related conduct in New York, including sending a wire via a New York bank. *Id.* at 493-94.  The court dismissed the case against the remaining defendant because the two documents demonstrating New York contacts had no connection to the suit at issue, even though the same agent was involved. *Id.*

Great Western also ignores the requirement that the alleged business conduct have some connection to the lawsuit at bar. *See Walden v. Fiore*, 571 U.S. 277, 284 (2014).  Although Great Western relies on *Licci ex rel. Licci v. Lebanese Canadian Bank SAL*, 732 F.3d 161 (2d Cir. 2013), for the proposition that it need not allege this causal link (*see* Opp., p. 11), this is a questionable reading of *Licci*. *See id.* at 169 (holding that at least one element of the cause of action must be related to New York contacts).  In any event, any such reading of *Licci* is superseded by *Walden*, which holds that the "suit-related conduct must create a *substantial connection* with the forum state." *Walden*, 571 U.S. at 284 (emphasis added).

2

The sole basis for Great Western's personal jurisdiction argument is that Mr. Graham was based in New York and was associated with these entities.  (*See* Opp., pp. 2, 11.)  As the Supreme Court held in *Walden*, "a defendant's relationship with a plaintiff or a third party, standing alone, is an insufficient basis for jurisdiction."  *Id.* at 286.  As Great Western fails to assert any concrete factual allegations supporting the exercise of personal jurisdiction, the SAC against BCM, Blue II, and Blue Elite, Ltd. should be dismissed.

Finally, Great Western is not entitled to jurisdictional discovery, as it failed to make *prima facie* case supporting the exercise of personal jurisdiction.  *Jazini*, 148 F.3d at 186 (affirming the district court's denial of jurisdictional discovery where plaintiffs failed to make a *prima facie* showing supporting jurisdiction); *Vista Food Exch., Inc. v. Champion Foodservice, LLC*, 124 F. Supp. 3d 301, 313 (S.D.N.Y. 2015) (same).

## II.   Great Western Fails to Assert Meritorious Arguments Opposing the Blue Defendant's Motion to Dismiss Under Rule 12(b)(6).

Throughout its opposition, Great Western appears to rely on arguments that one or another Blue Entity was an alter ego of either Mr. Graham or another Blue Entity.  (*See, e.g.*, Opp., pp. 18, 24 n. 4 (arguing that knowledge is imputed between alter egos); Opp. p. 28 (arguing that Mr. Graham's knowledge is imputed to other Blue Entities).)  Any such theory of liability should be rejected, as Great Western has failed to plead alter ego liability with the specificity required by Rule 9(b).  *See EED Hldgs. v. Palmer Johnson Acquisition Corp.*, 228 F.R.D. 508, 512 (S.D.N.Y. 2005) (Sweet, J.) (holding that a party seeking to pierce the veil must plead facts to support both elements of an alter ego claim); *see also Apex Maritime Co., Inc. v. OHM Enters., Inc.*, No. 10 Civ. 8119(SAS), 2011 WL 1226377, at *2-3 (S.D.N.Y. Mar. 31, 2011) (Scheindlin, J.) (explaining that when veil-piercing rests on fraud, the heightened pleading standard applies); *Sysco Food Serv. of Metro N.Y., LLC. v. Jekyll & Hyde, Inc.*, No. 08 Civ. 2958

(BSJ)(JCF), 22009 WL 4042758, at *2 (S.D.N.Y. Nov. 17, 2009) (Francis, M.J.) (noting that alter ego liability applies when (1) the parent has total dominion and (2) the dominion was used to commit a fraud or wrong against the plaintiff, and collecting cases).

Likewise, to establish vicarious liability, Great Western "must allege *some* facts regarding the relationship between an alleged principal and agent . . . and cannot simply allege general control in a vacuum." *Melito v. Am. Eagle Outfitters, Inc.*, 14-CV-02440(VEC), *et al.*, 2015 WL 7736547, at *7 (S.D.N.Y. Nov. 30, 2015) (Caproni, J.) (emphasis original) (discussing pleading vicarious liability in TCPA action by analogizing to traditional tort law).

Great Western has failed to plead any facts sufficient to support a claim to pierce the veil between Graham and the Blue Entities, or to impute Graham's knowledge to other Blue Entities. Any claim based on either theory should therefore fail.

### A. Great Western Cannot State a Claim Against BAAM and Graham for Breach of Fiduciary Duty.

Great Western's allegations, even taken as true, fail to establish the existence of a fiduciary relationship. *See Musalli Factory For Gold & Jewellry v. JPMorgan Chase Bank, N.A.*, 261 F.R.D. 13, 26 (S.D.N.Y. 2009) (dismissing breach of fiduciary claim because the allegations do not support setting aside the rule that banks do not owe fiduciary duties to non-customers, depositors, or borrowers).  Notably, Great Western's opposition fails to address the primary argument against its fiduciary duty claims: that BAAM (and through BAAM, Mr. Graham) was expressly designated in the Trust Agreement as the sole agent of Alpha Re, acting on behalf of Alpha Re.  Great Western argues that a fiduciary can owe duties to two entities, but fails to cite authority in which a disclosed agent for a contracting party was held to owe any fiduciary duty to the counter-party.

Great Western attempts to dodge this unambiguous contractual language by arguing that, since BAAM and Graham were not parties to the Trust Agreement, they have obligations arising outside the Trust Agreement.[2]  This argument ignores fundamental principles of agency law.  As Alpha Re's agent, BAAM and Graham stand in the shoes of Alpha Re and are entitled to rely on all defenses that would be available to Alpha Re.  *U.S. Underwriters Ins. Co. v. Landau*, No. 05-CV-2049(ENV)(SMG), 2010 WL 2517196, at *4 (E.D.N.Y. June 9, 2010) (holding that an "agent stands in its principal's shoes, and a right or defense available to the principal is, without more, also available to the agent.").

Even absent principles of agency law, Great Western's argument makes no sense.  The Trust Agreement, the Novation Agreement, and the Coinsurance Agreement together define the rights and obligations of each party with respect to the Trust Account.  Without these three agreements, there is no Trust Account for BAAM to manage, and there is no relationship between BAAM and Great Western.  BAAM's authority to act in the Trust Account was defined and constrained by Alpha Re's contractual obligations, as BAAM was Alpha Re's agent.  (SAC, Ex. C, § 4(b).)[3]  Alpha Re was responsible for all fees and obligations owed to BAAM for BAAM's management of the Trust Account.  (*Id.*)  Alpha Re could choose to replace BAAM with another manager at its discretion.  (*Id.* at § 4(b).)  Great Western had the right to approve the selection, but not to make the selection. (*Id.*)

Nor can Great Western reasonably claim to have relied on advice from BAAM and Graham as to the operation of the Trust Account.  As Great Western itself states, it "neither

---

[2] Great Western appears to concede that its fiduciary duty claim is based on express and implied obligations that are duplicative of those provided for in the Agreements.  (*See* Opp., p. 15.)

[3] There was an error in the last sentence on page 11 of the Blue Defendant's Motion to Dismiss Memorandum.  The citation to the SAC, § 4(c) should be to SAC, § 4(b).  This subsection is cited accurately in the remainder of the brief.

purchased, nor sold, nor instructed any party to purchase or sell securities." (Great Western Opp. to Defendant Donald Solow's, *et al* MTD, p. 8 (ECF No. 145) ("Opp. to Regatta MTD").) Further, Great Western cannot simply allege that it reposed trust and confidence in BAAM and Graham, since no fiduciary duty arises from unilateral trust and confidence; BAAM and Graham must have accepted the fiduciary duty. *Musalli*, 261 F.R.D. at 26.

**B.  Great Western Cannot State a Claim Against BCM, Blue Elite, Ltd., Blue Elite, L.P., or Blue II for Aiding and Abetting Breach of a Fiduciary Duty.**

Great Western also fails to allege aiding and abetting liability against BCM, Blue Elite, Ltd., Blue Elite, L.P., and Blue II. Attempting to skirt its inability to allege that any of these entities had knowledge of any fiduciary duty owed, Great Western argues that knowledge can be imputed because these entities were "alter egos" of Mr. Graham. (*See* Opp., p. 18.) As set forth above, Great Western has failed to properly plead alter ego liability.

Great Western next seeks to recast the aiding and abetting allegation in the SAC as claims that BCM, Blue Elite, Ltd., Blue Elite, L.P., and Blue II "executed transactions." (Opp., p. 20.) No such allegations exist in the SAC. At most, these entities are alleged to have received funds. (*See, e.g.*, SAC ¶¶ 90, 103.) This passive receipt of funds is insufficient to state a claim for aiding and abetting the breach of a fiduciary duty.

**C.  Great Western Fails to State a Claim for Fraud against Graham, BCM, and BAAM.**

For all the bluster of its opposition, Great Western fails to mention, much less substantively address, the fact that its fraud claim is duplicative of claims arising under the trio of relevant agreements. New York law is clear: "a re-styling of contract claims does not create an independent claim for fraud[,] and New York courts have dismissed such claims as duplicative." *Torchlight Loan Servs., LLC v. Column Fin., Inc.*, No. 11 Civ. 7426 (RWS), 2012 WL 3065929, at *9 (S.D.N.Y. July 25, 2012) (Sweet, J.) (collecting cases). Here, the alleged

fraud consists of misrepresentations about the assets backing the repurchase agreements (Opp.,

pp. 21-22), but this is the subject of the already-resolved breach of contract claim against Alpha

Re.  The damages sought for both claims are the same. This bars the duplicative fraud claim.

*Torchlight Loan Servs., LLC*, 2012 WL 3065929, at *9.

Even if the fraud claim is not duplicative, Great Western fails to plead fraud with the

particularity required by Rule 9(b). Great Western's invocation of the group pleading doctrine to

save its deficient pleading is unavailing. Even when relying on group pleading, a plaintiff must

still come forward with discrete examples of fraud where all the requirements of Rule 9(b)—

including who, what, when, where, and how—are alleged. *See Negrete v. Citibank, N.A.*, 187 F.

Supp. 3d 454, 463 (S.D.N.Y. 2016) (Sweet, J.).  Noticeably absent from Great Western's

opposition is any citation to one transaction where the particularity requirements are met.  The

fraud claim should therefore be dismissed.  Furthermore, in the absence of a valid fraud claim, in

addition to the reasons explained in Blue Defendants' opening brief, the aiding and abetting

fraud and civil conspiracy claims should also be dismissed.[4]

**D.      Great Western Fails to State a Claim under RICO.**

1.      *The PSLRA Bars the RICO Action.*

Great Western's reliance on *Dabit v. Merrill Lynch, Pierce, Fenner, & Smith, Inc.*, 395

F.3d 25, 34 (2d Cir. 2005) ("*Dabit I*"), and other 2005 cases citing *Dabit I* proves that its

opposition on this point is really meritless. (*See* Opp., pp.. 7 n.3, 9.)  Great Western cites *Dabit I*

for the proposition that the PSLRA bar should be read narrowly, but fails to disclose that the

Supreme Court *vacated and remanded Dabit I* a year later, rejecting the Second Circuit's

---

[4] Great Western's civil conspiracy claim is also deficient because Great Western fails to plead the elements with any particularity.  Even in opposing the motion, Great Western does little more than parrot the elements of the claim, without providing any specificity as to what overt actions Blue Elite Ltd., Blue Elite L.P., and Blue II actually took. Rather, the only allegations involving these entities are about receiving funds—not any overt action. Furthermore, Great Western continues to impute knowledge and liability to these entities without pleading such theories.

interpretation of the phrase "in connection with the purchase or sale of securities."[5]  *Merrill Lynch, Pierce, Fenner & Smith Inc. v. Dabit*, 547 U.S. 71 (2006) ("*Dabit II*")

In vacating *Dabit I*, the Supreme Court reaffirmed the broad construction given to the term "in connection with the purchase or sale of securities" as adopted in *SEC v. Zandford*, 535 U.S. 813, 822 (2002).  *Dabit II*, 547 at 89.  In *Zandford*, the Court considered a case in which the defendant sold securities from a client's account and then misappropriate the proceeds.  535 U.S. at 815-16.  The Court held that the fact that the fraudulent scheme and the securities transactions "coincided," was enough to bring the case under § 10b-5.  *Id.* at 825; *see also United States v. O'Hagan*, 521 U.S. 642, 656 (1997) (holding that misappropriation of property is connected to the purchase of sale of securities when the proceeds were used to purchase securities).

Similarly, in opposing the motion to dismiss the RICO claim under the PSLRA, Great Western relies almost entirely on case law related to the Securities Litigation Uniform Standards Act (the "SLUSA"), a fact it often fails to disclose.  (*See* Opp. to Regatta MTD, pp. 26-28.)  For example, in citing *Chadbourne & Parke, LLP v. Troice*, 571 U.S. 377 (2014), Great Western fails to note that the proposition cited relates to language of the SLUSA that is narrower than the relevant section of the PSLRA.[6]  *See id.* at 382, 393-94.  In fact, *Chadbourne* contains extensive discussion on just this point.  *See id.*

The entire foundation of the SAC rests on the assertion that the defendants executed improper securities transactions with money from the Trust Account, and then misappropriated

---

[5] Both *Dabit I* and *Dabit II* concerned the interpretation of the SLUSA, but both engaged in an extensive discussion of the scope and application of § 10b-5.  *See Dabit II*, 547 U.S. at 85-86.

[6] SLUSA's relevant section precludes class actions based on the purchase and sale of a *covered* security.  *Chadbourne*, 571 U.S. at 383.  Covered securities are defined as, among others, securities that are listed on a national exchange.  *Id.*

the proceeds.  *Zandford* and its progeny clearly apply.  Because this case alleges wrongdoing connected with the purchase or sale of securities, the PSLRA bars a RICO action.

        2.     <u>*Great Western Fails to Plead a RICO Claim under Subsection (c) or (d)*.</u>

Great Western's RICO allegations remain hopelessly confusing.  It alleges four separate RICO enterprises, a RICO in fact enterprise, and a handful of RICO "persons," none of which are integrated into one cohesive enterprise.  (*See* Opp. to Regatta MTD, pp. 10-12.)  While Great Western ties itself into knots defining the RICO enterprise, it entirely fails to address the Blue Defendants' arguments that its pleading lacks facts relating to continuity and distinctiveness.

Great Western pleads an association in fact enterprise that apparently came together and existed solely for the purpose of defrauding Great Western.  As such, Great Western has not pleaded an enterprise distinct and apart from the independent commission of the predicate acts. *Wood v. Inc. Vill. Of Patchougue*, 311 F. Supp. 2d 344, 357 (E.D.N.Y. 2004).  Likewise, Great Western fails to allege continuity, a requirement to state a RICO claim.  *First Capital Asset Mgmt., Inc. v. Satinwood, Inc.*, 385 F.3d 159, 174 (2d Cir. 2004) (defining patterns of racketeering as "open-ended pattern of racketeering activity (i.e., past criminal conduct coupled with a threat of future criminal conduct) or a closed-ended pattern of racketeering activity (i.e., past criminal conduct extending over a substantial period of time)").

Great Western also fails to address the deficiencies in its pleading of the alleged predicate acts, as set forth in the Blue Defendants' motion to dismiss.  (*See* Blue MTD, pp. 24-26.)

        3.     <u>*Great Western Fails to Plead Liability Under § 1962(a)*.</u>

Great Western argues, with barely a citation to the SAC, that the defendants used or invested their racketeering income back into the racketeering enterprise.  (*See* Opp. to Regatta MTD, pp. 13-14.)  This argument makes no sense.  If they reinvested the proceeds of the alleged racketeering activity back into the enterprise, then they could not have stolen the money.  Also, it

is unclear how the reinvestment of funds hurt Great Western.  In any event, the SAC is devoid of allegations to support this claim, as is obvious by Great Western's inability to cite to any relevant allegations.  As such, this claim should be dismissed.

        4.     *Great Western Fails to Plead Liability Under § 1962(d).*

Because Great Western fails to plead a RICO claim, its claim for RICO conspiracy fails.

**E.    Great Western Fails to Adequately Plead Unjust Enrichment.**

The existence of a "valid contract governing the subject matter of the dispute, *even if one of the parties to the claim is not a party to that contract*," bars a claim for unjust enrichment. *Mueller v. Michael Janssen Gallery Pte. Ltd.*, 225 F. Supp. 3d 201, 207 (S.D.N.Y. 2016) (Buchwald, J.) (emphasis original) (quotation omitted) (collecting state law cases).

Great Western argues that BAAM and Graham had duties and obligations outside the scope of the Trust Agreement, the Novation Agreement, and the Coinsurance Agreement, but fails to identify those duties and obligations, or their source.  Nor does Great Western explain how these duties and obligations gave rise to Great Western's injuries.  Contrary to Great Western's argument (Opp., p. 28), the Trust Agreement does define BAAM's role as Investment Manager.  (*See* SAC, Ex. C, § 4.)  Further, as BAAM was the agent of Alpha Re, BAAM's scope of authority to act within the Trust Account was limited by Alpha Re's duties and obligations.

Finally, in an attempt to circumvent the privity requirement, Great Western again falls back on theories of imputed liability, which it has not properly pleaded.  Without resort to such theories, it is clear that Great Western "simply had no dealings" with Blue Elite Ltd., Blue Elite L.P., or Blue II, let alone dealings that "could have caused reliance or inducement."  *Georgia Maline & Co., Inc. v. Rieder*, 19 N.Y.3d 511, 517-18 (N.Y. 2012).  Indeed, the SAC implies that Great Western did not even know about the involvement of these entities.  The unjust enrichment claim against them should therefore be dismissed.

Dated: April 2, 2019                By:      /s/ Eric R. Breslin                    .
        Newark, New Jersey                   Eric R. Breslin
                                             P. Ryan McElduff
                                             Melissa S. Geller
                                             Leah A. Mintz (admitted *pro hac vice*)
                                             **DUANE MORRIS LLP**
                                             **A Delaware Limited Liability Partnership**
                                             One Riverfront Plaza
                                             1037 Raymond Blvd., Suite 1800
                                             Newark, NJ 07102-5429
                                             Telephone: +1 973 424 2000
                                             Fax: +1 973 424 2001
                                             *Attorneys for Mark Graham, Blue Capital*
                                             *Management, Inc., Blue Alternative Asset*
                                             *Management, LLC, Blue Elite Fund, Ltd.,*
                                             *Blue Elite Fund, L.P., Blue II, Ltd.*