UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| GREAT WESTERN INSURANCE COMPANY,<br><br>                            Plaintiff,<br>    v.<br><br>MARK GRAHAM, et. al.,<br><br>                            Defendants | Hon. Vernon S. Broderick<br><br>No. 18 CV 6249 (VSB) |

**REPLY MEMORANDUM OF LAW IN FURTHER
SUPPORT OF THE SRC DEFENDANTS' MOTION TO
DISMISS COUNTS TWO THROUGH EIGHT AND ELEVEN
OF PLAINTIFF'S SECOND AMENDED COMPLAINT**

 

**BAKER & HOSTETLER LLP**
Michael S. Gordon
Marco Molina
45 Rockefeller Plaza
New York, New York 10111
Telephone: (212) 589-4200
Facsimile: (212) 589-4201

*Attorneys for Defendants,
Donald Mr. Solow, Regatta Holdings,
LLC, Cygnet 001 Master Trust, Cygnet
001 Master Trust Series 2011-A, Cygnet
001 Master Trust Series 2011-C, and
Cygnet 001 Master Trust Series 2013-A*

## **TABLE OF CONTENTS**

**Page**

PRELIMINARY STATEMENT ................................................................................................... 1

ARGUMENT .................................................................................................................................. 2

I.    PLAINTIFF CANNOT AVOID THE PSLRA BAR TO ITS RICO CLAIMS,
NOR HAS IT SHOWN THAT THESE CLAIMS ARE PROPERLY PLEADED ................ 2

    A.    The PSLRA Bars Plaintiff's Attempt to Bootstrap Securities Fraud into RICO ....... 2

    B.    Plaintiff Has Not Met RICO's Stringent Pleading Requirements ............................. 3

        1.    In Count Five, Plaintiff Fails to Plead a Pattern of Racketeering .................... 3

        2.    In Counts Seven and Six, Plaintiff Fails to Plead Either a RICO
Conspiracy or a Claim for Investment of Racketeering Income ..................... 4

II.    PLAINTIFF HAS NOT SHOWN THAT IT HAS PROPERLY PLEADED
ANY OF THE COMMON LAW CLAIMS AGAINST THE SRC DEFENDANTS ............ 5

    A.    Plaintiff Has Not Shown that BAAM or Mr. Graham Owed it a Fiduciary
Duty, No Less that the SRC Defendants Aided and Abetted the Breach Thereof .... 5

    B.    Plaintiff Has Not Shown that its Group-Pleaded, Vague Allegations Against
Mr. Solow and Regatta Are Sufficient to Sustain Count Three for Fraud ................ 7

    C.    Plaintiff Has Not Adequately Pleaded Count Four for
Aiding and Abetting Fraud Against the Cygnet Entities .......................................... 8

    D.    Plaintiff Has Not Adequately Pleaded Count Eight for Civil Conspiracy to
Commit Fraud, Which Is Duplicative of Deficient Counts Three and Four ............ 9

    E.    Count Eleven for Unjust Enrichment Must Be Dismissed ....................................... 9

CONCLUSION ............................................................................................................................. 11

## **TABLE OF AUTHORITIES**

Page(s)

**Cases**

*Acito v. IMCERA Grp, Inc.*,
    47 F.3d 47 (2d Cir. 1995) .................................................................................................... 7

*Aetna Cas. & Sur. Co. v. Aniero Concrete Co., Inc.*,
    404 F.3d 566 (2d Cir. 2005) ................................................................................................ 9

*Ashcroft v. Iqbal*,
    556 U.S. 662 (2009) ............................................................................................................ 5

*Caprer v. Nussbaum*,
    26 A.D.3d 176 (2006) ......................................................................................................... 8

*Cedric Kushner Promotions, Ltd. v. King*,
    533 U.S. 158 (2001) ............................................................................................................ 3

*Dervan v. Gordian Grp. LLC*,
    2017 WL 819494 (S.D.N.Y. Feb. 28, 2017) ..................................................................... 10

*In re Gen. Motors LLC Ignition Switch Litig.*,
    257 F. Supp. 3d 372 (S.D.N.Y. 2017) ............................................................................... 10

*Grullon v. City of New Haven*,
    720 F.3d 133 (2d Cir. 2013) ................................................................................................ 6

*Jenny Yoo Collection, Inc. v. Watters Design, Inc.*,
    2017 WL 4997838 (S.D.N.Y. Oct. 20, 2017) ................................................................... 10

*Kalnit v. Eichler*,
    264 F.3d 131 (2d Cir. 2001) ................................................................................................ 7

*Kottler v. Deutsche Bank AG*,
    607 F. Supp. 2d 447 (S.D.N.Y. 2009) ............................................................................... 10

*Merrill Lynch, Pierce. Fenner & Smith, Inc. v. Young*,
    1994 WL 88129 (S.D.N.Y. Mar. 15, 1994) ........................................................................ 5

*MLSMK Inv. Co. v. JP Morgan Chase & Co.*,
    651 F.3d 268 (2d Cir. 2011) ................................................................................................ 3

*Mueller v. Michael Janssen Galler Pte. Ltd.*,
    225 F. Supp. 3d 201 (S.D.N.Y. 2016) ............................................................................... 10

*Musalli Factor for Gold & Jewelry v. JPMorgan Chase Bank, N.A.*,
    261 F.R.D. 13 (S.D.N.Y. Mar. 31, 2009) ............................................................................ 6

*Oddo Asset Mgmt. v. Barclays Bank PLC*,
   19 N.Y. 3d 584 (2012) ...................................................................................................... 5

*Rosner v. Bank of China*,
   2008 WL 5416380 (S.D.N.Y. Dec. 18, 2008) ................................................................... 9

*Sotheby's, Inc. v. Minor*,
   2010 WL 11601336 (S.D.N.Y. Mar. 30, 2010) ................................................................. 3

*SPV Osus Ltd. v. UBS AG*,
   882 F.3d 333 (2d Cir. 2018) .............................................................................................. 6

**Statutes**

Private Securities Litigation Reform Act,  18 U.S.C § 1964(c) ........................................... 2

Racketeer Influenced and Corrupt Organizations Act,
18 U.S.C. §§ 1961 to 1968 ............................................................................................ 2, 3, 4, 5

**Other Authorities**

Fed. R. Civ. P. 9(b) ................................................................................................... 6, 7, 8, 9

The SRC Defendants respectfully submit this reply memorandum of law in further support of their motion to dismiss Counts Two through Eight and Eleven of Plaintiff's, Great Western Insurance Company ("Plaintiff") SAC, dated December 19, 2018 (Dkt. No. 106).[1]

## PRELIMINARY STATEMENT

In opposition to the motions to dismiss pending before this Court, Plaintiff has purported to spread the SAC's group-pleaded, non-particularized allegations over five legal memoranda totaling nearly 120 pages. But Plaintiff's spillage of so much ink ultimately cannot hide the fact that the proverbial emperor still has no clothes.

At its core, the prolix SAC alleges that Plaintiff relied on unspecified "conversations" with, and "reassurances" by, multiple defendants, including the SRC Defendants, that the securities collateralizing the Trust Account were comprised of cash and U.S. Treasury securities, which the defendants (including the SRC Defendants) allegedly "knew" to be untrue, having "directed" or "siphoned" the Trust Account funds into self-interested "risky investments" in order to reap unspecified benefits. But the SAC is *devoid of a single evidentiary fact* demonstrating that *any* of the SRC Defendants made an investment decision or gave an investment direction with respect to the Trust Account's assets, no less knew of their alleged diminishing value and/or acted in a manner to conceal the same. This is because the Coinsurance and Trust Agreements at issue in this case unambiguously assign, *inter alia*, investment management, custodial and valuation obligations with respect to the Trust Account assets only to Alpha and WSFS (with BAAM acting as the agent of, and on behalf of, *Alpha only*). It is undisputed that the SRC Defendants are not even mentioned in these agreements. Further, the SAC repeatedly alleges that defendants *other than the SRC Defendants*–such

---

[1] Abbreviations and definitions used in the Memorandum of Law in Support of the SRC Defendants' Motion to Dismiss the Amended Complaint (Dkt. No. 132) ("Moving Brief" or "Mov. Br.") are incorporated herein. Plaintiff's Memorandum of Law in Opposition to the SRC Defendants' Motion to Dismiss (Dkt. No. 143) is referred to herein as the "Opposition" or "Opp. Br."

1

as WSFS, Mr. Graham and the Blue Entities, and/or Alpha–unilaterally invested, transferred, and/or provided information to Plaintiff regarding the composition and value of the securities backing the Trust Account.  Nevertheless, these facts have not deterred Plaintiff from pressing group-pleaded, non-particularized allegations of fraud against the SRC Defendants that reach their implausible apex in three unsustainable civil RICO Claims, as well as five deficient Common Law Claims.

For all the reasons set forth more fully in the Moving Brief and those set forth below, the eight claims against the SRC Defendants must be dismissed with prejudice.

## ARGUMENT

### I. PLAINTIFF CANNOT AVOID THE PSLRA BAR TO ITS RICO CLAIMS, NOR HAS IT SHOWN THAT THESE CLAIMS ARE PROPERLY PLEADED

#### A. The PSLRA Bars Plaintiff's Attempt to Bootstrap Securities Fraud into RICO

In a futile attempt to avoid the preclusive reach of PSLRA Section 107, Plaintiff now contends that "[t]he nexus of this dispute is a coinsurance arrangement." (Opp. Br. at 8.)  In taking this position, Plaintiff willfully ignores its prior judicial admission that the SEC's finding, *inter alia*, that Mr. Graham and the Blue Entities had committed fraud in the purchase or sale of securities for the Trust Account was "***the basis for Great Western's Complaint in this action***" (Dkt. No. 56 at p. 2) (emphasis in original.) Consistent with the foregoing, as shown on pages 8-10 of the Moving Brief, the predicate acts underlying the SAC's RICO Claims involve numerous defendants' (including Mr. Solow's and Regatta's) alleged misrepresentations ***regarding the purchase and sale of the "Purchased Securities" that collateralized Plaintiff's Trust Account***.  (*See*, *e.g.*, SAC ¶¶ 74, 80-83, 86, 89, 93, 98-102, 202 (d), (f), (g), (i).)

Similarly, Plaintiff's argument that the SAC's allegations of wire fraud have no "connection to the sale or purchase of securities" (Opp. Br. at 9-10) is flatly contradicted by those very allegations. For example, SAC subparagraph 202(i) (which newly appeared in the SAC) alleges that "RICO Enterprises" (including Regatta) "repeatedly provided reassurances" to Plaintiff via wire that the Trust Account assets were "secure and safe." (SAC ¶ 202(i).)  However, these alleged "reassurances" included statements

concerning the purchase and sale of securities, *i.e.*, that the Trust Account assets were invested in "Eligible Securities" under Utah's Insurance Code, when, according to Plaintiff, these assets were invested in "risky" securities (*see, e.g., id.*, ¶¶ 74, 89, 91).[2] Put simply, Plaintiff's unambiguous bootstrapping of securities fraud into the SAC's predicate acts of wire fraud is precisely what the PSLRA bar to RICO seeks to prevent. *See MLSMK Inv. Co. v. JP Morgan Chase & Co.*, 651 F.3d 268, 274, 277 (2d Cir. 2011). As such, Plaintiff's RICO Claims as to Mr. Solow and Regatta must be dismissed with prejudice.

### B. Plaintiff Has Not Met RICO's Stringent Pleading Requirements

Notwithstanding the PSLRA bar, Plaintiff has failed to demonstrate that it has met *any* of RICO's stringent pleading requirements.

#### 1. In Count Five, Plaintiff Fails to Plead a Pattern of Racketeering

Having pleaded in the SAC that Regatta, among others, is a RICO "person" (SAC ¶¶ 189-90) and a RICO "enterprise" (*id.* ¶¶ 5, 92 and 102), Plaintiff now takes the inconsistent position in its Opposition that Regatta is not a RICO "person" but only a RICO "enterprise" (both by itself and in association with Alpha, BCM, and BAAM) (*see* Opp. Br. at 11-12.) Because section 1962(c) claims only may lie against RICO "persons" and not RICO "enterprises," *see Cedric Kushner Promotions, Ltd. v. King*, 533 U.S. 158, 163-64 (2001), the RICO Claims against Regatta must be dismissed based on Plaintiff's judicial admission, *see Sotheby's, Inc. v. Minor*, 2010 WL 11601336, at *11 (S.D.N.Y. Mar. 30, 2010).

Plaintiff also has failed to demonstrate that Mr. Solow and/or Regatta conducted, or participated in, an alleged pattern of racketeering which is necessary to sustain a 1962(c) claim. As the SAC and its attachments show, WSFS (on behalf of the Trust Account) and Cygnet (on behalf of Series 2011-C) were

---

[2] Even if the Court were to accept the SAC's allegation that the RICO association-in-fact's purpose was "to fraudulently secure reinsurance arrangements with insurance companies" (SAC ¶ 190), the Coinsurance Agreement provides that "Assets deposited in the Trust Account . . . shall consist only of. . . .***securities listed by the National Association of Insurance Commissioner's Securities Valuation Office*** and ***qualifying as admitted assets under the Utah Insurance Code, and Eligible Securities.***" (*Id*., Ex. B, ¶ 15, amending Ex. A, § 12.02 (emphasis added).) And the Investment Guidelines annexed to the Trust Agreement in this action posit an asset allocation for the Trust Account that includes, *inter alia*, Investment Grade and Non-Investment Grade Securities (*id*., Ex. B and C thereto.) As such, the purchase and sale of securities was integral to the coinsurance arrangement here.

3

the counterparties to the Repurchase Agreement. (SAC, Ex. D.) While the SAC alleges that WSFS (in its capacity as trustee to each of the Trust Account and Series 2011-C), and Mr. Graham (through BAAM and BCM, as investment and collateral managers, respectively, of the Trust Account and Series 2011-C) were on "both sides" of the repurchase transactions at issue (*id.* ¶¶ 74, 78), Plaintiff now attempts to place *Mr. Solow* on "both sides" of the repurchase transactions, through his alleged ownership interests in *Alpha* or *Regatta* (*see* Opp. Br. at 3, 11.) But the operative agreements and the SAC's allegations demonstrate that defendants *other than Mr. Solow or Regatta* unilaterally controlled the investment management, reporting and valuation of these trust assets (*see* Mov. Br. at 17-18, 20-21.)[3] And other than vague and conjectural allegations premised upon Mr. Solow's "ownership" of Series 2011-C–which are refuted by the Repurchase Agreement's clear distinguishing of Regatta's assets from Cygnet's assets (SAC, Ex. D at § 2(h))–Plaintiff has not shown predicate acts through which Mr. Solow individually (or through Alpha or Regatta) conducted or participated in the alleged fraud.  As such, Count Five must be dismissed.

### 2. In Counts Seven and Six, Plaintiff Fails to Plead Either a RICO Conspiracy or a Claim for Investment of Racketeering Income

In an attempt to cure the group-pleaded, non-particularized nature of Count Seven's RICO conspiracy allegations, Plaintiff purports to restate the allegations of paragraphs 217-19 of its RICO conspiracy count as against only the SRC Defendants. (Opp. Br. at 13.)  However, even when eliminating the other thirteen defendants named in this Count and limiting it to the six SRC Defendants, the allegations that the SRC Defendants "agreed" to "misappropriat[e] . . . funds" (SAC ¶ 217) from Plaintiff, or to "protect" the alleged fraud (*id.* ¶ 218), still fail to demonstrate that the SRC Defendants entered into an

---

[3] The SAC and the documents annexed thereto, when read together, allege and/or show that: (i) Mr. Graham, BAAM, and BCM exclusively managed the Trust Account assets (SAC ¶¶ 73, 78, 93) and that Mr. Graham moved "moneys" allegedly linked to the Trust Account between entities he controlled (*id.* ¶¶ 106, 108-09); (ii) WSFS exclusively issued the Trust Account and Series 2011-C account statements (which, Plaintiff alleges, misstated the values of the securities reflected thereon) (*id.* ¶¶ 5, 81, 88, 99); (iii) WSFS or Mr. Graham exclusively executed the Repurchase Agreement confirmations (*id.* ¶¶73, 87, 93, 98); (iv) Alpha agreed to retain a qualified independent securities valuation firm to appraise the value of the securities in the Trust Account (*id.* Ex. C, § 4(j)); and (v) Ability transferred to itself $109 million of assets from the Series 2011-C to its bank account at Wells Fargo (*id.* ¶ 125.)  The SAC is devoid of evidentiary facts showing the participation or knowledge of the SRC Defendants in any of the foregoing.

actual agreement with the other alleged co-conspirators to commit at least two predicate acts. *See Merrill Lynch, Pierce. Fenner & Smith, Inc. v. Young*, 1994 WL 88129, at *30 (S.D.N.Y. Mar. 15, 1994).

Similarly, Count Six must be dismissed because, as the SRC Defendants argued (Mov. Br. at 14), the SAC's reference to unspecified payments for "purported services" (SAC ¶¶ 103-05) provides no specificity as to *how* any of the SRC Defendants used or reinvested their alleged compensation, or in what RICO enterprise. These glaring omissions render the section 1962(a) claims insufficient as a matter of law. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

Accordingly, Counts Six and Seven must be dismissed in their entirety.

## II. PLAINTIFF HAS NOT SHOWN THAT IT HAS PROPERLY PLEADED ANY OF THE COMMON LAW CLAIMS AGAINST THE SRC DEFENDANTS

### A. Plaintiff Has Not Shown that BAAM or Mr. Graham Owed it a Fiduciary Duty, No Less that the SRC Defendants Aided and Abetted the Breach Thereof

Plaintiff appears to have abandoned its contention that the SRC Defendants aided and abetted Alpha's fiduciary breaches, and its argument that the SRC Defendants aided and abetted BAAM's and Mr. Graham's alleged fiduciary breaches hangs on the slender thread that BAAM and Mr. Graham jointly acted as *Plaintiff's* "investment manager." (*See* Dkt. No. 144 at 15-18). But, the SAC only alleges that BAAM acted as investment manager to the **Trust Account** (SAC ¶ 78) and the Trust Agreement expressly provides that BAAM acted as "the agent of" and "on behalf of" **Alpha only** (*id.* Ex. C, § 4(b).) Moreover, as argued on page 16 of the Moving Brief, and not disputed by Plaintiff, investment managers do not owe fiduciary duties to the beneficial owners of underlying assets, like Plaintiff. *See Oddo Asset Mgmt. v. Barclays Bank PLC*, 19 N.Y. 3d 584, 593-94 (2012). Absent a basis for any fiduciary duty owed by Mr. Graham or BAAM to Plaintiff, there can be no aiding and abetting claim against the SRC Defendants.

Notwithstanding the absence of any fiduciary duty owed by Mr. Graham or BAAM to Plaintiff, the SAC fails to demonstrate that the SRC Defendants knew of BAAM's or Mr. Graham's alleged fiduciary breaches. Plaintiff's lone argument to the contrary is that the SRC Defendants "specifically

5

knew" that BAAM and Mr. Graham had entered into "fraudulent Repurchase Agreements in September 2016" (Opp. Br. at 15.) But the SAC's allegations regarding the September 2016 repurchase confirmations ***do not mention the SRC Defendants*** (SAC ¶¶ 98-102), much less support an inference that the SRC Defendants "specifically knew" of a discrepancy between the value of the Repurchase Agreement, as shown on the Trust Account's September 2016 statement, and the value of the assets in Series 2011-C, as shown on the Series 2011-C September 2016 account statement–both issued by WSFS.[4]

To bolster the SAC's numerous allegations that the SRC Defendants and others failed to "alert" Plaintiff about the diminution in value of the Trust Account assets (SAC ¶¶ 92, 102), Plaintiff now maintains that the substantial assistance prong of its aiding and abetting claim is premised on the SRC Defendants' "affirmative assistance" or "concealment" of Mr. Graham's and BAAM's alleged fiduciary breaches (Opp. Br. at 16.) Even if this were so, in order to meet Rule 9(b)'s requirements, the SAC's group-pleaded allegations about vague "conversations" and "reassurances" by Mr. Solow to Plaintiff (SAC ¶¶ 74, 79-80, 85) would need to specify when and where these conversations took place, what was said and by whom–none of which is alleged.[5] *See Musalli Factor for Gold & Jewelry v. JPMorgan Chase Bank, N.A.*, 261 F.R.D. 13, 19 (S.D.N.Y. Mar. 31, 2009). Indeed, Plaintiff's mere repeating that Mr. Solow had "reassured" Plaintiff's CFO that the Trust Account was "fully funded," when Mr. Solow "well knew" this was "false" (Opp. Br. at 16) does not magically cure this allegation of its lack of particularity. In sum, Plaintiff has not shown "substantial assistance," and thus, Count Two must be dismissed.

---

[4] Plaintiff posits *in a separate brief* that WSFS sent Series 2011-C account statements to Mr. Solow's home address. (Dkt. No. 143 at 13). To be sure, this allegation ***nowhere appears*** in the SAC and, hence, this Court cannot consider it here. *See Grullon v. City of New Haven*, 720 F.3d 133 (2d Cir. 2013). However, even if the Court were to consider this allegation, it does not give rise to an inference that Mr. Solow knew of the alleged discrepancy between the Trust Account and Series 2011-C asset valuations, since the SAC does not allege that Mr. Solow ever *received* the WSFS Trust Account statements (these were sent to Alpha and Plaintiff only, *see* SAC, Ex. C, § 5(e)), the Repurchase Agreement confirmations and/or otherwise knew the actual value of the assets backing the Repurchase Agreements.

[5] Similarly, Mr. Solow's or Regatta's failure to fire BCM as Series 2011-C's collateral manager in 2016 (Opp. Br. at 16) could not have been the "proximate cause" of Plaintiff's alleged injury, since by 2016, it is alleged that the value of Series 2011-C "was negative $50.86 million." (SAC ¶ 102); *see SPV Osus Ltd. v. UBS AG*, 882 F.3d 333, 345-46 (2d Cir. 2018) (no substantial assistance unless the aider and abettor proximately causes plaintiff's injury).

### B. Plaintiff Has Not Shown that its Group-Pleaded, Vague Allegations Against Mr. Solow and Regatta Are Sufficient to Sustain Count Three for Fraud

As with its fiduciary-based aiding and abetting claim, Plaintiff has failed to show that its group-pleaded, conclusory allegations of fraud satisfy Rule 9(b)'s particularity requirement. Indeed, as argued on pages 18-22 of the Moving Brief, many of the fraud-based allegations ***do not even mention*** Mr. Solow or Regatta (SAC ¶¶ 86 and 92-101), while other allegations merely lump them with five other defendants alleged to have made the same misrepresentations to Plaintiff, without providing any facts that put *any* of these defendants on notice as to what specifically was said and by whom, when or where the alleged misrepresentations took place, and to whom they were made. (*See*, *e.g.*, *id.* at ¶¶ 74, 79, 102, 178-81).

And contrary to Plaintiff's contention, the SAC's allegations that (i) Mr. Solow changed the name of non-party, Alpha Re (US) to Vista Re (SAC ¶ 123) and (ii) Ability ceded a total of 60% of its business to "Solow-owned entities" (Opp. Br. at 18), *i.e.*, 20% to Alpha and 40% to Vista Re (SAC ¶ 124)–even if true, do not add up to actionable omissions of fact, since, as previously argued (Mov. Br. at 18-20), Mr. Solow had no *duty* to disclose these "facts" to Plaintiff. In any event, the SAC fails to establish any nexus between these alleged omissions and any fraud perpetrated by Mr. Solow and/or Regatta.[6]

Finally, although nowhere pleaded in the SAC, Plaintiff's contends in its Opposition that it relied upon Mr. Solow to learn about the nature and value of the assets backing the Repurchase Agreement on the purported ground that "[he] was Alpha" or "one of the two co-owners of Alpha (along with Graham)" (Opp. Br. at 19.) Even if true, such reliance would be ***wholly unjustified*** because the Director Defendants held 100% of the *preferred shares* of, and 80.2% of the *voting interests* in, Alpha, as compared to Mr. Solow's *minority* 9.9% voting interest and 40% ownership of Alpha's *common* stock (SAC ¶ 65; *see also*

---

[6] In a failed attempt to meet the scienter requirement for pleading fraud, Plaintiff argues that Mr. Solow and Regatta had "both motive and opportunity to commit fraud," (Opp. Br. at 18-19, *citing Acito v. IMCERA Grp, Inc.*, 47 F.3d 47 (2d Cir. 1995), pointing to the compensation allegedly received by them (*id.*, *citing* to SAC ¶ 104.) It is well-settled, however, that the receipt of compensation, without more, does not satisfy the scienter requirement for pleading fraud under New York law because making money is "a generalized motive" that can be imputed to any for-profit entity. *Kalnit v. Eichler*, 264 F.3d 131, 140 (2d Cir. 2001).

7

Mov. Br. at 4, fn. 3.) Further, the SAC does not allege that Mr. Solow exercised authority over Alpha (or the Director Defendants) disproportionate to his minority interests. As such, Plaintiff's attempt to conflate Alpha and Mr. Solow, or to render its purported reliance upon him as justifiable, does not withstand scrutiny.[7] In sum, the allegations of the SAC collectively fail to sustain a cognizable fraud claim against Mr. Solow and Regatta and thus, Count Three must be dismissed.

      C.      **Plaintiff Has Not Adequately Pleaded Count Four for Aiding and Abetting Fraud Against the Cygnet Entities**

Plaintiff's failure to state a fraud claim against Mr. Solow or Regatta is also fatal to Count Four, its aiding and abetting fraud claim against the Cygnet Entities. (*See* Opp. Br. at 20). As argued in the Moving Brief, these claims are properly dismissed due to the SAC's failure to make the critical showing that the Cygnet Entities *knew* about the alleged fraud[8] or provided *substantial assistance* in furtherance of the same. (Mov. Br. at 22-23). In support of the substantial assistance element, Plaintiff points to paragraphs 103 and 104 of the SAC in arguing that "the Cygnet Entities received substantial payments from assets originally held in Great Western's Trust Account." (Opp. Br. at 21.) But those paragraphs merely refer to unspecified cash disbursements from the "Alpha Re Reinsurance Trusts" to, *inter alia*, Mr. Solow and Regatta. The SAC nowhere demonstrates that these payments originated from Trust Account assets nor passed through the Cygnet Entities. To the contrary, the SAC alleges that *Ability* transferred $109 million from Series 2011-C to itself. (SAC ¶¶ 6, 53.) As such, the SAC falls far short of

---

[7] Similarly, Plaintiff argues, on the one hand, that it had no reason to doubt Mr. Solow "as an owner of Alpha" and as an alleged owner of "the Cygnet Entities" (Opp. Br. at 19), while arguing on the other hand, that "until recently," it was "unaware of" Mr. Solow's affiliation with the Cygnet Entities (*see id.* at 25.) Plaintiff cannot have it both ways, and is clearly advancing this revisionist history of its purported reliance upon Mr. Solow in an unavailing attempt to salvage its hopelessly deficient fraud claim.

[8] Plaintiff contends that it adequately has alleged the knowledge element of its aiding and abetting fraud claim on the purported basis of Mr. Solow's and Regatta's "pervasive control" over the Cygnet Entities, from which Plaintiff attempts to advance an *alter ego* theory of liability wholly absent from the SAC's allegations. (*See* Opp. Br. at 20-21 *citing Caprer v. Nussbaum*, 26 A.D.3d 176, 193 (2006)). However, *Caprer* is wholly inapposite to the case at bar because it involved the alter ego of a *fiduciary*, and the SAC does not allege that Mr. Solow or Regatta owed any fiduciary duties to Plaintiff. In any event, as argued in Points II.A and II.B, *supra*, the SAC fails to demonstrate with the requisite particularity under Rule 9(b) that Mr. Solow or Regatta knew about the alleged fraud.

8

showing, as it must, that any actions of the Cygnet Entities proximately caused Plaintiff's harm. *Rosner v. Bank of China*, 2008 WL 5416380, at *5, 12 (S.D.N.Y. Dec. 18, 2008). Count Four must be dismissed.

### D. Plaintiff Has Not Adequately Pleaded Count Eight for Civil Conspiracy to Commit Fraud, Which Is Duplicative of Deficient Counts Three and Four

Plaintiff argues in its Opposition that the allegations underlying its civil conspiracy claim are "separate and apart" from its fraud and aiding and abetting fraud claims against the SRC Defendants (Opp. Br. at 21), but in defending the civil conspiracy claim it points to the ***same allegations*** as those underlying the fraud and aiding and abetting claims (*see* Opp. Br. at 22-23.)[9] Because it is premised on the same allegations as the fraud and aiding and abetting fraud claims, the civil conspiracy claim must be dismissed. *See Aetna Cas. & Sur. Co. v. Aniero Concrete Co., Inc.*, 404 F.3d 566, 591 (2d Cir. 2005).

Moreover, the SAC's allegations fail to show any "overt acts" by the SRC Defendants in furtherance of a "corrupt agreement." Of the SAC allegations that Plaintiff contends support its civil conspiracy claim (Opp. Br. at 22), paragraphs 222-26 merely parrot the elements for pleading a civil conspiracy (SAC ¶¶ 222-226), while paragraphs 89-91 allege in a conclusory manner that Mr. Solow (and Mr. Graham) "transferred money" into, *inter alia*, the Cygnet Entities and that Mr. Solow (and five other defendants) promised to give Plaintiff "specifics" about the nature of these investments. These vague allegations do not sufficiently demonstrate "overt acts" by the SRC Defendants in accord with Rule 9(b)'s pleading requirements, and thus, Count Eight for civil conspiracy to commit fraud must be dismissed.

### E. Count Eleven for Unjust Enrichment Must Be Dismissed

In its Opposition, Plaintiff has failed to make the critical showing that the SRC Defendants received money that belonged to Plaintiff. (*See* Mov. Br. at 24-25.) Indeed, the money sent by Plaintiff to

---

[9] The common allegations underlying the fraud, aiding and abetting fraud and civil conspiracy claims (Opp. Br. at 22-23) include that: (i) Mr. Solow (and Mr. Graham) directed the assets backing the Repurchase Agreement into "risky investments" (SAC ¶¶ 89-91); (ii) the "Purchased Securities" backing the Repurchase Agreements that Mr. Graham and BCM re-entered into with the Trust Account in September of 2015 and 2016 had a valuation significantly lower than that reflected on the Trust Account statements sent by WSFS to Plaintiff (*id.* ¶¶ 92-102); and (iii) Mr. Solow (and others) knew of, or failed to alert Plaintiff, as to the "risky" nature of these investments (*id.* ¶ 91.)

9

Alpha in 2012 became *Alpha's* in consideration for its agreement to reinsure 75% of Plaintiff's policies.[10] However, even if these funds could be deemed "Plaintiff's Money," Plaintiff still has failed to demonstrate that the alleged payments to Mr. Solow and Regatta "for [p]urported [s]ervices" flowed "from assets originally held in [Plaintiff's] Trust Account" (SAC ¶¶ 103-04.) As such, Plaintiff has not shown that the SRC Defendants were enriched at Plaintiff's expense. *See In re Gen. Motors LLC Ignition Switch Litig.*, 257 F. Supp. 3d 372, 409 (S.D.N.Y. 2017).

In attempting to refute the SRC Defendants' argument that the unjust enrichment claim is barred by the existence of contracts that afford Plaintiff a legal remedy for its claims, Plaintiff contends that the Coinsurance and Trust Agreements do not "provide cover" on the purported ground that, "until recently," it was unaware of the "roles" of the SRC Defendants and "the money they received" from the Trust Account (Opp. Br. at 25.) Plaintiff entirely misses the point. Where, as here, there are valid contracts providing a party with legal remedies–which Plaintiff has pursued against Alpha, and continues to pursue against WSFS[11]–an unjust enrichment claim cannot be sustained. *See Mueller v. Michael Janssen Galler Pte. Ltd.*, 225 F. Supp. 3d 201, 207 (S.D.N.Y. 2016) (unjust enrichment claim is barred where a contract governs a dispute, "even if one of the parties to the claim is not a party to the contract") (emphasis in original.)[12] And, Plaintiff has not shown that an "actual, substantive relationship" exists between it and the SRC Defendants. *See Jenny Yoo Collection, Inc. v. Watters Design, Inc.*, 2017 WL 4997838, at * 11 (S.D.N.Y. Oct. 20, 2017) (Broderick, J.). As such, Count Eleven must be dismissed.

---

[10] The SAC and its attachments unambiguously provide that Plaintiff *ceded* $153 million to Alpha in consideration for Alpha's assumption of 75% of Plaintiff's liabilities for certain of its insurance policies. (SAC ¶¶ 60, 62.) These funds were *Alpha's* to invest, through its investment manager and agent BAAM, in accord with the Investment Guidelines in the Trust Agreement (*id.*, Ex. C and Ex. B thereto at p. 87 of 97), with Plaintiff as **beneficiary** of the Trust Account (*id.* ¶ 62; Ex. A, § 2.01(a) and p. 2 (Definitions).)

[11] Plaintiff has pursued its contractual remedies (i) under the Coinsurance Agreement, in an arbitration in which it obtained a $132 million award against Alpha (SAC ¶¶ 152-59) and (ii) under the Trust Agreement in its contract-based claims against WSFS in this action (*see, e.g.*, SAC, Counts Thirteen and Fourteen, ¶¶ 253-65.)

[12] Because there is no ambiguity as to whether a contract governs the dispute at issue here, Plaintiff's reliance on *Dervan v. Gordian Grp. LLC*, 2017 WL 819494 (S.D.N.Y. Feb. 28, 2017), where the contract at issue had never taken effect due to an unfulfilled condition precedent, and *Kottler v. Deutsche Bank AG*, 607 F. Supp. 2d 447 (S.D.N.Y. 2009), where the contract did not cover the dispute at issue, are entirely inapposite (Opp. Br. at 25.).

## **CONCLUSION**

For the reasons set forth above, the SRC Defendants' motion to dismiss Counts Two through Eight and Eleven of the SAC should be granted in its entirety, with prejudice.

Dated: April 2, 2019  
      New York, New York

Respectfully Submitted,

BAKER & HOSTETLER LLP

By:   /s/ Michael S. Gordon  
      Michael S. Gordon  
      Marco Molina  
45 Rockefeller Plaza  
New York, New York 10111  
Telephone: (212) 589-4265  
Facsimile: (212) 589-4280  
mgordon@bakerlaw.com  
mmolina@bakerlaw.com

*Attorneys for Defendants,*  
*Donald Mr. Solow, Regatta Holdings, LLC,*  
*Cygnet 001 Master Trust, Cygnet 001 Master Trust*  
*Series 2011-A, Cygnet 001 Master Trust Series 2011-C,*  
*and Cygnet 001 Master Trust Series 2013-A*