UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| GREAT WESTERN INSURANCE COMPANY<br><br>Plaintiff,<br><br>vs.<br><br>MARK GRAHAM, DONALD SOLOW, BLUE CAPITAL MANAGEMENT, INC., BLUE ALTERNATIVE ASSET MANAGEMENT LLC, WILMINGTON SAVINGS FUND SOCIETY, FSB, CHRISTIANA TRUST, REGATTA HOLDINGS LLC, CYGNET 001 MASTER TRUST, CYGNET 001 MASTER TRUST SERIES 2011-A, CYGNET 001 MASTER TRUST SERIES 2011-C, CYGNET 001 MASTER TRUST SERIES 2013-A, ALPH RE LIMITED, ALPHA RE HOLDINGS (CAYMAN) LIMITED, ATLANTIC SPECIALTY FINANCE, BLUE ELITE FUND LTD., BLUE ELITE FUND LP, BLUE II LTD., SANCUS CAPITAL BLUE CREDIT OPPORTUNITIES FUND LTD., ABILITY INSURANCE COMPANY, JOHN DRAKE, EDWARD BRENDAN LYNCH, GREGORY TOLARAM, ADVANTAGE CAPITAL HOLDING LLC, DAN CATHCART, AND KENNETH KING.<br><br>Defendants. | Case No. 18-cv-06249 (VSB)<br><br>**ORAL ARGUMENT REQUESTED** |

**REPLY MEMORANDUM OF LAW IN SUPPORT OF
SANCUS CAPITAL BLUE CREDIT OPPORTUNITIES FUND, LTD.'S
MOTION TO DISMISS THE SECOND AMENDED COMPLAINT**

# TABLE OF CONTENTS

**Page**

Preliminary Statement.................................................................................................... 1

Argument ........................................................................................................................ 2

I.      Plaintiff's Aiding and Abetting Claims Must Fail............................................. 2

      A.      Plaintiff Has Not Sufficiently Alleged Actual Knowledge by Sancus ................. 2

      B.      Plaintiff Has Not Sufficiently Alleged Substantial Assistance by Sancus ........... 4

II.     Plaintiff's Claim for Conspiracy to Commit Fraud is Conclusory and Duplicative.......... 6

III.    Plaintiff's RICO Conspiracy Claim is Deficient as Pleaded and Barred by the PSLRA ..................................................................................................................... 8

Conclusion .................................................................................................................... 10

# TABLE OF AUTHORITIES

**Page**

## CASES

*4 K & D Corp. v. Concierge Auctions, LLC,*
  2 F. Supp. 3d 525 (S.D.N.Y. 2014)........................................................................ 8

*16 Casa Duse, LLC v. Merkin,*
  No. 12-cv-3492, 2013 U.S. Dist. LEXIS 143958 (S.D.N.Y. Sept. 27, 2013) ...................... 4

*Am. Fuel Corp. v. Utah Energy Dev. Co.,*
  122 F.3d 130 (2d Cir. 1997)........................................................................... 3, 4

*Armstrong v. McAlpin,*
  699 F.2d 79 (2d Cir. 1983)............................................................................. 5

*Caprer v. Nussbaum,*
  36 A.D.3d 176 (2d Dep't 2006) ........................................................................ 3

*First Fed. Sav. & Loan Ass'n. v. Oppenheim Appel, Dixon & Co.,*
  629 F. Supp. 427 (S.D.N.Y. 1986) ..................................................................... 7

*Georgia Malone & Co., Inc. v. Rieder,*
  973 N.E.2d 743 (N.Y. 2012)........................................................................... 9

*Georgia Malone & Co., Inc. v. Rieder,*
  86 A.D.3d 406 (1st Dep't 2011) ....................................................................... 9

*In re Sharp Int'l Corp.,*
  403 F.3d 43 (2d Cir. 2005)............................................................................. 4

*Int'l Distribution Ctrs., Inc. v. Walsh Trucking Co.,*
  812 F.2d 786 (2d Cir. 1987)........................................................................... 7

*Lifeng Chen v. New Trend Apparel,*
  8 F. Supp. 3d 406 (S.D.N.Y. 2014).................................................................... 9

*Longo v. Ortiz,*
  No. 15-cv-7716, 2016 U.S. Dist. LEXIS 131558 (S.D.N.Y. Sept. 26, 2016) ................... 2-3

*McDonald v. Brown,*
  No. 12-cv-7109, 2014 U.S. Dist. LEXIS 3982 (S.D.N.Y. Jan. 13, 2014) ........................ 9

*O'Brien v. Nat'l Prop. Analysts Partners,*
  719 F. Supp. 222 (S.D.N.Y. 1989) ..................................................................... 3

*Odyssey Re (London) Ltd. v. Stirling Cooke Brown Holdings Ltd.,*
  85 F. Supp. 2d 282 (S.D.N.Y. 2000).................................................................... 6

# TABLE OF AUTHORITIES

**Page**

*Primavera Familienstiftung v. Askin,*
   130 F. Supp. 2d 450 (S.D.N.Y. 2001)................................................................................. 5

*Rolf v. Blyth,*
   570 F.2d 38 (2d Cir. 1978)................................................................................................. 6

*Tyler v. Liz Claiborne, Inc.,*
   814 F. Supp. 2d 323 (S.D.N.Y. 2011)................................................................................ 1

*United States ex rel. Taylor v. Gabelli,*
   345 F. Supp. 2d 313 (S.D.N.Y. 2004)................................................................................ 2

*Zahrey v. City of New York,*
   No. 98-cv-4546, 2009 U.S. Dist. LEXIS 31893 (S.D.N.Y. Apr. 14, 2009) ........................ 6

# STATUTES AND RULES

Fed. R. Civ. P. 9(b) ........................................................................................................... 1, 2

Fed. R. Civ. P. 12(b)(6)......................................................................................................... 1

Defendant Sancus Capital Blue Credit Opportunities Fund, Ltd. ("Sancus"),[1] by and through its attorneys, respectfully submits this reply memorandum of law in further support of its motion to dismiss the Second Amended Complaint ("SAC") of Plaintiff Great Western pursuant to Federal Rules of Civil Procedure 9(b) and 12(b)(6) ("Mot.").

## Preliminary Statement

Plaintiff's opposition brief ("Opp.") does not overcome the fatal deficiency in its pleading – namely, that Sancus's alleged role as a passive investment vehicle cannot give rise to liability under any theory alleged by Plaintiff. Indeed, because it cannot plausibly allege any wrongdoing by *Sancus*, Plaintiff spends most of its opposition attempting to connect Sancus to alleged misdeeds by Mark Graham. In so doing, Plaintiff raises entirely new allegations about Graham's supposed "control" and "ownership" of Sancus, claiming – for the first time in its opposition – that Sancus acted as Graham's "alter ego." These assertions were never pleaded in the SAC, utterly lack factual support, and demonstrate just how meritless Plaintiff's claims against Sancus are.

Plaintiff has now had three opportunities to assert a cognizable claim against Sancus. It is apparent that Plaintiff cannot. Plaintiff's claims should be dismissed with prejudice, and any request to further amend should be denied.[2]

---

[1]     Terms used but not defined herein have the meanings stated in Sancus's opening brief.

[2]     Plaintiff should not be permitted to amend its complaint in the event the Court dismisses any or all of its claims. The SAC is Plaintiff's third bite at the apple – plainly, the deficiencies in Plaintiff's claims are not curable. *See, e.g.*, *Tyler v. Liz Claiborne, Inc.*, 814 F. Supp. 2d 323, 344 (S.D.N.Y. 2011) ("[A]s plaintiff has already amended his complaint twice, dismissal with prejudice is appropriate at this stage in the litigation").

## Argument

### I.   Plaintiff's Aiding and Abetting Claims Must Fail

As established in Sancus's opening brief (*see* Mot. at 3-8), Plaintiff's claims for aiding and abetting fraud and breach of fiduciary duty should be dismissed because Plaintiff has failed to allege with the particularity required by Rule 9(b) that Sancus: (1) had actual knowledge of the alleged violations; or (2) substantially assisted those violations.[3]  Plaintiff's opposition brief does nothing to remedy these pleading deficiencies.[4]

#### A.   Plaintiff Has Not Sufficiently Alleged Actual Knowledge by Sancus

First, Plaintiff does not (because it cannot) deny that the SAC omits any suggestion that Sancus had actual knowledge of the purported violations.  *See* Mot. at 5-6.  Indeed, the SAC fails to allege that Sancus was even aware of *Great Western* during the relevant time period.  *See id.* Instead, Plaintiff attempts to manufacture an ill-defined and largely-unpleaded connection between Sancus and defendant Mark Graham, asserting for the first time in its opposition brief that Sancus was Graham's "alter ego" because Graham "owned and controlled" Sancus.  *See* Opp. at 7-8. Notably, neither of these purported "facts" were alleged in the SAC.

This argument should be dismissed out of hand.  It is well settled that courts will "not rely on factual assertions made for the first time in [p]laintiff's opposition brief . . . as it is axiomatic that the [c]omplaint cannot be amended by briefs in opposition to a motion to dismiss."  *Longo v.*

---

[3]     As noted (Mot at n. 5, 6), if the Court dismisses the primary violations alleged in the SAC, then Plaintiff's aiding and abetting and conspiracy claims must also fail as a matter of law.

[4]     Plaintiff suggests, without outright asserting, that the fraudulent scheme alleged may be so "complex" as to allow Plaintiff to avoid pleading with specificity under Rule 9(b).  *See* Opp. at 7.  But this action is readily distinguishable from the typical cases in which such standard is relaxed – for example, *qui tam* actions brought under the False Claims Act, or cases involving thousands of transactions occurring over a long period of time.  *See, e.g.*, *United States ex rel. Taylor v. Gabelli*, 345 F. Supp. 2d 313, 326 (S.D.N.Y. 2004) (relaxing pleading requirement in FCA *qui tam* action).

*Ortiz*, No. 15-cv-7716, 2016 U.S. Dist. LEXIS 131558, at *12 (S.D.N.Y. Sep. 26, 2016) (internal quotations omitted); *see also O'Brien v. Nat'l Prop. Analysts Partners*, 719 F. Supp. 222, 229 (S.D.N.Y. 1989) (same). Plaintiff's citation to *Caprer v. Nussbaum* is inapposite, as the defendants there were *actually alleged* to be alter egos of board members accused of violating their fiduciary duties. *See* 36 A.D.3d 176, 193 (2d Dep't 2006). Further, Plaintiff's claim that Graham "owned and controlled" Sancus is belied by its own allegation that Advantage Capital Holding, LLC ("Advantage") owns 80% of Sancus, and that Ability Insurance Company owns 13.68% of Sancus – which, if true, would give Graham a 6.32% stake in Sancus at best. *See* SAC ¶ 128.

In fact, the only allegations in the SAC concerning the relationship between Sancus and Graham are that (1) Sancus "was created and operated by Graham," (2) Graham had an unspecified "ownership interest" in Sancus, and (3) Graham "served in a primary role of responsibility (such as the President, Founder, or similar position)" for Sancus. *See* SAC ¶¶ 52, 90, 106.[5] Even if these assertions were supported by specific facts (which they are not), they fall far short of pleading an alter ego relationship between Sancus and Graham. Under New York law, a party seeking to "reverse" pierce the corporate veil must plead and prove two elements: "(i) that the owner exercised complete domination over the corporation with respect to the transaction at issue; and (ii) that such domination was used to commit a fraud or wrong that injured the party seeking to pierce the veil." *Am. Fuel Corp. v. Utah Energy Dev. Co.*, 122 F.3d 130, 133-34 (2d Cir. 1997) (reversing district court's finding that company was individual's alter ego). The Second Circuit has identified factors that "tend to identify a dominated corporation," including (among other

---

[5]     Plaintiff further claims, also for the first time in opposition, that defendants Graham and Tolaram are directors of a separate entity, Sancus Capital Master Fund. *See* Opp. at 8 (citing SAC ¶ 128). Not only is this allegation irrelevant, but it was never pleaded in the SAC (in paragraph 128 or otherwise) and must be disregarded by the Court.

things) whether corporate formalities are observed, whether capitalization is adequate, and whether funds are put in and taken out of the corporation for personal (rather than corporate) use. *Id.*

There are simply no allegations in the SAC that Graham exercised "complete domination" over Sancus. Nor does Plaintiff allege any of the factors that might suggest dominance – for example, that Sancus disregarded corporate formalities, or that Graham used Sancus's corporate funds for personal rather than corporate use. And even if assumed to be true, Plaintiff's limited allegations concerning the relationship between Graham and Sancus are not sufficient to establish the required domination. *See, e.g.*, *16 Casa Duse, LLC v. Merkin*, No. 12-cv-3492, 2013 U.S. Dist. LEXIS 143958, at *45-46 (S.D.N.Y. Sept. 27, 2013), *rev'd in part on other grounds*, 791 F.3d 247 (2d Cir. 2015) (dismissing alter ego argument and noting that "the fact that an individual is a corporation's sole member does not, in and of itself, establish the individual's dominance of the corporation"). Simply put, Plaintiff has not pleaded "actual knowledge" by way of an alter ego relationship between Sancus and Graham, and its aiding and abetting claims must accordingly fail.

## B.     Plaintiff Has Not Sufficiently Alleged Substantial Assistance by Sancus

Plaintiff has also failed to adequately plead "substantial assistance" by Sancus. As Plaintiff itself recognizes (Opp. at 8), "substantial assistance" requires a defendant to "*affirmatively* assist[], help[] conceal or fail[] to act when required to do so." *See In re Sharp Int'l Corp.*, 403 F.3d 43, 50 (2d Cir. 2005) (affirming dismissal of claim for aiding and abetting breach of fiduciary duty) (internal quotation marks and citation omitted, emphasis added). But, at most, the SAC alleges that Sancus acted merely as a passive investment vehicle. This plainly does not rise to the level of substantial assistance under New York law. *See* Mot. at 7-8 (collecting cases).

Plaintiff's opposition fails to clarify how Sancus could be said to have "affirmatively assisted" the purported fraud. Indeed, Plaintiff repeats the vague allegation that Sancus somehow "divert[ed] moneys" from Great Western and the Trust Account. *See* Opp. at 8. This allegation

is unsupported by any other facts, and is nonsensical in view of Sancus's purported role as an investment vehicle that had no contact with Plaintiff.  Plaintiff also suggests that Sancus provided substantial assistance "through Graham," and claims that Graham is "the owner" of Sancus.  *Id.* To the extent Plaintiff is again attempting to manufacture an unpleaded alter ego relationship between Sancus and Graham, that argument is wholly unsupported by any facts alleged in the SAC.  *Supra* at 3-4.  At most, Graham is alleged to have *some* "ownership interest" and served in *some* "primary role of responsibility" in Sancus.  *See* SAC ¶¶ 90, 106.  This is a far cry from the type of sole ownership and control now suggested by Plaintiff in its opposition brief – a suggestion that, in any event, is flatly contradicted by Plaintiff's allegation that Advantage and Ability own a cumulative 93.68% stake in Sancus.  And it does not even come close to "substantial assistance."

Finally, the cases Plaintiff cites to on page 9 of its opposition are irrelevant, as not one involved a passive investment vehicle whose only role was the alleged receipt of funds.  *See Primavera Familienstiftung v. Askin*, 130 F. Supp. 2d 450, 462, 512 (S.D.N.Y. 2001) ("symbiotic fraudulent scheme" between brokers and investment advisors involving purchase and sale of high-risk CMOs, which "reaped huge profits" for brokers and led to collapse of hedge funds after brokers issued "a veritable blizzard of margin calls" in a very short period of time); *Armstrong v. McAlpin*, 699 F.2d 79, 91 (2d Cir. 1983) (appellee acted as broker for fraudulent "churning" transactions, with knowledge of their fraudulent nature, to generate commissions for himself, a company in which he held shares, and his employers); *Rolf v. Blyth*, 570 F.2d 38, 48 (2d Cir. 1978) (defendant engaged in "hand-holding operation" to prevent plaintiff from discovering fraud by investment advisor, by repeatedly reassuring plaintiff of advisor's competence and processing many of the relevant securities orders).  Because Plaintiff has not (and cannot) allege substantial assistance by Sancus, its aiding and abetting claims must be dismissed.

## II.    Plaintiff's Claim for Conspiracy to Commit Fraud is Conclusory and Duplicative

Despite Plaintiff's attempts for redress in its opposition, Plaintiff's conspiracy claim is still deficient as pleaded.   Specifically, Plaintiff has failed to allege even the most basic facts demonstrating Sancus's knowledge of, or participation in, the alleged fraudulent scheme.  Instead, Plaintiff's conspiracy claim is limited to vague and conclusory allegations that defendants conspired "to commit the fraud described [t]herein" and "committed numerous overt acts in furtherance of the conspiracy."   *See* SAC ¶¶ 224-25.   Courts have routinely struck down such boilerplate and conclusory recitations of a civil conspiracy claim on motions to dismiss.   *See* Mot. at 7-8 (citing cases).   Plaintiff conveniently ignores this principle in its opposition.

Further, Plaintiff is wrong that its purported "circumstantial evidence" can satisfy the "what, when, where, and how of the conspiracy," including the existence of an illicit agreement Opp. at 11.   Where no direct evidence exists, circumstantial evidence can, at times, be used to infer the existence of an agreement.   *Zahrey v. City of New York*, No. 98-cv-4546, 2009 U.S. Dist. LEXIS 31893, at *43-44 (S.D.N.Y. Apr. 14, 2009).   But that is not the case here, where Plaintiff relies entirely on a purported (and ill-defined) business connection between Graham and Sancus to demonstrate the purported agreement.   *See* Opp. at 11-12.   However, it is well settled that a mere business relationship between parties does not suffice to establish an agreement for purposes of a civil conspiracy claim.   *See Odyssey Re (London) Ltd. v. Stirling Cooke Brown Holdings Ltd.*, 85 F. Supp. 2d 282, 298-99 (S.D.N.Y. 2000) (dismissing civil conspiracy claim based on alleged prior business relationship, as "Plaintiff must allege more than that defendants had worked together previously to create an inference of the fraudulent intent to enter into a conspiracy against this particular plaintiff"); *Zahrey*, 2009 U.S. Dist. LEXIS 31893, at *43-44 (no conspiracy claim where only evidence of agreement was fact that defendants "worked together").

The cases cited by Plaintiff (Opp. at 12) do not support its position.  In *First Fed. Sav. & Loan Ass'n. v. Oppenheim, Appel, Dixon & Co.*, the court did not (as Plaintiff suggests) find an agreement between the dealer and its accountant based on their business relationship alone.  *See* 629 F. Supp. 427, 432-33 (S.D.N.Y. 1986).  Rather, the accountant, which was aware of dealer's scheme to improperly commingle or hypothecate plaintiff's securities with its own, had, among other things, (1) advised the dealer that it did not need to disclose the commingling to plaintiffs, and (2) drafted and sent to plaintiffs (or caused to be drafted and sent) letters on the dealer's stationary representing that the dealer was holding their securities in safekeeping, and requesting that plaintiffs confirm directly to the accountant their understanding as such.  *Id*.  It was this combination of facts that the court found sufficient from which to infer an agreement.  *Id*. at 444.

Further, in *Int'l Distribution Ctrs., Inc. v. Walsh Trucking Co.*, the Second Circuit held that meetings between an executive and his competitor's employees (whom the executive ultimately hired at his own firm) were *not* sufficient to infer an agreement to constrain trade.  *See* 812 F.2d 786, 795 (2d Cir. 1987).  The court found that such meetings "were just as likely held to discuss their future employment relationship as to hatch a predatory pricing scheme."  *Id*.  Likewise here, Plaintiff has not offered a "scintilla of evidence" that Sancus knew or participated in a scheme to defraud Plaintiff.  *See id.*  Plainly, Sancus's purported business ties to Graham are not sufficient.

Finally, Plaintiff is wrong that its civil conspiracy claim is not duplicative of its other claims.  *See* Opp. at 12.  The SAC is clear that Plaintiff's conspiracy claim relies on the same acts alleged in its other claims, including its claim for aiding and abetting fraud.  *See* SAC ¶¶ 223; 225. The only additional allegation made against Sancus in Plaintiff's civil conspiracy claim is the boilerplate assertion that the conspirators "reached an agreement or understanding."  *Id*. ¶ 224. Plaintiff's civil conspiracy claim must be dismissed as duplicative.  *See* Mot. at 10-11.

### III.   Plaintiff's RICO Conspiracy Claim is Deficient as Pleaded and Barred by the PSLRA

Notably, Plaintiff does not (because it cannot) respond to Sancus's argument that Plaintiff's Section 1962(d) claim must be dismissed because it fails to sufficiently allege that Sancus had knowledge of the alleged RICO scheme or entered into an agreement to facilitate it.  *See* Mot. at 14-16; *see also 4 K & D Corp. v. Concierge Auctions, LLC*, 2 F. Supp. 3d 525, 545 (S.D.N.Y. 2014) ("Other than one conclusory allegation that the defendants 'agreed' to commit the violations, the plaintiffs have alleged no facts to show specifically that the defendants had any 'meeting of the minds'. . .").  Plaintiff's RICO conspiracy claim should be dismissed on this ground alone.

As set forth in Sancus's Motion, Plaintiff's claim fails for the additional reason that it is barred by the PSLRA.  Plaintiff argues that this bar does not apply because its RICO allegations do not involve the purchase or sale of securities.  *See* Opp. at 7.  However, the most cursory reading of the SAC reveals that the purchase or sale of securities is essential to the predicate RICO claims. For example, Plaintiff alleges that the Defendants made false statements concerning both the composition and value of the "Purchased Securities" backing the Repurchase Agreement and the purchase of U.S. Treasury Securities.  *See* SAC ¶¶ 74, 80-83, 86, 89, 91-93, 98-102, 202.  Thus, Plaintiff has already conceded that the SAC is predicated on a securities-related dispute.[6]

### IV.   Plaintiff's Claim for Unjust Enrichment is Meritless

Plaintiff likewise cannot cure its unjust enrichment claim against Sancus – a party who is not alleged to have communicated with or known about Great Western – because Plaintiff has failed to plead any sort of relationship between itself and Sancus.  *See* Mot. at 15. In response,

---

[6]   Plaintiff itself requested the Court take judicial notice of the SEC settlement order with three of the defendants named in this action concerning the same purported scheme alleged in the SAC.  *See* ECF No. 56, Ex. A. Plaintiff admits that the conduct alleged in the SEC order, which involved "deceptive conduct" in connection with the purchase or sale of securities, is "*the basis for ... [the SAC] in this action*."  ECF No. 56 at p. 2 (emphasis in original).  Clearly, the underlying RICO claims involve the purchase or sale of securities.

Plaintiff claims that it must show only that Sancus was "aware" of Great Western. Opp. at 14. Putting aside the fact that Plaintiff has never pleaded such "awareness" (Mot. at 2, 16), this is not the standard in New York, and Plaintiff's cited authority does not support such a proposition.

In fact, the New York Court of Appeals has rejected such a "mere awareness" standard. *See Georgia Malone & Co., Inc. v. Rieder*, 973 N.E.2d 743, 746-47 (N.Y. 2012) (defendant's knowledge that plaintiff had created due diligence reports that defendant subsequently used for its own benefit was insufficient to establish requisite connection for unjust enrichment claim). The lower court's decision, which was affirmed on appeal, expressly held that it is "not sufficient . . . to merely show that [defendants] were aware of [plaintiff's] existence," as "[a] mere awareness standard would result in liability for anyone who simply knew of the plaintiff's existence." *Georgia Malone & Co., Inc. v. Rieder*, 86 A.D.3d 406, 409 (1st Dep't 2011). And the case cited by Plaintiff in support of its proposed "awareness" standard, *Lifeng Chen v. New Trend Apparel, Inc.*, 8 F. Supp. 3d 406 (S.D.N.Y. 2014), is not to the contrary, as the court in that case merely observed that *Ga. Malone* "suggested . . . that a defendant's awareness of the plaintiff and of the potential negative impact of its own conduct on the plaintiff *may serve as further indication* of the required closeness between parties." *Id.* at 465 (emphasis added).

As set forth in Sancus's opening brief, Plaintiff has not provided any allegations sufficient to show a relationship between itself and Sancus. Liability for unjust enrichment "does not spring from mere awareness of plaintiff's existence." *McDonald v. Brown*, No. 12-cv-7109, 2014 U.S. Dist. LEXIS 3982, at *17 (S.D.N.Y. Jan. 13, 2014). The absence of any such relationship is fatal to Plaintiff's unjust enrichment claim.[7]

---

[7]    Finally, Plaintiff does not rebut that the existence of the various agreements among the parties (such as the Coinsurance, Novation, and Trust Agreements) govern the subject

9

**Conclusion**

For the reasons set forth above and in its opening brief, Sancus respectfully requests that the Court grant its motion in its entirety, issue an order dismissing the SAC with prejudice as to Sancus, and grant such other and further relief as is just and proper.

New York, New York
April 2, 2019

Respectfully submitted,

SEWARD & KISSEL LLP

By:     /s Jack Yoskowitz
Jack Yoskowitz
Laura E. Miller
Andrew S. Jacobson
Shrey Sharma
One Battery Park Plaza
New York, New York 10004
Tel. (212) 574-1200
Fax: (212) 480-8421
yoskowitz@sewkis.com
millerl@sewkis.com
jacobsona@sewkis.com
sharma@sewkis.com

*Attorneys for Defendant Sancus
Capital Blue Credit Opportunities
Fund, Ltd.*

---

matter of the dispute at issue in the SAC, and therefore provide further grounds on which Plaintiff's unjust enrichment claim must be dismissed.  *See* Mot. at 17 n.9.