UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| GREAT WESTERN INSURANCE COMPANY,<br><br>                Plaintiff,<br><br>     - against-<br><br>MARK GRAHAM, DONALD SOLOW, BLUE CAPITAL MANAGEMENT, INC., BLUE ALTERNATIVE ASSET MANAGEMENT LLC, WILMINGTON SAVINGS FUND SOCIETY, FSB, CHRISTIANA TRUST, REGATTA HOLDINGS LLC, CYGNET 001 MASTER TRUST, CYGNET 001 MASTER TRUST SERIES 2011-A, CYGNET 001 MASTER TRUST SERIES 2011-C, CYGNET 001 MASTER TRUST SERIES 2013-A, ALPHA RE LIMITED, ALPHA RE HOLDINGS (CAYMAN) LIMITED, ATLANTIC SPECIALTY FINANCE, BLUE ELITE FUND LTD., BLUE ELITE FUND LP, BLUE II LTD., SANCUS CAPITAL BLUE CREDIT OPPORTUNITIES FUND LTD., ABILITY INSURANCE COMPANY, JOHN DRAKE, EDWARD BRENDAN LYNCH, AND GREGORY TOLARAM, ADVANTAGE CAPITAL HOLDING LLC, DAN CATHCART, AND KENNETH KING.<br><br>                Defendants. | No. 1:18-cv-06249-VSB |

**DEFENDANTS ABILITY INSURANCE COMPANY, ADVANTAGE CAPITAL HOLDING LLC, DAN CATHCART, AND KENNETH KING'S REPLY MEMORANDUM OF LAW IN SUPPORT OF THEIR MOTION TO DISMISS THE SPECIFIC CLAIMS PLEADED AGAINST MOVANTS**

**TABLE OF CONTENTS**

INTRODUCTION ............................................................................................................... 1

MINIMAL FACTS PLEADED INVOLVING ABILITY DEFENDANTS ................................. 1

ARGUMENT ..................................................................................................................... 3

     I.     COUNTS TWO AND FOUR: AIDING AND ABETTING LIABILITY ............. 3

          A.     No Knowledge ........................................................................ 3
          B.     No Substantial Assistance ..................................................... 4
          C.     No Proximate Cause .............................................................. 5

     II.     COUNT ELEVEN: UNJUST ENRICHMENT ....................................... 6

          A.     Too Attenuated a Relationship Between Parties ....................... 6
          B.     Does Not Offend Equity and Good Conscience ........................ 8

     III.     COUNT TWELVE: CONVERSION ...................................................... 9

CONCLUSION ............................................................................................................... 10

## TABLE OF AUTHORITIES

**Page(s)**

**Federal Cases**

*In re Allou Distribs., Inc.*,
  387 B.R. 365 (Bankr. E.D.N.Y. 2008)..................................................................................3

*Boddie v. Schnieder*,
  105 F.3d 857 (2d Cir. 1997)...............................................................................................3

*Chen v. New Trend Apparel*,
  8 F. Supp. 3d 406 (S.D.N.Y. 2014) ................................................................................7, 8

*Cohen v. BMW Investments L.P.*,
  144 F. Supp. 3d 492 (S.D.N.Y. 2015).........................................................................6, 8, 9

*Grund v. Del. Charter Guarantee & Tr. Co.*,
  788 F. Supp. 2d 226 (S.D.N.Y. 2011)................................................................................7

*JP Morgan Chase Bank v. Winnick*,
  406 F. Supp. 2d 247 (S.D.N.Y. 2005)................................................................................5

*Kyrs v. Surgue (In re Refco Inc. Sec. Litig.)*,
  No. 07 MDL 1902 (JSR), 2012 WL 12941970 (S.D.N.Y. Feb. 10, 2012)................................4

*Kyrs v. Surgue (In re Refco Inc. Sec. Litig.)*,
  No. 07 MDL 1902 (JSR), 2012 WL 3126834 (S.D.N.Y. July 30, 2012)……………………..4

*Lerner v. Fleet Bank, N.A.*,
  459 F.3d 273 (2d Cir. 2006).............................................................................................3

*In re Monahan Ford Corp. of Flushing*,
  340 B.R. 1 (Bankr. E.D.N.Y. 2006)....................................................................................5

*Myun-Uk Choi v. Tower Research Capital LLC*,
  890 F.3d 60 (2d Cir. 2018)..............................................................................................7

*Newbro v. Freed*,
  409 F. Supp. 2d 386 (S.D.N.Y. 2006)................................................................................9

*Overton v. Art Fin. Partners LLC*,
  166 F. Supp. 3d 388 (S.D.N.Y. 2016)................................................................................7

*Oxon Italia, S.p.A. v. Farmland Indus., Inc.*,
  546 F. Supp. 681 (S.D.N.Y. 1982) ..................................................................................10

*Rieger v. Drabinsky (In re Livent Noteholders Sec. Litig.)*,
  151 F. Supp. 2d 371 (S.D.N.Y. June 29, 2001) ..................................................................4

*Sharp Intern. Corp. v. State Street Bank and Trust Co.* (*In re Sharp Intern. Corp.*),
  302 B.R. 760 (E.D.N.Y. Dec. 5, 2003) ..............................................................................6

*SPV Osus Ltd. v. UBS AG*,
  882 F.3d 333 (2d Cir. 2018)............................................................................................3

**State Cases**

*Caprer v. Nussbaum*,
   36 A.D.3d 176 (2d Dep't 2006) ...................................................................................5

*Encore Preakness, Inc. v. Chestnut Health & Rehab. Grp., Inc.*
   No. N17C-03-1677 AML, 2017 WL 5068753 (Del. Super. Ct. Nov. 1, 2017) ........................7

*Galasso, Langione, & Botter, LLP v. Galasso*,
   No. 010038-07, 2016 WL 5108641 (N.Y. Sup. Ct. Nassau Cnty. 2016) .................................9

*Georgia Malone & Co. v. Rieder*,
   973 N.E.2d 743 (N.Y. 2012) ........................................................................................6

*Petrone v. Davidoff Hutcher & Citron, LLP*,
   150 A.D.3d 776, 54 N.Y.S.3d 25 (2d Dep't 2017) .................................................................10

*Shilkoff Inc. v. 885 Third Ave. Corp.*,
   299 A.D.2d 253 (1st Dep't 2002) ....................................................................................9

*Simpson & Simpson, PLLC v. Lippes Mathias Wexler Friedman LLP*,
   130 A.D.3d 1543 (4th Dep't 2015) ..................................................................................10

*Stanfield Offshore Leveraged Assets, Ltd. v. Metro. Life Ins. Co.*,
   64 A.D.3d 472 (1st Dep't 2009) ......................................................................................5

The Ability Defendants submit this reply to Plaintiff GWIC's opposition ("Opp.").[1]

## INTRODUCTION

When the legally insufficient, conclusory rhetoric is excluded, GWIC's pleading is devoid of alleged facts showing the Ability Defendants acted unlawfully or did anything other than withdraw funds they deposited to which they were entitled.  GWIC's Opp. presents a novel theory that the Ability Defendant's alleged "long-standing ties" to certain other defendants were "instrumental in … positioning the other defendants so they could gain control over [GWIC's] funds."  Opp. at 1.  But that theory does not support viable claims against the Ability Defendants for aiding and abetting liability absent factual allegations of (among other things) (i) actual knowledge; (ii) substantial assistance (including GWIC's justifiable reliance); and (iii) proximate cause – none of which are present.  Nor are conversion or unjust enrichment claims viable against the Ability Defendants, because, in contrast to GWIC's readily distinguishable case citations, the Ability Defendants withdrew their own funds pursuant to undisputed contractual and statutory rights.

## MINIMAL FACTS PLEADED INVOLVING ABILITY DEFENDANTS

Despite GWIC's attempt to conflate the Ability Defendants with the other twenty defendants, the extremely limited facts pleaded against the Ability Defendants – when unpacked – fall into three-time periods and amount to nothing actionable.  Not a single allegation regarding the key 2012-2016 period of alleged mishandling of assets even involves the Ability Defendants.

**2009-2012**: Before its relationship with the non-Ability Defendants, GWIC merely alleges ordinary course of business dealings on Ability Re's part[2]:

---

[1] All defined terms are given the meaning and definition assigned in the Ability Defendants' Moving Brief, filed February 5, 2019, Dkt. 135 ("Moving Br.").

[2] While GWIC seeks to confuse entities, non-defendant Ability Re indisputably was unaffiliated with the Ability Defendants during its relationship with GWIC.  Moving Br. at n. 3.

- Ability Re and GWIC had a coinsurance relationship from 2009-2012.  SAC at ¶¶ 60, 62.
- "In early 2012," Cathcart, then an Ability Re executive, told GWIC that Ability Re was exiting the reinsurance business, "recommended" and "introduced" GWIC to Alpha Re, Graham, and Solow, and "vouched" for Graham.  SAC at ¶ 63.  Cathcart declined GWIC's offer to buy back its book of business.  *Id*.
- In 2012, ACH was acquiring Ability, with assistance from Graham, Solow, and Alpha.  SAC at ¶ 68.

None of these allegations identify either any duty or relationship between the Ability Defendants and GWIC, let alone any wrongdoing of any kind.

**September-November 2016**:  While no allegations regarding the core period of four years of alleged mishandling of funds relate to the Ability Defendants, GWIC references alleged – but not actionable – communications by the Ability Defendants in September-November 2016:

- "In early September 2016," Cathcart said "Ability's reinsurance relationship with Alpha was 'going smoothly.'"  SAC at ¶ 113.  "Soon thereafter," King told GWIC "he would 'get to the bottom' of the SEC investigation."  SAC at ¶ 114.
- "In or about September of 2016," Cathcart informed GWIC that King was "comfortable as to their trust investments," and King told GWIC about "the comfort he now felt about Graham's investments."  SAC at ¶ 115.
- "[I]n November 2016, Ability, using the inside information received by Dan Cathcart and Ken King, withdrew $109 million from defendant."  SAC at ¶ 116. The alleged "inside information" is never defined.

None of these allegations identify any duty on the Ability Defendants' part to provide information, any basis for reliance by GWIC, or even any falsehood.

**Post-November 2016**: After Ability withdrew its own funds in November 2016, GWIC resorts to allegations about subsequent, unrelated transactions:

- On December 31, 2016, Ability signed a new coinsurance agreement with Alpha Re (then known as Vista Re).  SAC at ¶ 124.
- On March 24, 2017, Cathcart, King, and another Ability executive joined the board of directors for defendant Blue Elite Fund LP.  SAC at ¶ 125.
- On March 30, 2017, a company owned by ACH satisfied the debt ACH owed to Alpha Re from ACH's acquisition of Ability in 2012.  SAC at ¶ 127.
- As of December 31, 2017, Ability and ACH combined owned more than 80% of defendant Sancus.  SAC at ¶ 128.

<u>None</u> of these allegations reflect any wrongful conduct, any conduct even related to GWIC, or any conduct causing GWIC harm.

**ARGUMENT**

In its Opp., GWIC fails to rebut its basic pleading failures:

**I.      COUNTS TWO AND FOUR: AIDING AND ABETTING LIABILITY**

GWIC asserts two related aiding and abetting claims (for breach of fiduciary duty and for fraud) based upon the same alleged conduct.  Both fail for overlapping reasons.  *SPV Osus Ltd. v. UBS AG*, 882 F.3d 333, 345 (2d Cir. 2018) ("the elements of aiding and abetting a breach of fiduciary duty…and aiding and abetting a fraud are substantially similar.").

**A.      <u>No Knowledge:</u>** Nowhere does GWIC allege facts showing the Ability Defendants' knowledge of any wrongdoing, including alleged comingling of funds.  GWIC misplaces reliance on case law where the aider and abettor had "actual knowledge" of comingling.  GWIC highlights *Lerner v. Fleet Bank, N.A.*, 459 F.3d 273, 294 (2d Cir. 2006), even though the case only "conclude[d] that the [defendant's] <u>actual knowledge</u> of…[comingling] may provide the basis for an aiding and abetting claim." *Id*. at 294 (emphasis added); *see also In re Allou Distribs., Inc.*, 387 B.R. 365, 410 (Bankr. E.D.N.Y. 2008) (<u>knowing</u> participation in fiduciary breach is required).

Rather than plead facts showing actual knowledge, GWIC's aiding and abetting claims depend on a single SAC paragraph, merely alleging a meeting "in or about September of 2016" (when King and Graham allegedly discussed Ability's investments – ***not*** GWIC's) where the Ability Defendants ascertained undefined "inside information."  SAC at ¶¶ 115, 116; Opp. at 8. Other than GWIC's vague, conclusory allegation about some amorphous "inside information," ***nothing in the SAC*** shows the Ability Defendants knew about any wrongdoing or comingling. Accusations cannot rest upon impermissible speculation. *See Boddie v. Schnieder*, 105 F.3d 857, 862 (2d Cir. 1997) (dismissing "unsupported" and "speculative" claims).

3

Further, GWIC's claim that Ability waited to withdraw its own funds for <u>two months</u> after the alleged September 2016 communication only belies GWIC's assertion that the Ability Defendants "immediately" acted.  Opp. at 8.[3]

**B.**      <u>No Substantial Assistance:</u> In a circular argument, while GWIC fails to adequately allege any knowledge of a breach of fiduciary duty, GWIC asserts the Ability Defendants' substantially assisted others when they "helped conceal" an alleged breach.  Opp. at 9.  GWIC also fails to allege any basis for it to rely on any conversations with the Ability Defendants (a distinct insurance company), with which it had <u>no</u> legally cognizable relationship.

GWIC mischaracterizes the justifiable reliance requirement.  Opp. at 10. While not every form of substantial assistance requires reliance, it does if substantial assistance relates to a communication.  In situations where substantial assistance is in the form of alleged misstatements, it cannot be found where the alleged misstatements were not justifiably relied upon.  *See Kyrs v. Surgue (In re Refco Inc. Sec. Litig.)*, No. 07 MDL 1902 (JSR), 2012 WL 12941970, at \*42-43 (S.D.N.Y. Feb. 10, 2012) (the "Report") ("part of the substantial assistance/proximate cause requirement is the that plaintiff reasonably relied on the" alleged misstatements), *adopted* by 2012 WL 3126834 at \*4 (dismissing aiding and abetting claim, Judge Rakoff rejected an unrelated part of Report and agreed with Report "in all other respects").  ***GWIC cites no case where alleged misstatements qualify as substantial assistance without justifiable reliance***.

---

[3] In a belated and inadequate attempt to remedy defects, GWIC seeks to add new allegations in its Opp. that the Ability Defendants: "immediately start[ed] the process of withdrawing" money in September 2016 (Opp. at 9); "lied" "to Great Western that they felt 'comfort' with Graham's investments" (*id*.); would "'get to the bottom' of the status…of Great Western's Money" (*id*. at 12); "learned…what was in Series 2011-C" (*id*.); and "knew that [GWIC] was a victim" of the <u>non</u>-Ability Defendants (*id*. at 16).  Even if credited, these entirely conclusory allegations are more of the same and cannot save GWIC's pleading as related to the Ability Defendants because they still fail to sufficiently show knowledge, substantial assistance, and proximate cause and a relationship which "could have caused reliance." Further, this attempt to replead in an opposition brief is patently impermissible.  *See, e.g.*, *Rieger v. Drabinsky (In re Livent Noteholders Sec. Litig.)*, 151 F. Supp. 2d 371, 432 (S.D.N.Y. June 29, 2001) (party is not able to add claims in opposition papers not in complaint).

Nor did the Ability Defendants have any duty to alert GWIC even if they were aware (for which no basis is pled) of pertinent information. *See Stanfield Offshore Leveraged Assets, Ltd. v. Metro. Life Ins. Co.*, 64 A.D.3d 472, 476 (1st Dep't 2009) (dismissing aiding and abetting claim for lack of "substantial assistance" where defendant allegedly participated in fraud by facilitating an insolvent party's refinancing without warning of the insolvency). GWIC incorrectly argues no duty is needed by citing *Caprer v. Nussbaum*, 36 A.D.3d 176 (2d Dep't 2006), which is inapt. In *Carper*, the court addressed an aiding and abetting claim involving, unlike here, where the Ability Defendants are indisputably distinct from the other Defendants, only parties which were corporate alter egos of the main defendant (found to have breached his fiduciary duty), having no existence separate from the main defendant. *See id*. at 192-93. If there is no duty to disclose, by definition, a party cannot have concealed anything.

GWIC's reliance on the Bankruptcy Court's holding in *In re Monahan Ford Corp. of Flushing*, 340 B.R. 1, 43 (Bankr. E.D.N.Y. 2006), is also misplaced because it <u>dismissed</u> aiding and abetting claims against certain defendants for "fail[ing] to plead that [they] had actual knowledge of the underlying fraud." *Id*. at 34-35, 43. While, in dicta, the court referred to "inaction" as a possible basis for substantial assistance, it has nothing to do with, as here, an alleged failure to disclose or alleged "conceal[ment]." Opp. at 9. Rather than inaction, the defendants against whom claims proceeded were involved in providing financing and terminating agreements as a means to actively facilitate fraud. *See id*.; *see also* Opp. at 12 (citing *JP Morgan Chase Bank v. Winnick*, 406 F. Supp. 2d 247, 256 (S.D.N.Y. 2005) (in contrast to SAC and Opp., alleging direct involvement in negotiating transactions leading to the underlying fraud)).

C.       **No Proximate Cause:** Except for boilerplate phraseology, nowhere in its pleading does GWIC identify how alleged cursory communications could have proximately caused any

harm.[4]  GWIC cites no case law to support its argument that Cathcart and King's limited, alleged misstatements caused GWIC's injury.  Opp. at 11.  Indeed, the alleged communications occurred no less than four years after the alleged breaches of fiduciary duty and fraud began and only shortly before any alleged scheme ended.  A defendant cannot be held accountable for assisting a scheme "that was well underway before [defendant] is alleged to have even had any knowledge of it." *Sharp Intern. Corp. v. State Street Bank and Trust Co.*, (*In re Sharp Intern. Corp.*), 302 B.R. 760, 777 (E.D.N.Y. Dec. 5, 2003) (**unrebutted by GWIC in its Opp.**).

## II.    COUNT ELEVEN: UNJUST ENRICHMENT[5]

A.    **Too Attenuated a Relationship Between Parties**: To support an unjust enrichment claim, the relationship between the parties must be such that it "could have caused reliance or inducement."  *See*, *e.g.*, *Cohen v. BMW Investments L.P.*, 144 F. Supp. 3d 492, 501 (S.D.N.Y. 2015) (citing *Georgia Malone & Co. v. Rieder*, 973 N.E.2d 743 (N.Y. 2012)).  GWIC tries but fails to distinguish *BMW Investments* by isolating the parties' lack of knowledge of each other.  Opp. at 16. Even though the Ability Defendants allegedly knew of GWIC, *BMW Investments* does not hold that mere knowledge of another party creates a relationship which "could have caused reliance or inducement." *BMW Investments*, 144 F. Supp. 3d at 501; Opp. at 16.  Falling well short of *BMW Investments*' standard, GWIC fails to "allege actions [by the Ability Defendants] that might lead to reliance or inducement," (*id*. at 501), and fails to plead any non-conclusory "facts showing that [the Ability Defendants] knew the [funds] came from [GWIC's deposits]." *Id*. at 502.  In showing a relationship that "caused reliance," GWIC cites no case akin to here, involving dealings between unrelated companies which ended four and a half years prior

---

[4] Contrary to GWIC's argument (Opp. at 13), the Ability Defendants challenged proximate cause as to both of GWIC's aiding and abetting claims.  *See* Moving Br. at 14-15.
[5] Contrary to GWIC's argument (Opp. at 14), the Ability Defendants clearly dispute they were enriched "at plaintiff's expense" because the Ability Defendants repeatedly explained it withdrew its own property.

to the alleged unjust enrichment, or three vague communications, four and half years <u>after</u> the last communication between the parties.

GWIC also misconstrues *Encore Preakness, Inc. v. Chestnut Health & Rehab. Grp., Inc*. No. N17C-03-1677 AML, 2017 WL 5068753, at \*1 (Del. Super. Ct. Nov. 1, 2017). *See* Opp. at 16-17. *Encore* held that, like here, a plaintiff must recover funds to which it claims an entitlement from the entity responsible for the original debt, (in this case, the <u>non</u>-Ability Defendants), not from a third-party (here, the Ability Defendants), even if it also had dealings with the debtor. *See id*. at \*3-4.

The very case law relied on by GWIC refutes the viability of its unjust enrichment.  In *Overton v. Art Fin. Partners LLC*, the Court denied a motion to dismiss an unjust enrichment claim for two reasons clearly inapplicable here: (1) the defendant purchaser of artwork belonging to plaintiff, who did not authorize its sale, did not have rights predating those of the plaintiff, while, here, the Ability Defendants withdrew their own funds; and (2) there were non-conclusory allegations raising "factual disputes" about defendant's actual knowledge of plaintiff's rights. *See* 166 F. Supp. 3d 388, 395-397, 414 (S.D.N.Y. 2016).  GWIC's other citations are similarly inapt. *See Myun-Uk Choi v. Tower Research Capital LLC*, 890 F.3d 60, 69 (2d Cir. 2018) (dissimilar to here, there was "near statistical certainty" the parties' direct business relationship caused defendants' benefit at plaintiffs' expense); *Grund v. Del. Charter Guarantee & Tr. Co.*, 788 F. Supp. 2d 226, 252 (S.D.N.Y. 2011) (actually dismissing plaintiff's unjust enrichment claim with no discussion of the relationship between the parties).

GWIC also misplaces reliance on *Chen v. New Trend Apparel*, 8 F.Supp. 3d 406 (S.D.N.Y. 2014), which further undercuts GWIC's unjust enrichment claim.  In contrast to here, the *Chen* Plaintiffs had business dealings with New Trend, which, in turn, employed Nina Chang in a senior

managerial role.  *Id*. at 423-25.    Although the Chen Plaintiffs brought claims arising out of their

transactions with New Trend, the Court held that facts "potentially support an unjust-enrichment

claim" by the Chen Plaintiffs against the Chang Defendants for property received from New Trend

because there "was a sufficient connection" between the Chen and Chang parties.  *Id*. at 428, 465.

In contrast to the relationships here, "there is no dispute that [Nina Chang] was an employee of

[New Trend], was involved in helping to manage its finances, and knew that New Trend was in

poor financial condition, and that the Chen parties … subsequently sued, New Trend." *Id*. at 465

(citations omitted).

     None of these factors in *Chen* are present here.   Unlike the Chang Defendants, the Ability

Defendants indisputably had no role within the operations of any of the other defendants.  Nor

does GWIC allege any facts indicating that the Ability Defendants had knowledge of

wrongdoing.  Nothing is pled, unlike with Nina Chang, showing the Ability Defendants had access

to information about GWIC's investments or accounts with the <u>non</u>-Ability Defendants.

     Repeating its errors, GWIC again misconstrues the Ability Defendants' justifiable reliance

argument.  Opp. at 18.  GWIC must allege a relationship between it and the Ability Defendants

which "might lead to reliance or inducement" in order for its unjust enrichment claim to survive.

*See*, *e.g.*, *BMW Investments*, 144 F. Supp. 3d at 501.  GWIC does not and cannot ***allege that it***

***reasonably relied upon statements an entirely separate insurance company made about vague***

***"comfort" with that company's own investments***.

     **B.**     <u>**Does Not Offend Equity and Good Conscience**</u>:  Contrary to GWIC's argument,

Ability's exercise of its own contractual right to funds does not offend "equity and good

conscience," as is necessary to properly plead an unjust enrichment claim.  In furtherance of its

argument, GWIC merely distorts a vague, non-evidentiary allegation by the Securities and

Exchange Commission from a paragraph that does <u>not</u> even refer to the Ability Defendants.  Opp. at 19.  It then, in **bold letters**, **erroneously** argues that the Ability Defendants failed to cite case law for this proposition.  Opp. at 19.  However, GWIC ignores the *Shilkoff, Inc*, citation: **"plaintiff's [unjust enrichment] cause of action was properly dismissed because it was not unjust for [defendant] to retain funds obtained pursuant to its clear contractual right."** *Shilkoff Inc. v. 885 Third Ave. Corp.*, 299 A.D.2d 253, 253–54 (1st Dep't 2002) (emphasis added). Likewise, *BMW Investments* holds that the proper exercise of contractual rights does not offend "equity and good conscience."  144 F.Supp.3d at 502.  **Indeed, it is GWIC that cites no case that a party exercising its contractual or statutory rights is found to offend equity and good conscience**.

### III.    COUNT TWELVE: CONVERSION

Ability withdrew its own money pursuant to the Ability Coinsurance Agreement, thereby receiving funds to which it was entitled both under contract and Nebraska statute.  Moving Br. at 21.   GWIC simply posits in a conclusory fashion that "Ability inappropriately withdrew Great Western's Money. . ."  Opp. at 20.  But except for its conclusory assertion, GWIC nowhere addresses the fact that Ability withdrew funds that it itself deposited and no more.  It cannot be that Ability converted its own funds.[6]

Ability's statutory and contractual rights to funds clearly distinguish this case from those GWIC cites where alleged converters lacked an independent or superior right to the property (*Newbro v. Freed*, 409 F. Supp. 2d 386, 394, 397 (S.D.N.Y. 2006) (converter did not "claim any **independent** right to the money") (emphasis added); *Galasso, Langione, & Botter, LLP v. Galasso*, No. 010038-07, 2016 WL 5108641 a *39 (N.Y. Sup. Ct. Nassau Cnty. 2016) (Baron

---

[6] Despite GWIC's attempt to escape its unsatisfied demand requirement (Opp. at 22), **all** the conversion cases it cites involved a pre-litigation demand.

plaintiffs entitled to judgment as matter of law on conversion claim where it was "undisputed that the Barons had ownership and a **superior** right of possession to the escrow funds placed in the Baron escrow account. . .") (emphasis added)).

Even GWIC's Opp. acknowledges that the *Oxon* defendant was found not liable because of the *Oxon* defendant's contract, which provided the defendant legitimate possession of the funds in question. *Oxon Italia, S.p.A. v. Farmland Indus., Inc.*, 546 F. Supp. 681, 688-89 (S.D.N.Y. 1982). GWIC is unable to avoid the fact that Ability had a contract with Alpha Re entirely separate from anything to do with GWIC (like the *Oxon* defendant), which gave Ability the right to withdraw funds it originally provided to Alpha Re. Just like the *Oxon* defendant, Ability cannot be found liable for conversion for merely exercising its uncontroverted contractual rights.

GWIC's other citations likewise provide no additional support for its claim. *See Petrone v. Davidoff Hutcher & Citron, LLP*, 150 A.D.3d 776, 776, 54 N.Y.S.3d 25, 26 (2d Dep't 2017) (whereas here, Ability only withdrew its own funds, defendant held plaintiff's funds "merely [as] an escrow agent and/or custodian" at time of conversion) (citations omitted); *Simpson & Simpson, PLLC v. Lippes Mathias Wexler Friedman LLP*, 130 A.D.3d 1543, 1545 (4th Dep't 2015) (unlike here, "given unique facts of … case", conversion claim could proceed against recipient of funds, which was wrongdoer's former employer, and former employee/employer relationship distinct from situation in SAC created "circumstances…requiring defendants to investigate" the converting transaction).

## CONCLUSION

The SAC is GWIC's **third** complaint, which substantively altered allegations specifically as related to the Ability Defendants by adding two new counts, three new defendants, and ten new paragraphs. Contrary to its claim that this pleading is the "first" (Opp. at 23) of anything, GWIC should not be allowed to replead yet again.

10

Dated: New York, New York
      April 2, 2019

                                GREENBERG TRAURIG, LLP

                                By: */s/ Hal S. Shaftel*
                                     Hal S. Shaftel
                                200 Park Avenue
                                New York, NY 10166
                                Tel: (212) 801-9200

                                *Attorneys for Ability Insurance Company,*
                                *Advantage Capital Holding LLC, Dan*
                                *Cathcart, and Kenneth King*

11