UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

GREAT WESTERN INSURANCE COMPANY

                    Plaintiff,

vs.

MARK GRAHAM, ET AL.,

                    Defendants.

Case No. 18-cv-06249-VSB

# MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT GREGORY TOLARAM'S MOTION TO DISMISS THE SECOND AMENDED COMPLAINT

LAW OFFICE OF ANDY S. OH, PLLC
95-09 69th Avenue
Forest Hills, NY 11375
Phone: (718) 813-5025
Email: andyohlegal@outlook.com

*Attorney for Defendant Gregory Tolaram*

# **TABLE OF CONTENTS**

Page

PRELIMINARY STATEMENT ........................................................................................ 1

THE RELEVANT ALLEGATIONS OF THE COMPLAINT.......................................... 2

LEGAL ARGUMENT........................................................................................................ 4

    POINT I:    THE COURT DOES NOT HAVE PERSONAL JURISDICTION
                    OVER DEFENDANT GREGORY TOLARAM................................................ 4

              A.    THE LEGAL FRAMEWORK................................................................ 4

              B.    THE SECOND AMENDED COMPLAINT DOES NOT
                    SATISFY THE REQUIREMENTS OF THE NEW YORK
                    JURISDICTIONAL STATUTE ......................................................... 5

                    1.  Mr. Tolaram Is Not Subject to "General" Jurisdiction .................... 5

                    2.  Mr. Tolaram Is Not Subject to "Specific" Jurisdiction.................... 6

                          a.  Mr. Tolaram Did Not "Transact Business" in
                               New York................................................................................ 6

                          b.  Mr. Tolaram Committed No Tort Which Might
                               Subject Him to Jurisdiction............................................... 10

              C.    JURISDICTION WOULD NOT COMPORT
                    WITH DUE PROCESS ...................................................................... 12

    POINT II:   THE CLAIMS AGAINST MR. TOLARAM
                    ARE NOT SUFFICIENTLY PLED................................................................. 13

CONCLUSION................................................................................................................. 14

# TABLE OF AUTHORITIES

**Cases**

Page(s)

*Alki Partners, L.P. v. Vatas Holdings GmbH*,
    769 F. Supp. 2d 478 (S.D.N.Y. 2011) .............................................................................. 4

*Ashcroft v. Iqbal*,
    556 U.S. 662 (2009) ........................................................................................................ 13

*In re AstraZeneca Sec. Litig.*,
    559 F. Supp. 2d 453 (S.D.N.Y. 2008) ................................................................... 4, 7, 10

*Ball v. Metallurgie Hoboken-Overpelt, S.A.*,
    902 F.2d 194 (2d Cir. 1990).............................................................................................. 4

*Bank Brussels Lambert v. Fiddler Gonzalez & Rodriguez*,
    305 F.3d 120 (2d Cir. 2002).............................................................................................. 5

*Benson & Assocs., Inc. v. Orthopedic Network of New Jersey*,
    No. 98 CIV. 1020 (LMM), 1998 WL 388531 (S.D.N.Y. July 13, 1998) ......................... 8

*Cantor Fitzgerald, L.P, v. Peaslee*,
    88 F.3d 152 (2d Cir. 1996)............................................................................................. 10

*Charas v. Sand Tech. Sys. Int'l, Inc.*,
    No. 90 Civ. 5638 (JFK), 1992 WL 296406 (S.D.N.Y. Oct. 7, 1992) .............................. 7

*Commc'ns Partners Worldwide, Inc. v. Main St. Res.*,
    No. 04 Civ. 10003(PKL), 2005 WL 1765712 (S.D.N.Y. July 26, 2005) ......................... 9

*Cooper, Robertson & Partners, LLP v. Vail*,
    143 F. Supp. 2d 367 (S.D.N.Y. 2001) ............................................................................. 9

*DLJ Mortg. Capital, Inc. v. Kontogiannis*,
    594 F. Supp. 2d 308 (E.D.N.Y. 2009) .......................................................................... 13

*Elcan Indus., Inc. v. Cuccolini, S.R.L.*,
    No. 13CV4058(GBD)(DF), 2014 WL 1173343 (S.D.N.Y. Mar. 21, 2014)................... 11

*Fischbarg v. Doucet*,
    9 N.Y.3d 375 (2007) ........................................................................................................ 7

*Frontera Resources Azerbaijan Corp. v. State Oil Co. of Azerbaijan Rep.*,
    582 F.3d 393 (2d Cir. 2009)............................................................................................. 5

*Giuliano v. Barch*,
 No. CV 0859 (NSR), 2017 WL 1234042 (S.D.N.Y. Mar. 31, 2017) ............................ 11

*Hoffritz for Cutlery, Inc. v. Amajac, Ltd.*,
 763 F.2d 55 (2d Cir. 1985) ............................................................................................ 6

*International Shoe Co. v. Washington*,
 326 U.S. 310 (1945) .................................................................................................... 12

*Jackson Nat. Life Ins. Co. v. Ligator*,
 949 F. Supp. 200, 208 (S.D.N.Y. 1996) ...................................................................... 13

*Jazini v. Nissan Motor Co., Ltd.*,
 148 F.3d 181 (2d Cir. 1998) .......................................................................................... 4

*Jonas v. Estate of Leven*,
 116 F. Supp. 3d 314 (S.D.N.Y. 2015) ..................................................................... 8, 11

*Licci v. Lebanese Canadian Bank, SAL*,
 673 F.3d 50 (2d Cir. 2012) ............................................................................................ 4

*Kahn Lucas Lancaster, Inc. v. Lark Int'l Ltd.*,
 956 F. Supp. 1131 (S.D.N.Y. 1997) .............................................................................. 9

*Kinetic Instruments, Inc. v. Lares*,
 802 F. Supp. 976 (S.D.N.Y. 1992) ................................................................................ 4

*Kreutter v. McFadden Oil Corp.*,
 71 N.Y.2d 460 (1988) .................................................................................................... 4

*Laufer v. Ostrow*,
 55 N.Y.2d 305 (1982) .................................................................................................... 6

*Metropolitan Life Ins. Co. v. Robertson-Ceco Corp.*,
 84 F.3d 560 (2d Cir. 1996) ............................................................................................ 4

*Mills v. Polar Molecular Corp.*,
 12 F.3d 1170 (2d Cir. 1993) ........................................................................................ 13

*Moreno v. Rowe*,
 910 F.2d 1043 (2d Cir. 1990) ........................................................................................ 5

*PaineWebber Inc. v. WHV, Inc.*,
 No. 95 CIV. 0052 (LMM), 1995 WL 296398 (S.D.N.Y. May 16, 1995) ................ 9, 10

*Patane v. Clark*,
 508 F.3d 106 (2d Cir. 2007) .......................................................................................... 4

*Paterno v. Laser Spine Inst.*,
    24 N.Y.3d 370 (2014) .................................................................................................. 7

*Pilates, Inc. v. Pilates Institute, Inc.*,
    891 F. Supp. 175 (S.D.N.Y. 1995) ............................................................................... 2

*Pramer S.C.A. v. Abaplus Int'l Corp.*,
    76 A.D.3d 89 (1st Dep't 2010) ................................................................................... 11

*S.E.C. v. Sharef*,
    924 F. Supp. 539 (S.D.N.Y. 2013) ............................................................................... 7

*In re Terrorist Attacks on September 11, 2001*,
    349 F. Supp. 2d 765 (S.D.N.Y. 2005) .......................................................................... 4

*In re Terrorist Attacks on September 11, 2001*,
    718 F. Supp. 2d 456 (S.D.N.Y. 2010) .......................................................................... 7

*Upstate Networks, Inc. v. Early*,
    No. 6:11-CV-01154 LEK, 2012 WL 3643843 (N.D.N.Y. Aug. 23, 2012) ................... 9

*V Cars, LLC v. Israel Corp.*,
    902 F. Supp. 2d 349 (S.D.N.Y. 2012) ..................................................................... 9, 11

*Walden v. Fiore*,
    571 U.S. 277 (2014) ................................................................................................... 12

**Statutes**

NY CPLR § 301 ....................................................................................................................... 5

NY CPLR § 302 .................................................................................................................... 5, 6

NY CPLR § 302(a) ................................................................................................................. 12

NY CPLR § 302(a)(1) ................................................................................................. 6, 7, 9, 10

NY CPLR § 302(a)(2) ....................................................................................................... 10, 11

NY CPLR § 302(a)(3) ............................................................................................................ 10

FRCP 9(b) .............................................................................................................. 1, 11, 13, 14

FRCP 12(b)(2) ............................................................................................................... 1, 5, 14

FRCP 12(b)(6) ..................................................................................................................... 1, 14

Defendant Gregory Tolaram respectfully submits this memorandum in support of his motion to dismiss the Second Amended Complaint filed by Plaintiff Great Western Insurance Company, pursuant to Federal Rules of Civil Procedure ("FRCP") 9(b), 12(b)(2) and 12(b)(6).

**PRELIMINARY STATEMENT**

At all relevant times, Mr. Tolaram was a director of defendant Alpha Re Ltd. (a Cayman entity). He lives in Bermuda and is a non-domiciliary of the United States. There is no personal jurisdiction over him, since the only potentially relevant business contact with the forum state (New York) was a meeting he attended there in November 2017, about which the operative pleading contains no factual specifics. This silence is in contrast to Mr. Tolaram's sworn averments about the purpose of that meeting – to assist Plaintiff Great Western Insurance Company in addressing an issue raised by its regulator. As discussed in detail below, the governing case law firmly demonstrates that such minimal contacts are insufficient to confer jurisdiction over a non-forum resident under the governing long-arm statute.

The substance of the claims against Mr. Tolaram are also deficient. He has been sued on an inchoate theory of "fraud", without one factual allegation as to what he said and to whom and/or when he said it and where, let alone any specifics about why whatever he said was intended to defraud or was material. This defect is fatal because Plaintiff has failed to provide ***any*** of these facts, despite taking advantage of ***two*** chances to amend its pleading. Plaintiff's pleading also suffers from a severe *Iqbal* problem: its kitchen-sink complaint hurls a mishmash of vague, conclusory allegations at Mr. Tolaram and other individual directors who have been dismissed, in the hopes that some dirt will stick on this entirely blameless party. As the Supreme Court of the United States has repeatedly admonished, that's not how federal pleadings ought to be drafted. Every defendant in a civil action is entitled to ***fair notice*** of the specific factual allegations against which he/she/it must defend. A group pleading that lumps a bunch of

1

defendants together on the hopes that the fact-finder will tag a particular defendant via "guilt by association" is not only inequitable, it is legally invalid, and the claims against Mr. Tolaram should be dismissed on that independent basis in the event that the Court finds that it can assert jurisdiction over him.

### THE RELEVANT ALLEGATIONS OF THE COMPLAINT

Gregory Tolaram is, at most, a passing figure in the Second Amended Complaint ("SAC"). Plaintiff expressly admits that he is a non-citizen of the United States and instead resides in Bermuda. SAC ¶ 29. There is no claim in the SAC of "general" jurisdiction over Mr. Tolaram. Thus, there are no allegations he resides in New York, owns, uses or possesses real property in New York, has bank accounts or other property interests in New York, regularly transacts business in New York, or has any other substantial, ongoing contacts with New York.

The SAC addresses personal jurisdiction over Mr. Tolaram in ¶ 56, which, in an attempt to invoke New York's long-arm statute, alleges as follows:

> The Court has personal jurisdiction over Tolaram because he transacted business and committed overt acts that are the basis of the claims herein in New York. Tolaram attended multiple meetings with Great Western in New York, including, but not limited to, meetings on or about November 16, 2017. In addition, through Tolaram's ownership of Alpha, the Court has personal jurisdiction over Alpha under Article XI of the Coinsurance Agreement, as applied to Alpha through the Novation Agreement, which states that Alpha will submit to the jurisdiction of any court of competent jurisdiction within the United States and will comply with all requirements necessary to give such court jurisdiction. At Tolaram's direction, Alpha transacted business, maintained substantial contacts, and/or committed overt acts that are the basis of the claims herein in New York.

As he is permitted on a jurisdictional motion, Mr. Tolaram submits a sworn Declaration ("Tolaram Decl.") that addresses these broad-brush, conclusory allegations, many of which are simply not true.[1] Mr. Tolaram's sworn testimony is as follows:

---

[1] On a motion to dismiss for lack of personal jurisdiction, the Court may consider factual affidavits submitted by the parties. *Pilates, Inc. v. Pilates Institute, Inc.*, 891 F. Supp. 175, 178 n.2 (S.D.N.Y. 1995) ("is well-settled that in considering jurisdictional motions, the Court may consider evidence outside of the pleadings").

(1) He was only ever a director of Alpha Re Ltd. ("Alpha Re") and was never an owner of that company. Tolaram Decl. ¶ 2. Incredibly, Great Western pleads that Mr. Tolaram was *not* an owner, alleging in other parts of the SAC that "Solow and Graham own 100% of the common shares of Alpha." SAC ¶ 193.

(2) He attended only one relevant meeting in New York (*i.e.*, the one that took place in November 2017), not "multiple" meetings. Tolaram Decl. ¶ 15.

(3) The purpose of the November 2017 was to assist Plaintiff in addressing an issue raised by Great Western's insurance regulator, not to cover up a fraud or harm Great Western. Tolaram Decl. ¶¶ 9-14.

(4) He did *not* "direct" Alpha Re to do any of the following: (a) transact business in New York, (b) maintain substantial contacts in New York, or (3) commit tortious acts in New York. Tolaram Decl. ¶16. Notably, these three items are pled in an entirely conclusory manner, with no specifics provided in the SAC. Thus, Mr. Tolaram can only provide the most general of denials with respect to them.

Plaintiff attempts to paint Mr. Tolaram with a broad brush that portrays him as a primary actor in the allegedly fraudulent scheme that victimized Great Western, but the so-called factual averments are nothing but improper group pleading allegations that rely on the age-old tactic of guilt-by-association. A perfect example is SAC ¶ 80: "From 2012 through 2016, all representations by Defendants Alpha, Graham, BAAM, Solow, Tolaram, and WSFS to Great Western were that the collateral backing the Repurchase Agreement were properly valued and appropriate; specifically, cash and United States Treasury securities." Another instance is SAC ¶ 149, which alleges: "From September through November 2017, Alpha, Graham, Solow, and Tolaram all represented on multiple occasions to Great Western that [the] promissory note provided sufficient backing of the Repurchase Agreement because the note was genuine and would fully fund the Great Western Trust Account…."

The lack of specifics is telling: (1) there is no delineation as to who said what and to whom, (2) there is no identification of the actual words supposedly uttered, (3) there is no time frame or location provided, nor is there any context provided to determine those parameters, and (4) there are no specifics to suggest there was an intent to defraud. The rest of the factual

allegations against Mr. Tolaram in the SAC boil down to summary conclusions that he knew of alleged malfeasance by others, and then failed to disclose or correct such alleged errors. *See* SAC ¶¶ 79, 91, 92, 102, 122, 135, 173, 175, 176, 219.

## LEGAL ARGUMENT

### POINT I
### THE COURT DOES NOT HAVE PERSONAL JURISDICTION OVER DEFENDANT GREGORY TOLARAM

**A.     THE LEGAL FRAMEWORK**

A plaintiff bears the burden of establishing that the Court has jurisdiction over any particular defendant. *Metropolitan Life Ins. Co. v. Robertson-Ceco Corp.*, 84 F.3d 560, 566-67 (2d Cir. 1996). Plaintiff's averments of jurisdictional facts must make a *prima facie* showing of jurisdiction. *Ball v. Metallurgie Hoboken-Overpelt, S.A.*, 902 F.2d 194, 197 (2d Cir. 1990).

To meet this burden, plaintiff must allege specific facts supporting personal jurisdiction; it may not rely upon conclusory allegations or legal conclusions masquerading as facts. *Jazini v. Nissan Motor Co., Ltd.*, 148 F.3d 181, 184-85 (2d Cir. 1998); *Alki Partners, L.P. v. Vatas Holdings GmbH*, 769 F. Supp. 2d 478, 487 (S.D.N.Y. 2011); *In re Terrorist Attacks on September 11, 2001*, 349 F. Supp. 2d 765, 804 (S.D.N.Y. 2005); *In re AstraZeneca Sec. Litig.*, 559 F. Supp. 2d 453, 467 (S.D.N.Y. 2008).

In determining the issue of personal jurisdiction, courts "will not draw 'argumentative inferences' in the plaintiff's favor" and need not "accept as true a legal conclusion couched as a factual allegation." *Licci v. Lebanese Canadian Bank, SAL*, 673 F.3d 50, 59 (2d Cir. 2012); *Jazini*, 148 F.3d at 185. Moreover, a defendant's contacts with the forum must be assessed independently of allegations of liability. *Kinetic Instruments, Inc. v. Lares*, 802 F. Supp. 976, 988 (S.D.N.Y. 1992); *Kreutter v. McFadden Oil Corp.*, 71 N.Y.2d 460, 470 (1988) ("Liability may be considered only after it is decided … that the defendant is subject to … jurisdiction.").

Where a defendant resides outside the forum state, a federal court applies the forum state's personal jurisdiction rules. *E.g.*, *Moreno v. Rowe*, 910 F.2d 1043, 1046 (2d Cir. 1990). Accordingly, a federal court sitting in New York may exercise personal jurisdiction over an out-of-state defendant only if "New York law would confer upon its courts the jurisdiction to reach the defendant" *and* "if there is a statutory basis for jurisdiction, the court must then determine whether New York's extension of jurisdiction in such a case would be permissible under the Due Process Clause of the Fourteenth Amendment." *Bank Brussels Lambert v. Fiddler Gonzalez & Rodriguez*, 305 F.3d 120, 124 (2d Cir. 2002). *See also Frontera Resources Azerbaijan Corp. v. State Oil Co. of Azerbaijan Rep.*, 582 F.3d 393, 396 (2d Cir. 2009) ("A court must have a statutory basis for asserting jurisdiction over a defendant, … and the Due Process Clause typically also demands that the defendant, if not present within the territory of the forum, have certain minimum contacts with it such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice.").

Thus, the Second Amended Complaint must contain specific factual allegations that are sufficient to create either "general" or "specific" jurisdiction, pursuant to either § 301 or § 302 of New York's Civil Practice Law and Rules ("CPLR"). As set forth below, the SAC satisfies neither, and therefore must be dismissed as to Mr. Tolaram pursuant to Fed. R. Civ. P. 12(b)(2).

**B.    THE SECOND AMENDED COMPLAINT DOES NOT SATISFY THE REQUIREMENTS OF THE NEW YORK JURISDICTIONAL STATUTE**

   **1.    <u>Mr. Tolaram Is Not Subject to "General" Jurisdiction</u>**

Under CPLR § 301, New York courts will exercise "general" jurisdiction over a nondomiciliary defendant, where that defendant is engaged in such a continuous and systematic course of "doing business" in the state to warrant a finding of his "presence" in this jurisdiction. The test is whether the defendant may be said to be "present" in the State "not occasionally or casually, but with a fair measure of permanence and continuity," making it reasonable and just

according to "traditional notions of fair play and substantial justice" that the defendant be required to defend the action here. *Laufer v. Ostrow*, 55 N.Y.2d 305, 309-10 (1982).

In evaluating whether a defendant is "doing business" in New York, courts look to a nonexclusive list of factors, including: (1) the existence of an office in New York; (2) the solicitation of business in the state; (3) the presence of bank accounts and other property in the state; and (4) the presence of employees of the foreign defendant in the state. *Hoffritz for Cutlery, Inc. v. Amajac, Ltd.*, 763 F.2d 55, 58 (2d Cir. 1985).

Here, the SAC does not make any allegations to support general jurisdiction over the Mr. Tolaram. Nor would any amendment cure this defect, since he does not solicit business in New York; he does not own, use or possess real property here; he does not have an office or employ worker here; he does not have a bank account here; and he does not travel to New York on business. *See* Tolaram Decl. ¶¶ 6-8. Thus, granting leave to amend yet again – for a third time – would be futile. *E.g.*, *Patane v. Clark*, 508 F.3d 106, 113 n.6 (2d Cir. 2007) ("A district court may properly deny a motion to amend when it finds that amendment would be futile.").

### 2. Mr. Tolaram Is Not Subject to "Specific" Jurisdiction

CPLR § 302 is New York's "long-arm" statute, which can, if certain strict requirements are met, confer jurisdiction over an out-of-state defendant for the purposes of a specific litigation. The SAC does not enumerate which sections of CPLR § 302, if any, plaintiff relies upon. It does not matter, because none apply.

#### (a) Mr. Tolaram Did Not "Transact Business" in New York

The first theoretically possible basis for personal jurisdiction pursuant would be if Mr. Tolaram "transact[ed] business" in New York in connection with the claims in the SAC, thus subjecting him to jurisdiction under CPLR § 302(a)(1). However, the SAC fails to offer factual allegations to make out a *prima facie* case under this section of New York's long-arm statute.

6

The test for jurisdiction under this provision is as follows: "Whether a non-domiciliary is transacting business within the meaning of CPLR 302(a)(1) is a fact-based determination, and requires a finding that the non-domiciliary's activities were purposeful and established 'a substantial relationship between the transaction and the claim asserted'." *Paterno v. Laser Spine Inst.*, 24 N.Y.3d 370, 376 (2014). "Purposeful activities are volitional acts by which the non-domiciliary 'avails itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws'." *Id*. (quoting *Fischbarg v. Doucet*, 9 N.Y.3d 375, 380 (2007)). "More than limited contacts are required for purposeful activities sufficient to establish that the non-domiciliary transacted business in New York." *Paterno*, 24 N.Y.3d at 376.

The only allegations in the SAC against Mr. Tolaram relate to his role as a member of the Board of Directors of Alpha Re Ltd. The gist of those allegations is that Mr. Tolaram, along with the two other directors for Alpha Re – John Drake and Brendan Lynch, both of whom have been dismissed from this case – failed to act or failed to disclose information. Mr. Tolaram is also alleged to have attended a meeting in November 2017 that took place in New York, but the SAC says nothing about that meeting, other than the fact that it took place.

As a matter of law, the mere fact that Mr. Tolaram was a member of the Board of Directors of Alpha Re Ltd. is inconsequential to the jurisdictional analysis, since "a person's status as a board member is not alone sufficient to establish jurisdiction." *In re AstraZeneca Sec. Litig.*, 559 F. Supp. 2d at 467. Instead, "jurisdiction over the individual officers and directors must be based on their individual contacts with the forum state." *S.E.C. v. Sharef*, 924 F. Supp. 539, 545 n.52 (S.D.N.Y. 2013); *Charas v. Sand Tech. Sys. Int'l, Inc.*, No. 90 Civ. 5638 (JFK), 1992 WL 296406, at *4 (S.D.N.Y. Oct. 7, 1992). *See also In re Terrorist Attacks on September 11, 2001*, 718 F. Supp. 2d 456, at 470-71 (S.D.N.Y. 2010) ("Jurisdiction over a corporation's board member, officer or employee, in his or her individual capacity, must be premised on the

7

defendant's own personal contacts with the forum, and not the acts and/or contacts carried out by the defendant in his or her corporate capacity.").

Here, the only specific act attributed to Mr. Tolaram in the SAC is the allegation that he attended a meeting in New York on November 16, 2017. However, the SAC offers no facts about this meeting. There is not one word about what was said or done at this meeting. Nothing is alleged about the purpose for the meeting. The SAC is silent about Mr. Tolaram's role at the meeting; it does not even indicate if he had any. Worse still, there is an utter failure to connect the November 2017 meeting to the claims in this case: not one word about how, if at all, that meeting was a part of, or advanced, the allegedly fraudulent scheme. In short, there is nothing remotely approaching the requirement that a complaint allege purposeful activity evidencing a substantial relationship between a business transaction by Mr. Tolaram in New York and the claims asserted in the complaint. *E.g.*, *Jonas v. Estate of Leven*, 116 F. Supp. 3d 314, 325-28 (S.D.N.Y. 2015).

In contrast to the silence in the SAC about the November 2017 meeting, Mr. Tolaram's Declaration puts forth specific facts about how that meeting came about, what transpired at that meeting, and what his role was. Of particular importance, he explains the purpose for the meeting, which was to assist Great Western in addressing an issue raised by a regulatory body. *See* Tolaram Decl. ¶¶ 9-14. Under these circumstances, the meeting in New York should be disregarded for purposes of a long-arm jurisdictional analysis. As this Court has observed, "[c]ourts have been justifiably skeptical of attempts to assert personal jurisdiction over a defendant based on a single meeting in New York, especially where that meeting did not play a significant role in establishing or substantially furthering the relationship of the parties." *Posven, C.A. v. Liberty Mut. Ins. Co.*, 303 F. Supp. 2d 391, 398 (S.D.N.Y. 2004). *See also Benson & Assocs., Inc. v. Orthopedic Network of New Jersey*, No. 98 CIV. 1020 (LMM), 1998 WL

8

388531, at *4 (S.D.N.Y. July 13, 1998) ("meetings in the forum state that are exploratory, unproductive, or insubstantial are insufficient to establish requisite contacts with the state"); *PaineWebber Inc. v. WHV, Inc.*, No. 95 CIV. 0052 (LMM), 1995 WL 296398, at *3 (S.D.N.Y. May 16, 1995) (same).

Accordingly, where an alleged New York meeting was not a significant part of the relevant events, New York federal courts have had no hesitation in dismissing defendants due to lack of personal jurisdiction. *See V Cars, LLC v. Israel Corp.*, 902 F. Supp. 2d 349, 361 (S.D.N.Y. 2012) (Israeli investor did not "transact business" in New York within meaning of long-arm statute in action for misrepresentation, misappropriation of trade secrets and unfair competition, where investor's exploratory meetings and communications with importer in New York never resulted in a contract, and investor did not solicit business in New York); *Upstate Networks, Inc. v. Early*, No. 6:11-CV-01154 LEK, 2012 WL 3643843, at *6 (N.D.N.Y. Aug. 23, 2012) (no long-arm jurisdiction where plaintiffs did not allege that the New York meetings were "essential" to their business relationship and meeting notes indicated that the specific meeting at issue was "a progress report"); *Commc'ns Partners Worldwide, Inc. v. Main St. Res.*, No. 04 Civ. 10003(PKL), 2005 WL 1765712, at *5 (S.D.N.Y. July 26, 2005) (no long-arm jurisdiction based on an initial meeting in New York where plaintiff failed to establish that any of the parties at that meeting intended to purposefully invoke New York State law; rather, it appeared that the meeting was held in New York because plaintiff's office was there and it was selected for the convenience of the parties); *Cooper, Robertson & Partners, LLP v. Vail*, 143 F. Supp. 2d 367, 372 (S.D.N.Y. 2001) ("a single meeting in New York will rarely provide the basis for jurisdiction pursuant to § 302(a)(1), especially when that meeting does not result in the execution of a contract"); *Kahn Lucas Lancaster, Inc. v. Lark Int'l Ltd.*, 956 F. Supp. 1131, 1136 (S.D.N.Y. 1997) ("in order for meetings in New York which are subsequent to the formation of the

contractual relationship to confer jurisdiction, the meetings must be essential to the business relationship or at least substantially advance it"); *Cantor Fitzgerald, L.P, v. Peaslee*, 88 F.3d 152, 156 (2d Cir. 1996) (no long-arm jurisdiction where plaintiff did not allege that meetings over a two-day visit were "essential to the formation or continuance" of any business relationship); *PaineWebber Inc.*, 1995 WL 296398, at *3 ("occasional meetings in the forum state that are exploratory, unproductive or insubstantial are insufficient to establish requisite contacts with the state").

Thus, the SAC fails to set forth facts creating a *prima facie* case that Mr. Tolaram transacted any business in New York relating to the claims at issue. Personal jurisdiction cannot be predicated on CPLR § 302(a)(1).

### (b) Mr. Tolaram Committed No Tort Which Might Subject Him to Jurisdiction

Another theoretical basis for long-arm jurisdiction might be the commission of a tort by Mr. Tolaram, either within New York [CPLR § 302(a)(2)], or outside of New York that caused injury in New York [CPLR § 302(a)(3)]. Neither statutory provision is satisfied.

As an initial matter, the Second Amended Complaint fails to allege actual injury in New York: Great Western is a Utah entity, and, as far as may be gleaned from the complaint, that is the situs of injury. As a result, CPLR § 302(a)(3) cannot confer personal jurisdiction here.

The more basic defect that applies to both § 302(a)(2) and § 302(a)(3), however, is the rule that conclusory allegations that members of a board of directors were involved in the fraud cannot create specific jurisdiction. *In re AstraZeneca Sec. Litig.*, 559 F. Supp. 2d at 467. Here, the SAC contains nothing but conclusions and surmise as to Mr. Tolaram's actual conduct. He is charged with fraud, but no facts are alleged as to (a) what he said, (b) to whom, (c) when he said what he said, (d) where he was and when the listener was when the unidentified "fraudulent" words were uttered, and (e) what the attendant facts and circumstances are that would allow a

reasonable inference that what he said – again, unidentified – was (i) material, (ii) untrue, and (iii) spoken with an intent to deceive. Thus, in regard to the underlying fraud claim against this defendant, there is a rank failure to comply with the specificity requirement imposed by Fed. R. Civ. P. 9(d), which provides that "[i]n alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake."

At bottom, the true nature of plaintiff's complaint is that Alpha Re Ltd. breached its contract. Loose and broad allegations of fraud, linked to unspecified claims that Mr. Tolaram and other members of Alpha Re's board failed to act to prevent such fraud, do not create long-arm jurisdiction, especially absent allegations that the defendants knew their acts would have an impact in New York. *Pramer S.C.A. v. Abaplus Int'l Corp.*, 76 A.D.3d 89, 97 (1st Dep't 2010); *Giuliano v. Barch*, No. CV 0859 (NSR), 2017 WL 1234042, at *11 (S.D.N.Y. Mar. 31, 2017); *Jonas*, 116 F. Supp. 3d at 332-33. *See also Elcan Indus., Inc. v. Cuccolini, S.R.L.,* No. 13CV4058(GBD)(DF), 2014 WL 1173343, at *5 (S.D.N.Y. Mar. 21, 2014) (no jurisdiction under CPLR § 302(a)(2) where only reference to a tortious act in New York was that defendants "engaged in tortious conduct in New York that caused injury to Plaintiff in New York", explaining that "conclusory allegations do not substitute for evidentiary facts").

And, as explained above, Mr. Tolaram's attendance at the November 2017 meeting in New York is not relevant for the purposes of this jurisdictional analysis due to the dearth of factual allegations about that meeting, as compared to Mr. Tolaram's sworn statements that actually explain the facts and circumstances about that meeting. *See*, *e.g.*, *V Cars*, 902 F. Supp. 2d at 365 (although foreign investor allegedly made misrepresentations while meeting with importer in New York, and misappropriated trade secret information disclosed to it at the New York meetings, investor did not commit a tortious act within New York within meaning of long-arm statute because investor did not make any promises or firm commitments to importer during

the meetings, investor did not sign a non-disclosure agreement, and any misappropriation was committed in China, where the trade secret information was allegedly used in connection with newly formed joint venture that investor formed without importer's involvement).

In sum, the Second Amended Complaint satisfies none of the sections of CPLR § 302(a), New York's "long-arm" statute. Accordingly, Mr. Tolaram should be dismissed from this case.

### C. JURISDICTION WOULD NOT COMPORT WITH DUE PROCESS

Even where a defendant has sufficient "minimum contacts" with the forum to support "long-arm" jurisdiction, due process requires that the exercise of jurisdiction must be reasonable and must not offend "traditional notions of fair play and substantial justice." *International Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945).

What the complaint sets forth, at bottom, is an alleged scheme by defendant Mark Graham to move his management of the trust funds into the dark, where no one else had visibility. Accepting these allegations as true for the current purposes, none of the Alpha Re directors had any more control over what Graham was doing with the trust funds than did plaintiff Great Western. The SAC's conclusory allegations that Alpha Re's directors were somehow "aware" of Graham's alleged activities do not satisfy due process. *See, e.g.*, *Walden v. Fiore*, 571 U.S. 277, 288-91 (2014) (awareness that effects of conduct would be felt in Nevada did not create jurisdiction over out-of-state defendant).

Further, Mr. Tolaram's motive for attending the November 2017 meeting in New York – to assist Great Western with an issue raised by its regulator – strongly favor a finding that it would be offensive to traditional notions of fair play and justice to haul this resident of Bermuda, with no involvement in this alleged scheme, into a jurisdiction where he has no business, to answer charges that have nothing to do with him.

# POINT II
# THE CLAIMS AGAINST MR. TOLARAM ARE NOT SUFICIENTLY PLED

Assuming *arguendo* that this Court can properly assert jurisdiction over Mr. Tolaram, there are several other, independent, bases on which to dismiss the claims asserted against him.

First, as explained above, there is a gross failure to comply with the specificity requirements for fraud claims imposed by Rule 9(b), "which requires that fraud be pled with particularity [such that], the complaint must: (1) specify the statements that the plaintiff contends were fraudulent, (2) identify the speaker, (3) state where and when the statements were made, and (4) explain why the statements were fraudulent." *Mills v. Polar Molecular Corp.*, 12 F.3d 1170, 1175 (2d Cir. 1993). *See supra*, pp. 3-4.

Similarly, the rule against group pleading is repeatedly violated, as Mr. Tolaram is lumped in with the two other now-dismissed directors of Alpha Re, who in turn, are all tossed in the same boat with the person who appears to be the main actor in this saga: Mark Graham. *See Mills*, 12 F.3d at 1175 ("Rule 9(b) is not satisfied where the complaint vaguely attributes the alleged fraudulent statements to 'defendants'."); *DLJ Mortg. Capital, Inc. v. Kontogiannis*, 594 F. Supp. 2d 308, 326 (E.D.N.Y. 2009) ("reliance on group pleading against all 'RICO Defendants' fails to satisfy the heightened pleading requirements of Rule 9(b)"); *Jackson Nat. Life Ins. Co. v. Ligator*, 949 F. Supp. 200, 208 (S.D.N.Y. 1996) ("plaintiffs' failure to distinguish among the 'Ligator Defendants' as an egregious example of prohibited group pleading").

More generally, the pleading as against Mr. Tolaram runs afoul of the pleading requirements announced by the Supreme Court in *Ashcroft v. Iqbal*, 556 U.S. 662, 677-78 (2009), which announced that a federal complaint "must plead sufficient factual matter" that amounts to "more than an unadorned, the-defendant-unlawfully-harmed-me accusation." Under *Iqbal*, "a pleading that offers labels and conclusions or a formulaic recitation of the elements of a cause of action will not do, … [n]or does a complaint suffice if it tenders naked assertions

devoid of further factual enhancement." *Id*. at 678. These *Iqbal* pleading defects are fatal to the claims against Mr. Tolaram, considering that Great Western has not cured them in its first two attempts at amending its pleading to survive dismissal.

Finally, we subscribe to certain of the arguments made by other defendants in their previously filed motions to dismiss, as follows:

- Doc. No. 127: Point III of Argument seeking dismissal of Count One (aiding and abetting breach of fiduciary duty claims) (*see* pp. 13-15 of Memorandum of Law dated February 5, 2019);

- Doc. No. 127: Point IV of Argument seeking dismissal of Count Three (fraud claims) (*see* pp. 15-16 of Memorandum of Law dated February 5, 2019);

- Doc. No. 127: Point VI of Argument seeking dismissal of Count Eight (civil conspiracy to commit fraud claim) (*see* pp. 18-19 of Memorandum of Law dated February 5, 2019);

- Doc. No. 127: Point VII of Argument seeking dismissal of Counts Five, Six, and Seven (Civil RICO claims) (*see* pp. 19-28 of Memorandum of Law dated February 5, 2019);

- Doc. No. 127: Point VIII of Argument seeking dismissal of Count Eleven (unjust enrichment claims) (*see* pp. 28-29 of Memorandum of Law dated February 5, 2019);

- Doc. No. 132: Point I of Argument seeking dismissal of Civil RICO claims (*see* pp. 8-14 of Memorandum of Law dated February 5, 2019);

- Doc. No. 132: Point II of Argument seeking dismissal of common law claims for aiding and abetting breach of fiduciary duty, fraud, civil conspiracy to commit fraud, and unjust enrichment (*see* pp. 14-25 of Memorandum of Law dated February 5, 2019).

## CONCLUSION

For the reasons set forth above, defendant Gregory Tolaram respectfully requests that the Court dismiss the Second Amended Complaint as to him pursuant to Fed. R. Civ. P. 9(b), 12(b)(2) and 12(b)(6), without leave to replead.

Dated: Queens, New York
May 17, 2019

Respectfully submitted,

*Andy S. Oh*
_____
LAW OFFICE OF ANDY S. OH, PLLC
Andy S. Oh, Esq.
95-09 69th Avenue
Forest Hills, NY 11375
Phone: (718) 813-5025
Email: andyohlegal@outlook.com

*Attorney for Defendant Gregory Tolaram*