UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| GREAT WESTERN INSURANCE COMPANY<br><br>                              Plaintiff,<br><br>   vs.<br><br>MARK GRAHAM, ET AL.,<br><br>                              Defendants. | Case No. 18-cv-06249-VSB |

# REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF DEFENDANT GREGORY TOLARAM'S MOTION TO DISMISS THE SECOND AMENDED COMPLAINT

LAW OFFICE OF ANDY S. OH, PLLC
95-09 69th Avenue
Forest Hills, NY 11375
Phone: (718) 813-5025
Email: andyohlegal@outlook.com

*Attorney for Defendant Gregory Tolaram*

Defendant Gregory Tolaram respectfully submits this reply memorandum in further support of his motion to dismiss the Second Amended Complaint ("SAC) filed by Plaintiff Great Western Insurance Company, pursuant to Federal Rules of Civil Procedure ("FRCP") 9(b), 12(b)(2) and 12(b)(6).

## PRELIMINARY STATEMENT

Plaintiff's opposition to Mr. Tolaram's motion is long on unsupported conclusions, speculation, and innuendo. It is short on what is necessary to defeat Mr. Tolaram's motion to dismiss: jurisdictional *facts* showing that there is a statutory basis to force this Bermudian citizen to defend a lawsuit in a federal court sitting in New York. As demonstrated in his moving papers, there is no personal jurisdiction over Mr. Tolaram, since the only relevant business contact with the forum state (New York) was a meeting he attended there in November 2017 that was intended to assist Plaintiff in obtaining information about its collateral. Plaintiff says not one word about the governing case law cited in Mr. Tolaram's opening brief that firmly demonstrates that such minimal contacts are insufficient to confer jurisdiction over a non-forum resident under the governing long-arm statute. Nor does Plaintiff address the plainly applicable "fiduciary shield" doctrine, under which long-arm jurisdiction cannot apply solely on the basis of an individual's conduct as a board member. That's exactly what Plaintiff tries to do here.

The lack of substance behind the claims against Mr. Tolaram is further highlighted in Plaintiff's opposition. Mr. Tolaram is sued on a theory of "fraud", but Plaintiff still cannot present a single factual allegation as to what he said and to whom and/or when he said it and where, let alone any specifics about why whatever he supposedly said was intended to defraud or was material. Instead, Plaintiff continues to rely improperly on group pleading, claiming countless times that "Graham and Tolaram" (or "Tolaram and Graham") did or said something

1

illicit.  That's not how things are done in federal court.  *Each* defendant is entitled to notice as to each bad act attributed to him.  Plaintiff's guilt-by-association tactic that fails to differentiate between Mr. Tolaram and Mark Graham is legally insufficient, and Mr. Tolaram should be dismissed from this case on that independent basis.

## POINT I
## THE COURT DOES NOT HAVE PERSONAL JURISDICTION OVER DEFENDANT GREGORY TOLARAM

To meet its burden of establishing that a federal Court has jurisdiction over any particular defendant, the plaintiff must allege *specific facts* supporting personal jurisdiction; it may not rely upon conclusory allegations or legal conclusions masquerading as facts.  *Jazini v. Nissan Motor Co., Ltd.*, 148 F.3d 181, 184-85 (2d Cir. 1998); *Metropolitan Life Ins. Co. v. Robertson-Ceco Corp.*, 84 F.3d 560, 566-67 (2d Cir. 1996).

A federal court sitting in New York may exercise personal jurisdiction over an out-of-state defendant only if "New York law would confer upon its courts the jurisdiction to reach the defendant."  *Bank Brussels Lambert v. Fiddler Gonzalez & Rodriguez*, 305 F.3d 120, 124 (2d Cir. 2002).  Here, the Second Amended Complaint does not contain sufficient factual allegations that are sufficient to create either "general" or "specific" jurisdiction over Mr. Tolaram, pursuant to either § 301 or § 302 of New York's Civil Practice Law and Rules ("CPLR").  As set forth below, Plaintiff's opposition fails to cure that defect, and Mr. Tolaram should therefore be dismissed pursuant to Fed. R. Civ. P. 12(b)(2).

As an initial matter, Plaintiff does not even argue that Mr. Tolaram is subject to general jurisdiction under CPLR § 301.  Thus, Plaintiff concedes that he is not is engaged in such a continuous and systematic course of "doing business" in the state to warrant a finding of his "presence" in this jurisdiction.  *Laufer v. Ostrow*, 55 N.Y.2d 305, 309-10 (1982).

Plaintiff's opposition also fails to show how the strict requirements of New York's "long-arm" statute, CPLR § 302, are met.  Tellingly, Plaintiff makes no argument that there is a basis for long-arm jurisdiction based on the commission of a tort by Mr. Tolaram, either within New York pursuant to CPLR § 302(a)(2), or outside of New York that caused injury in New York pursuant to CPLR § 302(a)(3).  Plaintiff thereby concedes that these provisions cannot apply, in recognition of the plain fact that Mr. Tolaram did not engage in any wrongdoing.

Plaintiff's *sole* asserted basis for jurisdiction is CPLR § 302(1)(a), which could create jurisdiction *if* Mr. Tolaram "transact[ed] business" in New York in connection with the claims in the SAC.  "Whether a non-domiciliary is transacting business within the meaning of CPLR 302(a)(1) … requires a finding that … activities were purposeful and established 'a substantial relationship between the transaction and the claim asserted'." *Paterno v. Laser Spine Inst.*, 24 N.Y.3d 370, 376 (2014).  "Purposeful activities are volitional acts by which the non-domiciliary 'avails itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws'." *Id*.

Here, the jurisdictional facts are as follows as to Mr. Tolaram:

- He attended one meeting in New York in November 2017;
- He facilitated a meeting in New York in December 2016 but did not participate;
- He participated in several phone calls and was copied on emails where one or more of the participants may have been based in New York;
- He was a director of several off-shore funds that were established by defendant Mark Graham, who has an office in New York, and apparently used by Mr. Graham as investment vehicles in his capacity as the investment manager.

At bottom, all of these contacts are merely based on Mr. Tolaram's role as a member of the Board of Directors of Alpha Re.  As a matter of law, however, "a person's status as a board member is not alone sufficient to establish jurisdiction." *In re AstraZeneca Sec. Litig.*, 559 F.

Supp. 2d 453, 467 (S.D.N.Y. 2008). "Jurisdiction over a corporation's board member, officer or employee, in his or her individual capacity, must be premised on the defendant's own personal contacts with the forum, and not the acts and/or contacts carried out by the defendant in his or her corporate capacity." *In re Terrorist Attacks on September 11, 2001*, 718 F. Supp. 2d 456, at 470-71 (S.D.N.Y. 2010); *see also S.E.C. v. Sharef*, 924 F. Supp. 539, 545 n.52 (S.D.N.Y. 2013) ("jurisdiction over the individual officers and directors must be based on their individual contacts with the forum state"); *In re DaimlerChrysler,* 247 F. Supp. 2d 579, 587 (D. De. 2003) ("where a board member's only contact with the forum has been in the scope of his corporate capacity, the individual's contact is insufficient to support the exercise of personal jurisdiction").[1]

Moreover, the only specific ***conduct*** attributed to Mr. Tolaram is the fact that he attended a meeting in New York in November2017.  Notably, the SAC is silent about this meeting except to say it happened.  Nothing is alleged about the purpose for the meeting.  The SAC is silent about Mr. Tolaram's role at the meeting; it does not even indicate if he had any.  And despite having had two chances to amend its pleading and saying nothing substantive about it, Plaintiff still does not claim that the November 2017 meeting in New York was central to the fraud here.

Indeed, Plaintiff's account of that meeting is quite consistent with Mr. Tolaram, who has previously explained that that the meeting was meant to assist Great Western in addressing an issue initially raised by its regulatory body.  *See* Plaintiff's Opposition Brief at 8 ("In November 2017, Tolaram, as Alpha's COO and Director, traveled to New York, New York, to attend an in-person meeting with Great Western to discuss Great Western's missing $135+ million and the possibility of liquidating collateral assets…."); *id*. at 15 ("Great Western's primary purpose for the meeting was to learn any facts it could about the location of its $135+ million in hopes of

---

[1] Notably, none of the cases in Plaintiff's opposition brief deal with long-arm jurisdiction over a non-resident board member.  Thus, they have no relevance to the jurisdictional analysis here.

saving its business and remaining compliant with Utah regulators…. The intent of the November 2017 meeting was to address the apparent loss in question.").

Under these circumstances, the meeting in New York should be disregarded for purposes of a long-arm jurisdictional analysis. "Courts have been justifiably skeptical of attempts to assert personal jurisdiction over a defendant based on a single meeting in New York, especially where that meeting did not play a significant role in establishing or substantially furthering the relationship of the parties." *Posven, C.A. v. Liberty Mut. Ins. Co.*, 303 F. Supp. 2d 391, 398 (S.D.N.Y. 2004). *See also Cantor Fitzgerald, L.P, v. Peaslee*, 88 F.3d 152, 156 (2d Cir. 1996) (no long-arm jurisdiction where plaintiff did not allege that meetings over a two-day visit were "essential to the formation or continuance" of any business relationship); *V Cars, LLC v. Israel Corp.*, 902 F. Supp. 2d 349, 361 (S.D.N.Y. 2012) (Israeli investor did not "transact business" in New York within meaning of long-arm statute in action for misrepresentation, misappropriation of trade secrets and unfair competition, where investor's exploratory meetings and communications with importer in New York never resulted in a contract, and investor did not solicit business in New York); *Upstate Networks, Inc. v. Early*, No. 6:11-CV-01154 LEK, 2012 WL 3643843, at *6 (N.D.N.Y. Aug. 23, 2012) (no long-arm jurisdiction where plaintiffs did not allege that the New York meetings were "essential" to their business relationship and meeting notes indicated that the specific meeting at issue was "a progress report"); *Commc'ns Partners Worldwide, Inc. v. Main St. Res.*, No. 04 CIV.10003(PKL), 2005 WL 1765712, at *5 (S.D.N.Y. July 26, 2005) (no long-arm jurisdiction based on an initial meeting in New York where plaintiff failed to establish that any of the parties at that meeting intended to purposefully invoke New York State law; rather, it appeared that the meeting was held in New York because plaintiff's office was there and it was selected for the convenience of the parties); *Cooper, Robertson &*

*Partners, LLP v. Vail*, 143 F. Supp. 2d 367, 372 (S.D.N.Y. 2001) ("a single meeting in New York will rarely provide the basis for jurisdiction pursuant to § 302(a)(1)"); *Benson & Assocs., Inc. v. Orthopedic Network of New Jersey*, No. 98 CIV. 1020 (LMM), 1998 WL 388531, at *4 (S.D.N.Y. July 13, 1998) ("meetings in the forum state that are exploratory, unproductive, or insubstantial are insufficient to establish requisite contacts with the state").

Plaintiffs' opposition says nothing about these controlling authorities. Instead, Plaintiff focuses obsessively on Mr. Tolaram's status as a board member on Alpha Re and on certain investment funds that Mr. Graham used as investment vehicles. However, as explained above, board membership by itself is insufficient to establish jurisdiction. Moreover, Plaintiff's conclusory allegations of fraud against Mr. Tolaram that lack ***any*** specifics (*see* POINT II, *infra*) should be ignored for purposes of jurisdictional analysis. *See In re AstraZeneca Sec. Litig.*, 559 F. Supp. 2d at 467 ("A person's status as a board member is not alone sufficient to establish jurisdiction, … and such conclusory allegations of participation in the fraud are insufficient.").

In short, there is nothing remotely approaching the requirement that a complaint allege purposeful activity evidencing a substantial relationship between a business transaction by Mr. Tolaram in New York and the claims asserted in the complaint. *E.g.*, *Jonas v. Estate of Leven*, 116 F. Supp. 3d 314, 325-28 (S.D.N.Y. 2015).

Thus, the SAC fails to set forth facts creating a *prima facie* case that Mr. Tolaram transacted any business in New York relating to the claims at issue. Personal jurisdiction cannot be predicated on CPLR § 302(1)(a). Because that statute is the sole basis on which Plaintiff argues jurisdiction, Mr. Tolaram should be dismissed from this case.

# POINT II
## THE CLAIMS AGAINST MR. TOLARAM ARE NOT SUFFICIENTLY PLED

Assuming *arguendo* that this Court can properly assert jurisdiction over Mr. Tolaram, there are several other, independent, bases on which to dismiss the claims asserted against him., none of which are specifically addressed in Plaintiff's opposition.  Instead of directly addressing Mr. Tolaram's arguments about the insufficiency of the allegations pled against him, Plaintiff merely adopts and incorporates by reference several of the arguments it made in opposing the motions to dismiss by other defendants (*see* Opposition Brief at 19-20), none of which have any on the ***specific*** pleading defects raised in Mr. Tolaram's moving papers.  This is another illustration of Plaintiff's improper tactic of attempting to throw Mr. Tolaram in the same boat as the rest of the defendants, hoping that this Court will blindly accept its guilt-by-association approach.  As explained herein, this does not suffice to meet the following aspects of Mr. Tolaram's motion:

First, there is a gross failure to comply with the specificity requirements for fraud claims imposed by Rule 9(b), "which requires that fraud be pled with particularity [such that], the complaint must: (1) specify the statements that the plaintiff contends were fraudulent, (2) identify the speaker, (3) state where and when the statements were made, and (4) explain why the statements were fraudulent."  *Mills v. Polar Molecular Corp.*, 12 F.3d 1170, 1175 (2d Cir. 1993).

Mr. Tolaram is charged with fraud, but no facts are alleged as to (a) what he said, (b) to whom, (c) when he said what he said, (d) where he was and where the listener was when the unidentified "fraudulent" words were uttered, and (e) what the attendant facts and circumstances are that would allow a reasonable inference that what he said – again, unidentified – was (i) material, (ii) untrue, and (iii) spoken with an intent to deceive.  Thus, in regard to the underlying fraud claim against this defendant, there is a rank failure to comply with the specificity

7

requirement imposed by Fed. R. Civ. P. 9(d).  Plaintiff's opposition is silent on this point as to Mr. Tolaram and thereby concedes it.  Indeed, Plaintiff has failed to comply with the federal specificity requirement *four times*:  in three versions of a complaint, and now in its opposition.

Relatedly, Plaintiff continues to violate the rule against group pleading.  Mr. Tolaram is repeatedly lumped in with Mark Graham, and Plaintiff's papers are inundated with claims that "Tolaram and Graham" or "Graham and Tolaram" made certain alleged promises.[2]  This does not suffice.  *See Mills*, 12 F.3d at 1175 ("Rule 9(b) is not satisfied where the complaint vaguely attributes the alleged fraudulent statements to 'defendants'."); *DLJ Mortg. Capital, Inc. v. Kontogiannis*, 594 F. Supp. 2d 308, 326 (E.D.N.Y. 2009) ("reliance on group pleading against all 'RICO Defendants' fails to satisfy the heightened pleading requirements of Rule 9(b)"); *Jackson Nat. Life Ins. Co. v. Ligator*, 949 F. Supp. 200, 208 (S.D.N.Y. 1996) ("plaintiffs' failure to distinguish among the 'Ligator Defendants' as an egregious example of prohibited group pleading").

In short, Plaintiff continues to ignore the requirement that a federal complaint "must plead sufficient factual matter" that amounts to "more than an unadorned, the-defendant-unlawfully-harmed-me accusation."  *Ashcroft v. Iqbal*, 556 U.S. 662, 677-78 (2009).  These pleading defects are fatal to the claims against Mr. Tolaram.  Considering that Plaintiff has not

---

[2]  As an example, Plaintiffs claims in its brief that "Tolaram and Graham continued to make promises regarding liquidation of the assets, but ultimately failed … to fulfill their promises." (Opposition Brief at 8.) As explained in Mr. Tolaram's reply declaration, however, any statements he made in this regard were based on promises that Mr. Graham made to Alpha Re.  Indeed, Plaintiff's own exhibits reveal this to be the case. (*See* Exhibit C to the Declaration of Brian Lindquist [Dkt. No. 184-3]: email from Mr. Lindquist to Mr. Tolaram dated November 28, 2016 stating: "We spoke just over a week ago about Alpha's initial recapture offer.  During that conversation we informed Alpha that ***we believe Mark Graham represented to Alpha and GWIC*** (in one of the phone conversations we have had recently with Alpha and Graham) that the assets held under the Repurchase Agreement were liquid, although it may take 30-60 days to get out of some of the positions.").  Plaintiff's abject failure to differentiate between "Graham and Tolaram" simply glosses over the critical fact that Graham was the one who made the alleged false promises and misrepresentations, ***not*** Mr. Tolaram.

fixed these defects in its first two attempts at amending its pleading, they should be seen as what they are – not curable.

## CONCLUSION

For the reasons set forth above and in his moving papers, defendant Gregory Tolaram respectfully requests that the Court dismiss the Second Amended Complaint as to him pursuant to Fed. R. Civ. P. 9(b), 12(b)(2) and 12(b)(6), without leave to replead.

Dated: Queens, New York
July 24, 2019

LAW OFFICE OF ANDY S. OH, PLLC

_____
Andy S. Oh, Esq.
95-09 69th Avenue
Forest Hills, NY 11375
Ph: (718) 813-5025
Email: andyohlegal@outlook.com

*Attorney for Defendant Gregory Tolaram*

9