**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

```
-------------------------------------------------------:
GREAT WESTERN INSURANCE CO.,           :
                                       :
                Plaintiff,             :
                                       :        Civil action no. 1:18-cv-06249
        v.                             :        VSB-SN
                                       :
MARK GRAHAM, et al.,                   :
                                       :
                Defendants.            :
-------------------------------------------------------:
```

**REPLY DECLARATION OF GREGORY TOLARAM**
**IN SUPPORT OF MOTION TO DISMISS**

GREGORY TOLARAM hereby declares as follows, pursuant to 28 U.S.C. § 1746:

1.      I am over 18 years of age, of sound mind, and otherwise competent to make this declaration.  The facts set forth herein are within my personal knowledge.  I submit this reply declaration in further support of my motion to dismiss the Second Amended Complaint ("SAC") in this action.

2.      In particular, I respond to various allegations made in the opposition papers filed by Plaintiff Great Western Insurance Company ("Great Western").  Plaintiff's characterisation of my role and purported involvement in the allegedly fraudulent scheme perpetrated by others is grossly inaccurate.

3.      In late 2012, I became an employee of Alpha Re Ltd. ("Alpha Re"), a Cayman Islands company that was regulated by the Cayman Islands Monetary Authority ("CIMA").  Alpha Re was a reinsurer of plaintiff Great Western Insurance Company ("Great Western"), pursuant to certain agreements that had already been negotiated and executed prior to my engagement.

4.      As an Alpha Re employee, I held the title of Chief Operating Officer ("COO"), which was an administrative role that was limited to receiving information from counterparties and sending information out.  The COO role involved reporting to the board of directors of Alpha Re and acting on the board's orders.

5.      Prior to my engagement, I made it clear that I did not have any insurance or reinsurance experience.  I was comfortable accepting the limited administrative role of COO for Alpha Re, because the company had a globally recognised insurance manager to handle the operations, finance, administration, and governance of the company, including with respect to reinsurance contracts.

6.      In 2013, I was appointed as one of the directors of Alpha Re.

7.      Contrary to the assertions made in Plaintiff's opposition papers, I was not "the driving force behind all decisions" by Alpha Re.  I did not negotiate the trust agreements at issue, which, as noted above, had been negotiated and finalised even before I became involved with Alpha Re.  I did not originate or negotiate any agreements or documentation for the company, nor did I execute trades on behalf of the company.  I have never executed trades generally, as I do not have the required expertise or experience to do so.  Most importantly, I never handled any of the funds that Plaintiff is seeking to recover, nor did I make any investment decisions relating to those funds.

8.      To be clear, my role as COO for Alpha Re was not a decision-making role in any sense, but consisted of administrative and ministerial tasks.  Nevertheless, Plaintiff has attempted to put me in the same category as Mark Graham, the investment manager who made the investment decisions for Plaintiff through one or more of his investment management entities.  I was never a director of any of those investment entities.

9.      To the contrary, my role consisted primarily of receiving information from the clients of Alpha Re and reporting to the Alpha Re board of directors.  In the case of Great Western, on behalf of the board, I communicated as authorised.  Although I helped to coordinate some phone calls relating to this matter, I was not always a necessary participant.

10.     For instance, I attempted to arrange a meeting in December 2016 so that Plaintiff could obtain the information from the investment manager that it was entitled to.  Tellingly, as admitted in Plaintiff's opposition papers, that meeting took place without my participation.

11.     Then, in November 2017, at the direction of Alpha Re's board, I personally attended one meeting in the New York offices of Alpha Re's lawyers.  I attended the meeting as a representative of Alpha Re, to witness the dialog and discussions between Great Western and Mr. Graham, who had made several unfulfilled promises to provide information on investments and collateral to Great Western as well as Alpha Re.

12.     I took copious notes during the November 2017 meeting.  At my deposition, I was questioned at length about these notes, which made it evident that I was at that meeting to listen and provide assistance to Great Western.  Plaintiff makes no contrary claim in its papers.  The portions of my deposition transcript relating to these notes are attached hereto.

13.     Plaintiff also does not dispute that the November 2017 meeting was for the purposes of gathering information and exploring various avenues by which the investment manager could assist Great Western.

14.     Contrary to Plaintiff's allegations, I attended only one meeting in New York in connection with the subject matter of this litigation.  I did participate in several phone calls in an effort to further Alpha Re's and Plaintiff's efforts to obtain information about investments and

collateral from the investment manager.  Of course, I do not control the location of the teleconference participants.

15.     As confirmed by Plaintiff, the purpose of those phone calls was to obtain information from the investment manager in an effort to assist Plaintiff recoup its investment funds and also for Alpha Re to understand and determine the status of that collateral.  At no time did I make any factual representations during these calls about the status of the collateral.  It would have been impossible for me to do so, since I did not have such knowledge.

16.     Indeed, I became engaged with Brian Lindquist of Great Western precisely in order to uncover this information from Mr. Graham and his investment management entities. My level of communication with Plaintiff increased only after the Alpha Re directors realised that Mr. Graham was being dilatory in providing relevant information to Alpha Re and Plaintiff. At that point, the entire efforts of the directors was to demand that Mr. Graham provide this information to which Alpha Re, and Great Western (Alpha Re's client), were plainly entitled. Thus, Plaintiff's allegation that I failed to fulfill promises about providing information is disingenuous.  As Great Western is fully aware, any promises I made regarding obtaining information were based on promises and representations that Mark Graham made to Alpha Re's directors, which were then conveyed to Great Western.

17.     To be perfectly clear, neither I nor the other directors of Alpha Re (who have been dismissed from this case) were at any point under the control of Mark Graham.  Plaintiff has chosen to group me with Mr. Graham, and repeatedly claims that "Graham and Tolaram" or "Tolaram and Graham" made certain alleged promises or engaged in certain activities.  This is absolutely false, and there is no evidence to support such an accusation.

18.     I never acted in concert with Mr. Graham.  Only he or his investment management firms were responsible for investment decisions.  Although I did serve as a director for certain off-shore funds that were used by Mr. Graham, I had no control over Mr. Graham or his investment management entities, or any of their investment decisions.

19.     Indeed, Plaintiff ignores that under the terms of the relevant agreements that it agreed to, prior to my involvement with Alpha Re, and in line with normal business practice, the investment manager was responsible for decisions in respect of underlying assets.  Clearly the Plaintiff approved of the structure whereby Mr. Graham and his investment management entities were given the responsibility to execute trades.  There is no mention of myself or any other Alpha Re director being given the authorisation to execute trades.  The relevant agreements that vested such responsibility with the investment manager were agreed upon before I was appointed, and it is false to suggest that I was acting in concert with Mr. Graham in any way.

20.     It is incredible to me that I have been sued in this case.  I acted in good faith and at the request of the directors of Alpha Re.  My intent was to assist Great Western in obtaining information from the investment manager with the goal of ultimately recovering its funds.  The allegations against me that Great Western continues to recklessly pursue in public filings are baseless and gratuitously damaging to my reputation.

21.     I declare under penalty of perjury that the foregoing is true and correct.

Dated:  July 24, 2019



_____
GREGORY TOLARAM