UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

GREAT WESTERN INSURANCE COMPANY,

Plaintiff,

v.

MARK GRAHAM, et al.,

Defendants.

18-CV-06249-LTS-SN

MEMORANDUM OPINION AND ORDER[1]

In this action, Plaintiff Great Western Insurance Company ("GWI" or "Plaintiff") brings nine counts of claims against Defendants Mark Graham ("Graham"), Blue Capital Management, Inc., Blue Alternative Asset Management LLC, Blue Elite Fund Ltd., and Blue II Ltd. (collectively, the "Blue Defendants"); Sancus Capital Credit Master Fund f/k/a Sancus Capital Blue Credit Opportunities Fund Ltd. ("Sancus"); Ability Insurance Company ("Ability"); and Advantage Capital Holding, LLC ("ACH") (Ability and ACH, collectively, the "ACH Defendants") (all, collectively, the "Defendants").[2] (See docket entry no. 509 ("Third Amended Complaint" or "TAC").) The Court has subject matter jurisdiction pursuant to 28 U.S.C. sections 1331, 1332, and 1367.

Before the Court are the Blue Defendants' and the ACH Defendants' motions to dismiss the Third Amended Complaint under Federal Rule of Civil Procedure 12(b)(6). (Docket

1 All pincites to materials filed on the docket refer to ECF-designated pages.

2 Plaintiff also brings claims against Cygnet Master Trust Series 2011-C and Cygnet Master Trust Series 2013-A, but those claims are stayed. (See docket entry no. 505, at 34.)

entry nos. 517, 520.) The Court has considered carefully the parties' submissions.[3] (Docket entry nos. 518 ("Defs. Mem."), docket entry no. 526 ("Pl. Opp."), docket entry no. 529 ("Defs. Reply").) For the reasons explained below, the motions to dismiss are denied.

## I. BACKGROUND

The following factual recitation, which is drawn from the Plaintiff's Third Amended Complaint, sets out only those alleged facts that are relevant to the instant motions. The Court's January 6, 2026, decision on the Plaintiff's motion for leave to amend, which drew from the Plaintiff's Proposed Third Amended Complaint, sets out a more comprehensive factual background.[4] (Docket entry no. 505, also available at Great W. Ins. Co. v. Graham, No. 18-CV-06249-LTS-SN, 2026 WL 34966 (S.D.N.Y. Jan. 6, 2026).)

In 2009, Plaintiff entered into a Coinsurance Agreement with Ability Reinsurance (Bermuda) Limited ("Ability Re"). (TAC ¶ 40.) Under the Coinsurance Agreement, Ability Re assumed a 75% quota share participation in certain policies issued by Plaintiff and agreed to establish a trust account for the benefit of Plaintiff in order to secure Ability Re's payment obligations with respect to the policies. (Id. ¶¶ 40-41.) As set forth in the Coinsurance Agreement, and in compliance with Utah's Insurance Code, the parties also agreed that Ability Re was to deposit, and maintain in the trust account, "qualifying assets" with a market value of no less than 102% of Ability Re's share of reserve liabilities. (Id. ¶ 41.) So long as the funds

---

3 The Blue Defendants did not file papers in support of their motion; rather, they joined the papers filed by the ACH Defendants. Sancus did not move to dismiss.

4 That decision granted in part and denied in part Plaintiff's motion. Plaintiff subsequently filed its Third Amended Complaint in accordance with the decision. Interested readers are also referred to the Court's June 22, 2020 decision on Defendants' motions to dismiss the Second Amended Complaint. (Docket entry no. 190, also available at Great W. Ins. Co. v. Graham, No. 18-CV-6249-VSB, 2020 WL 3415026 (S.D.N.Y. June 22, 2020).)

were in "qualifying assets," Plaintiff was entitled to a statutory statement credit, as a deduction from reserve liabilities, for the business it had ceded to Ability Re. (Id.) Ability Re established a trust account with itself as grantor, the entity BNY Mellon as trustee, and Plaintiff as beneficiary, and the three parties entered into a trust agreement. (Id. ¶ 42.) Plaintiff transferred $135 million to Ability Re, which in turn transferred that $135 million, along with additional funds of its own as necessary to meet the 102% threshold, into the trust account. (Id.)

On June 28, 2012, Plaintiff, Ability Re, and Alpha Re Limited ("Alpha") entered into a Novation Agreement, whereby Alpha replaced Ability Re as the reinsurer of Plaintiff under the Coinsurance Agreement. (Id. ¶ 44.) The Coinsurance Agreement, as amended by the Novation Agreement, required Alpha to fund a trust account (the "Trust Account") for the benefit of Plaintiff and to maintain 102% of Alpha's reserve obligations in that Trust Account. (Id. ¶ 46.) On July 11, 2012, Plaintiff, Alpha, and Wilmington Savings Fund Society, FSB ("WSFS") entered into an Amended & Restated Trust Agreement (docket entry no. 509-3 (the "Trust Agreement")) to govern the administration of the Trust Account.[5] (TAC ¶¶ 2, 47.) Shortly thereafter, the old trust account was liquidated, and the proceeds ($153 million) were deposited into the new Trust Account. (Id. ¶ 44.)

Under the Trust Agreement, Alpha was the grantor, WSFS was the trustee, and Plaintiff was the beneficiary. (Id. ¶ 47; see Trust Agreement.) The Trust Agreement provides that "this Agreement is made for the sole use and benefit of the Beneficiary and for the purpose of setting forth the duties and powers of the Trustee with respect to the Trust Account" and that

---

5 In July 2017, WSFS resigned as trustee and was replaced by Wilmington Trust, NA. (Id. ¶ 47 n.1.)

"the Trustee has agreed to act as Trustee hereunder, and to hold such assets in trust in the Trust Account for the sole use and benefit of the Beneficiary." (Trust Agreement at 3.)

The Trust Agreement contains several provisions related to Plaintiff's right to withdraw funds from the Trust Account. First, the Trust Agreement preamble recites that "the Grantor [Alpha] and the Beneficiary [Plaintiff] desire to enter into this [Trust] Agreement pursuant to the regulations of the Utah Insurance Department (Utah Administrative Code, R590-173-9) promulgated by the Utah Insurance Commissioner in order to create a trust account . . . under that regulation." (Trust Agreement at 2-3.) R590-173-9 provides that "[t]rust agreements qualified under section 8"[6] must satisfy certain conditions, including: that the agreement shall provide that "the beneficiary shall have the right to withdraw assets from the trust account at any time, without notice to the grantor, subject only to written notice from the beneficiary to the trustee" and that the agreement shall require the trustee to, "upon written demand of the beneficiary, immediately take any and all steps necessary to transfer absolutely and unequivocally all right, title and interest in the assets held in the trust account to the beneficiary and deliver physical custody of the assets to the beneficiary." Utah Admin. Code R590-173-9(A)(4), 9(A)(6)(e) (eff. to June 6, 2022).

Adhering to the requirements of R590-173-9, the Trust Agreement enumerates certain withdrawal rights belonging to Plaintiff. Section 1(a) provides that "[t]he Trust Account shall be subject to withdrawal by the Beneficiary solely as provided herein." (Trust Agreement § 1(a).) Section 2(a), in turn, provides that:

---

6 R590-173-8 provides that "the Commissioner shall allow a reduction from liability for reinsurance ceded by a domestic insurer to an assuming insurer in an amount not exceeding the liabilities carried by the ceding insurer" if certain conditions, including those in section 9, are satisfied. Utah Admin. Code R590-173-8 (eff. to June 6, 2022).

> Without notice to the Grantor, the Beneficiary shall have the right, at any time and from time to time, to withdraw from the Trust Account, upon written notice to the Trustee in the form annexed as Exhibit C (the "Withdrawal Notice"), such Assets as are specified in the Withdrawal Notice. . . . The Beneficiary need present no statement or document in addition to a Withdrawal Notice in order to withdraw any Assets.

(Id. § 2(a).) Section 2(b) provides that:

> Upon receipt of a Withdrawal Notice, the Trustee shall immediately transfer absolutely and unequivocally all right, title and interest in the Assets specified in such Withdrawal Notice, and shall deliver such Assets to or for the account of the Beneficiary or Designee as specified in such Withdrawal Notice.

(Id. § 2(b).) Section 2(c) provides that: "Subject to paragraph (a) of this Section 2 and to Section 4 of this Agreement,[[7]] in the absence of a Withdrawal Notice, the Trustee shall allow no substitution or withdrawal of any Asset from the Trust Account." (Id. § 2(c).)

Furthermore, Section 3(a) provides that "[t]he Beneficiary [Plaintiff] hereby covenants to the Grantor that it shall use and apply any withdrawn Assets, without diminution because of the insolvency of the Beneficiary or the Grantor, for the following purposes only:" (i) "to pay the Beneficiary for any of Grantor's [Alpha] Obligations under the Reinsurance Agreement"; (ii) to remit the remainder of the assets in the Trust Account to Alpha if Alpha's obligations were satisfied and the trustee resigned or was removed or the Trust Agreement were terminated; (iii) to deposit the assets in a separate trust account if Alpha's obligations were not satisfied and the trustee resigned or was removed or the Trust Agreement was terminated; and (iv) upon recapture, but only if the Plaintiff recaptured all of the remaining reserve amount. (Id. § 3(a).) Recapture was permitted under the Coinsurance Agreement, as amended by the Novation Agreement, if: (a) Alpha and Plaintiff mutually agreed upon recapture; (b) Alpha

[7] Section 4 deals with redemption, investment, and substitution of assets in the Trust Account. (Trust Agreement § 4.)

defaulted in maintaining the required amount of assets in the Trust Account; (c) Alpha became insolvent; (d) or Alpha breached the Coinsurance Agreement so as to cause Plaintiff to lose the statutory statement credit for the ceded business. (Docket entry no. 509-2 ("Novation Agreement") ¶ 11.)

Plaintiff brings nine different claims, all of which appear traceable to Plaintiff's allegations that Defendants improperly dissipated the Trust Account. (See, e.g., TAC ¶¶ 91, 105, 153, 162, 175, 185; docket entry no. 428, at 6 (Plaintiff stating that it "commenced this action after discovering Defendants' collective scheme to defraud Great Western by looting more than $100 million from a trust account held for Great Western's benefit").)

## II. Discussion

Defendants bring their motions to dismiss under Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim upon which relief can be granted, arguing that Plaintiff, as the beneficiary of the Trust Account, lacks standing to bring claims on behalf of the Trust Account.[8] To survive a Rule 12(b)(6) motion to dismiss, a complaint must plead "enough facts to state a claim to relief that is plausible on its face." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007). A proper complaint cannot simply recite legal conclusions or bare elements of a cause of action; there must be factual content pleaded that "allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009). The Court accepts as true the nonconclusory factual allegations in the

---

8 To the extent Defendants' motions are better conceptualized as motions to dismiss under Rule 12(b)(1) for lack of subject matter jurisdiction, "[t]he standards of review under Rules 12(b)(1) and 12(b)(6) are 'substantively identical.'" Hafen v. United States Customs & Border Prot., No. 22-CV-5345-AMD-LGD, 2024 WL 1241996, at *2 (E.D.N.Y. Mar. 22, 2024) (quoting Lerner v. Fleet Bank, N.A., 318 F.3d 113, 128 (2d Cir. 2003)).

complaint and draws all reasonable inferences in Plaintiff's favor. Roth v. Jennings, 489 F.3d 499, 501 (2d Cir. 2007).

A. Whether Plaintiff, as the Beneficiary of the Trust Account, Has Standing to Raise Claims on Behalf of the Trust Account

Generally, a beneficiary of a trust lacks standing to raise claims on behalf of a trust. Certain exceptions exist, however, including when the beneficiary is entitled to possession or immediate distribution of the trust property. That exception applies here because, as shown above, Section 2(a) of the Trust Agreement entitles Plaintiff to unilaterally withdraw funds from the Trust Account. Accordingly, Defendants' motions must be denied.

a. The Standing of a Trust Beneficiary to Raise Derivative Claims on Behalf of a Trust

"The doctrine of standing asks whether a litigant is entitled to have a federal court resolve his grievance. This inquiry involves both constitutional limitations on federal-court jurisdiction and prudential limits on its exercise." United States v. Suarez, 791 F.3d 363, 366 (2d Cir. 2015) (quoting Kowalski v. Tesmer, 543 U.S. 125, 128 (2004)). The Article III (or constitutional) standing inquiry "focuses on whether a litigant [has] sustained a cognizable injury-in-fact," whereas "[t]he 'prudential standing rule . . . bars litigants from asserting the rights or legal interests of others in order to obtain relief from injury to themselves.'" Id. (alterations in original) (quoting Rajamin v. Deutsche Bank Nat. Tr. Co., 757 F.3d 79, 86 (2d Cir. 2014)).

One application of prudential standing is the doctrine of derivative shareholder standing, which "generally prohibits shareholders from initiating actions to enforce the rights of the corporation[.]" Franchise Tax Bd. of Cal. v. Alcan Aluminium Ltd., 493 U.S. 331, 336 (1990) (stating that derivative shareholder standing is "[r]elated to th[e] principle" of prudential standing); see also In re Facebook, Inc., Initial Pub. Offering Derivative Litig., 797 F.3d 148,

156 (2d Cir. 2015) (explaining the relationship between derivative shareholder standing and prudential standing). Because directors manage the affairs of a corporation, including the corporation's litigation assets, a shareholder seeking to bring a claim on behalf of the corporation must satisfy certain conditions.

Likewise, in a trust, the trustee holds the "legal interest" in the trust corpus, and the beneficiary holds an "equitable interest." N. Carolina Dep't of Revenue v. The Kimberley Rice Kaestner 1992 Fam. Tr., 588 U.S. 262, 265 (2019). Accordingly, a trust beneficiary "cannot bring suit on behalf of the Trust except in very limited circumstances." In re Disp. Over Distribution of Assets of Est. of Ash, No. 15-CV-8644-JPO, 2018 WL 2269241, at *5 (S.D.N.Y. May 17, 2018) (emphasis in original); see also Restatement (Third) of Trusts § 107 (A.L.I. 2012); Restatement (Second) of Trusts § 282 (A.L.I. 1959). Rather, "[i]n most cases, a trustee has the exclusive authority to sue third parties who injure the beneficiaries' interest in the trust." Diana Allen Life Ins. Tr. v. BP P.L.C., 333 F. App'x 636, 638 (2d Cir. 2009) (quoting Chauffeurs, Teamsters and Helpers, Local No. 391 v. Terry, 494 U.S. 558, 567 (1990)).

Plaintiff's standing to sue as a trust beneficiary is a "threshold question" that the Court may address sua sponte. United States v. Suarez, 791 F.3d 363, 366-67 (2d Cir. 2015); Keepers, Inc. v. City of Milford, 807 F.3d 24, 39 (2d Cir. 2015).

b. Whether Plaintiff Has Standing Under an Exception to the General Rule

The dispositive issue here is whether there is an applicable exception to the general rule barring a trust beneficiary from raising derivative claims on behalf of a trust. One such exception exists when "the beneficiary is in possession, or entitled to immediate distribution, of the trust property involved." Restatement (Third) of Trusts § 107(2)(a); see also Restatement (Second) of Trusts § 281(2).

Plaintiff contends that it has standing by way of this exception. (Pl. Opp. at 23-24 (citing Restatement (Third) of Trusts § 107(2)(a)).) Plaintiff argues, albeit conclusorily, that the exception applies because Plaintiff is entitled to immediately and unilaterally withdraw assets from the Trust Account under Section 2(a) of the Trust Agreement. Defendants do not thoroughly engage with this argument[9] and, for the following reasons, the Court concludes that this exception applies to confer Plaintiff standing to bring derivative claims on behalf of the Trust Account.

As a preliminary issue, New York courts have not opined on the scope of the exception, which has been articulated in Restatement (Third) of Trusts § 107(2)(a) and Restatement (Second) of Trusts § 281(2), or whether the exception is even recognized under New York law.[10] "In the absence of authoritative law from the state's highest court, we [a federal court] must . . . predict how the New York Court of Appeals would resolve the state law question." DiBella v. Hopkins, 403 F.3d 102, 111 (2d Cir. 2005). The New York Court of Appeals has adopted other provisions of the Restatements, and other New York courts have

---

9 Defendants' sole argument on this point is that Plaintiff's right to recapture "does not matter because GWIC has not actually recaptured the trust." (Defs. Reply at 8.) Defendants' argument is beside the point because the exception applies even if Plaintiff did not exercise its right to recapture, as explained below.

10 The Court has applied New York law because the parties have exclusively cited the law of this state. (See, e.g., Defs. Mem. at 10-14; Pl. Opp. at 22-30; Defs. Reply at 7-9.)

The Trust Agreement, however, has a Delaware choice of law provision. (Trust Agreement § 9 ("All matters concerning the construction and interpretation of this Agreement and performance under this Agreement shall be interpreted and construed according to the laws of the State of Delaware without regard to said state's conflict of laws rules.").) The trust agreement's choice of law provision is strong evidence that Delaware law applies. See Greenspun v. Lindley, 330 N.E.2d 79, 80-81 (N.Y. 1975). The Court, however, is not aware of any material difference between Delaware and New York law, so the result would be unchanged if Delaware law were to apply. See Dolese Bros. Co. v. Brown, 157 A.2d 784, 788 (Del. 1960) (citing Restatement (Second) of Trusts § 282 (1959)).

adopted the provisions of the Restatements that announce the general rule barring trust beneficiaries from bringing derivative suits (albeit these courts have not adopted or addressed the specific exception at issue). See, e.g., Aspro Mech. Contracting, Inc. v. Fleet Bank, N.A., 805 N.E.2d 1037, 1040 (N.Y. 2004) (citing Restatement (Third) of Trusts); In re Heller, 849 N.E.2d 262, 266 (N.Y. 2006) (citing Restatement (Second) of Trusts); Levy v. Carver Fed. Sav. & Loan Ass'n, 239 N.Y.S.2d 384, 385 (App. Div., 1st Dep't 1963) (citing Restatement (Second) of Trusts §§ 281-282, but not specifically referencing § 281(2)). The specific exception at issue has also been adopted by other courts across the country. See, e.g., Higdon v. Lincoln Nat. Ins. Co., No. 13-CV-2152- ELH, 2014 WL 6951290, at *10-11 (D. Md. Dec. 8, 2014) (citing Restatement (Third) of Trusts § 107(2)(a)); In re AME Church Emp. Ret. Fund Litig., No. 22-MD-03035-STA-JAY, 2023 WL 2562784, at *20 (W.D. Tenn. Mar. 17, 2023) (same). Accordingly, the Court sees no reason to doubt the New York Court of Appeals' acceptance of the exception outlined in Restatement (Third) of Trusts § 107(2)(a) and Restatement (Second) of Trusts § 281(2)—that a beneficiary with immediate rights to possession of the corpus has standing to litigate an injury to the trust.

Next, the Court turns to whether Section 2(a) of the Trust Agreement satisfies the exception by entitling Plaintiff to "possession" or "immediate distribution" of the property in the Trust Account. Section 2(a) gives Plaintiff "the right, at any time and from time to time, to withdraw from the Trust Account, upon written notice to the Trustee in the form annexed as Exhibit C (the 'Withdrawal Notice'), such Assets as are specified in the Withdrawal Notice." (Trust Agreement § 2(a).) Plaintiff may exercise this right "[w]ithout notice to the Grantor" and "need present no statement or document in addition to a Withdrawal Notice in order to withdraw any Assets." (Id.) Certainly, had Plaintiff submitted a Withdrawal Notice, Plaintiff would have

been entitled to possession and immediate distribution. See In re AME Church Emp. Ret. Fund Litig., 2023 WL 2562784, at *11, *20 (holding that trust beneficiaries had standing where they were entitled to withdrawals from a retirement fund and had made requests, which were denied). There is no allegation, however, that Plaintiff ever submitted a Withdrawal Notice.

While the Withdrawal Notice requirement might function as a condition precedent to Plaintiff's right to withdraw from the Trust Account, that condition does not preclude treatment of Plaintiff as entitled to possession or immediate distribution because Plaintiff has the sole right to submit a Withdrawal Notice and, accordingly, no other party has the right to make a preemptive withdrawal from the Trust Account. Cf. Higdon, 2014 WL 6951290, at *11 (holding trust beneficiaries lacked standing where their "interests are contingent on the fulfillment of certain conditions precedent related to [a third party's] Trust interest" and where "[the third party] has neither claimed nor disclaimed that interest").

An analogous principle from New York law concerning spendthrift trusts confirms the logic of this conclusion. Spendthrift trusts are trusts that contain voluntary and involuntary restraints on the right of the beneficiary to transfer the trust property. Restatement (Second) of Trusts § 153; Restatement (Third) of Trusts § 58. These restraints "protect the beneficiary against his own improvidence," In re Knauth's Tr., 189 N.E.2d 482, 484 (N.Y. 1963), "as well as from creditors seeking to satisfy the debts of the Trust's beneficiaries," Drye v. United States, 528 U.S. 49, 54 (1999). A spendthrift limitation, however, is invalid if the trust beneficiary has "the equivalent of ownership [in the trust property], entitling the beneficiary to demand immediate distribution of the property." Restatement (Third) of Trusts § 58, cmt. b(1); see also Restatement (Second) of Trusts § 153(2). In this context, equivalency of ownership is found (and the spendthrift limitation is invalid) if the beneficiary "holds a presently exercisable

general power of appointment (that is, a power currently to compel distribution of trust property to the power holder)." Restatement (Third) of Trusts § 58, cmt. b(1). Furthermore, equivalency of ownership is found if a beneficiary is "entitled to receive trust principal . . . even though the trustee has not yet made distribution [pursuant to the beneficiary's instructions]." Id., cmt. b-b(3). Ullman v. Cameron is especially illustrative. 78 N.E. 1074 (1906). In that case, the New York Court of Appeals found equivalency of ownership where "[t]he 'uses and purposes' named as the object of the trust include the right of the beneficiary to take the corpus of the estate at will, by simply notifying the trustee that he wishes to engage in some business or enterprise." Id.. The Court of Appeals rejected the proposition that equivalency was only established once the beneficiary actually "calls for possession." Id.

The analogous spendthrift trust authority confirms that, so long as the trust beneficiary has a broad, unilateral right to withdraw, the beneficiary need not actually exercise that right to be considered in possession of or entitled to immediate distribution of the trust property. Here, Section 2(a) of the Trust Agreement gave Plaintiff such a broad, unilateral right to withdraw, meaning that Plaintiff was entitled to "possession" and "immediate distribution" of the funds in the Trust Account.

Finally, Section 3(a) of the Trust Agreement does not change the analysis. Under that provision, Plaintiff "covenants" that it would only use withdrawn funds for certain, enumerated purposes. (Trust Agreement § 3(a).) That covenant operates to restrict the beneficiary only after a withdrawal is made, rather than as a condition precedent limiting Plaintiff's power under Section 2(a) to withdraw in the first place. Therefore, Section 3(a) does not affect the prudential standing analysis. See Sohm v. Scholastic Inc., 959 F.3d 39, 45-46 (2d Cir. 2020) (distinguishing between covenants and conditions precedent and stating that

"[c]onditions precedent are not readily assumed" and "must be expressed in unmistakable language" (quotations omitted)), abrogated on other grounds by Warner Chappell Music, Inc. v. Nealy, 601 U.S. 366 (2024).

In any event, Plaintiff adequately pleads that it is entitled to recapture all of the funds in the Trust Account under Section 3(a)(iv). Plaintiff alleges that the Trust Account was insolvent from its creation due to Defendant Mark Graham's alleged misappropriation. (TAC ¶¶ 6, 58, 162, 207); Great W. Ins. Co., 2026 WL 34966, at *11 (explaining Plaintiff's allegation that, shortly after the Trust Account was created, "Graham misappropriated approximately $22 million from the Trust Account to pay the ceding commission to Ability Re and to fund the Supplemental Trust—both of which were obligations owed by Alpha"). Plaintiff also alleges that it obtained an April 17, 2018 arbitration award against Alpha for the recapture of the assets in the Trust Account and for the termination of the Trust Agreement. (TAC ¶¶ 150-52.) Lastly, Alpha declared insolvency on January 16, 2018. (TAC ¶¶ 155-57.) Each of these allegations would satisfy the precondition for a recapture. (Trust Agreement § 3(a)(iv); Novation Agreement ¶ 11.)

Accordingly, Plaintiff has standing to sue for injuries to the Trust Account.[11]

B. Whether Plaintiff is the Real Party in Interest Under Rule 17

Relatedly, Defendants argue that this action must be dismissed under Federal Rule of Civil Procedure 17 because the trustee of the Trust Account, not Plaintiff, is the real party in interest. Fed. R. Civ. P. 17(a)(1) ("An action must be prosecuted in the name of the real party in interest."). The real party in interest is "the party with the legal title to the claim asserted and is

[11] The Court need not consider whether Plaintiff's claims are direct or derivative because even if the claims were derivative, Plaintiff has standing.

the party with the stake in the controversy that is being used to invoke the court's jurisdiction." Fund Liquidation Holdings LLC. v. Bank of America Corp., 991 F.3d 370, 389 (2d Cir. 2021). For the same reasons that Plaintiff has standing, Plaintiff is the entity with the real stake in the controversy and thus is the real party in interest within the meaning of Rule 17.[12] See Oscar Gruss & Son, Inc. v. Hollander, 337 F.3d 186, 193 (2d Cir. 2003) (To be a real party in interest under Rule 17(a), "the action must be brought by the person who, according to the governing substantive law, is entitled to enforce the right." (citation omitted)).

## III. CONCLUSION

For the foregoing reasons, Defendants' motions to dismiss are denied. This Memorandum Opinion and Order resolves docket entry nos. 517 and 520. The parties' motions for summary judgment will be addressed in a separate Memorandum Opinion and Order.

SO ORDERED.

Dated: New York, New York
August 31, 2026

/s/ Laura Taylor Swain
LAURA TAYLOR SWAIN
Chief United States District Judge

---

[12] Defendants point to the fact that Rule 17(a)(1)(E) states that "[t]he following may sue in their own names without joining the person for whose benefit the action is brought: . . . a trustee of an express trust." (Defs. Mem. at 14-15.) That provision does not oust Plaintiff because "[t]he list in Rule 17(a) is not meant to be exhaustive and anyone possessing the right to enforce a particular claim is a real party in interest even if that party is not expressly identified in the rule." Applications in Internet Time, LLC v. RPX Corp., 897 F.3d 1336, 1348 (Fed. Cir. 2018) (quoting Wright & Miller § 1543) (emphasis in original).